Nicholas Ranallo, Attorney at Law #275016
371 Dogwood Way
Boulder Creek, CA 95006
Telephone No.: (831) 703 - 4011
Fax No.: (831) 533-5073
Email: nick@ranallolawoffice.com
Attorney for Defendant Joe Navasca

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AF HOLDINGS, LLC., | Case No. 3:12-cv-02396-EMC |
| Plaintiff, | **NOTICE OF MOTION AND DEFENDANT'S MOTION TO POST UNDERTAKING** |
| v. | |
| JOE NAVASCA | **Judge: Honorable Edward M. Chen** **Courtroom 5 – 17th Floor** **Date: January 18, 2013** **Time: 1:30 PM** |
| Defendant. | |

## DEFENDANT NAVASCA'S NOTICE OF MOTION AND MOTION TO REQUIRE UNDERTAKING PER CCP §1030

PLEASE TAKE NOTICE that on Friday, January 13, 2013, Defendant Joe Navasca, by and through undersigned counsel and pursuant to federal law and CCP §1030, shall appear before the Honorable District Judge Edward M. Chen at the San Francisco Courthouse, Courtroom 5-17th Floor, located at 450 Golden Gate Avenue, San Francisco, CA 94102, and will present his motion to require Plaintiff AF Holdings to post an undertaking pursuant to Cal. Code Civ. Proc. §1030.

Defendant relies on this motion, the attached memorandum in support, all supporting declarations filed herewith, including the declarations of the defendant and defendant's counsel, and any oral arguments made before the court. For the reasons set out more fully herein, Defendant Joe Navasca respectfully requests that this court require Plaintiff AF Holdings to post an undertaking in the amount of $84,250 to cover costs and fees that Defendant expects to incur in this action.

Dated: December 12, 2012

Respectfully Submitted,

/s/ Nicholas Ranallo
Nicholas Ranallo, Attorney at Law
Counsel for Defendant
371 Dogwood Way
Boulder Creek, CA 95006
(831) 703-4011
nick@ranallolawoffice.com

Nicholas Ranallo, Attorney at Law #275016
371 Dogwood Way
Boulder Creek, CA 95006
Telephone No.: (831) 703 - 4011
Fax No.: (831) 533-5073
Email: nick@ranallolawoffice.com
Attorney for Defendant Joe Navasca

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AF HOLDINGS, LLC., | Case No. 3:12-cv—2396-EMC |
| Plaintiff, | |
| v. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO POST UNDERTAKING** |
| JOE NAVASCA | |
| Defendants. | |

## **TABLE OF CONTENTS**

I.     INTRODUCTION AND FACTUAL CONTEXT.........................................................................2

    A.    A Brief Introduction to Prenda Law, Inc. and BitTorrent Copyright Litigation.................2

    B.    Factual and Procedural Background for the Instant Suit.........................................................5

II.    LEGAL STANDARD AND AUTHORITY TO REQUIRE UNDERTAKING..............................6

III.    ARGUMENT.................................................................................................................................7

    A.    AF HOLDINGS IS A FOREIGN CORPORATION...........................................................7

    B.    DEFENDANT HAS A REASONABLE POSSIBILITY OF OBTAINING JUDGMENT IN THIS ACTION.............................................................................................7

        1.    "Plaintiff's Current Evidence of Infringement Is Weak".....................................8

            a.    The Insufficiency of an IP Address.........................................................8

            b.    How Plaintiff Proceeds to Identify the Infringer....................................11

        2.    Plaintiff Lacks Standing to Pursue This Action Based on an Apparently Faulty or Fraudulent Assignment..........................................................................14

            a.    Alan Cooper.............................................................................................14

            b.    Mark Lutz................................................................................................15

        3.    Defendant Has Not Committed Copyright Infringement....................................18

    C.    THE REASONABLENESS OF THE REQUESTED SECURITY..................................12

        1.    Defendant Can Expect to Incur At Least $84,250 in Recoverable Costs and Fees..............................................................................................................18

            a.    Reasonable Hourly Rate..........................................................................19

            b.    Hours Reasonably Expected....................................................................20

        2.    The Special Necessity of an Undertaking in the Instant Case.............................20

V.    CONCLUSION..........................................................................................................................22

# TABLE OF AUTHORITIES

## CASES

*AF Holdings, LLC v. Trinh,* 2012 US Dist. LEXIS 161394 (N.D. Cal. November 9, 2012).................2,8,9

*AF Holdings, LLC v. Does 1-135,* 5:11-cv-03336 (Minute Order – ECF No. 42)(February 23, 2012)........4

*AF Holdings v. John Doe & Josh Hatfield,* 4:12-cv-02049-PJH..................................................................12

*Boy Racer, Inc. v. Does 1-52,* 2011 WL 7402999 (N.D. Cal. 2011)..........................................................9

*Hard Drive Productions v. Doe,* No. 4:11-cv-05634-PJH (ECF No. 9 – Plaintiff's Ex Parte Application for Discovery at 9-10)(January 6, 2012)...........................................................................................................10

*Hard Drive Productions v. Does 1-84,* 5:11-cv-3648-HRL...........................................................................3

*HPL Technologies, Inc. Securities Litigation,* 366 F.Supp.2d 912 (N.D. Cal. 2005)................................19

*In Re: BitTorrent Adult Film Copyright Infringement Cases,* 2012 U.S. Dist. LEXIS 61447 (E.D.N.Y. May 1, 2012)............................................................................................................................................2,9

*Jordan v. Multnomah County,* 815 F.2d 1258, 1262 (9th Cir.1987)..........................................................18

*Kourtis v. Cameron,* 358 Fed. Appx. 863 (9th Cir. 2009)(unpublished).......................................................7

*In re Merrill Lynch Relocation Management, Inc.,* 812 F.2d 116 (9th Cir. 1987)......................................6

*Simulnet E. Assocs. V. Ramada Hotel Operating Co.,* 37 F.3d 573, 574 (9th Cir. 1994).................6, 20-21

*VPR Internationale v. Does 1-1017,* 11-cv-02068-HAB-DGB, Dkt. No. 15 (C.D. Ill. 2011)..................8-9

## STATUTES

Cal. Code Civ. Proc. §1030.............................................................................................................................6

## I.      INTRODUCTION AND FACTUAL CONTEXT

Defendant Joe Navasca files the instant motion seeking an undertaking pursuant to Cal. Code Civ. Proc. §1030, as described further herein.  CCP §1030 requires  a foreign plaintiff to post an undertaking if there is a "reasonable possibility" that the moving Defendant will obtain judgment.  Plaintiff herein is a foreign corporation and, as detailed below, there is very strong possibility that Defendant will obtain judgment in this action.  The Northern District recently ordered AF Holdings to post an undertaking in a functionally identical BitTorrent infringement suit.  *AF Holdings v. David Trinh,* 2012 US Dist. LEXIS 161394 (N.D. Cal. November 9, 2012). Despite Plaintiff's claims about the strength of its case, it has refused to post the undertaking required in that matter.  Moreover, information obtained since the decision in *Trinh* raises serious questions about the genuineness of the assignment that purportedly forms the basis of the instant suit and the sole support for Plaintiff's claims of standing to pursue this litigation.  An undertaking is therefore even more appropriate in the instant matter.

### A.      A BRIEF INTRODUCTION TO PRENDA LAW, INC. AND BITTORRENT COPYRIGHT LITIGATION

This case is the latest installment in the "nationwide blizzard of civil actions brought by purveyors of pornographic films alleging copyright infringement by individuals."      *In Re: BitTorrent Adult Film Copyright Infringement Cases,* 2012 U.S. Dist. LEXIS 61447 (E.D.N.Y. May 1, 2012).   Plaintiff herein is a foreign corporation and a prolific litigant in district courts throughout the country.[1]  Plaintiff is not the creator of the work that forms the basis of the instant suit.  Instead, according to Plaintiff's complaint,  AF Holdings owns the exclusive rights *"with respect to BitTorrent-based reproduction and distribution of the Video."*[2]  ECF Nos. 1&13, at ¶18. As described in Section III(B)(2), infra, Defendant has serious doubts that AF Holdings does, in

---

[1] A brief search of "AF Holdings" on RFCExpress.com shows over 200 actions filed by this Plaintiff in district courts across the country.  A similar search of the Northern District's PACER/ECF records reveals 30 suits filed in this district.  See Ranallo Dec. at ¶3-5.

[2] It is worth noting that, given Plaintiff's description of the BitTorrent protocol, exclusive rights with respect to BitTorrent distribution is a virtual oxymoron.

1   fact, own the relevant rights in the Video.

2   Plaintiff's counsel herein, as affiliate for "Prenda Law, Inc.," (formerly known as Steele

3   Hansmeier, PLLC), has been an active player in this arena and has filed numerous lawsuits, on

4   behalf of AF Holdings and other adult film distributors in an attempt to leverage embarrassing

5   accusations into settlements.

6   Plaintiff's BitTorrent copyright lawsuits have taken several forms, but the fundamental

7   element has remained the same: pay a settlement to make the accusations go away, or face the

8   embarrassment and expense required to prove your innocence.  The fundamental flaw of these

9   suits has likewise remained through each incarnation – an IP address is simply not sufficient to

10  identify the individual that infringed on a Plaintiff's copyright.  See Section III(B)(1), infra.

11  Initially, Plaintiff's counsel was content to file a series of massive "John Doe" suits.  These

12  suits followed a common course.  First, a plaintiff files suit against a massive number of "Doe"

13  defendants based on generalized allegations that they have "shared" a pornographic work.

14  Plaintiff's counsel filed dozens of these suits in the Northern District alone. See, e.g. *AF Holdings*

15  *v. Does 1-135,* 5:11-cv-03336-LHK; *Hard Drive Productions v. Does 1-84,* 5:11-cv-3648-HRL;

16  and *MCGIP v. Does 1-30.*

17  Plaintiffs would then seek an ex parte order authorizing pre-service discovery from the

18  court, in the form of ISP subscriber names, addresses, phone numbers, etc, like that received in the

19  instant matter.  Upon receiving the list of ISP subscriber names, Plaintiff's counsel would send

20  settlement demands and make telephone calls to the ISP subscriber, threatening a federal lawsuit

21  unless the subscriber settled.  Eventually the mass case would be dismissed without ever

22  approaching the merits of any infringement claims.  Indeed, the dirty little secret of these early

23  cases was that Plaintiff's counsel had never, in fact, served an individual Doe with a complaint for

24  copyright infringement.  Plaintiff's counsel was forced to admit that fact in a mass case involving

25  the present Plaintiff, AF Holdings.

26  In *AF Holdings v. Does 1-135,* Plaintiff was initially allowed to conduct the same early

27  discovery that was requested herein, and was able to identify many of the 135 ISP subscribers

28

3

sought in the suit.  After several months of inactivity, Plaintiff's counsel was ordered to provide a declaration that included, inter alia,

> "A list of the BitTorrent copyright infringement cases involving multiple joined John Doe Defendants filed by Plaintiff's counsel's law firm or predecessor firm in federal court. Identify the case by name, case number, court, and filing date. **For each case, indicate how many Doe Defendants were actually served**."  *AF Holdings, LLC v. Does 1-135,* 5:11-cv-03336 (Minute Order – ECF No. 42)(February 23, 2012).  A copy of this order is annexed hereto as Exhibit A.

In response, Plaintiff's counsel was forced to admit that, despite filing suit against approximately 15,000 "John Does", <u>neither Prenda nor Steele Hansmeier had served a single identified individual with a copyright complaint.</u>  A copy of Plaintiff's response is annexed hereto as Exhibit A.  The reason for plaintiff's reluctance to serve anyone is simple– an IP address is not sufficient to identify the infringer of a particular copyrighted work.  Numerous courts have recognized this fact, and Plaintiff's counsel has been forced to admit it on numerous occasions.  See Section III(B)(1), infra.

Following its "emperor-has-no-clothes" moment, Prenda has been left with a difficult dilemma.  In response, they could have attempted the the type of investigation that they have previously stated was necessary to identify the actual infringer of a copyright.  However, this route is inefficient and poorly suited to a litigation campaign that has ensnared over 15,000 ISP subscribers in the course of a few short years.  Plaintiff has chosen a second route in this case – blindly serving what seems to be a randomly chosen member of the subscriber's large household.  Plaintiff's complaint offers no hint as to why they have selected Joe Navasca, out of the six inhabitants of this residence.

Moreover, as described further herein, Plaintiff's past descriptions of their "investigations" does not engender confidence in their ability to identify the actual individual that shared a particular work.  Plaintiff nonetheless hopes that the very real costs of litigation will force Defendant to "settle", regardless of guilt.  So far Mr. Navasca has resisted, but the potential costs of litigation are a very real concern for the Defendant.

1

2   **B.     FACTUAL AND PROCEDURAL BACKGROUND OF THE INSTANT SUIT**

3   The complaint in the instant matter was filed on May 10, 2012, against a single

4   unidentified John Doe defendant, alleging that the Doe had violated the Plaintiff's copyrights via a

5   specified IP address.  See ECF No. 1.  Both the direct infringement claims and the contributory

6   infringement claims are based on the common allegation that Mr. Navasca has uploaded,

7   downloaded, or otherwise "shared" the work via the BitTorrent protocol.  On May 30, 2012,

8   Plaintiff applied Ex Parte for an order authorizing early discovery to determine the ISP subscriber

9   assigned to the IP address in question at the date/time of the alleged infringement.  On June 4,

10   2012, this Court granted Plaintiff's request.

11   Subsequently, Plaintiff was notified by AT&T that Jovino Navasca (father of the

12   Defendant herein) was the ISP subscriber associated with IP address  69.109.216.238.  Plaintiff

13   responded by sending two letters to Jovino Navasca, threatening to file suit for copyright

14   infringement unless Jovino Navasca paid thousands of dollars to settle the allegations.  See

15   Declaration of Jovino Navasca, at ¶4 and Exhibit A to Jovino Navasca Declaration.  The first of

16   these letters specifically notes that Plaintiff does not know who is the infringer of the work in

17   question, and moreover that Jovino Navasca is "*the only person known to my client who may know*

18   *the identity of the infringer in this case.*"  See Exhibit A to Jovino Navasca Declaration.

19   The second of these letters is dated October 16, 2012.  A mere two days later, perhaps

20   sensing that Plaintiff was not going to successful compel the 62 year old account holder to settle

21   the infringement claims, Plaintiff sent a new letter to Joe Navasca, defendant herein.  This letter

22   claimed that Plaintiff had now decided that Joe Navasca was the infringer of its copyright.  See Joe

23   Navasca Declaration at ¶10-11, and Exhibit A thereto.  Plaintiff's letter offers literally no

24   explanation regarding how they have arrived at this conclusion.  The First Amended Complaint is

25   substantively identical to the generic "John Doe" complaint, and likewise does not attempt to

26   explain how Plaintiff moved from its threats against Jovino to its present allegations against

27   Defendant.

28

5

1    In the instant case, there are five other individuals living with Jovino Navasca, each with

2    some level of authorized access to IP address 69.102.216.238. See Joe Navasca Dec. at ¶4. In

3    addition, a wireless internet signal extends far beyond the walls of a single home, and could be

4    accessed by neighbors, guests, or unauthorized interlopers. Plaintiff's complaint does not explain

5    how they have chosen Joe Navasca as the infringer, out of all potential culprits. Indeed, Plaintiff

6    has put forth no evidence that Joe Navasca *actually is* the individual that shared the work that

7    forms the basis of this action.

8    Importantly, Joe Navasca is not, in fact, the infringer of the work that forms the basis for

9    this suit. In the declaration attached hereto, Mr. Navasca specifically denies that he has ever

10    uploaded, downloaded, or otherwise shared the work. Mr. Navasca's declaration goes on to

11    explain that, at the time of the alleged infringement, he was likely in bed with his wife, who works

12    early each morning. Mr. Navasca further confirms that he awoke relatively early the next

13    morning, and was at the gym by shortly after 10 a.m. local time, and that it is therefore extremely

14    unlikely that he was even awake at the time of the alleged infringement.

15

16    **II.    LEGAL STANDARD AND AUTHORITY TO REQUIRE UNDERTAKING**

17    "[T]he federal district courts have the inherent power to require plaintiffs to post security for

18    costs." *In re Merrill Lynch Relocation Management, Inc.,* 812 F.2d 116 (9th Cir. 1987); see also

19    *Simulnet E. Assocs. V. Ramada Hotel Operating Co.,* 37 F.3d 573, 574 (9th Cir. 1994). District

20    courts typically "follow the forum state's practice with regard to security for costs, as they did

21    prior to the federal rules; this is especially common when a non-resident party is involved"

22    *Simulnet* 37 F.3d at 574.

23    In California, the forum state's practice regarding security for foreign Plaintiffs is

24    contained in California Code of Civil Procedure §1030. §1030 provides that "When the plaintiff

25    in an action or special proceeding resides out of state, or is a **foreign corporation**, the defendant

26    may at any time apply...for an order requiring the plaintiff to file an undertaking to secure an

27    award of costs and attorney's fees..." A defendant shall have grounds for an order requiring

28

6

security if "there is a **reasonable possibility that the moving defendant will obtain judgment in the action...**" Cal. Code Civ. Proc. §1030(b) (emphasis added).

The Ninth Circuit has recognized the appropriateness of requiring a bond securing costs and attorney fees in the copyright context in *Kourtis v. Cameron,* 358 Fed. Appx. 863 (9th Cir. 2009)(unpublished). In *Kourtis,* the Ninth Circuit affirmed the district court's imposition of $100,000 bond, covering expected costs and attorney fees, pursuant to the standard set forth in Code. Civ. Proc. §1030. The Northern District of California has likewise recognized the appropriateness of requiring security for attorney fees and costs in another case involving AF Holdings, based on functionally identical allegations as those herein. See *AF Holdings v. Trinh,* 2012 US DIST LEXIS 161394 (N.D. Cal. November 9, 2012).

As described more fully below, Defendant has met the legal standard for imposition of an undertaking. Plaintiff is a foreign corporation, and Defendant has a reasonable (or far better) possibility of obtaining judgment in this action. Not only is Plaintiff's evidence of infringement exceedingly weak, as recognized in the Trinh case, but there is further evidence that the Plaintiff may lack standing to even maintain the instant suit, based on the faulty assignment described in Section III(B)(2), below.

## III.   ARGUMENT

### A.   AF HOLDINGS IS A FOREIGN CORPORATION

To establish entitlement to security under Code Civ. Proc. §1030, a defendant must first establish that the Plaintiff resides out of state, or "is a foreign corporation." §1030(b). Here, it is undisputed that Plaintiff is a foreign corporation. Paragraph 2 of the instant complaint specifically identifies the Plaintiff as a "limited liability company organized and existing under the laws of the Federation of Saint Kitts and Nevis." (ECF No. 1, at ¶2). As such, the first prong in the §1030 test has been met.

### B.   DEFENDANT HAS A REASONABLE POSSIBILITY OF OBTAINING JUDGMENT IN THIS ACTION

In order to qualify for an undertaking pursuant to Cal. Code Civ. P. §1030, a defendant

7

must also show that he has a "reasonable possibility" of obtaining judgment in the action.  As described further below, Defendant can meet this burden.  First, "Plaintiff's current evidence of infringement is weak."  *AF Holdings v. Trinh,* 2012 US DIST LEXIS 161394 at *  (N.D. Cal. November 9, 2012).   Simply put, an IP address is insufficient to identify the infringer of a Plaintiff's copyright, as courts and Plaintiff's counsel herein has repeatedly recognized.  Second, it appears 'reasonably possible' that Plaintiff herein lacks standing to pursue the instant action, as the assignment that forms the basis of the instant suit appears to have been executed without the authorization of at least one of the signatories thereto.  Finally, the Defendant herein has explicitly denied ever  uploading, downloading, or otherwise sharing the work that forms the basis of this suit.

### 1.    "PLAINTIFF'S CURRENT EVIDENCE OF INFRINGEMENT IS WEAK."

#### a.    The Insufficiency of an IP Address

The premise of Plaintiff's case can be summarized as follows:  Some individual was observed downloading "Sexual Obsessions" via a particular IP address.  The ISP subscriber associated with that IP address was identified as Jovino Navasca.  Joe Navasca is one of several individuals with access that IP address 69.109.216.238 (along with his five other house-mates, and countless unidentified potential interlopers).  Therefore Joe Navasca must be the infringer of Plaintiff's copyright.  This logical leap does not hold up to even limited scrutiny, and Plaintiff has offered nothing else to support its conclusion that Joe Navasca is the infringer.

In *AF Holdings v. Trinh,* the Northern District decided that an undertaking in this precise context was appropriate because "Plaintiff's current evidence of infringement is weak."  *AF Holdings v. Trinh,* 2012 US DIST LEXIS 161394 at *3 (N.D. Cal. November 9, 2012).  Judge Breyer recognized that, as noted above, an IP address is simply insufficient to identify the actual infringer of a particular work.  Indeed, as Judge Baker noted in *VPR Internationale v. Does 1-1017,* 11-cv-02068-HAB-DGB, Dkt. No. 15 (C.D. Ill. 2011), obtaining subscriber identities will not "tell Plaintiff who illegally downloaded Plaintiff's works, or, therefore, who Plaintiff will name as the Defendant in this case.  It could be the Subscriber, or another member of the

1   household, or any number of other individuals who had direct access to the Subscriber's network."

2   *VPR Internationale* at pg. 2.  Or, as Judge Brown described it in the Eastern District of New York,

3   "In sum, although the complaints state that IP addresses are assigned to "devices" and thus by

4   discovering the individual associated with that IP address will "reveal defendants true identity,"

5   this is unlikely to be the case."  *In re BitTorrent Adult Film Copyright Infringement Cases,* 2012

6   WL 1570765 at *5 (E.D.N.Y. May 1, 2012).

7        Prenda Law, Inc. and their affiliates have been litigating BitTorrent claims, in some form

8   or another, against tens of thousands of "John Does" nationwide.  In attempting to justify its

9   general failure to serve thousands of defendants in its mass cases, Plaintiff's counsel has

10  frequently been forced to admit that an IP address is insufficient to identify the actual infringer of

11  its copyright.  Plaintiff's counsel has admitted that significant formal discovery, including

12  depositions and hard drive inspections,  would be needed to properly identify the individual that

13  actually uploaded or downloaded a work via a specified IP address.

14        These admissions effectively began in *Boy Racer v. Does 1-52*.  In that case, Judge Grewal

15  severed Does 2-52 for improper joinder, leaving Mr. Gibbs with a sole remaining defendant.

16  Plaintiff received the same ISP subscriber information for John Doe #1 that was requested herein.

17  As described by Judge Grewal:

18        "To the court's surprise, in its filing and oral argument to the court, Boy Racer
19        admitted that, its previous representations notwithstanding, the subpoenas were
          not sufficient to "fully identify" "each P2P network user suspected of violating
20        the plaintiff's copyright."  Instead, it revealed for the first time that still more
          discovery was required.  **Boy Racer would require nothing less than an**
21        **inspection of the subscriber's electronically stored information and tangible**
          **things, including each of the subscriber's computer and the computers of**
22        **those sharing his network."**

23  *Boy Racer, Inc. v. Does 1-52,* 2011 WL 7402999 (N.D. Cal. 2011) (emphasis added).

24        Mr. Gibbs admission in Boy Racer would not be his last.  Indeed, Plaintiff's counsel

25  subsequently filed a series of suits against "John Doe" defendants, despite having received the

26  precise ISP subscriber information that it received herein.  See, e.g. *Hard Drive Productions, Inc.*

27  *v. John Doe*, No. 4:11-cv-05630-YGR (N.D. Cal); *AF Holdings v. Doe,* 5:11-cv-05633-LHK

28

9

1  (N.D. Cal); *Hard Drive Productions v. Doe,* No. 4:11-cv-05634-PJH (N.D. Cal.).

2      The Plaintiff's justification in each was explicit – that an IP address is not sufficient,

3  without further discovery, to determine who committed the infringement associated with a

4  particular IP address.  To quote Mr. Gibbs,

> "As some courts in this District have noted, 'the relationship between accused activity linked to an IP address and subscriber information associated with that IP address is imperfect at best." *Diabolic Video Productions, Inc.,* No. 5:10-cv-05865-PSG, at 5 (quoting *VPR Internationale v. Does 1-1017,* No. 2:11-cv-02068-HAB-DGB, at 2 (C.D. Ill. Apr. 29, 2011),(ECF No. 15).  **Accordingly, Plaintiff must conduct additional limited ex parte discovery to determine who should be named as the defendant in this case.**  Without this discovery from Mr. Abrahams, Plaintiff cannot be certain if Mr. Abrams is the defendant who should be named and served with process, or merely the sole material witness..." *Hard Drive Productions v. Doe,* No. 4:11-cv-05634-PJH (ECF No. 9 – Plaintiff's Ex Parte Application for Discovery at 9-10)(January 6, 2012)(emphasis added).

      Mr. Gibbs has repeated this formulation in a number of cases throughout this district and

the Eastern District.  In each, Plaintiff goes on to state that instead of "**blindly naming**" the

account-holder, additional discovery should be allowed in order to identify the "true infringer."

See, e.g. *Hard Drive Productions v. Doe,* No. 4:11-cv-05634-PJH (ECF No. 9 – Plaintiff's Ex

Parte Application for Discovery at 9)(N.D. Cal. January 6, 2012) ("However, instead of blindly

naming Mr. Abrahams as a defendant based solely on the fact that he is the IP address account

holder, Plaintiff seeks discovery to gather evidentiary support for its contentions...").

      AF Holdings has not explained how they have arrived at the conclusion that Joe Navasca,

one of six individuals living at the defendant's address, is the infringer in the instant case.  They

have not spoken to the account holder, though they did send two letters threatening a federal

lawsuit unless the account-holder paid a settlement.  See Jovino Navasca Declaration at ¶2-3, ¶7.

They have not conducted a deposition (or any other formal pre-service discovery) to attempt to

identify the actual infringer of its copyright, though they have previously stated that such discovery

would be necessary to identify the infringer.  Instead, for reasons unknown, they have simply

selected Joe Navasca as the defendant.   Plaintiff's prior descriptions of their BitTorrent

"investigations" leave little reason for confidence in their conclusions.

### b. "How Plaintiff Proceeds to Identify the Infringer"

Plaintiff and its counsel have been pointedly asked on two recent occasions to describe exactly how they identify the infringer of their copyright based solely on the subscriber information received from the ISP. Neither response engenders much confidence in Plaintiff's identification of defendant herein.

In late October of this year, AF Holdings had all of their remaining cases in the Central District of California consolidated in front of Judge Otis Wright. In each of these cases, Judge Wright vacating all prior orders authorizing early discovery of subscriber information, and required AF Holdings to demonstrate, inter alia, "how it would proceed to uncover the identity of the actual infringer once it has obtained subscriber information – given that the actual infringer may be a person entirely unrelated to the subscriber..." *AF Holdings v. Doe,* 2:12-cv-5709-ODW, ECF No. 9, annexed hereto as Exhibit C. Plaintiff's response is not reassuring, and is annexed hereto as Exhibit D (see page 20, "B.  HOW PLAINTIFF PROCEEDS TO IDENTIFY THE INFRINGER).

First, Plaintiff notes that "the subscriber is the *only* person from whom Plaintiff, and others similarly situated – in having their copyrights, or other protected material, violated online – could glean such information. Once the subscriber is identified, the steps going forward are very similar to those in more typical cases." Ex. D., pg. 20 at ln12-17. Plaintiff then goes on to describe  the "specific" process that he uses to identify the infringer:

"Plaintiff and subscriber will discuss the matter. In some instances, subscriber  himself admits to having infringed Plaintiff's copyrights. In other instances, subscriber acknowledges that another member of the household infringed Plaintiff's copyrights, or likely did so." *Id.,* ln 18-24.

It is worth noting that, in the instant case, Plaintiff has not spoken to the subscriber Jovino Navasca (and thus the subscriber has not  admitted to infringing the copyright, nor implicated anyone else). See Declaration of Jovina Navasca, filed simultaneously herewith at ¶7. Thus, this

avenue was not the source for any information from which Plaintiff could draw the conclusion that Joe Navasca was the infringer.

Plaintiff's response to the Order to Show Cause does go on to note that "In yet other instances, the subscriber chooses to remain silent." Id. Notably, however, the discussion following this statement provides LITERALLY no information as to how Plaintiff identifies the infringer without an admission or implication of another by the subscriber. Indeed, the entire remainder of the section entitled "How Plaintiff Proceeds to Identify the Infringer" is devoted to a justification of the propriety of Plaintiff's efforts to induce settlement. See Exhibit D., pg. 20-21.

Plaintiff's counsel has subsequently attempted explain how they identify the infringer, in yet another recent case involving AF Holdings. In *AF Holdings v. John Doe & Josh Hatfield*, 4:12-cv-02049-PJH, Mr. Hatfield was initially accused only of negligence based on his purported failure to adequately secure his internet connection, allowing for infringement by "John Doe." Despite receiving the same subscriber info as herein, the initial complaints against Mr. Hatfield pointedly noted that "At this stage of the litigation Plaintiff does not know if Defendant Doe is the same individual as Josh Hatfield." After it's negligence claim was thrown out, however, Plaintiff promptly changed his tune. See Hatfield Declaration at ¶4. On September 28, 2012, Plaintiff filed a Motion for Leave to Amend, now alleging that Josh Hatfield was the infringer of the relevant work, based on unspecified "further investigation". *Id.*

At the hearing on the Motion to Amend, Plaintiff's proposed amended complaint was rejected, and Plaintiff was ordered to submit a new complaint detailing its additional "investigation." *Id.*

Plaintiff's new complaint includes a section entitled "Plaintiff's Further Investigation of Defendant" beginning on page 8. According to this, Plaintiff's investigation prior to its September 28, 2012 Motion to Amend naming Mr. Hatfield as the infringer consisted exclusively of an "online Internet investigation" on September 8, 2012. Exhibit A to Hatfield Dec., at pg 8. According to Plaintiff, this investigation consisted of finding a Facebook page of a person named Josh Hatfield (though not the defendant in that action – see Hatfield Dec. ¶7-8. Among the

1    purportedly inculpatory facts found was that this Josh Hatfield "likes...pretty much any movie."

2         In addition to checking the wrong person's Facebook page, Plaintiff's September 8th

3    investigation also  included a visit to an incorrect person's MySpace page.  On that MySpace

4    page, Plaintiff was able to determine that the page-owner (not the Defendant) had pictures of

5    himself playing video games.  Hatfield Dec. at ¶9-10.

6         Next, according to Plaintiff's proposed complaint, the investigation included a peek at

7    "Google Maps," where Plaintiff determined that Mr. Hatfield lived in an apartment building.

8    Plaintiff goes on to include an entire listing for an open unit in that building, though it is unclear

9    what this is supposed to demonstrate.  Exhibit A to Hatfield Dec., at pg. 8-9.

10        Finally, on September 8, Plaintiff "conducted more research.  Research on the building's

11   other potential residents indicated that, while a residential building, it had a few tenants who were

12   running businesses out of their units."  Exhibit A to Hatfield Dec at pg. 9.  It is likewise unclear

13   what this is supposed to demonstrate, or what inference of guilt should be drawn from this.

14        The remainder of "Plaintiff's Further Investigation of Defendant" all occurred on October

15   9, 2012 – AFTER Plaintiff filed the Motion to Amend to name Mr. Hatfield as the infringer.

16   Thus, it clearly could not have influenced the decision to name Mr. Hatfield as the infringer.

17   Moreover, even if the October 9 "investigation" was conducted prior to the Motion to Amend, it is

18   nonetheless insufficient  to lead to any inference that Mr. Hatfield was the infringer.  Specifically,

19   paragraph 38 notes that Mr. Hatfield had "a criminal record," though a simple Google search

20   would have revealed that the "offense" listed was a traffic violation, which does not equate to a

21   "criminal record," nor would it lead to any inference that Mr. Hatfield had downloaded a

22   particular work via BitTorrent.

23        As outlined above, an IP address is insufficient to identify the actual infringer, and Plaintiff

24   has twice attempted to explain how they arrive at the identity of the actual infringer following

25   identification of the subscriber.  The only conclusion that can be drawn from these explanations is

26   that, in truth, ***they do not know how to identify an infringer based on an IP address***, and are

27   content to simply guess and hope that the cost of defense induces "settlement."  In light of the

28

13

foregoing, Defendant has demonstrated that "Plaintiff's current evidence of infringement is weak," and Mr. Navasca, therefore, has a reasonable possibility of obtaining judgment in this action. This conclusion is further strengthened by the questionable assignment that forms the basis for the instant suit, as described further below.

### 2. PLAINTIFF LACKS STANDING TO PURSUE THIS ACTION BASED ON AN APPARENTLY FAULTY OR FRAUDULENT ASSIGNMENT

In addition to the weakness of Plaintiff's evidence of infringement (which have alone been held sufficient to support an undertaking in this context), recent information raises substantial questions about Plaintiff's standing to maintain the instant suit, and the genuineness of the assignment that purportedly forms the basis for this standing. As described further below, it presently appears that someone with AF Holdings or Prenda Law, Inc. has created the assignment in the instant case without the authorization of its purported signatory.

#### a. Alan Cooper

The assignment in the instant matter is purportedly signed by Alan Cooper, on behalf of AF Holdings. See ECF No. 13-2, a copy of which is annexed hereto as Exhibit E. On November 29, 2012, an individual named Alan Cooper (through attorney Paul Godfread), filed a letter in all of AF Holdings' open cases in Minnesota. See, e.g. A copy of this letter (with accompanying exhibits) is collectively annexed hereto as Exhibit F. The letter outlined the following contentions:

- Mr. Cooper is "concerned that his name or identity is being used without his consent," by AF Holdings, the plaintiff herein.

- Mr. Cooper was previously employed as a caretaker for John Steele, a principal in Steele Hansmeier and (possibly) Prenda Law, Inc., as described further below[3].

- Mr. Cooper was instructed by Mr. Steele that, should anyone start asking questions about various corporations, that Mr. Cooper was to immediately contact John Steele.

---

[3] Steele Hansmeier is the predecessor law firm to Prenda Law, Inc. See "Notice of Firm Name Change", annexed hereto as Exhibit K. The Exhibits to Mr. Cooper's letter also contains significant documentation of the links between John Steele, Prenda Law, Inc., and AF Holdings.

- Mr. Cooper later learned that his name was showing up in a large number of AF Holdings cases (as well as cases by another offshore Prenda Plaintiff, "Ingenuity 13").
- Counsel for the Mr. Cooper attempted to contact individuals associated with Prenda Law Inc., and AF Holdings and "their reaction has not been reassuring." Specifically, the letter indicates that Mr. Steele immediately attempted to contact Mr. Cooper personally, despite the notice of representation, and that other individuals at Prenda Law have refused to proffer any explanation or evidence refuting Mr. Cooper's claims.

The Exhibits to Mr. Cooper's letter contain significant documentation of the links between John Steele, Steele Hansmeier and Prenda Law. In addition, a notarized declaration from Mr. Cooper, reiterating his concerns, was filed in the Central District of California on December 10, 2012, in *AF Holdings v. Doe,* 2:12-cv-5709 and several additional cases. A copy of the filed declaration is attached hereto as Exhibit G. Mr. Cooper's declaration reiterates explicitly that "I did not give Steele permission to use my name or sign documents on my behalf." Exhibit G at ¶14.

Mr. Cooper's letter, declaration, and prior association with Plaintiff's counsel raises obvious questions about authenticity of the assignment herein, which forms the entire basis for AF Holdings assertion of standing. Plaintiff's counsel has thus far refused to offer *any explanation* for the scenario outlined above. Even more concerning, Plaintiff's initial disclosures, signed by Mr. Gibbs, do not identify any individual associated with AF Holdings in any capacity.[4] A copy of Plaintiff's Initial Disclosures is annexed hereto as Exhibit H. Instead, they identify Mark Lutz, a former paralegal for Steele Hansmeier and Prenda Law, described further below, as the *sole individual* that may have information regarding the assignment that forms the basis of this suit.

### b. Mark Lutz

Mark Lutz is a former paralegal and telephone collection agent for Steele Hansmeier and

---

[4] Plaintiff's "Certification of Interested Entities", ECF #2 in this matter, likewise fail to identify *anyone* that has any financial interest in AF Holdings or the outcome of this litigation.

Prenda Law, Inc.  See Ranallo Declaration at ¶6-8.  Counsel for defendant has received an email from Mr. Lutz, where he identifies himself as "Paralegal – Prenda Law," as recently as July 11, 2012.  See Ranallo Declaration at ¶7.  In addition, Mr. Lutz was making phone calls on behalf of Prenda Law Inc., at least as late as July 25, 2012.  Ranallo Declaration at ¶8.  Somehow though Mr. Lutz is also *the sole individual* identified by Plaintiff as having knowledge regarding the questionable assignment in this action.  See AF Holdings Initial Disclosures, annexed hereto as Exhibit H.

Mr. Lutz is apparently no longer *formally* employed by Prenda.  A recent hearing in the Middle District of Florida sheds some light on his present occupation, however.  In a case involving another Prenda BitTorrent plaintiff, Sunlust Pictures, Judge Scriven ordered the personal attendance of, inter alia, a representative of Sunlust Pictures, as well as a principle of Prenda Law Inc.  *Sunlust Pictures v. Nguyen,* 8:12-cv-1685-T35-MAP (ECF No. 17).  A copy of the order requiring attendance is annexed hereto as Exhibit I.  A copy of the transcript from the November 27th hearing is attached hereto as Exhibit J.

Prenda Law declined to send a principal, and presented Mark Lutz as the "corporate representative" of Sunlust Pictures.  Mr. Lutz described his present employment, after being put under oath by Judge Scriven, as follows (see Exhibit J, pg 14-15):

| | |
|---|---|
| The Court: | What is your position with Sunlust? |
| Mr. Lutz: | I'm a representative of them. |
| The Court: | What does that mean? |
| Mr. Lutz: | Corporate Representative |
| The Court: | What does that mean? |
| Mr. Lutz: | They asked me to appear on various matters throughout the country. |
| The Court: | Are you an officer of the company? |
| Mr. Lutz: | I'm not, no. |
| The Court: | Are you authorized to bind the company to any legal contracts? |
| Mr. Lutz: | I am not. |
| The Court: | Are you salaried? |
| Mr. Lutz: | No, 1099. |
| The Court: | So you are a 1099 contracted entity and you just go around and sit in a Court and represent yourself to be a corporate representative of the company? |
| Mr. Lutz: | Yes. |

.....

After further exploring Mr. Lutz' knowledge (or total lack thereof) with regard to the company that he was "representing," the court dismissed Mr. Lutz:

> The Court:   You can sit away from the table, you're not a corporate representative of anybody if you don't have any information about the corporation.   You're not an officer or principal of the corporation.   The Court will exclude you as a proper corporate entity for this Defendant...
>
> The case is dismissed for failure to appear at this hearing, for failure to present a lawful agent, **for attempted fraud on the Court by offering up a person who has no authority to act on behalf of the corporation as its corporate representative** and the Court will hear, by motion, a motion for sanctions and fees against this Sunlust entity...

Despite the fiasco outlined above, and with full knowledge that the assignment in the instant action was under scrutiny, **Plaintiff's initial disclosures in this matter identify Mr. Lutz, and ONLY Mr. Lutz, as the individual with knowledge regarding the assignment.** Plaintiff's disclosures do not indicate that either putative signatory of the assignment has any knowledge thereof, nor do they reveal a single individual associated with AF Holdings in any capacity.  They identify only Mr. Lutz - the erstwhile paralegal and 1099 "corporate representative" described above, as the sole individual that may have knowledge regarding the assignment.

Like counsel for Mr. Cooper, counsel for the defendant herein has requested further information on this question from Plaintiff's counsel, and has received no substantial information whatsoever regarding these crucial questions.  It therefore remains an open question, for now, how an individual that was a paralegal in Plaintiff's counsel's law firm at the time of the alleged assignment can be the only person that has any information regarding that assignment.  It is likewise unclear how he could lay a proper foundation for the introduction of this assignment that is absolutely necessary to Plaintiff's prima facie case.

The situation outlined above raises  serious questions about the authenticity of the purported assignment in this action and, by itself, would demonstrate a "reasonable possibility"

that defendant will obtain judgment in this action.  When combined with the objective weakness of Plaintiff's evidence of infringement, described above, and Defendant's declaration, described below, it must be conceded that Mr. Navasca has at least a "reasonable possibility" of obtaining judgment in this action.

### 3.     Defendant Herein Has Not Committed Copyright Infringement

Finally,  despite everything above, the most important point of this entire litigation is that <u>Joe Navasca, the defendant herein, has not actually committed copyright infringement.</u>  Defendant unequivocally denies, under penalty of perjury, that he has ever uploaded, downloaded, or otherwise shared the work that forms the basis for the instant suit.  See Joe Navasca Declaration, at ¶3.  The allegation that Defendant shared the work via BitTorrent forms the basis of both the direct and contributory infringement allegations in Plaintiff's complaint and defendant's denial, if credited, would establish his innocence as to both causes of action against him.  Defendant's declaration likewise explains that he and his wife are generally in bed long before 1:26 a.m., the time of the alleged infringement, since defendant's wife has to work early each morning.  See Joe Navasca Declaration at ¶6-9.  Defendant further states that, upon review of his gym records, he has confirmed that he was at the gym relatively early on the morning following the alleged infringement, lending further objective support to his claims.  Defendant fully expects that he will ultimately be exonerated in the instant matter, though he is rightfully concerned about the cost of ongoing litigation and his ability to ultimately recover his costs and fees from the Plaintiff, an offshore corporation that appears to engage in no business beyond the filing of copyright lawsuits.

### C.     THE REASONABLENESS OF THE REQUESTED SECURITY

#### 1.     DEFENDANT CAN EXPECT TO INCUR AT LEAST $84,250 IN RECOVERABLE COSTS AND FEES

Defendant herein has already incurred significant costs based on this ill-considered lawsuit, and can expect to incur significantly more in an effort to establish his innocence.  The Ninth Circuit has adopted the Lodestar method for calculating reasonable recoverable attorney fees in

1   situations like the instant case.  See, e.g. *Jordan v. Multnomah County,* 815 F.2d 1258, 1262 (9th
2   Cir.1987).  The Lodestar amount is calculated by multiplying the number of hours the prevailing
3   party reasonably expends on the litigation by a reasonable hourly rate.  Although necessarily an
4   estimate in this context, defense counsel can expect to expend approximately 295 hours on the
5   instant litigation, through the summary judgment stage.  See Ranallo Declaration at ¶19-24.
6   Moreover, $250/hour represents an extremely conservative estimate of the reasonable rate to
7   which defense counsel is entitled under the Lodestar method.  It is thus possible, if not likely, that
8   the actual amount of recoverable fees and costs in this matter could exceed $84,250,   and
9   defendant reserves the right to request additional security, should it prove necessary.

10          **a.        Reasonable Hourly Rate**

11          The first step in the Lodestar inquiry is to establish a reasonable hourly rate for attorney
12   services.  After review of surveys on the issue and comparison with the Laffey matrix, the rate of
13   $250/hour appears reasonable, if not unreasonably low, for IP litigation in the Bay Area.  See
14   Ranallo Declaration at ¶13-18.

15          The Laffey Matrix is frequently used to determine reasonable hourly rates for attorneys of
16   varying levels of experience.  The Northern District of California has previously endorsed the use
17   of the Laffey Matrix in evaluating the reasonableness of attorney fees in this district.  For example,
18   in *HPL Technologies, Inc. Securities Litigation*, Chief Judge Walker described the Laffey Matrix
19   as a "well-established objective source for rates that vary by experience," and used the Laffey
20   rates to establish reasonable attorney fees in this district.   *HPL Technologies, Inc. Securities*
21   *Litigation,* 366 F.Supp.2d 912 (N.D. Cal. 2005).  In so doing, the court recognized that the Laffey
22   rate would tend to *undercompensate* attorneys in this district, and noted that "adjusting the Laffey
23   matrix figures upward by approximately 9% will yield rates appropriate for the Bay Area."  *Id.*

24          The Laffey Matrix sets the reasonable hourly rates for an attorney with 4-7 years
25   experience, like defense counsel herein, at $290/hour for work performed in 2012-2013.  Once the
26   9% upward adjustment for the Bay Area is figured in, the adjusted amount for this district would
27   be $316.10/hour.  As such, the rate of $250/hour chosen for the instant calculations should be

28

1   deemed reasonable.

2       In addition to the Laffey Matrix, defense counsel has also consulted a recent survey of

3   attorney billing rates that was published in the San Francisco Daily Journal to determine the

4   reasonable rate in the instant matter.  This survey, published on Friday, August 10, 2012, noted

5   that the average rate for an Associate in San Francisco law firms was $482/hour in 2012, up from

6   $449/hour in 2011.  A copy of the relevant chart is annexed to the Ranallo Declaration as Exhibit

7   C.

8       **b.      Hours Reasonably Expected**

9       At the present time, it is only possible to give a rough estimate of the number of hours that

10  can be expected in the instant litigation, but counsel has attempted to produce such an estimate.  In

11  so doing, counsel has determined that he can expect to expend approximately 295 hours on the

12  instant litigation, through the summary judgment stage.  This estimate is broken down in detail in

13  the Ranallo Declaration and Exhibit D hereto.    This results in an anticipated attorney fee of

14  $73,750.

15      In addition, as noted on the Ranallo Declaration and Exhibit D, counsel has estimated that

16  defendant could incur between $10,500 and $18,000 in additional costs during the course of this

17  litigation.   Defendant has chosen to use the low-end of this estimate as the basis for his

18  calculations herein, and therefore estimates the combined costs and fees in this matter to reach

19  $84,250.  As such, Defendant has requested an undertaking in the amount of $84,250 as security

20  for anticipated costs and fees to be incurred.

21

22      **2.      THE SPECIAL NECESSITY OF AN UNDERTAKING IN THE INSTANT
                CASE**

23      In addition to following the forum state's practice, some courts have also adopted a

24  supplemental, multi-factor analysis from the First Circuit.  See *Simulnet,* 37 F.3d at 576.  The first

25  of these factors, "the degree of probability/improbability of success on the merits, and the

26  background and purpose of the suit," closely tracks California's second factor, which requires

27  "reasonable possibility of success on the merits."  The analysis of this factor thus closely tracks

28

20

1  Section III(B), infra.  The additional element that the court is encouraged to look at, however, is

2  the "background and purpose of the suit."  *Id.*  This element is especially pertinent herein, where

3  the instant case is one of hundreds of cases filed by this Plaintiff, and Defendant herein is one of

4  over 15,000 "John Does" that have been sued by Plaintiff's counsel.  Notably, not a single one of

5  these cases has been decided on the merits.  AF Holdings has refused to post security in the only

6  matter where it has thus far been required, casting further doubt on the merit of their claims and

7  their intention of standing behind those claims when challenged.

8       The second supplemental factor that is applicable to the defendant examines the reasonable

9  extent of the security to be posted, if any, viewed from the defendant's perspective.  *Id.*

10  Defendant's requested security is reasonable because, as described above, it encompasses the

11  amount of recoverable costs and fees that he would be entitled to as a prevailing party.  In

12  addition, as Judge Breyer noted in *Trinh,* The Court is also mindful that it could be difficult for

13  Defendant, should he prevail in this case, to collect from Plaintiff, a foreign corporation (hence the

14  policy behind section 1030)."  2012 US DIST LEXIS 161394 at *5.

15       In fact, §1030 provides  for a security based on the presumed difficulty of collection for

16  mere *out-of-state* plaintiffs.  In the instant case, we are dealing with a company that was set up in

17  St. Kitts & Nevis, a notorious offshore "asset protection" jurisdiction with extremely limited

18  corporate disclosure requirements and extremely onerous requirements for enforcement of U.S.

19  judgments.[5]  Moreover,  AF Holdings has thus far failed to identify a single individual that is

20  actually associated with the company, and appears to engage in no business beyond the prolific

21  filing of unsupported copyright complaints.  Taken together, these factors reinforce the urgency

22  and necessity of the Defendant's request for an undertaking in the instant case.

23  _____

[5] See, e.g. http://www.alperlaw.com/asset-protection/offshore-planning/nevis-llcs/ , ("Nevis law also

24  establishes a charging lien as a creditor's exclusive remedy to attack a debtor's LLC ownership interest...
To attack a Nevis LLC interest, the creditor has to apply in a Nevis court for issuance of the charging lien.

25  **It is unclear whether a Nevis court would even recognize a Florida judgment giving rise to a creditor's request for a charging order. Officials in Nevis have told me they know of no instance**

26  **where a U.S. creditor has obtained a charging lien in Nevis to enforce a U.S. judgment**...  Under Nevis
law, the manager of the LLC does not have to be a Nevis resident or a Nevis business organization...  A

27  Nevis LLC provides optimal protection if the debtor appoints as either initial or successor manager an
individual or company outside of the United States. **No U.S court has jurisdiction over a foreign**

28  **manager**.")(emphasis added), last accessed on December 12, 2012.

1

**IV.   CONCLUSION**

2

Cal. Code Civ. Proc. §1030 provides that a Plaintiff shall be required to post an

3

undertaking to secure expected costs and fees if the Plaintiff is a foreign corporation and there is a

4

reasonable possibility that Defendant will obtain favorable judgment.  Each criteria is satisfied in

5

the instant case.  Plaintiff is undeniably a foreign corporation, organized under the laws of St. Kitts

6

and Nevis.  In addition, Defendant has show at least a reasonable possibility of obtaining judgment

7

in this action.  He has done so by demonstrating that Plaintiff's current evidence of infringement

8

by the defendant is exceedingly weak and by highlighting significant defects with the assignment

9

that forms the basis of this action.     Defendant has also declared, under penalty of perjury, that

10

he has not shared Plaintiff's copyrighted work via BitTorrent – the sole allegation underlying  both

11

the direct and contributory  infringement claims.

12

Based on the foregoing, it is clear that there is at least a "reasonable possibility" that

13

Defendant will obtain judgment in this matter.  As such, Plaintiff should be required to post an

14

undertaking sufficient to secure an eventual award of costs and fees.  Defendant has estimated the

15

combined costs and fees in this action at $84,250, and respectfully requests that this court require

16

an undertaking in that amount.

17

18

DATED: December 12, 2012          NICHOLAS RANALLO, ATTORNEY AT LAW

19

20

By:_____/s/ Nicholas Ranallo_____

21

Nicholas Ranallo (Cal Bar #275016)
Attorney for Joe Navasca

22

371 Dogwood Way,
Boulder Creek, CA 95006

23

P: 831.703.4011
F: 831.533.5073

24

nick@ranallolawoffice.com

25

26

27

28

22

1

## CERTIFICATE OF SERVICE

2         THE UNDERSIGNED HEREBY CERTIFIES that on this 12th day of December , a true

3  and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system

and served on all of those parties receiving notification through the CM/ECF system.

4

5                                                        /s/            Nicholas R. Ranallo

6                                                        Nicholas Ranallo, Attorney at Law

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28