Brett L. Gibbs, Esq. (SBN 251000)
Of Counsel for Prenda Law Inc.
38 Miller Avenue, #263
Mill Valley, CA 94941
415-325-5900
blgibbs@wefightpiracy.com

*Attorney for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT FOR THE

## NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| AF HOLDINGS LLC, | ) | **No. 3:12-CV-02396-EMC** |
| | ) | |
| Plaintiff, | ) | **PLAINTIFF AF HOLDINGS LLC'S** |
| v. | ) | **RESPONSE TO DEFENDANT JOE** |
| | ) | **NAVASCA'S MOTION TO POST** |
| JOE NAVASCA, | ) | **UNDERTAKING** |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ _____) | | |

## INTRODUCTION

Plaintiff AF Holdings LLC ("Plaintiff"), by and through its undersigned counsel, hereby files this Response to Defendant Joe Navsca's ("Defendant") Motion to Post Undertaking. (ECF No. 22.) For the reasons contained herein, Defendant's Motion should be denied.

## I.     OPPOSITION TO DEFENDANT'S FACTUAL CONTENTIONS

Before addressing Defendant's arguments, Plaintiff responds to the factual contentions made by Defendant in the instant Motion. (ECF No. 22 at 5-9.) Defendant asserts that "despite Plaintiff's claims about the strength of its case, it has refused to post the undertaking required in [*AF Holdings v. Trinh*]." (*Id.* at 5.) The inference Defendant clearly wishes to draw is that, if Plaintiff truly believed in the strength of its case, the undertaking would already have been posted. Such an inference would be incorrect; rather, it is the case that Plaintiff simply cannot afford to post the $48,000 required by the *Trinh* Court to pursue its claims. The *Trinh* Court was in error in

determining that Defendant had a reasonable probability of success in that case; for the reasons described herein, it would be similarly erroneous to determine that Defendant in the instant action has a reasonable probability of success.

Defendant asserts that "this case is the latest installment in the 'nationwide blizzard of civil actions brought by purveyors of pornographic films alleging copyright infringement by individuals." (*Id.*) This particular excerpt of the holding from *In Re: BitTorrent Adult Film Copyright Infringement Cases* is frequently cited by defendants in online copyright infringement cases. But what gets lost in this particular soundbyte is the other side of the story: there is a "nationwide blizzard" of such civil actions only because there is a corresponding, nationwide blizzard of individuals illegally downloading copyrighted material via BitTorrent; literally millions of the latter with only a fraction involved in lawsuits.  There is also a "nationwide blizzard" of personal injury cases and breach of contract cases, because when an individual or entity has been harmed, the individual or entity will often seek to remedy the harm via the legal system—and rightfully so. Plaintiff in the instant action, and similarly situated entities, should not be denied the opportunity to assert its rights simply because the harm in question involved pornography. Pornography is legal, pornography is copyrightable, and pornography is very, very popular; what the aforementioned soundbyte fails to recognize is that the owners of such copyrighted works are as entitled to compensation for its unauthorized use as the NFL, or Warner Brothers, or Stephen King. Our society is founded on a tradition of protecting the rights of all, even if those rights may be unpopular; the judge who decided *In Re: BitTorrent* appears to have forgotten that tradition.

Defendant asserts that "the fundamental flaw of these suits has likewise remained through each incarnation – an IP address is simply not sufficient to identify the individual that infringed on a Plaintiff's copyright." (*Id.* at 6) (Emphasis omitted.) Taking Defendant's assertion to be true, Plaintiff is left with three—*and only three*—options upon discovering online infringement of its

copyrighted works: (1) sue the subscriber for the IP address found to have infringed upon Plaintiff's copyright; (2) sue another individual who resides in the subscriber's household; (3) do nothing. Plaintiff understands that communicating with the subscriber is often helpful in narrowing down which option is best, and that is why Plaintiff always reaches out to the subscriber. In this case, however, as both the subscriber of the infringing IP address, Jovino Navasca, and the Defendant, Joe Navasca, both admit (*See* ECF No. 24, ECF No. 25), neither of them ***ever*** responded to Plaintiff's attempts to initiate contact. Let's revisit Plaintiff's three options: (1) sue the subscriber; (2) sue another individual who resides in the subscriber's household; (3) ***do nothing***. Those who feel pornography companies should have no right to enforce their copyright might assert that Plaintiff should do nothing. But why? Why should the Navascas be ***rewarded*** for ignoring Plaintiff's legitimate claim? This point cannot be emphasized enough: ***Defendant is asserting that he should not have been sued because neither he, nor his father, responded to Plaintiff.*** Plaintiff obviously did not decide to sue subscriber Jovino Navasca in this case, going with his son Joe Navasca. Defendant's Motion and its attached declarations repeatedly demonstrate wonder at how Joe Navasca was chosen as the alleged infringer. As it turns out, when the subscriber of an infringing IP address remains silent upon Plaintiff's attempts to reach out, Plaintiff must conduct an investigation and make factual conclusions and some common-sense assumptions to allege that Defendant, who shared Jovino's domicile, was the most likely candidate to have infringed upon Plaintiff's copyright. Research turns out evidence, evidence leads to conclusions, conclusions leads copyright holders— i.e. Plaintiff—to name and serve someone these lawsuits.  Once again, the alternative would be to ***reward the Navascas for their silence.*** If such silence were sufficient to defeat a claim of online copyright infringement, then no copyright holder could ***ever*** sue for online infringement of its copyright; any copyright infringer would simply remain silent, and online infringement would go unpunished, undeterred, and uncompensated, the abuses would literally be ignored. That is not the

sort of world AF Holdings wishes to occupy; as such, Plaintiff made common-sense assumptions to arrive at the conclusion that Joe Navasca was the likely infringer.   What do we know?  Suffice it to say that Plaintiff's content attracts a specific demographic, and Joe Navasca was the member of the household who best fit that demographic.  Perhaps if the Navascas had not ignored Plaintiff's correspondence, Plaintiff could have made its allegation on the basis of better information. But suffice it to say that there is no legal, ethical, or moral justification for Defendant's implied assertion that Plaintiff simply should not have sued anyone in this case. Jovino Navasca's IP address was used to illegally download Plaintiff's copyrighted work, and Joe Navasca was found to be the most likely infringer; neither individual chose to correspond with Plaintiff, and that is not Plaintiff's fault. The situation is rather reminiscent (though certainly distinct from) of *Summers v. Tice*[1], the classic staple of tort law textbooks wherein three different hunters may have shot the Plaintiff, but the Court leaves it up to the possible suspects to sort out who caused the harm. Plaintiff has narrowed the scope of inquiry, but the Navascas' refusal to communicate with Plaintiff, once again, left Plaintiff deciding between pursuing its reasonable theory that the infringer was Joe Navasca or doing ***absolutely nothing***. The Navascas should not be rewarded for their having willfully ignored this issue, and Plaintiff should not face the fundamental bar to pursuing the instant action that imposition of the astronomical security moved for by Defendant would pose. Rather, this case should proceed through the discovery process, and Plaintiff and Defendant should be permitted to uncover information to establish their respective factual and legal positions.

Defendant asserts that "a wireless internet signal extends far beyond the walls of a single home, and could be accessed by neighbors, guests, or unauthorized interlopers." (ECF No 22 at 9.) These are ***defenses***. The fact that Defendant has defenses does not equate to his having a reasonable probability of success. Indeed, in many situations where there is ambiguity, a case may begin with

---

[1] *Summers v. Tice,* 33 Cal.2d 80 (Cal. Sup. Ct. 1948).

the appearance that Defendant has a reasonable probability of success. However, that is why pre-trial mechanisms such as discovery exist—to allow the parties to have sufficient information to evaluate their respective claims and defenses, and to buttress those claims and defenses. At this point, Defendant's contention that "unauthorized interlopers" could have used Defendant's network is nothing more than an alleged defense; it is **not**, as Defendant asserts, a foundation for determining at the outset that Defendant has a reasonable probability of success.

Defendant asserts that "Plaintiff has put forth no evidence that Joe Navasca *actually* is the individual that shared the work that forms the basis of the action." (ECF No. 22 at 9.) Curiously, Defendant has not cited to the portion of federal pleading standards, or any other legal authority, that suggests that Plaintiff is required to *prove* its case in its Complaint or face astronomical security requirements. Once again, ***discovery*** is how Plaintiff plans to buttress and evaluate its common-sense-based reasonable allegation that Joe Navasca was the infringer.

Defendant asserts that "importantly, Joe Navasca is not, in fact, the infringer of the work that forms the basis for this suit. In the declaration attached hereto, Mr. Navasca specifically denies that he has ever uploaded, downloaded, or otherwise shared the work." (ECF No. 22 at 9.) Defendant's suggestion that he has a reasonable probability of winning because he declares that he did not act as alleged is laughable. If such declarations served as sufficient evidence, then defending a civil lawsuit would be as easy as signing a sworn declaration of one's innocence; some might argue that that is how our justice system should work, but it obviously is not how it works now.  And to pretend that lying in a federal court is unheard of is preposterous.

 Defendant asserts that "Mr. Navasca's declaration goes on to explain that, at the time of the alleged infringement, he was likely in bed with his wife, who works early each morning." (*Id.*) Given the way BitTorrent works, however, the uploading and downloading of Plaintiff's copyrighted work at the observed date and time could take place even while Mr. Navasca was soundly asleep;

BitTorrent can upload and download even without the user being at the computer, or awake.[2] Once again, this is a ***potential defense***, and, furthermore, it is a potential defense that is ***easily controverted***. This is ***not*** a basis for concluding that Defendant has a reasonable probability of winning this case.

ARGUMENT

**I.     DEFENDANT *DOES NOT* HAVE A REASONABLE PROBABILITY OF OBTAINING JUDGMENT IN THIS ACTION**

**A.   PLAINTIFF'S CURRENT EVIDENCE OF INFRINGEMENT IS *SUFFICIENT***

**1.   THE *SUFFICIENCY* OF AN IP ADDRESS**

It is apparently undisputed between the parties that the IP address for which Jovino Navasca was the subscriber was found to be infringing upon Plaintiff's copyright. Defendant provides a variety of alternate explanations that amount to a list of other individuals who may have used Jovino Navasca's IP address to commit copyright infringement, asserting that "Joe Navasca is one of several individuals with access [to] IP address 69.109.216.238 (along with his five other house-mates, and countless unidentified potential interlopers)." (ECF No. 22 at 11.) However, it is ***extremely*** unlikely that an "unidentified potential interloper" committed the infringement: Neither of the Navascas, in their respective declarations, have indicated that the household Internet connection was unsecured. Thus, an "unidentified potential interloper" would have had to crack into a password-protected network to commit the illegal download. The list of people in the world who possess the expertise to do so is fairly small, and anyone who *did* possess that expertise would have also had the expertise to ***not have their actions detected by Plaintiff's investigators***, by, for example, using a Tor node—an extremely simple, extremely ubiquitous technique by which one can conceal his IP address. Also working against the Navascas is the fact that they live in a ***house***. As such, anyone who was able to crack into the Navascas home network would find that their

---

[2] http://computer.howstuffworks.com/bittorrent2.htm (last checked December 21, 2012)

pornography was downloading at extremely slow speeds: it is common knowledge that, the farther away someone is from the source of an Internet connection, and the thicker the material through which the signal must pass, the weaker, and thus slower, the resulting Internet connection is. Thus someone who possessed the sophisticated knowledge necessary to crack into a secured wireless network would certainly be able to come up with a more efficient way to illegally download pornography. Defendant may be reading this particular passage, thinking that these assertions may not be correct. ***Defendant's assertions***—that another housemate or an unidentified interloper used the Internet connection to commit copyright infringement—may also be incorrect. Complaints are based on inferences; trial, and pre-trial mechanisms such as discovery, are in place ***precisely*** for this reason: these mechanisms allow the parties to buttress and evaluate their claims and inferences, and subsequently assess how to proceed. Defendant's assertions amount to the proposition that Plaintiff should be forced to offer up over $80,000 before proceeding with the case because it has not proven its case yet, but that is simply not how our system of justice works.

Defendant makes much ado about supposed inconsistencies in the manner in which Plaintiff's counsel has litigated BitTorrent cases. (ECF No. 22 at 12-13.) Looking past the surface, there is no inconsistency at all. As Defendant asserts, the undersigned has asserted that discovery is necessary to figure out who the true infringer is. But when subscriber Jovino Navasca did not respond to Plaintiff's attempts to correspond, and most-likely-infringer-in-the-household Joe Navasca did not respond to Plaintiff's attempts to correspond, how, exactly, was Plaintiff supposed to engage in that discovery without initiating litigation against the most likely infringer in the household? There is no possible answer to this question; if there were, the undersigned would be employing such an answer to litigate its cases. It is unfortunate that Joe Navasca must litigate this case if, in fact, he did not act as alleged. But the fact that there are possible alternative explanations does not amount to a reasonable probability of his success; it amounts to a list of potential defenses,

and given that he cannot yet prove any of them[3], his probability of success at the present time is, at best, no greater than Plaintiff's—and, at worst, much less than Plaintiff's.

Defendant argues that "AF Holdings has not explained how they have arrived at the conclusion that Joe Navasca, one of six individuals living at the defendant's address, is the infringer in the instant case." (ECF No. 22 at 13.) As described above, Plaintiff has done so through the use of factual findings and investigation, a ubiquitous practice in the field of law. Plaintiff had no obligation under federal pleading standards to explicitly state every single one of these facts, and does so in the instant Response simply to demonstrate the fallaciousness of Defendant's assertions of his reasonable probability of success in the instant action.

## 2. THERE IS NO ALTERNATIVE PROCESS BY WHICH TO IDENTIFY INFRINGERS AND ACHIEVE JUSTICE

Defendant next makes a series of assertions which amount to the conclusion that Plaintiff's methodology in identifying infringers is faulty. (ECF No. 22 at 14-17) Defendant is incorrect. Copyright holders are entitled to pursue claims for infringement committed online under the United States Copyright Act. Infringement committed online necessarily involves the parsing of an imperfect relationship between the IP address and the infringer, but imperfect does not mean non-existent. The individual who infringed upon Plaintiff's copyrighted work is someone who was able to access to Jovino Navasca's Internet account. It is a virtual certainty that the individual who used Jovino Navasca's Internet account to download Plaintiff's copyrighted work was a member of Jovino Navasca's household: neither of the Navascas has asserted that the household wireless network is unlocked; if the network was secured, only someone with a highly sophisticated knowledge of Internet technology could have accessed the wireless network without knowing the

---

[3] As described above, Defendant's bare assertion of innocence is simply insufficient; if it were regarded as sufficient, one could imagine that every defendant in civil cases would simply assert the same. As described above, the alibi Defendant provided of being asleep at the date and time of the infringement is irrelevant; BitTorrent can be left running, and can autonomously upload and download files without the user being present at the computer.

password; someone with highly sophisticated knowledge of Internet technology would have used the readily available and easily utilized methods of avoiding detection of IP addresses, such as a Tor node; additionally, someone with highly sophisticated knowledge of Internet technology would not have used a wireless network located in a home, as the connection will be extremely slow for anyone outside of the home, virtually useless for downloading the large files of which movies are necessarily constituted. In the alternative, if the home wireless network was, in fact, unsecured (as Defendant will perhaps assert by declaration in his forthcoming Reply to the instant Response), the fact remains that a wireless network in a household would provide painfully slow speeds for downloading of Plaintiff's content (or, really, any content). A home is simply not an apartment; whereas the wireless signal in an apartment need only pass through thin walls to be usurped by another, the wireless signal in a home must pass through—to state the obvious—the outer walls of the home, which are much thicker than the walls of an apartment. As such, the wireless signal in the Navascas' home would likely be quite useless to anyone outside the home, particularly for the bandwidth-intensive task of downloading Plaintiff's copyrighted work. These are, as yet, but potential theories, and yet they are no less plausible than the explanations put forth by Defendant— frankly, they are much more plausible; to deem otherwise would be to trust Defendant's unsupported assertions *ex ante*, and there is absolutely no justification for doing so.

**B.  THE ASSIGNMENT AGREEMENT *IS* VALID**

Defendant offers various conspiracy theories that, in sum, argue the proposition that the assignment agreement by which Plaintiff obtained the underlying copyright at issue in this case is invalid. (ECF No. 22 at 17-21.) Defendant's serious allegations regarding supposed misconduct by Plaintiff, in addition to being wholly unsubstantiated, are also irrelevant to whether the assignment agreement is valid. The law of copyright requires only that the assignment be signed by the assignor and not the assignee; as such, any supposed inconsistency (or, more appropriately, any conspiracy

theory) is wholly irrelevant to a prima facie showing of copyright ownership. *See* 17 U.S.C. 204; *Effects Associates, Inc. v. Cohen*, 908 F.2d 555, 557 (9th Cir. 1990). As the Ninth Circuit asserted in *Effects Associates, Inc. v. Cohen*, "The rule is really quite simple: If the copyright holder agrees to transfer ownership to another party, that party must get the copyright holder to sign a piece of paper saying so. It doesn't have to be the Magna Charta; a one-line pro forma statement will do." *Id.* Exhibit B to Plaintiff's Amended Complaint demonstrates that the assignor signed the assignment agreement (*See* ECF No. 13 at Exhibit B) Defendant's contentions based on conspiracy theories of Alan Cooper's involvement are thus meritless, and should be dismissed as such.

## C. DEFENDANT'S BARE ASSERTION THAT HE HAS NOT COMMITTED COPYRIGHT INFRINGEMENT IS *IRRELEVANT*

As Defendant is currently defending himself in a copyright infringement lawsuit, it would be rather surprising if Defendant were to assert that he *did* commit copyright infringement. Though defendant states that he "unequivocally denies, under penalty of perjury, that he has ever uploaded, downloaded, or otherwise shared the work that forms the basis of the instant suit," (ECF No. 22 at 21), we can imagine at least a few instances in the practice of law in which individuals have lied about their innocence to avoid liability. This argument amounts to "I am innocent because I say I am innocent," and such an argument cannot support the proposition that Defendant has a reasonable probability of winning the case. As previously noted, Defendant's assertion that "he and his wife are generally in bed long before…the time of the alleged infringement" (ECF No. 22 at 21) is irrelevant to whether he committed copyright infringement at that time, as that time is when the uploading and downloading were *observed* to be taking place; given the way BitTorrent operates, Defendant need not have been at his computer at the moment that the infringement was observed. (*See supra* at n.1.) Though Defendant "fully expects he will ultimately be exonerated in the instant matter," he has provided no concrete reason for why the Court should share his expectation. At this time, Defendant has offered mere *theories* of why he *could* be found innocent, and Plaintiff, throughout this Motion,

10

has offered counter-theories as to why his theories of innocence are flawed. That is why we have trial, and pre-trial mechanisms such as discovery—to buttress and test these theories. But if the Court accepts Defendant's bare assertions and imposes the astronomical security demanded by Defendant, Plaintiff will not be able to afford the security, and consequently, will not be able to have its day in Court. That is not justice.

## II.   *ANY* AMOUNT OF SECURITY WOULD BE UNREASONABLE

First, in reality, requiring a security, as the Court understands, is only in extreme cases; cases that are essentially "slam dunks." To obtain an order for security, a party must demonstrate a reasonable probability of winning the case. As described above, all of the bases upon which Defendant reasons that he has such reasonable probability are flawed; indeed, some are wholly irrelevant to the inquiry of whether he has a reasonable probability of winning the case. Defendant argues that "not a single one of the cases [filed by Plaintiff's counsel] has been decided on the merits." (ECF NO. 22 at 24.) The percentage of cases in the American legal system that even *go to trial* is widely reported as being around 2%. In addition, the set of cases mentioned by Defendant are relatively new; it is well known that even getting to the trial stage takes a fair amount of time. This argument by Defendant does not point out anything that is unique to Plaintiff, and thus does not support the proposition that security is reasonable in the instant action.

Defendant argues that "AF Holdings has refused to post security in the only matter where it has thus far been required, casting further doubt on the merit of their claims and their intention of standing behind those claims when challenged." (ECF No. 22 at 24.) While Defendant's explanation is convenient for Defendant, there is actually a much simpler explanation: as described above, Plaintiff simply cannot afford to post the security requested in the case mentioned by Defendant. Defendant mentions that AF Holdings is based in St. Kitts and Nevis, but has not pointed out a single negative aspect of the company, other than the fact that it actually tries to enforce its rights

under the Copyright Act, a fact which certainly should not be used against Plaintiff. Defendant has not carried his burden of proving that he has a reasonable probability of winning the case; as such, any imposition, at all, of security would be unreasonable in the instant action.

## CONCLUSION

Defendant has moved the Court to impose an insurmountable obstacle to Plaintiff's litigation of its case. Granting security in this case would not only defeat the instant case, but would also encourage all copyright infringers to simply not correspond with copyright owners attempting to fight online infringement of their copyrights—after all, even if they ignore the copyright owners, all they have to do is move for security when they get sued and deny that they infringed the copyright. Plaintiff's methods are concededly not perfect, but there is no perfect method for identifying individuals who commit harms over the Internet. Plaintiff contends that it takes reasonable measures to identify the individual that is most likely to have infringed upon its copyright, and, furthermore, that Defendant has not demonstrated why there is a reasonable probability that he did not infringe upon Plaintiff's copyright—that is, after all, the burden that Defendant must carry for the instant motion, and it is well known that it is hard to prove a negative.

Respectfully Submitted,

AF HOLDINGS, LLC,

**DATED: December 21, 2012**

By:     /s/  Brett L. Gibbs, Esq.

Brett L. Gibbs, Esq. (SBN 251000)
Of Counsel to Prenda Law Inc.
38 Miller Avenue, #263
Mill Valley, CA 94941
415-325-5900
blgibbs@wefightpiracy.com
*Attorney for Plaintiff*

1

## **CERTIFICATE OF SERVICE**

2

The undersigned hereby certifies that on December 21, 2012, all individuals of record who are deemed to have consented to electronic service are being served a true and correct copy of the foregoing document, and all attachments and related documents, using the Court's ECF system, in compliance with Local Rule 5-6 and General Order 45.

3

4

5

6

                                                            /s/_Brett L. Gibbs_____
                                                               Brett L. Gibbs, Esq.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RESPONSE TO MOTION TO POST UNDERTAKING          No. 3:12-CV-02396-EMC