Nicholas Ranallo, Attorney at Law #275016
371 Dogwood Way
Boulder Creek, CA 95006
Telephone No.: (831) 703 - 4011
Fax No.: (831) 533-5073
Email: nick@ranallolawoffice.com
Attorney for Defendant Joe Navasca

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AF HOLDINGS, LLC., | Case No. 3:12-cv-02396-EMC |
| Plaintiff, | |
| | **DEFENDANT'S OPPOSITION TO AF HOLDINGS EMERGENCY MOTION TO COMPEL** |
| v. | |
| JOE NAVASCA | Judge: Honorable Edward Chen |
| Defendants. | Magistrate: NOT YET ASSIGNED |

## I.    INTRODUCTION AND FACTUAL BACKGROUND

The original complaint in this matter was filed on May 10, 2012, against an unidentified Doe defendant. An amended complaint was filed on October 26, 2012, naming Joe Navasca as the defendant and alleged infringer on this matter. On November 23, 2012, the parties filed a Joint Case Management statement in this matter, including discussion of anticipated discovery. See ECF No. 19 at #8. AF Holdings expressed no intention of conducting forensic discovery of Mr. Navasca's personal computer, and at no time sent any correspondence to Mr. Navasca or present counsel regarding the scope of AF Holdings anticipated discovery, or any request for preservation of any specified information. Indeed, AF Holdings has not, at any time, issued any requests for production of documents or electronically stored information under Fed. R. Civ. Proc. 34.

On December 21, 2012, the parties conducted a second case management conference in this case, and Judge Chen authorized each side to conduct one deposition prior to the scheduled ENE. See ECF No. 33. The minutes of this conference specifically note Judge Chen's instruction that "Instead of filing formal discovery motions, parties shall refer to this Court's standing order to

meet and confer and submit joint letter on unresolved issues to the Court." ECF No. 33.

On January 14, 2012, Joe Navasca submitted to his deposition. During the course of his testimony, Mr. Navasca noted that he had installed a particular program on his computer, at or near the time of purchase (years before the present suit). This program is called CCleaner, and is discussed in Section II(B)(2), below. The following day, on January 15, 2012, counsel for Plaintiff sent the email that is annexed hereto as Exhibit A. This email noted Plaintiff's intention to bring the instant motion, and stated that "I hereby demand that EACH AND EVERY COMPUTER in Mr. Navasca's household be turned over to me for inspection WITHIN 24 HOURS..." See Exhibit A (emphasis in original).

Mr. Navasca, through his counsel, responded the next day. This email noted that Plaintiff's characterization of CCleaner is incorrect, but that Mr. Navasca had nonetheless manually disabled the program. The email further noted "my client has no problem with providing his hard drive for imaging and/or examination of some sort, but adequate safeguards must first be in place." The full text of this email is annexed as Exhibit B.

In response, Plaintiff rejected any protections, even for work product or privilege, and extended their unsupported deadline by three hours. After being notified that Mr. Navasca could not and would not bring his computer to their office in that time frame, filed the instant motion. At no time did counsel for Plaintiff attempt to speak with counsel for Defendant regarding his demands. The failure meet and confer in accordance with the local rules provides reason enough to deny the instant, wholly unsupported motion. In addition, any motion to compel based on the facts asserted herein must be denied on the merits.

## II. LEGAL ARGUMENT
### A. PLAINTIFF HAS FAILED TO COMPLY WITH LOCAL RULES REGARDING DISCOVERY AND JUDGE CHEN'S STANDING ORDER

As noted above, the parties were specifically instructed by Judge Chen that discovery disputes should be handled under the local rules and Judge Chen's standing order – requiring an in-person meet and confer and a joint letter. Indeed, Plaintiff's counsel did not even attempt a telephonic meet and confer before filing the instant motion. Instead, Plaintiff's counsel simply

1    made an unrealistic demand without regard to any federal rule, and then filed the instant motion.

2    Failure to comply with the local rules and Judge Chen's standing order represents a simple,

3    independent ground for denial of the instant motion.

4         Plaintiff's failure is even more telling in the instant case, where Mr. Navasca has

5    essentially agreed to produce his hard drive for inspection , to an appropriately qualified person,

6    with appropriate safeguards in place.  Plaintiff has simply chosen not to pursue this route, or even

7    called to discuss it.  Moreover, compliance with the local rules would require Plaintiff to set forth

8    the discovery demand upon which the instant motion is based – something that they cannot do

9    since *no request has ever been made under Rule 34, or any other federal rule.*

10   **B.    THERE IS NO BASIS FOR A MOTION TO COMPEL PRODUCTION IN THE
11          INSTANT CASE**

12        In addition to the problems highlighted above, there is simply no basis for a motion to

13   compel in the instant case.  For the reasons set forth below, any motion to compel based on

14   Plaintiff's facts must be rejected.

15        1.    An Informal Discovery Request Cannot Form the Basis of a Motion to Compel

16        First, as highlighted above, Plaintiff has never made any request for production pursuant to

17   Fed. R. Civ. Proc. 34.  An informal discovery request, even if termed  a "demand," cannot form

18   the basis for a motion to compel.

19        As one court has stated in this context "the Federal Rules of Civil Procedure provide

20   necessary boundaries and requirements for formal discovery.  Parties must comply with such

21   requirements in order to resort to the provisions of Fed. R. Civ. P. 37, governing motions to

22   compel...to treat correspondence between counsel as formal requests for production under Rule 24

23   would create confusion and chaos in discovery."  *Sithon Maritime Co. v. Mansion,* 1998 WL

24   182785, at *2 (D.Kan. Apr. 10, 1998).  Many other courts have echoed this view.  See, e.g. *James*

25   *v. Wash Depot Holdings, Inc*., 240 F.R.D. 693, 694-95 (S.D. Fla. 2006); *Susko v. City of Weirton,*

26   2011 U.S. Dist. LEXIS 3134, 2011 WL 98557, *2 (N.D. W. Va. 2011); *Tex. Democratic Party v.*

27   *Dallas Cnty.,* 2010 U.S. Dist. LEXIS 130939, 2010 WL 5141352, *1 (N.D. Tex. 2010) (citing

28   *Ledbetter v. United States*, 1996 U.S. Dist. LEXIS 20039, 1996 WL 739036, *2 (N.D. Tex. 1996);

3

1    *Garrison v. Dutcher*, 2008 U.S. Dist. LEXIS 28267, 2008 WL 938159, *2 (W.D. Mich. 2008));

2    and *Britton v. Dallas Airmotive, Inc.,* 2010 U.S. Dist. LEXIS 19502, 2010 WL 797177, *9-10 (D.

3    Id. 2010) (citing *Suid v. Cigna Corp.*, 203 F.R.D. 227, 229 (D.V.I. 2001).

4           2.      C-Cleaner Is A Common System Maintenance Tool That Does Not Permanently
                   Delete Data

5           The entire basis of Plaintiff's Emergency Motion is that Mr. Navasca has a program called

6    "C-Cleaner," installed on his personal computer.  Plaintiff would like this court to believe that this

7    is somehow a damning allegation, and somehow provides support for the proposition that

8    Defendant (and all other individuals in his household) must turn over their machines directly to

9    Plaintiff's counsel, with no provision for protection of attorney-client privileges, privacy, or

10   relevance.  Plaintiff mischaracterizes the nature of this program, however, and the ways that it was

11   used.  As an initial matter, Mr. Navasca stated that he installed the program on his computer at or

12   near the time of purchase – years prior to the instant suit.  The program is *extremely* common, and

13   has been downloaded *over one billion times* in its eight years of existence.[1]

14          As proof of its "prima facie" spoliation claim, Plaintiff cites to a single eHow internet

15   article noting that the tool can be used to remove programs, including UTorrent.  Plaintiff makes

16   no allegation that it was used for such a purpose in the instant case, and Mr. Navasca has, in fact,

17   testified that he has never had UTorrent installed on his computer at any time.    Plaintiff's scant

18   proof shrivels further when compared to the opinion of an actual Certified Computer Examiner.

19          Annexed hereto as Exhibit C is the declaration of Allison Goodman, filed in connection

20   with a case in the Western District of Washington.  Ms. Goodman discusses exactly the program

21   at issue herein, and has makes the following relevant observations regarding the program:

22
23          "9.  CCleaner is **not** a "wiping program" and is not designed to "permanently
            remove information from a computer."  By default, CCleaner removes temporary
24          internet files and other system files..."

25          10.  ...For the most part, these are files that the average user does not even know
            exist and cannot even be viewed by most users.  **None of the files CCleaner**
26          **deletes would be within the scope of discovery requests or be considered**

27   _____
     [1]  http://www.piriform.com/blog/2012/12/10/1-billion-downloads, last accessed on January 22, 2013.
28

                                                      4

**'reasonably accessible' under FRCP 26.**

11. Furthermore, CCleaner does not "permanently remove information from a computer..."

13. The standard use of CCleaner would not permanently remove data. I have recovered thousands of files after individuals have used CCleaner on their computers. The option to wipe the free space of the hard drive would need to be selected in order to permanently remove any data."

Exhibit C, at ¶9-13(emphasis added).

Mr. Navasca stated at his deposition that he had only ever used the default settings of this program, and therefore *has not* wiped or permanently deleted any data using the program. Plaintiff has simply seized on Mr. Navasca's honest response to a question about system maintenance tools, and has attempted to use it to justify a completely unjustifiable discovery "demand," and the wholly unsupported motion to compel discussed herein.

C. <u>An Award of Attorney Fees to Defendant is Appropriate</u>

Rule 37(a)(5)(B) provides that if a motion to compel is denied, the court must, after giving an opportunity to be heard, require the Movant or its attorney to pay the reasonable expenses incurred in defending said motion. Mr. Navasca has been forced to respond to the instant motion, notwithstanding the motion's lack of support and failure to comply with local rules and specific orders in this case (and notwithstanding Mr. Navasca's agreement to provide the requested information, provided appropriate safeguards are adopted to protect attorney-client privilege and other relevant privileges are in place). As noted in the annexed Declaration, Mr. Navasca's counsel has expended five hours in response to the instant motion. As such, Defendant requests $1250 for the costs reasonably incurred in responding to said motion.

## III. CONCLUSION

For the reasons set forth herein, Plaintiff's "Emergency Motion to Compel" should be denied, and defendant should be awarded its reasonable costs in opposing such motion.

DATED: January 22, 2012             NICHOLAS RANALLO, ATTORNEY AT LAW

5

By:   _____/s/ Nicholas Ranallo
      Nicholas Ranallo (Cal Bar # 275016)
      Attorney for Joe Navasca
      371 Dogwood Way
      Boulder Creek, CA 95006
      (831) 703-4011
      Fax: (831) 533-5073
      nick@ranallolawoffice.com

## CERTIFICATE OF SERVICE

THE UNDERSIGNED HEREBY CERTIFIES that on this 22nd day of January, 2012, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system and served on all of those parties receiving notification through the CM/ECF system.

/s/           Nicholas R. Ranallo

Nicholas Ranallo, Attorney at Law