Brett L. Gibbs, Esq. (SBN 251000)
Of Counsel for Prenda Law Inc.
38 Miller Avenue, #263
Mill Valley, CA 94941
415-325-5900
blgibbs@wefightpiracy.com

*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| AF HOLDINGS LLC, | ) | No. 3:12-CV-02396-EMC |
| | ) | |
| Plaintiff, | ) | **PLAINTIFF AF HOLDINGS' SUPPLEMENT TO PLAINTIFF'S RESPONSE TO DEFENDANT JOE NAVASCA'S MOTION TO POST UNDERTAKING** |
| v. | ) | |
| | ) | |
| JOE NAVASCA, | ) | |
| | ) | |
| Defendant. | ) | |

## INTRODUCTION

On December 12, 2012, Defendant Joe Navasca ("Defendant") filed a Motion to Post Undertaking in the instant copyright infringement action. (ECF No. 22.) In his Motion, Defendant argued, *inter alia,* that he had a reasonable possibility of obtaining judgment in this action. *Id.* at 11. In due course, Plaintiff filed its response (ECF No. 34), and Defendant filed his Reply (ECF No. 37), with respect to the Motion to Post Undertaking. While Plaintiff already identified several flaws in Defendant's argument in its Response, new evidence has surfaced which greatly erodes the fundamental assertion upon which Defendant's Motion rests—namely, that he has a reasonable possibility of obtaining judgment in this action. This evidence was garnered from Plaintiff's Deposition of Joe Navasca (Navasca Dep.), taken on January 14, 2013. Having just received the transcript of the Deposition, Plaintiff wishes to bring to the Court's attention some troubling facts

established at the Deposition, facts which not only controvert Defendant's notion that he has a reasonable possibility of obtaining judgment, but likely warrant discovery sanctions, including, but not limited to, that of an adverse jury inference. With that inference, there is *no way* that Defendant can meet the standard for requesting a bond in this matter.

Defendant Navasca's own sworn deposition testimony unambiguously indicates the following: (1) Defendant has engaged in evidence spoliation with respect to his personal computer; (2) Defendant's attorney misrepresented to the Court that Defendant was aware of his obligation to preserve evidence; (3) Defendant exercises a high degree of control over the other computers in his household, and evidence has been spoliated from these other computers as well; (4) the Navasca household's Internet network was password protected; (5) Defendant has engaged in illegally downloading material off of the Internet. These facts, taken together, further contravene Defendant's assertion that he has a reasonable possibility of obtaining judgment in this action, and support Plaintiff's contention that Defendant is the most likely infringer of Plaintiff's copyright.

A true and correct copy of the excerpted portions of the transcript is attached hereto as Exhibit 1-1 A. (*See* Exhibit 1-1 A.) In addition, pursuant to the authentication requirement of Local Rule 7-5, Plaintiff has attached hereto the Declaration of Brett L. Gibbs, attesting to the fact that the excerpts attached hereto as Exhibit A are a true and correct copy of the excerpted portions. (*See* Declaration of Brett L. Gibbs.) Attached to the Declaration of Brett L. Gibbs is the Certificate of Reporter, wherein the Certified Shorthand Reporter who took the deposition, Karla K. Ellis-Davis, certifies that she took down the deposition in shorthand. (*See* Exhibit 1-2 A to Declaration of Brett L. Gibbs.)

## I. DEFENDANT HAD SPOLIATIVE COMPUTER CLEANING SOFTWARE INSTALLED ON HIS COMPUTER, AND CONTINUED USING THAT SOFTWARE, AS WELL AS OTHER DELETION TECHNIQUES, UP UNTIL THE DEPOSITION

During the Deposition, Plaintiff's counsel asked Defendant whether he had installed any

computer cleaning software on his computer.

    **Q.** Delete. Uninstall. Do you have any programs to
essentially clean the computer?
    **A.** Yes, I do.
    **Q.** What kind of programs?
    **A.** It's CCleaner.
    **Q.** CCleaner?
    **A.** "C" then "Cleaner," C-l-e-a-n-e-r.

(Navasca Dep. 35:7-35:13.) Plaintiff's counsel next sought to ascertain whether Defendant was aware of the purpose of CCleaner, and thus inquired as to the Defendant's understanding of the software's purpose.

    **Q.** Okay. And what does that do?
    **A.** It cleans your computer.
    **Q.** What do you mean by that?
    **A.** It deletes the program.
    **Q.** Deletes what?
    **A.** Or deletes whatever I uninstall.

(Navasca Dep. 35:14-35:19.) Following Defendant's alarming admission that he had been operating software on his computer that would spoliate evidence, Plaintiff's counsel next asked Defendant about the scope and duration of his use of this software on his computer.

    **Q.** Okay. So what do you have to do to clean something off your computer?
    **A.** I delete it. Then every once in a while I run the program to just clean everything out.
    **Q.** How often? You said every once in while. How often?
    **A.** Every week or so.
    **Q.** Okay.
    **A.** Once a week. Maybe twice a week. There's also time[s] where it does it automatically.
    **Q.** Is this something that came standard with your computer?
    **A.** No.

(Navasca Dep. 35:20-36:7.) Plaintiff's counsel next sought to establish how Defendant acquired the software, and to further establish Defendant's understanding of the nature of the software

1
2
3
4
5
6
7

    **Q.** So you downloaded it online?
    **A.** Yeah. It was through download.com.
    **Q.** Is that a free service?
    **A.** Yes, it is.
    **Q.** And so you use it about once a week. So you first
delete the video or whatever it is.
    **A.** Uh-huh.
    **Q.** And then you use this backup thing to clean it out
just to make sure there is nothing, no trace of it left.
    **A.** Yeah, so I can install new games or whatever space
on my computer.

8  (Navasca Dep. 36:8-36:18.) Plaintiff's counsel next sought to establish whether Defendant had used

9  any other software on his computer that would spoliate evidence therein.

10
11
12
13

    **Q.** Okay. You said that that was one of the things
that you used to clean your computer. What were others?
    **A.** There's the standard cleanup that's, you know, that
comes standard on the computer.
    **Q.** And do you know what that is called?
    **A.** I think it's like -- it's whatever the standard deletion is. I don't know the name.

14  (Navsca Dep. 36:19-36:25.) It is thus abundantly clear that Defendant used both CCleaner, as well as

15  some other software that came with his computer, in order to delete files from his computer.

16  Defendant indicated that he had frequently used the CCleaner software since the time of the

17  infringement.

18

19
20
21
22
23
24

    **Q.** How many times since January 12, 2012 would you
estimate that you've used this CCleaner or some sort of other
deletion cleanup method to clean your computer?
    **A.** Per month I usually do it at least twice. At least
twice a month. So from now through -- from January through
now, like 24, 24 times.
    **Q.** Okay. And have you ever used it to -- you said you
used it to clean out videos.
    **A.** Just like a general practice just cleaning out the computer.

25  (Navasca Dep. 37:1-37:10.) Most disturbingly, Defendant's spoliation of evidence was ongoing, and

26  most likely took place up until the Deposition itself.

27
28

    **Q.** And since -- well, when is the last time you
cleaned your computer using this CCleaner or standard deletion

4
SUPPLEMENT TO PLAINTIFF'S RESPONSE TO MOTION TO POST UNDERTAKING
No. 3:12-CV-02396-EMC

```
        cleaning?
        A. Like I said, it's time-based so after, you know,
        after maybe a week or so it will do it automatically.
        Q. So approximately when was the last time?
        A. Maybe last week.
```

(Navsca Dep. 38:6-38:12.) Defendant thus used CCleaner around twice each week, and continued to do so until, at the very least, a week before the Deposition, and possibly continued to use the software up until the deposition itself.

Defendant's further remarks regarding his understanding of what the CCleaner software does, in response to Plaintiff's counsel's questioning, demonstrates a clear disregard for his obligation to preserve evidence.

```
        Q. Okay. And taking through that process, you said
        you delete something first and then it comes out and
        automatically cleans things up. What does that mean? What are
        you -- is it focusing on certain things?
        A. No, it will overall clean the computer.
        Q. To clean for files?
        A. Internet files. Basically whatever it needs to be
        cleaned. I don't target anything to delete. It's just
        whatever deleted it just deletes it. I don't really know the
        process of what it does. It just cleans the computer.
        Q. The hard drive.
        A. Yeah, the hard drive
        Q. And in terms of this cleaning, do you direct it to,
        is it cleaning out only your trash essentially?
        A. Yes, it's just the trash.
        Q. Okay. But it's on a constant bases to do more than
        what the trash does essentially.
        A. Yeah.
        Q. And what -- do you understand what it does beyond
        just -- I mean, when you put something in the trash and you
        empty the trash --
        A. Just deletes it.
        Q. But then you do this other cleanup method to make
        sure everything, every component of it is deleted?
        A. That's what it does, yeah.
```

(Navsca Dep. 38:13-39:12.) Mr. Navasca thus made it clear that he knew CCleaner permanently deleted any trace of various data on his computer, and further made it clear that he continued to use

CCleaner up until, at the very least, a week before the deposition—despite his ongoing obligation to preserve evidence Defendant's conduct is, of course, a clear violation of his obligation to preserve evidence, and is demonstrably prejudicial to Defendant's case. As described below, however, Defendant's counsel also misrepresented to the Court that Defendant was aware of his obligation to preserve evidence in the first place.

## II. DEFENDANT'S COUNSEL MISREPRESENTED TO THE COURT DEFENDANT'S AWARENESS OF HIS OBLIGATION TO PRESERVE EVIDENCE

Plaintiff and Defendant jointly submitted two case management statements, on November 23, 2012 (ECF No. 19), and December 14, 2012 (ECF No. 31), respectively. (*See* ECF No. 19) (*See* ECF No. 31.) In ***both*** of these case management statements, under the heading "6. Evidence preservation", Defendant's counsel made the following, identical statement: "Mr. Navasca is aware of his obligation to preserve relevant evidence, including electronic evidence, and has every intention of complying with this obligation." (*See* ECF No. 19 at 6) (*See* ECF No. 31 at 10.) As described in Section I of the instant Supplement, Defendant's conduct does not demonstrate "every intention" of complying with this obligation; perhaps just as troublingly, however, Defendant made it clear that his attorney ***did not even inform him of his obligation***, directly contradicting the representation that Defendant's attorney made to the Court on two separate occasions regarding preservation of evidence.

In order to elicit Defendant's understanding of his obligation to preserve evidence, Plaintiff's counsel inquired into the same.

> **Q.** Okay. Okay. Did you know you are supposed to preserve all evidence on your computer?
> **A.** I didn't know.
> **Q.** Okay. So you're still cleaning as we speak generally. You still have that cleanup method.
> **A.** Yes. Yes.

6
SUPPLEMENT TO PLAINTIFF'S RESPONSE TO MOTION TO POST UNDERTAKING
No. 3:12-CV-02396-EMC

(Navasca Dep. 39:13-39:18) (Emphasis added.) Defendant had not been made aware of spoliation by anyone, and thus clearly had not been made aware of spoliation by his attorney.

> **Q.** Okay. Do you know what the term "spoliation" is?
> Spoliation.
> **A.** No…
> [BRIEF RECESS]…
> **Q.** You had this CCleaner installed on your computer.
> When was that installed?
> **A.** Probably like the first month I got the computer.
> **Q.** Okay. So almost right away, essentially three
> years or ago or so.
> **A.** Yeah.
> **Q.** And you've used it ever since?
> **A.** Uh-huh.
> **Q.** Okay. And going back to this situation, <u>did you
> ever know that you needed to preserve evidence</u> --
> **A.** <u>No.</u>
> **Q.** -- <u>on everything on your computer?</u>
> **A.** <u>No.</u>
> **Q.** <u>You were never told that by anybody?</u>
> **A.** <u>No.</u>

(Navasca Dep. 39:24-40:1; 40:11-40:25) (Emphasis added.) Plaintiff's counsel inquired, once again, into the degree to which Defendant had been informed by his attorney of his duty to preserve evidence.

> **Q.** Are you aware of this sentence that was put into a
> federal pleading, which says: "Mr. Navasca is aware of his
> obligation to preserve relevant evidence including electronic
> evidence and has every intention with complying with that
> obligation"?
> **A.** Yes.
> **Q.** Do you understand that –
> **A.** Yes.
> **Q.** -- what that means?
> **A.** Uh-huh.
> **Q.** Yet, there is still the CCleaning device on your
> computer.
> **A.** That's been there before anything ever happened.
> **Q.** No one ever told you not to?
> **A.** To?
> **Q.** To take that function off of your computer.
> **A.** That computer has been running -- that program has

7
SUPPLEMENT TO PLAINTIFF'S RESPONSE TO MOTION TO POST UNDERTAKING
No. 3:12-CV-02396-EMC

```
been running before --
Q. Again --
A. -- January 1st or --
Q. -- no one told you to stop doing that?
A. No.
Q. And you were still essentially erasing movies and
music since you received this complaint.
A. Yes.
```

(Navasca Dep. 76:19-77:18) (Emphasis added.) It is thus clear from Mr. Navasca's sworn testimony that his attorney did not inform his obligation to preserve evidence, that Mr. Navasca was not aware of his obligation to preserve evidence, and that Mr. Navasca's attorney *twice* misled the Court by erroneously asserting that Mr. Navasca was, in fact, aware of his duty to preserve evidence. (*See* ECF No. 19 at 6) (*See* ECF No. 31 at 10.) ("Mr. Navasca is aware of his obligation to preserve relevant evidence, including electronic evidence, and has every intention of complying with this obligation.")

Plaintiff's counsel pursued a modified version of this line of inquiry once more, on redirect, in order to establish the foregoing facts with certainty.

```
Q. On the redirect, again, you never
received any advice or you never -- take that back. No one
ever told you to take CCleaner off your computer.
A. No.
Q. No one ever told your dad to take CCleaner off his
computer.
A. No.
Q. To your knowledge no one took CCleaner off any of
the computers in the house.
A. That's been there for ...
Q. And the other devices, you said there was like
normal deletion devices, those devices are still active as
well.
A. Yeah.
Q. And no one ever instructed you not to.
A. No.
Q. And they are continually -- as you know they are
continually deleting things off your computer.
A. Whatever, you know, I delete, yeah.
Q. Okay. That's all I have. Thank you.
```

8

SUPPLEMENT TO PLAINTIFF'S RESPONSE TO MOTION TO POST UNDERTAKING
No. 3:12-CV-02396-EMC

(Navasca Dep. 97:3-97:22.) Plaintiff has alleged that Defendant committed a harm over the Internet. Without evidence from Defendant's computer, Plaintiff cannot establish its case. Defendant's conduct, as well as Defendant's counsel's misrepresentations, has severely prejudiced Plaintiff's ability to prove its case. As such, Plaintiff has submitted its Emergency Motion for Expedited Briefing and Hearing; and to Compel Production, in order to prevent further destruction of evidence, and to evaluate how it can proceed with this case in light of Defendant's destruction of evidence.

### III. DEFENDANT EXERTED SUFFICIENT CONTROL OVER OTHER COMPUTERS IN DEFENDANT'S HOUSEHOLD SUCH THAT HE MAY HAVE SPOLIATED EVIDENCE OF HIS CONDUCT FROM THESE OTHER COMPUTERS AS WELL

In his Deposition, Defendant testified that he installed the CCleaner software on each and every other computer in his household. His actions strongly suggest that he exercises a high degree of control over the other computers in his household.

> **Q.** You said there were five computers in house [h]old, right?
> **A.** Uh-huh.
> **Q.** Let's just attribute. So you have one.
> **A.** Uh-huh. My wife has one.
> **Q.** Okay.
> **A.** My mom has one. Father, which is central. Then my brother has one. That's five, right?
> **Q.** So you have one, your wife has one, and your mom has one, and your brother has one. That's four.
> **A.** Then my dad, which is central.
> **Q.** Your dad. That's the central one. Okay. So has Kevin -- does Kevin use the computer in your house?
> **A.** Yeah, he uses it.
> **Q.** What computer does he use?
> **A.** He uses the central, the one that my father uses.
> **Q.** You have on your computer, you have what you said -- described as a cleaning device called CCleaner. Did you install that on the main computer in the house?
> **A.** Yeah, that's also been there ever since, you know, we had the computer…
> **Q.** Did you remove that cleaning device for your father or for anyone else?

```
A. No.
Q. So as far as you know it still has the cleaning
device?
A. Yes.
Q. Does that go for every single computer in the
household?
A. Uh-huh…
Q. But you were the one who initially put them on.
A. Yes.
Q. And you did not uninstall them; is that correct?
A. No.
```

(Navasca. Dep. 45:17-46:13; 46:25-47:8; 47:20-47:23.) Though Plaintiff acknowledges that Defendant disavows control over the other computers in the household at other points during his deposition, his actions, as described above, contradict his disavowals. (*See*, e.g., Navasca Dep. 47:18-47:19) ("I mean, I don't inspect everyone's computer.") There is sufficient evidence contained in Defendant's testimony to support the assertion that Defendant engaged in evidence spoliation on these other, further computers particularly in light of the fact that Defendant has continued to run CCleaner on his computer, as well as these other computers, well after his obligation to preserve evidence was triggered. Given that all of these computers operate over the same network, it is possible that evidence of Defendant's conduct may exist on other computers in the household, though it may have been obliterated by virtue of Defendant's conduct.

### IV. THE NAVASCAS' INTERNET CONNECTION WAS PASSWORD PROTECTED

During the Deposition, Plaintiff's counsel elicited testimony from Defendant indicating that the Internet connection in the Navasca household was password protected.

```
Q. Okay. And in your house, you said you have
Internet service or you had Internet service on January 12,
2012?
A. Yes.
Q. Where -- was it wireless service?
A. Yes, it's a wireless service.
Q. Okay. Did you have a password on that?
A. Yes. It was -- I don't know, do you need me to
give the password or ... it was a password with my mom's birth date.
```

(Navasca Dep. 14:12-14:21.) This makes virtually impossible Defendant's contention in his Motion to Post Undertaking that some unauthorized interloper used the Navascas' Internet account to infringe upon Plaintiff's copyright, and thus invalidates one of the foundations of his assertion that he has a reasonable possibility of judgment in the instant action. (*See* ECF No. 22.)

### V. DEFENDANT HAS ENGAGED IN ILLEGALLY DOWNLOADING MATERIAL FROM OFF OF THE INTERNET

Defendant Navasca, in his Deposition testimony, indicated that he has illegally downloaded songs and videos from off of the Internet.

```
Q. Okay. In terms of songs, have you ever downloaded
a song without paying for it?
A. Yes.
Q. Okay. And describe the circumstances.
A. There's a Firefox, I guess, add-on where you could
get free songs off the Internet.
Q. Okay. It's your understanding this is legal?
A. The program is an add-on so I just use it.
Q. And in terms of your general use of Internet, have
you ever unlawfully downloaded a song before?
A. Yes.
Q. And can you describe that?
A. I go through YouTube. Then the Firefox program
will translate into an MP3.
Q. Okay. And you are downloading songs without the
right to that song, without access, without granted the rights
to download it.
A. Yes.
Q. Do you see any issues with that?
A. It's on YouTube so I just download it from you know
the YouTube website.
Q. What about videos? Same situation?
A. Yeah, there is the videos, music videos.
Q. Okay. Aside from music videos -- so you have done
that with music videos before.
A. Yes.
Q. Okay. So you've downloaded music videos
unlawfully.
A. From YouTube.
Q. Is that a yes or no?
A. Yes.
```

(Navasca Dep. 27:22-29:2) (Emphasis added.) Though Defendant does not further admit to having downloaded the copyrighted work at issue, the simple fact is that he is not being sued for his other instances of illegal downloading. As such, Defendant has a much higher incentive to conceal his illegal download of Plaintiff's copyrighted work than he would have to conceal his illegal download of the other material he described.

### VI. DEFENDANT IS THE MOST LIKELY INFRINGER OF PLAINTIFF'S COPYRIGHT

While Plaintiff acknowledges that it is arguable whether the testimony of Defendant which is set forth herein conclusively proves that Defendant infringed upon Plaintiff's copyright, the instant Motion that Plaintiff opposes is one for Security. As such, Plaintiff finds it sufficient to assert that the evidence presented herein undoubtedly ensures that Defendant cannot carry his burden of proving that he has a reasonable possibility of obtaining judgment in the instant action. The fact that the Navascas' Internet network was password protected means that it was almost certainly someone in the household who infringed upon Plaintiff's copyright. Though Defendant does assert in his deposition that the Navascas give out their household Internet password to visitors, Defendant also asserts that these visitors make their use of the Internet in the common area, which comports with common sense (Navasca Dep. 54:15-55:3)—and, further, this makes it unlikely that the visitors were downloading and consuming pornography in that area. Thus, there is an extremely high degree of certainty supporting the assertion that one of the members of the Navasca household committed the infringement. In addition to the foregoing evidence, two further facts which make Joe Navasca the most likely infringer in the household are that (1) Mr. Navasca works in technical support at a gaming company (Navasca Dep. 7:23-7:25; 8:11-8:16); (2) Mr. Navasca asserts that he is "the most knowledgeable person in his household about computers" (Navasca Dep. 17:21-17:23.) All of the evidence contained herein—particularly his prior acts of illegal downloading and his spoliation of

evidence—taken together, and juxtaposed against Defendant's bare declaration of non-liability (*See* ECF No. 22 at 21) ("Defendant herein has not committed copyright infringement"), suggest that Defendant cannot carry his burden of proving that he has a reasonable possibility of judgment in the instant action. As such, Defendant's Motion to Post Undertaking should be denied.

## CONCLUSION

For the (further) reasons contained herein, Defendant's Motion to Post Undertaking should be denied.

Respectfully Submitted,

DATED: January 22, 2013

By: /s/ Brett L. Gibbs, Esq.

Brett L. Gibbs, Esq. (SBN 251000)
Of Counsel to Prenda Law Inc.
38 Miller Avenue, #263
Mill Valley, CA 94941
415-325-5900
blgibbs@wefightpiracy.com

*Attorney for Plaintiff*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 22, 2013, all individuals of record who are deemed to have consented to electronic service are being served a true and correct copy of the foregoing document, and all attachments and related documents, using the Court's ECF system, in compliance with Local Rule 5-6 and General Order 45.

/s/ Brett L. Gibbs