January 29, 2013

The Honorable Nandor J. Vadas
Eureka Courthouse - 205A, 2nd floor
514 H Street, Eureka, CA 95501

Brett L. Gibbs
38 Miller Avenue, #263
Mill Valley
California, 94941
P: 415.325.5900
blgibbs@wefightpiracy.com

<u>*Via ECF*</u>

Re:    *AF Holdings v. Joe Navasca*, No. 3:12-cv-02396-EMC
       *Letter Brief Re: Discovery Dispute*

**TO THE HONORABLE COURT AND ALL PARTIES OF RECORD:**

In response to the Court's January 23, 2013 Order (ECF No. 44 ¶ 3), Plaintiff now files the instant letter brief to address certain outstanding issues that the parties were not able to resolve through their meet and confer.

## BACKGROUND

On January 14, 2013, Plaintiff deposed Defendant Joe Navasca. During the deposition, Defendant made several troubling admissions strongly suggesting that he had engaged in spoliation of evidence, and that, furthermore, Defendant's attorney had repeatedly misrepresented to the Court that Defendant had been aware of his obligation to preserve evidence. (*See*, generally, ECF No. 38, Plaintiff's Emergency Motion to Compel Production.) The Court, in its Order addressing Plaintiff's Emergency motion, recognized that spoliation is a relevant issue in this case. (*See* ECF No. 44 ¶ 4.) Though the parties have resolved several of their discovery disputes, there are outstanding matters which require the Court's guidance.

## POINTS OF AGREEMENT

The parties have agreed that Defendant's hard drive will be forensically imaged by a mutually agreed-upon provider, and that the parties will equally bear the costs for this imaging—Defendant's counsel has indicated that Defendant has two hard drives, and Plaintiff thus assumes that both of these hard drives will be submitted for imaging.

## POINTS AT ISSUE

(1) NUMBER OF COPIES OF DEFENDANT'S HARD DRIVES: The mutually-agreed upon forensic imaging company has strongly suggested that two copies of each of Defendant's hard drives be made so that one sealed copy can be preserved for further Court proceedings. The purpose of this sealed copy being sealed/preserved is that an untouched copy can be used to verify allegations of tampering by either side. Defendant has refused to agree to this second copy of his hard drives being made.

(2) SCOPE OF INSPECTION OF DEFENDANT'S HARD DRIVE: Defendant contends that Plaintiff's inspection of the forensic image of Defendant's hard drives should be

limited to certain agreed-upon keywords, while Plaintiff contends that Plaintiff's inspection of the forensic image of Defendant's hard drive should only be limited by exclusion of documents that are subject to attorney-client privilege—with such documents being enumerated within a privilege log.

(3) THE OTHER COMPUTERS IN DEFENDANT'S HOUSEHOLD: Defendant has declined consent to forensic imaging of the hard drives of the other computers in Defendant's household. Plaintiff has requested such.

(4) ALLOCATION OF STORAGE COSTS: Defendant contends that Plaintiff should fully bear the cost of storing the imaged hard drives while these pending disputes are brought before the Court and resolved, while Plaintiff contends that Defendant should bear these costs, or that, at the very least, the costs should be borne equally.

(5) INSPECTOR: Plaintiff contends that the hard drives to be inspected should be submitted to a technical expert of Plaintiff's choosing. Plaintiff further suggests that Defendant retain his own expert to undertake an analysis of the hard drive. Defendant has rejected this proposal.

## PLAINTIFF'S STANCE ON EACH DISPUTE

I. NUMBER OF COPIES OF DEFENDANT'S HARD DRIVES

As previously mentioned, the forensic imaging specialist, mutually agreed-upon by Plaintiff and Defendant, strongly suggested that two copies be made of Defendant's hard drive. The purpose of this sealed copy being sealed/preserved is that an untouched copy can be used to verify allegations of tampering by either side. Defendant has refused to agree to this second copy of his hard drives being made. The basis of Defendant's reluctance to do so is unclear, but Plaintiff nevertheless contends that preservation of a sealed copy of the hard drive would be a reasonable protective measure in the context of the instant action—where spoliation by Defendant has been raised an issue.

II. SCOPE OF INSPECTION OF DEFENDANT'S HARD DRIVE

As previously mentioned, Defendant contends that Plaintiff's inspection of Defendant's hard drive image should only be limited to certain agreed-upon keywords, while Plaintiff contends that its inspection should only be limited by exclusion of documents that are subject to attorney-client privilege—with such documents being enumerated within a privilege log.
As the Southern District of California noted in *Playboy Enterprises, Inc. v. Welles,* "[t]he only restriction in this discovery [of electronically stored data] is that the producing party be protected against undue burden and expense and/or invasion of privileged matter." *Playboy Enterprises, Inc. v. Welles,* 60 F. Supp. 2d. 1050, 1053-1054 (S.D. Cal. 1999.) The Court goes on to assert that "[i]n determining whether a request for discovery will be unduly burdensome to the responding party, the court weighs the benefit and burden of the discovery." *Id* at 1054. In enumerating the factors to be balanced, the Court asserted that "[t]his balance requires a court to consider [1] the needs of the case, [2] the amount in controversy, [3] the

importance of the issues at stake, [4] the potential for finding relevant material and [5] the importance of the proposed discovery in resolving the issues." *Id.*

### A. A KEYWORD-RESTRICTED SEARCH WOULD NOT ADDRESS THE NEEDS OF THIS CASE

Defendant herein is alleged to have engaged in copyright infringement over the Internet. Unlike many other civil actions in which Electronically Stored Information ("ESI") is only tangentially relevant, the alleged conduct on which the instant action is based took place entirely on a computer. Take, for example, a typical employment discrimination lawsuit. In such lawsuits, an allegedly aggrieved party will sue his or her former employer for workplace discrimination. The propriety of keyword-based discovery in such situations is readily apparent: there was some external conduct which took place, and the aggrieved party can reasonably be expected to come up with keywords (e.g. the name or purported derogatory nicknames of the aggrieved party; racial slurs or innuendo) to narrow the scope of inquiry. The scene of the (civil) crime in this hypothetical is the workplace, and ESI plays the role of potentially providing evidence which corroborates the external conduct. In the instant action, however, the scene of the (civil) crime is a computer. It is, quite simply, not possible to compile a list of keywords to search for the type of evidence that would prove that (1) Defendant committed copyright infringement; or (2) Defendant deleted evidence of his having committed copyright infringement. Rather, evidence that would tend to prove (or disprove) these assertions can only be found by an exhaustive search of the hard drive. An analogous situation would be if one sought to investigate a murder which took place inside of a warehouse, but a security guard standing at the door indicated that only he could go inside, and only those items which are specifically named by the investigator can be removed by the security guard. Without having examined the warehouse, our hypothetical investigator would be engaged in a futile guessing game. The matter is even more complex in the instant action: Defendant could simply have taken the proverbial knife existing in his computer and called it a "fork." (e.g., if Plaintiff's copyrighted work is now on Defendant's hard drive, Defendant could simply have renamed the file at some point.) In addition, Defendant may have simply disposed of the body (e.g., deleted Plaintiff's copyrighted work from the computer.) Without being granted full access to the warehouse (e.g. computer), it is simply impossible to articulate *ex ante* a functional list of keywords. On the other hand, if Plaintiff is granted access to the warehouse, Plaintiff can examine it for evidence that a knife was once there (e.g. the outline of a knife in a pool of blood, or, in the instant action, a registry file indicating that BitTorrent was once installed on the computer). With respect to attorney-client privilege, however, Plaintiff is open to Defendant first taking possession of the hard drive image in order to remove any data protected by attorney-client privilege, subject to the limitation that this data be enumerated within a privilege log.

### B. THE AMOUNT IN CONTROVERSY IS $150,000

If Defendant has acted as alleged, Plaintiff would be entitled to up to $150,000 in statutory damages, the statutory maximum set forth by 17 U.S.C § 504. *See* 17 U.S.C. § 504. By any objective measure, the amount in controversy is quite high, doubling, for example, the $75,001 minimum set forth for federal diversity jurisdiction. *See* 28 U.S.C. § 1332. The stakes

are thus quite high for both Plaintiff and Defendant, further necessitating the examination of Defendant's hard drive proposed above.

### C. THE IMPORTANCE OF THE ISSUES AT STAKE

Outside of an admission by Defendant, or one of his confidants, of Defendant's liability in the instant action, all of the evidence that would prove or disprove the assertions that (1) Defendant committed copyright infringement; or (2) Defendant deleted evidence of his having committed copyright infringement can be found on a computer. Unlike other civil actions involving ESI, the entirety of this case rests upon data on a computer. A computer was the scene of this (civil) crime, and only a full examination of the hard drive in question (subject to the aforementioned privilege log) can allow Plaintiff to ascertain the degree to which Defendant spoliated evidence of his copyright infringement, the degree to which the computer contains evidence of the copyright infringement itself, and, possibly, the degree to which the computer contains evidence that exculpates him. The entire progression of this suit, with respect to both Plaintiff and Defendant, will thus be shaped by whether Plaintiff is allowed to properly examine what has actually taken place on the computer. The issues at stake become even more important given the fact that Defendant spoliated evidence; how can Plaintiff formulate keywords for evidence that may no longer exist on the computer?

### D. HIGH LIKELIHOOD OF DISCOVERING RELEVANT MATERIAL

As previously mentioned, the instant action is somewhat distinct from most cases involving ESI. In this action, the computer itself is the scene of the (civil) crime. Unlike other cases involving ESI, virtually all of the relevant material is contained on a computer. Furthermore, all of the evidence of Defendant's having spoliated evidence is also contained on a computer. The computer is, in essence, a black box of these activities, and Plaintiff, upon examining the black box, will certainly find material that tends to prove or disprove the assertions that (1) Defendant committed copyright infringement; or (2) Defendant deleted evidence of his having committed copyright infringement.

### E. HIGH DEGREE OF IMPORTANCE FOR RESOLVING ISSUES

Defendant has submitted a sworn declaration averring that he did not commit copyright infringement. (*See* ECF No. 24 ¶ 2, Declaration of Joe Navasca.) However, Defendant's counsel has also *twice* submitted statements to the Court assuring the Court that his client was aware of his obligation to preserve evidence, and was complying with that obligation. (*See* ECF No. 19 at 6) (*See* ECF No. 31 at 9.) As described in Plaintiff's Emergency Motion to Compel, Defendant not only repeatedly asserted that no one had made him aware of his obligation to preserve evidence, but also engaged in conduct—including the use of CCleaner—that constituted spoliation of evidence. (*See*, generally, ECF No. 38, Plaintiff's Emergency Motion to Compel.) The issue of the degree of spoliation that has occurred and the issue of what evidence remains of Defendant's having committed copyright infringement can both be resolved by full examination of the computer—subject to attorney-client privilege.

///

### III. THE OTHER COMPUTERS IN DEFENDANT'S HOUSEHOLD

Plaintiff should be allowed to examine the other computers in Defendant's household for at least three reasons. First, it is apparent that Defendant has exercised a high degree of control over the other computers in Defendant's household. For example, Defendant installed the CCleaner software on each and every other computer in Defendant's household. (*See* ECF No. 42 at 8-9.) Second, since all of the computers in the household are connected to the same Internet network, evidence that may have been spoliated on Defendant's own computer may still be present on another computer. For example, shared folders containing Plaintiff's copyrighted work may exist on other computers in Defendant's household even though they do not still exist on Defendant's own computer. Third, evidence implicating another member of the household, and exculpating Defendant, could be found on one of the other computers. The simple fact is that the six individuals residing in the Navasca household are, with little exception, the only people that have access to the household Internet connection. (*See* ECF No. 43-1 at 10-11) (Defendant admits that the household Internet connection was password protected.) The fact that these computers jointly access a common network means that valuable evidence regarding how the network is used may be found on one of the computers even though it may be despoiled from Defendant's.

### IV. ALLOCATION OF STORAGE COSTS

Defendant contends that Plaintiff should fully bear the cost of storing the imaged hard drives while these pending disputes are brought before the Court and resolved, while Plaintiff contends that Defendant should bear these costs, or that, at the very least, the costs should be borne equally. Where, as here, spoliative misconduct on the part of Defendant and his attorney have necessitated the litigation of many of the issues contained herein, Plaintiff contends that it is reasonable to allocate at least half, if not all, of the costs of storage while the disputes in question are resolved.

### V. WHO SHOULD INSPECT

Plaintiff contends that the hard drives to be inspected should be submitted to a technical expert of Plaintiff's choosing. Plaintiff further suggests that Defendant retain his own expert to undertake an analysis of the hard drive. Defendant has rejected this proposal.

### CONCLUSION

For the reasons contained herein, the outstanding discovery disputes should be resolved as set forth above.

Sincerely,

Brett L. Gibbs, Esq.,