January 29, 2013

<u>**VIA ECF FILING, WITH COURTESY COPY VIA REGULAR MAIL**</u>

Honorable Judge Nandor J. Vadas

Eureka Courthouse – 205A, 2nd Floor

514 H Street, Eureka, CA 95501

      Re:    Case No 3:12-cv-02396

            Defendant's Letter re: Discovery Matter in Accordance with January 23, 2013 ORDER

Honorable Judge Vadas,

    In accordance with this Court's standing order on discovery disputes and this court's specific order of January 23, 2013, Defendant Joe Navasca's Lead Counsel hereby submits the following letter brief. This brief will summarize the discovery issues presently in dispute with regards to Plaintiff's Emergency Motion to Compel and all associated filings, including the January 23, 2013 Order of this Court.

## Background

    This case involves allegations of copyright infringement. Specifically, Plaintiff alleges that a particular file was downloaded by the defendant, via a particular piece of software named "UTorrent," on January 12, 2012. The defendant has repeatedly denied ever downloading the video, and has likewise denied ever having the UTorrent client installed on his computer – making it impossible for him to have downloaded the work via this machine.

    The instant discovery dispute ultimately centers around a particular bit of software that the defendant had running on his computer – C-Cleaner. Plaintiff alleges, without any support other than an "EHow.com" user submission, that using C-Cleaner is "proof" that Defendant was destroying evidence. This allegation, according to Plaintiff, is justification for discarding the federal rules and reasonable privacy and privilege protections. Plaintiff, however, mischaracterizes the nature of this program, and the nature of the alleged "spoliation." As described in the annexed declaration of a Certified Computer Examiner, C-Cleaner's default functions (the only ones used by Defendant) do not permanently delete data, and only affect data that the average user does not

even know exists. See Goodman Declaration, attached hereto as Exhibit A, described further below.

On January 15, 2013, Plaintiff demanded via email that the defendant, and all other individuals in his home, bring their computer's to Mr. Gibbs office within 24 hours. A copy of this demand is annexed hereto as Exhibit B. In response, Mr. Navasca noted that he had no general objection to some sort of hard drive inspection, but that he required procedural safeguards in place to protect privilege and privacy. Plaintiff refused, and extended its unsupported deadline by 24 hours and then filed an "Emergency Motion to Compel," despite the fact that they have not even requested any documents or inspection in accordance with the federal rules. On January 23, 2013, this court ordered the parties to meet and confer regarding the essential issues.

At the meet and confer on January 24th, Plaintiff and defense counsels agreed to split the cost for a "mirror" copy of the defendant's hard drive to be conducted by a third party. Late Friday afternoon, Mr. Gibbs identified two prospective companies that could conduct the mirroring. At approximately noon on Monday, Defendant's counsel notified Mr. Gibbs that he had selected one of the two, and that a "mirror imaging" of the machine would happen shortly. Mr. Gibbs nonetheless insisted on filing the instant letter brief, five minutes after sending his first discovery requests in this matter.

### Defendant's Position on Disputed Issues

**1.     There Is No Reason to Discard the Federal Rules or the Northern District's Local Guidelines**

All of Plaintiff's "demands" described above have been made without ever actually making a discovery request under the Federal Rules. Plaintiff has simply demanded that all of the computers in the house be turned over to a law office, without any indication of who would inspect them or what they would be looking for, without regard to ownership of the machines or any protections designed to protect privacy or privilege. Defendant has identified the Northern District's Model Protective Order as a basis for any such inspection in this case, but Plaintiff is unwilling to agree to key provisions, as described below. Moreover, as described immediately below, the reason for these extreme demands is an unsupported allegation of spoliation.

**2. Plaintiff's Allegations Regarding C-Cleaner are Factually Unsupported and Incorrect**

Plaintiff's extreme demands are based on the premise that, since Defendant had the C-Cleaner program on his computer, that undifferentiated inspection of the entire hard drive by an unidentified individual is warranted, without regard to concerns for privilege, privacy, or particularity of request. Plaintiff mischaracterizes the nature of the program, however, and the ways that it has been used. As an initial matter, Mr. Navasca stated that he installed the program on his computer at or near the time of purchase – years prior to the instant suit. Moreover, this program is *extremely* common, and has been downloaded *over one billion times* in its eight years of existence.[1]

As supposed "proof" of its spoliation allegations, Plaintiff has only ever cited to a single "EHow.com" user submitted response, which indicates that C-Cleaner could be used to remove a BitTorrent client. Plaintiff makes no allegation that it was used for such a purpose in the instant case, and Mr. Navasca has, in fact, testified that he has never had UTorrent installed on his computer at any time. Plaintiff's scant proof shrivels further when compared to the opinion of an actual Certified Computer Examiner, given under penalty of perjury in a federal civil matter. Annexed hereto as Exhibit A is the declaration of Allison Goodman, filed in connection with a case in the Western District of Washington. Ms Goodman discusses exactly the program at issue herein, and makes the following relevant observations regarding the program:

9.  CCleaner is **not** a "wiping program" and is not designed to "permanently remove information from a computer." By default, CCleaner removes temporary internet files and other system files.

10. ...For the most part, these are files that the average user does not even know exist and cannot even be viewed by most users. **None of the files CCleaner deletes would be within the scope of discovery requests or be considered 'reasonably accessible' under FRCP 26.**

24. The mere existence of a program such as CCleaner is not sufficient to support an allegation that a party has engaged in inappropriate conduct or deliberately attempted to destroy information. I have examined hundreds of hard drives and many of those contained the CCleaner program...it can be considered a useful program.

25. ...I have worked on many other cases where different programs were used to eliminate data – programs specifically designed for this purpose such as "Evidence Eliminator". Unlike CCleaner, Evidence Eliminator wipes the free space of the hard drive by default. **And in all such cases, the programs had been uninstalled before I imaged the hard drive for examination."**

---

[1] http://www.piriform.com/blog/2012/12/10/1-billion-downloads, last accessed on January 22, 2013.

See Exhibit A, hereto. This court is urged to read Ms. Goodman's description of C-Cleaner in full, and bear in mind that this is the entire basis, according to Plaintiff, for discarding any normal protections that the Federal Rules and standard e-discovery protocol afford a civil party.

### 3. Defendant Requests That Any Inspection Be Done by a Disinterested, Qualified (and Identified) Individual

Defendant is not opposed to an examination of his hard drive under appropriate circumstances. One key area of dispute concerns just who should conduct any forensic examination of his hard drive. Plaintiff has not identified any qualified individual that would conduct the investigation, and will not agree that any inspection be conducted by an individual that is acceptable to both sides (for example, the vendor chosen to create the image). The sole individual that Plaintiff has identified as "possibly" conducting the investigation is Peter Hansmeier, an individual with familial ties to Prenda Law and its predecessor in interest, Steele Hansmeier and financial ties to the instant litigation. Plaintiff's counsel has thus far refused to indicate what qualifications, if any, Mr. Hansmeier has to conduct such an investigation or whether he has ever conducted such an investigation in the past. Defendant is obviously concerned about turning over an undifferentiated hard drive containing information about all of his life, for an unknown and potentially unqualified individual with an interest in the litigation.

### 4. Necessity of Keyword Search or Other Search Protocol

The Northern District of California's ESI Guidelines require the parties to discuss, inter alia, "Search and production of ESI, **such as any planned methods to identify discoverable ESI and filter out ESI that is not subject to discovery**." Northern District ESI Guideline 2.02 The Model E-Discovery Stipulation for this district likewise requires that the parties agree on methods to filter out ESI that is not subject to discovery.

Plaintiff herein has refused to even approach a discussion of this issue, except to say that there should be no provision in place to identify discoverable ESI and filter out ESI that is not subject to discovery. Plaintiff's letter brief is the first time that they have expressed a willingness to allow *any protection* for even attorney-client privilege, and their suggestion is inadequate and impractical, and highlights the problems with Plaintiff's proposed boundless investigation. There is no practical way to, as Plaintiff suggests, take possession of an entire hard drive and "remove" only that which is privileged, especially when privileged communications may be found in the free space

on the hard drive, etc. In contrast, if Plaintiff were to conduct a search based on identified keywords, that resulted in identified results, the responsive documents could be reviewed for privilege. Moreover, Plaintiff has offered no explanation for why it cannot conduct a keyword search, beyond an inappropriate comparison to murder. Indeed, Plaintiff knows that it is looking for a particular file, downloaded via a particular medium. It is no great challenge to create a series of keywords based on these items (and/or temporal proximity to the date of the infringement) and conduct a search of both the active and the free space of the hard drive based on these queries. This has the benefit of being repeatable, and sufficiently limited to filter out ESI that is not subject to discovery.

5.      **Plaintiff's Demands on Non-Parties**

Defendant does not own all of the computers in the household, and thus cannot agree to produce the machines belonging to third parties. Defendant has expressed a willingness to seek such consent, if Plaintiff is willing to bear the cost of the third party discovery, as is appropriate. Without consent, however, Defendant cannot simply take machines belonging to other people and deliver them for inspection. Indeed, many if not all e-discovery vendors require a certification that the owner has given permission for inspection, or that a court has ordered it. Plaintiff is, of course, free to issue subpoenas under Rule 45 to any non-parties from whom it seeks discovery.

6.      **Copies of Hard Drives and Storage Costs**

Defendant has no objection to creating a second mirror image of the hard drive in the event of inspection. Defendant does believe, however, that Plaintiff should bear the cost of any second copy made explicitly for the purpose of Plaintiff's examination (and that Plaintiff should likewise pay the cost of examination). Defendant does not believe there is an issue with storage costs for the hard drive at this point, as the chosen vendor has agreed to hold it without cost for the time being.


Respectfully submitted,


__/s/_Nicholas Ranallo____

Attorney for Defendant Joe Navasca