Nicholas Ranallo, Attorney at Law #275016
371 Dogwood Way
Boulder Creek, CA 95006
Telephone No.: (831) 703 - 4011
Fax No.: (831) 533-5073
Email: nick@ranallolawoffice.com
Attorney for Defendant Joe Navasca

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AF HOLDINGS, LLC.,<br><br>    Plaintiff,<br><br>v.<br><br>JOE NAVASCA<br><br>    Defendants. | Case No. 3:12-cv-02396-EMC<br><br>**DEFENDANT'S RESPONSE TO AF HOLDINGS' MOTION TO DISMISS VOLUNTARILY**<br><br>Judge: Honorable Edward Chen<br>March 28, 2013 at 1:30 p.m. |

# TABLE OF CONTENTS

I. INTRODUCTION – EXIT THROUGH THE BACK DOOR......................................2

    A. Procedural History of the Instant Matter......................................................2

    B. Recent Developments With AF Holdings..................................................4

        1. February 7 & 8, 2013: The Collapse Begins...............................4

        2. February 19, 2013: AF Holdings and Brett Gibbs Tell Two Stories in One Day.................................................................5

        3. "Owner" Salt Marsh and Admittedly False Certifications.........................7

II. LEGAL STANDARD...................................................................................8

III. ARGUMENT

    A. Plaintiff's Stated Rationale for Dismissal is Pure Pretext......................................9

        1. AF Holdings Cannot Appeal Following Voluntary Dismissal.........................9

        2. Defeat of AF Holdings' Action is Imminent......................................10

            a. Refusal to Post Required Undertaking...................................11

            b. Lack of Standing and Fraud Upon the Court.......................................11

    B. An Award of Costs and Attorney Fees us Necessary to Compensate the Defendant and to Deter Vexatious Litigation.........................................................13

    C. Defendant Has Incurred $20,754 in Reasonable Fees and Costs..........................14

IV. CONCLUSION................................................................................16

# TABLE OF AUTHORITIES

**CASES**

*AF Holdings v. Magsumbol,* 2013 U.S. DIST. LEXIS 25572 (February 25, 2013)…………..…10

*AF Holdings v. Trevor Noordman,* 2:12-cv-01657-GEB (Docket Nos. 30 & 32) (E.D. Cal.)........5

*AF Holdings v. Trinh,* 2013 WL 677564 (N.D. Cal. February 25, 2013)…………………………..11

*Blanchard v. Bergeron,* 489 U.S. 87, 93-94 (1989)……………………………………………...15

*Citizens Against Longwall Min. v. Colt LLC, IEC,* 2008 WL 1335609 (C.D. Ill. 2008)……...…9

*Danneberg v. Software Toolworks, Inc.,* 16 F.3d 1073 (9th Cir. 1994)……………..............…10

*Eaddy v. Little,* 234 F.Supp. 377 (S.Car. 1964)……........................…………………….9

*Fletcher v. Gagosian,* 604 F.2d 637 (9th Cir. 1979)……………………………..…………10

*HPL Technologies, Inc. Securities Litigation,* 366 F.Supp.2d 912 (N.D. Cal. 2005)……………15

*Mayes v. Fujimoto,* 181 F.R.D. 453 (Hawaii, 1998), affirmed 173 F.3d 861 (9th Cir. 1999)..........8

*McCall-Bey v. Franzen,* 777 F.2d 1178 (7th Cir. 1985)…………............................………9

*Porter v. ABB Power T&D, Inc.,* 2008 WL 2437940, *2 (W.D. Mo. 2008)………..........………..8

*Radiant Technology Corp. v. Electrovert USA Corp.,* 122 F.R.D. 201 (N.D. Tex. 1988)..........…11

*Sandusky v. National Dairy Prods. Corp.,* 184 F. Supp. 68 (E.D. Penn. 1960)………...............…8

*Siek v. American Airlines, Inc.,* 2002 WL 2018833 (S.D. Fla. 2002)………........................….9

*Taragan v. Eli Lilly & Co.,* 838 F.2d 1337 (D.C. Cir. 1988)……..........................…………………9

*Tikkanen v. Citibank (South Dakota) N.A.,* 801 F.Supp. 270 (D. Minn. 1992)……………......11

*United States v. $186,416 in US Currency* 642 F.3d 753, (9th Cir. April 26, 2011)…………….15

*Westlands Water Dist. V. U.S.,* 100 F.3d 94 (9th Cir. 1996)………..........................………..8

*Yahoo!, Inc. v. Net Games, Inc.* 329 F.Supp.2d 1179, 1186 (N.D. Cal. 2004)…………………..15

**STATUTES**

17 U.S.C. §505…………………………........……………………………………………2, 16

Federal Rule of Civil Procedure 41(a)(2)………………………………………………….2, 8

**SECONDARY MATERIALS**

4B Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 2366 (3d ed. 2002)..................................................................................................................8

## I. INTRODUCTION – EXIT THROUGH THE BACK DOOR

On February 21, 2013 AF Holdings filed a Motion to Voluntarily Dismiss the Defendant following a flurry of filings and AF Holdings' 30(b)(6) deposition. AF Holdings' offers a reason for this dismissal – that it is necessary for AF Holdings to seek appeal of the Court's decision regarding an undertaking. This rationale is nothing more than pretext. As described in detail below, Plaintiff's motion is actually a last-ditch attempt to avoid an adverse judgment on the merits, including costs and attorney fees under 17 U.S.C. §505. AF Holdings appears to be in the process of complete collapse, and is seemingly unable to establish its own standing to maintain this action or the authenticity of the Alan Cooper assignment, to say nothing of its inability to demonstrate that Joe Navasca actually downloaded the work in question.

For the reasons discussed below, Defendant respectfully requests that this court exercise its authority under Federal Rule of Civil Procedure 41(a)(2) and require AF Holdings to pay the reasonable costs and attorney fees that the defendant has been forced to incur in this suit as a condition of dismissal. In addition, given the questions remaining regarding "Salt Marsh," Defendant likewise requests that Plaintiff be required to produce the concurrence of Salt Marsh in the filing of ECF No. 8, as outlined in Local Rule 5-1(i)(3).

### A. PROCEDURAL HISTORY OF THE INSTANT MATTER

AF Holdings filed the instant action on May 10, 2012, against a single "John Doe" defendant. Upon learning that the ISP subscriber was Jovino Navasca, AF Holdings began sending letters and making phone calls to the subscriber, threatening "long and expensive litigation" if Jovino did not succumb to Plaintiff's demands. See ECF No 25-1 at pg. 3. After Jovino failed to respond to these threats, AF Holdings turned their attention to the instant defendant, Joe Navasca. Based on various unsupported assumptions, AF Holdings decided to amend the complaint on October 16, 2012, to identify Joe Navasca as the infringer of its copyright. On November 29, 2012, Joe Navasca filed an answer denying each of the substantive allegations of Plaintiff's complaint. On November 30, 2012, at the Initial Case Management

Conference, counsel for defendant brought certain facts regarding Alan Cooper and the assignment in this case to the attention of AF Holdings and the Court. This Court ordered the parties to meet and confer on the issue of Plaintiff's standing and the validity of the assignment in this matter. See ECF No 21.

Plaintiff was unwilling or unable to offer any substantive proof to refute Mr. Cooper's allegations, or support its own standing. This failure is a recurring theme throughout this case, and AF Holdings' cases throughout the state. Further, in its initial disclosures, served on December 3, 2012 and supplemented on January 2, 2013, AF Holdings identified Mark Lutz as the only individual with knowledge of the assignment in the instant case. AF Holdings Rule 26 Disclosures are annexed hereto collectively as Exhibit A. As described further below, AF Holdings would later state that only John Steele would be able to testify to the authenticity of the assignment in this matter, and he is seemingly unwilling to do so.

On December 12, 2012, Joe Navasca filed a motion requesting that this court require a non-resident undertaking, based on the objective weakness of Plaintiff's evidence and further questions regarding AF Holdings' standing to maintain the instant suit. Plaintiff again offered no evidence to refute the Cooper Affidavit or the other fundamental allegations at issue. As a result, this court ordered AF Holdings to post an undertaking in the amount of $50,000 to cover prospective costs and attorney fees. See ECF No. 51. Notably, this court explicitly gave Plaintiff the option to seek reconsideration and put forth further evidence to support its standing in this matter and its conclusion that Joe Navasca is the actual downloader of the work in question. Plaintiff could also present evidence of its inability to pay. Despite repeatedly stating its intention to seek reconsideration, the deadline has passed and they have not done so.

Instead, Plaintiff would like to simply dismiss the Defendant and forget that this all happened. Plaintiff would like this court to believe the dismissal is motivated by a desire for an appeal. In reality, AF Holdings is in the midst of a full-scale collapse. It has admitted to filing false documents *in this action*; has offered two different stories regarding its ownership (each under oath, and on the same date), and has offered no coherent explanation for why Alan Cooper's

signature appears on the assignment in this case. Moreover, all of the principal players in this drama, including Paul Duffy, Brett Gibbs, John Steele, Mark Lutz, Paul Hansmeier, and Alan Cooper have been ordered to appear in the Central District of California on March 11, 2013, to discuss, inter alia, the allegations of fraud discussed herein. See Exhibit B.

It is therefore not surprising that AF Holdings would like to end this matter as quickly as possible. They should not, however, be allowed to escape without at least compensating the defendant for the costs and fees incurred in defending this action. As such, and for the reasons further outlined below, defendant requests that this court condition any voluntary dismissal at this stage on an award of reasonable costs and attorney fees to the defendant.

## B. RECENT DEVELOPMENTS WITH AF HOLDINGS

### 1. February 7 & 8, 2013: The Collapse Begins

Although the writing had been on the wall since at least November 30, when evidence of fraud and forgery first came to light, AF Holdings' collapse began in earnest on February 7, 2013. On that day Judge Otis Wright issued a wide-ranging Order to Show Cause Re: Rule 11. A copy of this order is annexed hereto as Exhibit B (along with two supplementary orders). Judge Wright had previously been assigned to handle all AF Holdings and Ingenuity 13 (another "Alan Cooper" entity) matters in the Central District of California, and thus had ample opportunity to observe AF Holdings' and Brett Gibbs' litigation conduct. Suffice it to say, he was not impressed. Judge Wright specifically took issue with both infirmities in this suit.

First, Judge Wright noted that Plaintiff's process for identification of a defendant in these actions is highly flawed and likely violates the "reasonable investigation" requirement of Rule 11. Judge Wright discusses Plaintiff's "investigation" and determines that "Plaintiff's 'factual analysis' cannot be characterized as anything more than a hunch." Exhibit B at 6. The Court goes on to note that "Plaintiff cannot show that [Defendant] is the infringer instead of someone else, such as [The Subscriber], other members of the household; family guests; or, the next door neighbor who may be leaching from the [family's] Internet access. Thus, Plaintiff acted recklessly

by naming [Defendant] as the infringer based on its haphazard and incomplete investigation." Exhibit B at 6.

In addition to the insufficiency of Plaintiff's methods for identifying the infringer, Judge Wright was likewise concerned with "Fraud on the Court." The Court notes that

> "At the center of this issue is the identity of a person named Alan Cooper and the validity of the underlying copyright assignments. If it is true that Alan Cooper's identity was misappropriated and the underlying copyright assignments were improperly executed using his identity, then Plaintiff faces a few problems.
>
> First, with an invalid assignment, Plaintiff has no standing in these cases. Second, by bringing these cases, Plaintiff's conduct can be considered vexatious, as these cases were filed for a facially improper purpose. And third, the Court will not idle while Plaintiff defrauds this institution." Exhibit B at pg. 9.

The following day, on February 8, 2013, AF Holdings (and Ingenuity 13) began to summarily dismiss the remaining cases that could be dismissed without court intervention and without risking liability for costs-i.e. where the Defendant had neither answered or filed a motion for summary judgment. See, e.g. 3:12-cv-02415-CRB; 3:12-cv-04982-CRB; 4:12-cv-02411-PJH, and 5:12-cv-02394-LHK in the Northern District of California, and Case Nos: 2:12-cv-01064-JAM-GGH; 2:12-cv-01066-GEB-GGH; and 2:12-cv-01075-GE-DAD in the Eastern District of California. Indeed, there are many more such dismissals throughout the state, including a matter where the defendant had been relieved of default only days prior. See *AF Holdings v. Trevor Noordman,* 2:12-cv-01657-GEB (E.D. Cal.)(Docket Nos. 30 & 32) annexed hereto collectively as Exhibit C.

**2. February 19, 2013: AF Holdings and Brett Gibbs Tell Two Stories in One Day**

February 19, 2013 was an important day for AF Holdings and its counsel, Brett Gibbs. Not only was Mr. Gibbs' response to the Order to Show Cause due, but AF Holdings was also scheduled to attend a 30(b)(6) deposition in the instant case focused on, inter alia, its ownership and control.

AF Holdings deposition was first, and was attended by Mr. Gibbs, as well as AF Holdings

5
CV 12-2396-EMC Response to AF Holdings' Motion to Dismiss

representative Paul Hansmeier. Mr. Hansmeier testified that AF Holdings was wholly owned by a mysterious trust with an unknown trustee and "undefined" beneficiaries. Typical answers regarding this topic follow:

> Q: And who does have an ownership interest in the entity?
> A: The ownership of AF Holdings – can you please clarify your question?
> Q: Who are the members of AF Holdings?
> A: The membership interests of AF Holdings are held in a trust.
> Q: And who are the beneficial owners of AF Holdings?
> A: Well, the beneficial owner of AF Holdings is a trust...

(Hansmeier Dep. 9:1-11)

> Q: So in my experience most trusts name at least one beneficial owner, but I believe you testified earlier today that the trust that owns AF Holdings has no beneficial owners; is that correct?
> A: The trust that owns AF Holdings is an undefined beneficiary trust. I would suggest that your experience is not complete when it comes to trusts...

(Hansmeier Dep. 39:10-16).

> Q: So did you make any inquiry whatever about the trust that owns AF Holdings?
> A: Yes, I did make inquiries about the trust that owns AF Holdings.
> Q: What were these inquiries?
> A: Well, my first inquire was what the corporate structure of AF Holdings. I was then informed that ---
> Q: Pardon. Can I stop you and I don't mean to interrupt. Who informed you?
> A: Mr. Lutz
> Q: Continue.
> A: And he informed me that the membership interest of AF Holdings are held in trust and then I asked - - following down to No. 6 – who are the beneficial owners of the trust and Mr. Lutz informed me that the trust did not have defined beneficiaries.
> Q: Was that the extent of your inquiry about the AF Holdings?
> A: With respect to the trust, yes."

(Hansmeier Dep. 53:17 – 54:11)

Mere hours after Mr. Hansmeier's deposition concluded, Mr. Gibbs filed his response to Judge Wright's Order to Show Cause, discussed above. Notably, Mr. Gibbs testified that AF Holdings was, in fact, owned by Livewire Holdings, LLC. See Exhibit D at pg. 2, FN1. Moreover, Mr. Gibbs stated that he was, in fact, "in-house counsel" for Livewire Holdings, despite the testimony that he sat through all afternoon.

Even more astonishingly, when pressed on the question Mr. Gibbs would later state that "Mr. Steele and Mr. Hansmeier work for or with Livewire Holdings, LLC." See Exhibit E at ¶6.

1  If Mr. Gibbs declaration is credited, Defendant must conclude that Mr. Hansmeier deliberately
2  misstated the ownership of AF Holdings, despite working "for or with" the company that wholly
3  owns AF Holdings. Moreover, the entirety of Mr. Hansmeier's testimony was delivered with Mr.
4  Gibbs sitting a few feet away. The two responses simply cannot be reconciled. The ownership of
5  AF Holdings is clearly relevant to the question of standing in this action, and the company's
6  unwillingness or inability to answer questions about its ownership seems to be a likely cause of
7  AF Holdings' decision to seek dismissal, instead of reconsideration on the question.
8      Notably, all of the principle players for AF Holdings/Prenda Law have been ordered to
9  appear on March 11th in the Central District to discuss these questions, among others. It remains
10 to be seen whether a third or fourth version of this story will be forthcoming.

### 3. "Owner" Salt Marsh and Admittedly False Certifications

12     As noted above, Mr. Hansmeier's testified on behalf of AF Holdings that, at all relevant
13 times AF Holdings was wholly owned by a trust with an unknown trustee and 'unidentified'
14 beneficiaries. Following this discussion, Mr. Hansmeier was presented with ECF No. 8 in this
15 matter, the ADR Certification filed by AF Holdings. A copy of the ADR Certification is annexed
16 hereto as Exhibit F.
17     On this filing, Mr. Gibbs filed a certification that "Salt Marsh – Owner" had, inter alia
18 "Read the handbook entitled "Dispute Resolution Procedures in the Northern District of
19 California..." A similar certification appears in a large number of AF Holdings cases in this
20 district. Nonetheless, when pressed on this point, Mr. Hansmeier was unable to reconcile the
21 filing with his prior testimony, and was eventually forced to concede the following:

    Q: ...At any time was AF Holdings owned by a human being named Salt Marsh
    A: No

(Hansmeier Dep. 50:10-12).

25 Mr. Hansmeier was not able to offer any explanation for why "Salt Marsh" has repeatedly
26 been identified as an "Owner" of AF Holdings in the ADR filings mentioned above. Indeed, no
27 honest explanation comes to mind. Simply put, the only reasonable explanation is that AF

7
CV 12-2396-EMC Response to AF Holdings' Motion to Dismiss

1  Holdings or its counsel have, on multiple occasions, falsely identified the owners of AF Holdings
2  in an attempt to shield them from scrutiny. Under this District's Local Rule 5-1(i)(1) regarding
3  electronic signatures, evidence of Mr. Marsh's concurrence in the filing of this document should
4  be on file with Mr. Gibbs and/or Prenda Law. Call me cynical, but I highly doubt any such
5  documentation could, or will, be produced. Nonetheless, Defendant respectfully requests that this
6  court order production of the evidence of concurrence, in accordance with its local rules.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 41(a)(2) provides that, except in limited circumstances that are not applicable here, "an action may be dismissed at the plaintiff's request only by a court order, on terms that the court considers proper..." A court has substantial discretion in allowing dismissal under Rule 41(a)(2), and can impose any number of conditions upon dismissal.

"An award of reasonable attorney's fees is the typical condition imposed by a district court in granting a voluntary dismissal without prejudice." *Porter v. ABB Power T&D, Inc.,* 2008 WL 2437940, \*2 (W.D. Mo. 2008). See also Wright & Miller, 9 Fed. Prac. & Proc. §2366 (3d Ed.) ("The court may dismiss without conditions if conditions have not been shown to be necessary, but **usually the district judge at least should require that the plaintiff pay the costs of the litigation and that practice has become commonplace...");** ); *Mayes v. Fujimoto,* 181 F.R.D. 453 (Hawaii, 1998), affirmed 173 F.3d 861 (9th Cir. 1999)(noting that it is typical, though not required, for the court to impose costs and attorney fees upon the plaintiff); *Westlands Water Dist. V. U.S.,* 100 F.3d 94 (9th Cir. 1996)(noting that imposing costs and fees as a condition for voluntary dismissal is at the discretion of the district court); *Sandusky v. National Dairy Prods. Corp.,* 184 F. Supp. 68 (E.D. Penn. 1960) (granting motion for dismissal conditioned upon payment of all court costs, deposition, and reasonable attorney fees incurred in defense of action.); *Citizens Against Longwall Min. v. Colt LLC, IEC,* 2008 WL 1335609 (C.D. Ill. 2008)(plaintiff typically must pay defendant's attorney fees).

"The purpose of awarding costs under Rule 41(a)(2) is twofold: to fully compensate the

defendant for reasonable expenses incurred before dismissal and to deter vexatious litigation." *Siek v. American Airlines, Inc.,* 2002 WL 2018833 (S.D. Fla. 2002)(vacated on unrelated grounds). As described by the Seventh Circuit, the terms and conditions imposed under Rule 41(a)(2) are for the defendant's benefit, and are "the quid for the quo of allowing the plaintiff to dismiss his suit without being prevented by the doctrine of res judicata from bringing the same suit again." *McCall-Bey v. Franzen,* 777 F.2d 1178 (7th Cir. 1985).

Indeed , an award of costs is so routine that a district court has previously been required on appeal to state its reasons for refusing to condition a voluntary dismissal on the payments of attorneys fees. See *Taragan v. Eli Lilly & Co.,* 838 F.2d 1337 (D.C. Cir. 1988). Moreover, terms and conditions which may be imposed on voluntary dismissal are not limited to taxable costs, but may include compensation for all expenses to which defendant has been put, including attorney fees and other costs and disbursements. See, e.g. *Eaddy v. Little,* 234 F.Supp. 377 (S.Car. 1964).

### III. ARGUMENT

#### A. PLAINTIFF'S STATED RATIONALE FOR DISMISSAL IS PURE PRETEXT

As noted above, district courts may impose conditions prior to granting a motion to dismiss, including an award of reasonable costs and attorney fees to the defendant. For the reasons outlined below, such an award is particularly appropriate in the instant case. Defendant respectfully requests that this court require payment of costs and fees in exchange for granting dismissal.

**1. AF Holdings Cannot Appeal Following Voluntary Dismissal**

AF Holdings Motion to Voluntarily Dismiss seeks voluntary dismissal "in light of the Court's recent order requiring Plaintiff to post an undertaking of nearly $50,000." ECF No. 62 at 1. Plaintiff acknowledged that this Court has offered it the opportunity to seek reconsideration of the undertaking, if it could provide additional information to support its claims of standing and its conclusion that Joe Navasca was the infringer of its copyrights. Plaintiff now claims that it will not seek reconsideration, and "believes that appellate review of a bellwether undertaking decision

will provide copyright holders, alleged infringers, and district courts in California with more clarity on the practical significance of the Copyright Act, the U.S. Constitution, and U.S. treaties."

Unfortunately for AF Holdings, it does not appear that an appeal would even be an option if they were granted the voluntary dismissal that they request. As the Ninth Circuit has noted, "Under the final judgment rule embodied in 28 USC 1291, parties may appeal only the 'final decisions of the district courts.' A final judgment under §1291 is 'a decision by the District Court that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Danneberg v. Software Toolworks, Inc.,* 16 F.3d 1073 (9th Cir. 1994).

A dismissal without prejudice would not meet this criteria, as it is not a decision that "ends the litigation on the merits." The Ninth Circuit in *Danneberg* further noted that "In *Fletcher v. Gagosian,* 604 F.2d 637 (9th Cir. 1979), for example, we dismissed an appeal from an interlocutory order after the plaintiff had voluntarily dismissed without prejudice the unresolved claims. We held that dismissal did not 'convert what had been an unappealable order into an appealable order' and rejected ' the notion that the policies against multiplicity of litigation and against piecemeal appeals may be avoided at the whim of a plaintiff." Id.

In light of the foregoing, it is clear that Plaintiff's stated rationale for dismissal in this matter doesn't hold water, and this rationale has recently been rejected in the Northern District. See *AF Holdings v. Magsumbol,* 2013 U.S. DIST. LEXIS 25572 (February 25, 2013)(denying motion to voluntarily dismiss, and nothing that "Plaintiff brought this case knowing the rules of this jurisdiction and the risks of litigation, and now he seeks dismissal of his case without prejudice so he can bring it another day. Plaintiff's reasons for requesting dismissal are not compelling. Plaintiff's motion is DENIED.")

**2.  Defeat of AF Holdings' Causes of Action is Imminent**

As noted above, the actual reason for AF Holdings recent motion to dismiss is the impending defeat of its claims in this action. As one court has noted, a motion to voluntarily dismiss should be denied when plaintiff seeks to circumvent an expected adverse result, as they do

here. See *Radiant Technology Corp. v. Electrovert USA Corp.,* 122 F.R.D. 201 (N.D. Tex. 1988). See also *Tikkanen v. Citibank (South Dakota) N.A.,* 801 F.Supp. 270 (D. Minn. 1992)(Plaintiffs may not dismiss their actions without prejudice merely because the law has become settled in a way that they do not like, especially where dismissal would prejudice defendants).

### a. Refusal to Post Required Undertaking

In the instant case, the defeat of Plaintiff's claims is imminent. Plaintiff has already been required to post an undertaking in this matter, and the deadline has now passed for them to seek reconsideration of that order. Plaintiff has indicated that it has no intention of posting the required undertaking in this case (or any other). This choice would likely result in their claims being dismissed with prejudice, thereby exposing AF Holdings to liability for prevailing party costs and attorney fees under the Copyright Act. Indeed, this is the precise result reached in *AF Holdings v. Trinh,* 3:12-cv-02393-CRB; 2013 WL 677564 (N.D. Cal. February 25, 2013)(dismissing AF Holdings action with prejudice following failure to post required undertaking. Plaintiff's motion for reconsideration pending). For this reason alone, the imminent dismissal of Plaintiff's claims is a extremely likely.

### b. Lack of Standing and Fraud Upon the Court

In addition to the impending dismissal due to Plaintiff's refusal to post an undertaking, serious questions regarding remain regarding whether AF Holdings could possibly authenticate the assignment that purportedly forms the basis of this lawsuit. If the trial was held tomorrow, it does not appear that they could.

As the court likely recalls, the assignment in this matter was purportedly signed by Alan Cooper, however the only Alan Cooper that has come forward has explicitly disavowed the document, and any association with AF Holdings. AF Holdings has twice identified Mark Lutz as the sole individual that they intend to use to authenticate the questioned assignment in this action. See Exhibit A. Notwithstanding these representations, AF Holdings' deposition testimony clearly established that Mr. Lutz does not, in fact, have any personal knowledge regarding the assignment

in this case and could not authenticate the assignment if called upon to do so.

According to Mr. Hansmeier's testimony, Mark Lutz tasked John Steele with finding an unpaid "corporate representative." More specifically, "The manner in which Mr. Cooper was designated as a corporate representative was Mark Lutz asked attorney John Steele to arrange for a corporate representative to acknowledge the assignment agreement on behalf of AF Holdings. Mr. Steele did so and returned the assignment agreement to AF Holdings bearing the signature of Mr. Alan Cooper." (Hansmeier Dep. 122:5-11). When asked whether the Mr. Steele's former caretaker, represented by attorney Paul Godfread, was the individual who executed the assignment, Mr. Hansmeier responded that

> "Well, first of all, I don't know who attorney Godfread represents and who he doesn't represent. If you 're talking about the guy who's in Minnesota and was John Steele's former caretaker, all I can say is that AF Holdings – the only person who knows who this Alan Cooper is is John Steele and we asked Mr. Steele, is this the same guy, is this not the same guy, is there another Alan Cooper and Mr. Steele declined to respond on the basis that Mr. Cooper has sued Mr. Steele and they're actively involved in litigation." (Hansmeier Dep. 126:18 – 127:2)

Under Federal Rule of Evidence 902, authentication is a prerequisite for the introduction of documentary evidence, and only Mark Lutz has been identified as possessing the information required to authenticate. However, as noted above, Mark Lutz and AF Holdings do not have the knowledge required to authenticate the assignment. As such, AF Holdings cannot demonstrate ownership of a valid copyright and therefore cannot make a prima facie case for copyright infringement.

In addition, the circumstances surrounding AF Holdings competing claims of ownership make it appear unlikely that Plaintiff could establish standing to maintain this action. AF Holdings filed an apparently false document in this matter, indicating that Salt Marsh was "Owner" of AF Holdings. Then, on February 19th, AF Holdings and its counsel gave two wildly different accounts regarding its ownership, despite the fact that (according to one account) both Mr. Gibbs and Mr. Hansmeier worked for or with Livewire Holdings, the purported owner (according to one account).

Finally, the circumstances surrounding Salt Marsh make it appear exceedingly likely that a

fraud upon the court has been committed. AF Holdings and/or its counsel filed documents specifically attesting to the fact that "Salt Marsh," had read various documents in this case, in his capacity as an owner. Unfortunately, no human being named Salt Marsh ever owned AF Holdings. Fraud upon the court has previously been held sufficient to justify dismissal of an action, independently of the standing problems engendered by the particular fraud(s) in this case.

### B. AN AWARD OF COSTS AND ATTORNEY FEES IS NECESSARY TO COMPENSATE THE DEFENDANT AND TO DETER VEXATIOUS LITIGATION

As noted above, the purpose of an award of costs and fees as a condition of dismissal is to "fully compensate the defendant for reasonable expenses incurred before dismissal and to deter vexatious litigation." Each rationale is appropriate in the instant case.

First, Mr. Navasca should be compensated for the reasonable costs and attorney fees incurred in defense of an objectively weak, if not totally meritless, claim. Mr. Navasca made the difficult decision to stand up for himself, despite the cost and embarrassment that was certain to follow. The defendant submitted to Plaintiff's deposition, and freely answered all questions put to him, including those meant to embarrass and intimidate. Defense counsel was forced to respond to a number of "emergency" motions on shortened deadlines, and in each case Plaintiff's motion was rejected. Defendant agreed to make a complete mirror image of his hard drive, and bore half the cost for the venture. This hard drive will, doubtlessly, never be reviewed. Moreover, Plaintiff continued to state that it would seek reconsideration of the Motion for an Undertaking, though the date has now passed and it has not done so.

Notwithstanding the objective weakness of Plaintiff's claims and the vexatious manner in which Plaintiff's motions were brought, Defendant was forced to respond. Each response cost Defendant money, and his attorney time. These costs are directly attributable to AF Holdings and its counsel, and would likely be awarded to the defendant if this matter continued to its inevitable conclusion, with Joe Navasca as the prevailing party. As such, the costs and fees in this matter are properly borne by AF Holdings. Such a requirement is supported by the federal rules, as well as basic notions of fairness.

Second, an award of costs and fees is necessary to deter this brand of vexatious litigation designed to compel "cost of defense" settlements. AF Holdings and their attorneys explicitly threaten their targets with "lengthy and expensive litigation," and have gone so far as advising putative defendants that "In some cases the settlement offered by us is significantly lower than the costs associated with hiring an attorney." See Exhibit G, pg. 2 Indeed, this is a considerable threat, and a potential defendant is left with the choice of paying thousands of dollars in a dubious "settlement," or perhaps incur even greater costs in attempting to demonstrate their innocence.

This case is one of hundreds of cases filed by AF Holdings throughout the United States and Mr. Navasca is one of tens of thousands of individuals that have been threatened by Steele Hansmeier/Prenda Law over similar allegations. Neither AF Holdings nor Steele Hansmeier/Prenda Law has *ever* won an infringement case on the merits and AF Holdings has recently dismissed nearly every case that it had previously filed in this state. If AF Holdings is allowed to cut and run, with no responsibility for its prior actions in this case (or its others), there is simply no deterrent for the type of behavior exhibited herein. Plaintiffs will be encouraged to continue bringing copyright lawsuits based on insufficient evidence (and forged documents), and will continue to collect dubious 'settlements' from unfortunate targets along the way. When their transgressions are ultimately brought to light, Plaintiff may then simply dismiss without prejudice - citing whatever excuse is most convenient for the day - and wholly avoid responsibility for the damage that it has caused. This result is plainly inequitable, and easily avoided within the friendly confines of the federal rules. As such, Defendant respectfully respects that this court condition any voluntary dismissal on an award of reasonable costs and attorney fees, in the amount detailed below.

C. **DEFENDANT HAS INCURRED $20,754 IN REASONABLE FEES AND COSTS**

As outlined more fully in the Declarations of Nicholas Ranallo and Morgan Pietz, and the Exhibits thereto, Defendant has incurred a total $20,754.05 of recoverable fees and costs in defense of this action. Reasonable fees under the Copyright Act are determined according to the Lodestar method, and are not capped based on the actual billing arrangements of the parties. See,

e.g. *Yahoo!, Inc. v. Net Games, Inc.* 329 F.Supp.2d 1179, 1186 (N.D. Cal. 2004)("the average market rate in the local legal community as a whole is a better approximation of the hourly rate that would be charged by reasonably competent counsel than the actual billing rate charged by a single attorney). See also *United States v. $186,416 in US Currency* 642 F.3d 753, (9th Cir. April 26, 2011); *Blanchard v. Bergeron,* 489 U.S. 87, 93-94 (1989).

Thus, although Mr. Navasca was charged a significantly reduced rate for his defense in this matter, the calculations herein are based on a reasonable hourly rate for counsel's services of $250/hour. This rate has previously been determined as reasonable in this precise context, as more fully described on the Ranallo Declaration, annexed hereto. These calculations are a conservative estimate compared to the Laffey Matrix, which has previously been used as a basis for calculating reasonable fees in this district. For example, in *HPL Technologies, Inc. Securities Litigation*, Chief Judge Walker described the Laffey Matrix as a "well-established objective source for rates that vary by experience," and used the Laffey rates to establish reasonable attorney fees in this district. *HPL Technologies, Inc. Securities Litigation,* 366 F.Supp.2d 912 (N.D. Cal. 2005). In so doing, the court recognized that the Laffey rate would tend to undercompensate attorneys in this district, and noted that "adjusting the Laffey matrix figures upward by approximately 9% will yield rates appropriate for the Bay Area." *Id.*

Mr. Ranallo has reasonably expended at least 60.25 hours in defense of this action. Notably, this sum does not include numerous phone calls and emails between attorney and client, and countless hours of generalized research regarding plaintiff, its counsel, and the myriad suspect relationships at play in these suits. A more detailed breakdown of these hours can be found in the Ranallo Declaration and Exhibits thereto. When multiplied by the hourly rate of $250, an attorney fee amount of $15,062.50 is reached.

In addition, Mr. Pietz incurred reasonable attorney fees in the amount of $2880,00 in his role as co-counsel in the instant action. Mr. Pietz has a wealth of knowledge regarding AF Holdings, Steele Hansmeier/Prenda Law and the other major players in this matter, and was retained to provide this expertise in support of AF Holdings 30(b)(6) deposition. In addition, Mr.

Pietz incurred recoverable expenses in the amount of $425.80 associated with travel to the deposition. Mr. Pietz costs and fees, and the basis therefore, are detailed more fully in the Pietz Declaration, filed concurrently herewith.

In addition, Mr. Navasca has incurred $2385.75 in costs and expenses, including $321.25 for ½ of the cost of the creation of a "mirror image" of his hard drive, and $2064.50 in total deposition costs for copies of his own deposition transcript and the costs associated with conducting AF Holdings 30(b)(6) deposition. These costs are detailed more fully on the Ranallo Declaration and exhibits thereto.

As such, the total reasonable costs and attorney fees in this action, taking account of each sum above, is $20,754.05. Defendant respectfully requests that this court require payment of this amount as a condition for the voluntary dismissal of AF Holdings actions. For the reasons outlined above, this result is supported by the federal rules, relevant case law, and fundamental notions of fairness.

### IV. CONCLUSION

For the myriad reasons outlined above, Defendant respectfully requests that this court require Plaintiff to remit $20,754.05 as a condition of dismissal under Rule 41(a)(2). Plaintiff's cited reason – their desire to seek appeal – simply does not hold up. The simple fact is that the defeat of their action is imminent and they seek to escape responsibility for costs and attorney fees under 17 U.S.C. §505. Their actions in this case and others epitomize vexatiousness, and they have all but admitted to filing patently false documents in this action. This behavior is an affront, and should not be rewarded. This Court has ample authority under the federal rules to require appropriate conditions, and the payment of costs and attorney fees is the most appropriate condition in these circumstances.

DATED: March 7, 2013          NICHOLAS RANALLO, ATTORNEY AT LAW

By: _____/s/ Nicholas Ranallo

Nicholas Ranallo (Cal Bar # 275016)
Attorney for Joe Navasca
371 Dogwood Way
Boulder Creek, CA 95006
(831) 703-4011
Fax: (831) 533-5073
nick@ranallolawoffice.com

## CERTIFICATE OF SERVICE

THE UNDERSIGNED HEREBY CERTIFIES that on this 7th day of March, 2013, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system and served on all of those parties receiving notification through the CM/ECF system.

/s/          Nicholas R. Ranallo

Nicholas Ranallo, Attorney at Law

17
CV 12-2396-EMC Response to AF Holdings' Motion to Dismiss