Nicholas Ranallo, Attorney at Law #275016
371 Dogwood Way
Boulder Creek, CA 95006
Telephone No.: (831) 703 - 4011
Fax No.: (831) 533-5073
Email: nick@ranallolawoffice.com
Attorney for Defendant Joe Navasca

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AF HOLDINGS, LLC., | Case No. 3:12-cv-02396-EMC |
| Plaintiff, | |
| v. | **NOTICE OF MOTION AND MOTION FOR COSTS AND ATTORNEY FEES** |
| JOE NAVASCA | **Honorable Judge Edward Chen** |
| Defendants. | **July 18, 2013 at 1:30 p.m.** **Courtroom 5 – 17th Floor** |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on July 18, 2013 at 1:30 p.m., before the Honorable Edward Chen in Courtroom 5 -17th Floor of the United States District Court for the Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, CA 94102.  Defendant Joe Navasca will and hereby does move for an order awarding attorney's fees and expenses in the total amount of $22,254.05.

Defendant brings this motion pursuant to 17 U.S.C. §505 on the grounds that Defendant is the prevailing party on each of the relevant copyright claims.  Defendant's motion is based on this notice, the accompanying Memorandum of Points and Authorities, the declarations and exhibits submitted therewith, and all other papers filed and proceedings held in this action.


DATED: June 4, 2013                    Respectfully Submitted,

                                       NICHOLAS RANALLO, ATTORNEY AT LAW


                                       By:_____/s/ Nicholas Ranallo
                                       Nicholas Ranallo (Cal Bar #275016)
                                       Attorney for Joe Navasca
                                       371 Dogwood Way,
                                       Boulder Creek, CA 95006
                                       P: 831.703.4011
                                       F: 831.533.5073
                                       nick@ranallolawoffice.com

Nicholas Ranallo, Attorney at Law #275016
371 Dogwood Way
Boulder Creek, CA 95006
Telephone No.: (831) 703 - 4011
Fax No.: (831) 533-5073
Email: nick@ranallolawoffice.com
Attorney for Defendant Joe Navasca

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AF HOLDINGS, LLC., | Case No. 3:12-cv-02396-EMC |
| Plaintiff, | |
| v. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR ATTORNEY FEES AND COSTS PURSUANT TO 17 USC §505.** |
| JOE NAVASCA | |
| Defendants. | |

# TABLE OF CONTENTS

I.   INTRODUCTION – FACTUAL AND PROCEDURAL BACKGROUND.................2

    A.   AF Holdings, LLC, Prenda Law, Inc., and "Copyright Trolling"..........................2

    B.   The  Declaration of Delvan Neville.....................................................................3

    C.   Alan Cooper and the Forged Assignment in This Action.......................................5

    D.   Procedural History of the Instant Case..................................................................6

II.  LEGAL STANDARD.......................................................................................................8

III. ARGUMENT

    A.   Mr. Navasca is the Prevailing Party......................................................................9

    B.   The Fogerty Factors Strongly Support An Award of Costs in the Instant Case.....9

        1.   Frivolousness...............................................................................................9

        2.   Motivation.................................................................................................10

        3.   Objective Unreasonableness of Factual and Legal Arguments.................11

            a.   Plaintiff has Failed To Conduct an Adequate Factual Investigation Prior to Bringing Its Copyright Infringement Claims...................12

            b.   Plaintiff Has Forwarded Unreasonable Legal Arguments Throughout This Matter................................................................13

        4.   The Need In Particular Circumstances to Advance Considerations of Compensation and Deterrence....................................................................14

        5.   The Degree of Success Obtained..............................................................16

    C.   Relevant Case Law Supports and Award of Fees and Costs in the Instant Case..................................................................................................................16

    D.   Defendant Has Reasonably Incurred $22,254.05 in Recoverable Fees and Costs...................................................................................................................18

IV.  CONCLUSION................................................................................................20

# TABLE OF AUTHORITIES

**CASES**

*AF Holdings v. Botson,* 2012 WL 5426091 (N.D. Cal. Nov. 6, 2012)............................................12

*AF Holdings v. Hatfield,* 2013 WL 97755 (N.D. Cal. Jan 7, 2013)................................................12

*Atlantic Recording Corp. v. Anderson,* 2008 WL 185806 (D.Or. 2008)......................................17

*Assessment Technologies of WI, LLC v. WIREdata, Inc.,* 361 F.3d 434, 437 (7th Cir. 2004).......15

*Berkla v. Corel Corp.,* 290 F.3d 983 (9th Cir. 2002).......................................................................8

*Blanchard v. Bergeron,* 489 U.S. 87, 93-94 (1989)......................................................................18

*Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human* Resources, 532 U.S. 598  (2001)....................................................................................................9

*Capitol Records v. Foster,* 2007 WL 1028532 (W.D. Okla., 2007)..........................................17,18

*Fogerty v. Fantasy Inc.,* 510 U.S. 517 (1994).........................................................................8,9,14

*Halicki Films, LLC v. Sanderson Sales & Marketing,* 547 F.3d 1213, 1230 (9th Cir. 2008)........16

*HPL Technologies, Inc. Securities Litigation,* 366 F.Supp.2d 912 (N.D. Cal. 2005)...................18

*Ingenuity 13 v. Doe,* 2:12-cv-8333-ODW (JCx), Order Issuing Sanctions (C.D. Cal. May 6, 2013).....................................................................................................................1

*Jackson v. Axton,* 25 F.3d 884, 890 (9th Cir. 1994)..................................................................8,16

*United States v. $186,416 in US Currency* 642 F.3d 753, (9th Cir. April 26, 2011).....................18

*United States v. Standard Oil Co. of Cal.,* 603 F.2d 100, 103 (9th Cir. 1979)...............................8

*Wall Data Inc., v. Los Angeles County Sheriff's Dept.,* 447 F.3d 769, 787 (9th Cir. 2006)..........16

*Woodhaven Homes & Realty, Inc. v. Hotz,* 396 F.3d 822,824 (7th Cir. 2005)..............................18

*Yahoo!, Inc. v. Net Games, Inc.* 329 F.Supp.2d 1179, 1186 (N.D. Cal. 2004)..............................18

**STATUTES**

17 U.S.C. §505...............................................................................................................................8

# I.   <u>INTRODUCTION – FACTUAL AND PROCEDURAL BACKGROUND</u>

## A.   AF HOLDINGS, LLC PRENDA LAW, INC. AND "COPYRIGHT TROLLING"

"Plaintiffs have outmaneuvered the legal system.  They've discovered the nexus of antiquated copyright laws, paralyzing social stigma, and unaffordable defense costs.   And they exploit this anomaly by accusing individuals of illegally downloading a single pornographic video.  Then they offer to settle – for a sum calculated to be just below the cost of a bare-bones defense.   For these individuals, resistance is futile; most reluctantly pay rather than have their names associated with illegally downloading porn."

Ingenuity 13 v. Doe, 2:12-cv-8333-ODW (JCx), Order Issuing Sanctions at pg. 1 (C.D. Cal. May 6, 2013)(hereinafter "Order Issuing Sanctions").  A copy of this order is annexed hereto as Exhibit A.  The quote above kicks off Judge Wright's Order Issuing Sanctions against AF Holdings, Ingenuity 13, Prenda Law, Inc., and the related individuals and entities that "collaborated in the underlying scheme fronted by AF Holdings and Ingenuity 13."  *Id.* at n1.  It is also the most concise and accurate description of the "copyright trolling" phenomenon that defense counsel has seen.  Defendant has previously described Prenda Law and AF Holdings' business in substantial detail, and will offer only a quick recap with some additional important details that were unavailable until very recently.

Prenda Law, Inc., is the successor law firm to Steele Hansmeier, PLLC.  According to the March 11th testimony of Brett Gibbs in the Central District of California, John Steele and Paul Hansmeier continued to supervise AF Holdings litigation after the change from Steele Hansmeier to Prenda Law.  See Transcript of March 11th Hearing on Order to Show Cause in *Ingenuity 13 v. Doe,* 12-cv-08333-ODW (JCx) at 77:10-11.  A copy of this transcript (hereinafter "March 11th Transcript") is annexed hereto as Exhibit B.  Mr. Steele and Mr. Hansmeier are recurring characters in the instant drama.

AF Holdings is an offshore LLC with uncertain ownership, uncertain membership, and purportedly "undefined" beneficiaries (though Mr. Lutz did, subsequently, offer a clear definition of the unborn beneficiaries).  AF Holdings' entire business, by its own admission, is limited to filing copyright lawsuits.  See 30(b)(6) Deposition Testimony of Paul Hansmeier, at 21:15-17.

1  (hereinafter "Hansmeier Dep").   A copy of Mr. Hansmeier's deposition is annexed hereto as

2  Exhibit C.

3        AF Holdings claims that it does not distribute the works that form the basis of its lawsuits,

4  and claim that no individuals or entities (other than AF Holdings) have the legal right to distribute

5  the subject works (Hansmeier Dep. 154:1-21 & 204:13-17).  AF Holdings likewise testified that it

6  has not received any revenue from the legitimate licensing of its works (Hansmeier Dep. at 21).

7  These facts, by themselves, raise significant questions regarding Plaintiff's business model and the

8  application of the Copyright Act, given the stated purposes of the act.   As described below,

9  however, the reality appears even worse than AF Holdings has admitted.  Indeed, it appears that

10 AF Holdings and/or Prenda Law not only refuse to license the work for any legitimate

11 distribution, but also intentionally offer their own works for free via BitTorrent – and then sue the

12 IP addresses that connect to the work.

13

14 **B.**      **THE DECLARATION OF DELVAN NEVILLE**

15       On June 3, 2013, the Declaration of Delvan Neville (hereinafter "Neville Declaration")

16 was filed in *First Time Videos, LLC v. Paul Oppold,* 6:12-cv-01493 (M.D. Fla.).  A copy of this

17 declaration is attached hereto as Exhibit D.  The Neville Declaration analyzed the data collection

18 methods of 6881 Forensics (the firm used by AF Holdings in the instant case) and the origin of

19 many of the works that have formed the basis of Prenda Law Inc.'s copyright actions.   Mr.

20 Neville's declaration is extremely detailed, and analyzes information from a variety of sources in

21 order to come to his alarming conclusions.

22       Mr. Neville states that one purpose of the investigation was "to pinpoint the likely origin of

23 the user 'sharkmp4' on the website known as the Pirate Bay that originated torrents relating to

24 copyrights held by companies 'AF Holdings' and 'Ingenuity 13.'"  Neville Dec. at ¶24.  This user,

25 sharkmp4, is the apparent source of a large number of works that later formed the basis of Prenda

26 Law, Inc.'s infringement lawsuits.

27       Mr. Neville goes on to note that "Sharkmp4 posted on the Pirate Bay torrent information

28

3

sufficient to locate works of AF Holdings, specifically the works "Popular Demand" and "Sexual Obsession" and posted hash values of a torrent that the user created on to the Pirate Bay." Neville Dec. at ¶26. "Popular Demand" is, of course, the work that forms the basis of the instant suit. Mr. Neville notes that sharkmp4 is also the originator of a number of Ingenuity 13 works, including works that did not appear to be commercially available at the time that they were posted by the user.

In order to identify the sharkmp4 user, Mr. Neville compared information from a variety of sources (each of which is exhaustively discussed) and concluded that "It appears from all the evidence that John Steele (or someone under his control or with access to his Go-Daddy account records with authorization to make changes to domain names) is the most probable candidate for the identity of Pirate Bay user sharkmp4." Neville Dec. at ¶47. Mr. Neville reiterates this conclusion in ¶48, noting that 6881 Forensics is closely linked to the sharkmp4 user, and that this "leads again to the conclusion that John Steele or his agents are sharkmp4..." Neville Dec. at ¶48. Finally, Mr. Neville ends with the coup de grace:

> "Normally, in situations where a copyright is being enforced, based upon the investigation, I would advise the owner of the copyright to pursue further inquiry of John Steele and/or 6881 Forensics to determine the identity of Pirate Bay user sharkmp44.  Because all three entities appear under the same control, it is my belief that **the purpose of sharing the file by sharkmp4 appears to have been in an effort to induce infringement for the purpose of monetization of copyrights of commercially low value."** Neville Dec at ¶50.

The importance of Mr. Neville's declaration should not be understated.   Basically, as described herein, agents of Prenda Law/AF Holdings obtain dubious grants of rights based on signatures that have apparently been forged (see below).   Once such rights are secured, these agents then post a link to the work on the Pirate Bay, intentionally upload the work to the BitTorrent, and then sue any IP address that connects to the work which they have uploaded. A nifty trick, perhaps, but one that simply does not accord with the proper purposes of the Copyright Act.

## C.    ALAN COOPER AND THE FORGED ASSIGNMENT IN THIS ACTION

As the Court likely recalls, the assignment in this matter was purportedly signed by Alan Cooper, however the only Alan Cooper that has come forward has explicitly disavowed the document, and any association with AF Holdings.  For example, during his March 11th testimony before the Central District of California, Mr. Cooper explicitly denied that he had ever been asked to become a corporate representative for AF Holdings (Mar. 11 Transcript at 27:2-4), explicitly denies executing the assignment for "Popular Demand" (Mar. 11 Transcript at 27:24-28:8).  The principals of AF Holdings/Prenda Law, including John Steele, Paul Hansmeier, and Paul Duffy, each invoked the Fifth Amendment when given the opportunity to explain their own involvement in the Alan Cooper issue.  See Transcript of April 2, 2012 hearing regarding Order to Show Cause in *Ingenuity 13 v. Does,* 12-cv-08333-ODW (JCx) in the Central District of California (hereinafter "April 2 Transcript") pg. 7 & 9.  A copy of this transcript is annexed hereto as Exhibit E.  This chain of events led Judge Wright to issue findings of fact which included the finding that

> "The Principals stole the identity of Alan Cooper (of 2170 Highway 47 North, Isle, MN 56342).  The Principals fraudulently signed the copyright assignment for "Popular Demand" using Alan Cooper's signature without his authorization, holding him out to be an officer of AF Holdings.  Alan Cooper is not an officer of AF Holdings and has no affiliation with Plaintiffs other than his employment as a groundskeeper for Steele.  There is no other person named Alan Cooper related to AF Holdings or Ingenuity 13."Wright Order Imposing Sanctions, at 4.

In addition to Judge Wright's finding of fact, AF Holdings' own statements and filings make it abundantly clear that they cannot possibly authenticate the assignment that forms the basis of this action.  AF Holdings has twice identified Mark Lutz as the sole individual that they intend to use to authenticate the questioned assignment in this action.  See Exhibit F.  Notwithstanding these representations, AF Holdings' deposition testimony clearly established that Mr. Lutz does not, in fact, have any personal knowledge regarding the assignment in this case and could not authenticate the assignment if called upon to do so.

According to Mr. Hansmeier's testimony, Mark Lutz tasked John Steele with finding an unpaid "corporate representative" to execute the assignment in this case.  More specifically, "The

manner in which Mr. Cooper was designated as a corporate representative was Mark Lutz asked attorney John Steele to arrange for a corporate representative to acknowledge the assignment agreement on behalf of AF Holdings.  Mr. Steele did so and returned the assignment agreement to AF Holdings bearing the signature of Mr. Alan Cooper."  (Hansmeier Dep. 122:5-11).  When asked whether the Mr. Steele's former caretaker, represented by attorney Paul Godfread, was the individual who executed the assignment, Mr. Hansmeier responded that

> "Well, first of all,  I don't know who attorney Godfread represents and who he doesn't represent.  If you 're talking about the guy who's in Minnesota and was John Steele's former caretaker, all I can say is that AF Holdings – **the only person who knows who this Alan Cooper is is John Steele** and we asked Mr. Steele, is this the same guy, is this not the same guy, is there another Alan Cooper and Mr. Steele declined to respond on the basis that Mr. Cooper has sued Mr. Steele and they're actively involved in litigation."  (Hansmeier Dep. 126:18 – 127:2)(emphasis added)

Under Federal Rule of Evidence 902, authentication is a prerequisite for the introduction of documentary evidence, and only Mark Lutz has been identified by Plaintiff's Rule 26 disclosures as possessing the information required to authenticate.  However, as noted above, Mark Lutz and AF Holdings do not have the knowledge required to authenticate the assignment.  Moreover, the sole individual in possession of such knowledge, according to AF Holdings, has recently chosen to invoke the Fifth Amendment rather than testify to his role in AF Holdings and the creation of the subject assignments.

**D.**     **PROCEDURAL HISTORY OF THE INSTANT CASE**

The complaint in this matter was file on May 10, 2012, accusing an unidentified "John Doe" defendant of downloading and sharing the pornographic work "Popular Demand" (hereinafter "the work") via the BitTorrent protocol.  On May 30, 2012, Plaintiff filed an ex parte application for expedited discovery to identify the subscriber associated with a particular IP address alleged to be sharing the work.  Plaintiff's application was grated on June 4, 2012.

Upon learning that the subscriber was Jovino Navasca (the present defendant's father), Plaintiff began sending letters and making phone calls, threatening "long and expensive litigation"

if Jovino did not succumb to Plaintiff's demands.  See ECF No. 25-1 at pg. 3.  After Jovino failed to respond to these threats, AF Holdings turned their attention to the instant defendant, Joe Navasca.  On October 26, 2012, AF Holdings amended the complaint in the instant action to name Joe Navasca as the individual that had allegedly shared the subject work.  AF Holdings' 30(b)(6) deposition testimony in the instant matter made clear that this identification was based upon nothing more than guesswork.

On November 29, 2012, Joe Navasca filed an answer denying each of the substantive allegations of Plaintiff's complaint.  On November 30, 2012, at the Initial Case Management Conference, counsel for defendant brought certain facts regarding Alan Cooper and the assignment in this case to the attention of AF Holdings and the Court. This Court ordered the parties to meet and confer on the issue of Plaintiff's standing and the validity of the assignment in this matter.  See ECF No 21.  Plaintiff was unwilling or unable to offer any substantive proof to refute Mr. Cooper's allegations, or support its own standing.  This failure is a recurring theme throughout this case, and AF Holdings' cases throughout the state.  Nonetheless, AF Holdings pressed forward, and accelerated its attempts to raise the pressure, and the costs, on Mr. Navasca.

On December 12, 2012, Joe Navasca filed a motion requesting that this court require a non-resident undertaking, based on the objective weakness of Plaintiff's evidence and further questions regarding AF Holdings' standing to maintain the instant suit.  Plaintiff again offered no evidence to refute the Cooper Affidavit or the other fundamental allegations at issue.  As a result, this court ordered AF Holdings to post an undertaking in the amount of $50,000 to cover prospective costs and attorney fees.  See ECF No. 51.

Notably, this court explicitly gave Plaintiff the option to seek reconsideration and put forth further evidence to support its standing in this matter and its conclusion that Joe Navasca is the actual downloader of the work in question.  Plaintiff could also present evidence of its inability to pay.  Despite repeatedly stating its intention to seek reconsideration, Plaintiff did not do so and, instead, asked this court to dismiss the matter *without prejudice* so that it could avoid the

inevitable dismissal[1].  The court refused, and ordered the matter dismissed with prejudice, though the court postponed entry of judgment until after AF Holdings responded to requests regarding "Salt Marsh."  On May 21, 2013, this court entered Judgment for Mr. Navasca.

## II.      LEGAL AUTHORITY

An award of fees to a prevailing party may be made pursuant to a statute or rule providing for the shifting of fees to the losing party.  *United States v. Standard Oil Co. of Cal.,* 603 F.2d 100, 103 (9th Cir. 1979).  The Copyright Act includes a fee shifting provision in 17 U.S.C. §505, which states that  "In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof... the court may also award a reasonable attorney's fee to the prevailing party as a part of the costs."

In *Fogerty v. Fantasy, Inc,* the Supreme Court held that prevailing plaintiffs and prevailing defendants should be treated alike for purposes of an award of attorney fees, and that any award of attorney fees to a prevailing party is left to the sound discretion of the trial court.  *Fogerty v. Fantasy Inc.,* 510 U.S. 517 (1994).  The Ninth Circuit has subsequently recognized that the "evenhanded" approach adopted in *Fogerty* is appropriate. See, e.g. *Berkla v. Corel Corp.,* 290 F.3d 983 (9th Cir. 2002).

In exercising its discretion, the Court looks to various non-exclusive factors approved by the Supreme Court in *Fogerty*, including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty* at 534, n.19.  The Ninth Circuit has adopted the factors set forth in *Fogerty,* and have often included a fifth factor, the degree of success obtained by the prevailing party.  See, e.g. *Jackson v. Axton,* 25 F.3d 884, 890 (9th Cir. 1994).

As described further below, Mr. Navasca is a prevailing party in this action, and the relevant factors strongly support an award of fees in his favor.  As such, Defendant respectfully

---

[1] AF Holdings stated rationale was that it wanted the opportunity to appeal the ruling on an undertaking, which they did not do.  See ECF No. 62.

requests that this court award attorney's fees in the amount of $22,254.05, as outlined herein, pursuant to 17 U.S.C. §505.

### III.    ARGUMENT

### A.    MR. NAVASCA IS THE PREVAILING PARTY

On May 21, 2013, this court entered judgment dismissing this matter, with prejudice, in its entirety.  As such, Mr. Navasca is unquestionably the prevailing party in this action.  He has obtained a full dismissal, with prejudice, of the copyright and negligence claims brought against him.  The dismissal in this matter is a dismissal on the merits, precluding any further suit by the Plaintiff.  This constitutes the "material alteration of the legal relationship of the parties," necessary to support an award of fees.  See *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources,* 532 U.S. 598, 604 (2001).

### B.    THE FOGERTY FACTORS STRONGLY SUPPORT AN AWARD OF COSTS AND ATTORNEY FEES IN THE INSTANT CASE

As noted above, the decision to award attorney's fees to a prevailing party in a copyright action is left in the discretion of the trial courts,  though the court should consider various non-exclusive factors to guide its determination.  These include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."  *Fogerty,* 510 U.S. 517, 534 n.19.  As described further below, an analysis of these factors weighs heavily in favor of an award in the instant case.

### 1.    Frivolousness

Although a successful defendant is not required to demonstrate frivolousness or bad faith in order to be awarded fees, the presence of either weighs in favor of such an award.  Plaintiff's claims certainly approach frivolousness and the fraud allegations related to Alan Cooper are strongly suggestive of AF Holdings' bad faith.  As described above, Alan Cooper, the purported signatory of the assignment in this case, has denied under oath that he executed the document.

9

1    Although Plaintiff's "Notice of Allegations" seems to deny Mr. Cooper's allegations, the 30(b)(6)

2    deposition of AF Holdings described above makes it clear that the corporation itself has virtually

3    no knowledge about the authenticity of the assignment in this action.  As Judge Wright's Order to

4    Show Cause noted, this is problematic for a number of reasons, including that "by bringing these

5    cases, **Plaintiff's conduct can be considered vexatious**, as these cases were filed for a facially

6    improper purpose."  See Exhibit G at 9 (emphasis added).

7             In addition to the frivolousness and bad faith inherent in bringing hundreds of lawsuits

8    based on forged or fraudulent assignments, Plaintiff's claims are so lacking in legal and factual

9    support that their continued prosecution can be considered frivolous.   The objective

10   unreasonableness of Plaintiff's factual and legal arguments is considered as a discrete factor in the

11   attorney fee inquiry, and will be discussed separately below.  Let it suffice for now to point out

12   that Plaintiff herein has brought copyright claims based on evidence that it has previously

13   admitted is insufficient to identify the actual infringer, and continued to threaten lawsuits against

14   Mr. Navasca's other family members, notwithstanding that they had already filed the instant suit,

15   and have lost literally every motion that they have filed or opposed since Mr. Navasca joined this

16   action.

17

18   **2.      Motivation**

19            Plaintiff's motivation in bringing the lawsuit is another factor that District Courts should

20   consider when deciding whether to award fees under the Copyright Act.  This factor likewise

21   supports an award of fees in this case.  Plaintiff herein is not the creator of the work at issue.

22   Instead, Plaintiff has ostensibly obtained the exclusive rights to distribute the work, though the

23   individual that purportedly signed on its behalf has renounced any involvement.  Moreover, AF

24   Holdings has previously admitted that it does not, in reality, distribute the works itself through any

25   legitimate avenue.  Instead, AF Holdings business is devoted *exclusively* to filing BitTorrent

26   lawsuits like the instant suit.  This fact was admitted by AF Holdings' 30(b)(6) deponent in the

27   following exchange:

28

Q:  Have they recognized any revenue through any sources other than litigation, for example, through legitimate licensing of it?
A:  No.  The only source of revenue that AF Holdings will have with respect to its copyrights are if it increases in value.

(Hansmeier Dep. 21:12-18)

Based on the foregoing, it is difficult to believe that AF Holdings actual motivation is to deter infringement of its work, or any other purpose that aligns with the proper purpose of the Copyright Act.  Moreover, when one considers the Neville Declaration, and the conclusion that **the purpose of sharing the file by sharkmp4 appears to have been in an effort to induce infringement"** Plaintiff's true motivation becomes apparent.

AF Holdings' motivation is very clearly *not* to deter infringements, but to encourage them and seek to profit from the "infringements" that they have induced.  As has been well documented, this allows AF Holdings to pressure ISP subscribers, whether innocent or not, into paying dubious settlements in order to avoid the cost and embarrassment associated with defending yourself in federal infringement litigation involving pornographic works.

This strategy has been quite successful, as this campaign has apparently netted millions of dollars[2], despite the fact that neither AF Holdings nor Prenda Law Inc., has ever obtained a successful judgments on the merits of its claims.  Unfortunately for Plaintiff, however, this motivation does not comport with the purpose of the Copyright Act and does nothing to forward its legitimate goals of promoting the progress of science and the useful arts.  As such, the second factor weighs very heavily in favor of a fee award to defendant.

**3.     Objective Unreasonableness of Legal or Factual Arguments**

The third factor to be considered when deciding whether to award fees is the objective unreasonableness of the losing party's legal or factual arguments.  As described further below,

---

[2] See October 15, 2012 article from Forbes.com, "How Porn Copyright Lawyer John Steele Has Made A 'Few Million Dollars' Pursuing (Sometimes Innocent) 'Porn Pirates,'", available at http://www.forbes.com/sites/kashmirhill/2012/10/15/how-porn-copyright-lawyer-john-steele-justifies-his-pursuit-of-sometimes-innocent-porn-pirates/, last accessed on March 21, 2013.

1
2
3
4
5

Plaintiff's claims herein are unreasonable in both senses.  As numerous courts have recognized, Plaintiff's decision to name Mr. Navasca as the infringer of its copyright, based solely on his status as ISP subscriber, is factually unreasonable.  Moreover, Plaintiff's forwarded numerous positions throughout the course of the instant case that were objectively unreasonable from a legal perspective.

6
7

    a.    <u>Plaintiff Has Failed to Conduct an Adequate Factual Investigation Prior to Bringing its Copyright Infringement Claims</u>

8
9
10
11
12
13
14

The fundamental infirmity of the copyright claims in this action, as in many of AF Holdings suits, is the Plaintiff's failure to conduct an adequate investigation prior to naming and shaming a defendant.  This point was recognized in this court's decision to require an undertaking in this matter.  Indeed, as noted above, AF Holdings and its counsel have recently faced increased scrutiny on this point, and have failed in each case to convince courts that they have conducted a reasonable factual inquiry before filing suit.  Two cases in this district, *AF Holdings v. Botson,* 12-cv-2048; and *AF Holdings v. Hatfield,* 12-cv-2049 are proper exemplars.

15
16
17
18
19
20
21
22
23

To briefly summarize, each case involved defendants who were first accused of only negligence and, subsequently, accused of copyright infringement based on Plaintiff's further "investigation."  In each case the Plaintiff's attempt to name the negligence defendant as the infringer were rejected, and each judge noted indicia of bad faith.  See  *AF Holdings v. Hatfield,* 2013 WL 97755 (N.D. Cal. Jan 7, 2013)(AF Holdings "new allegations in the revised proposed SAC are vague and speculative, and do not demonstrate diligence or add any substance to the claims" and AF Holdings' "conduct is at least suggestive of bad faith,"); *AF Holdings v. Botson,* 2012 WL 5426091 (N.D. Cal. Nov. 6, 2012)("the court is concerned that the proposed amendments are sought in bad faith...simply to keep the only identified defendant 'on the hook'").

24
25
26
27

Moreover, as described above, Plaintiff and its counsel have recently been sanctioned for, inter alia, their failure to conduct adequate pre-suit investigations.  See Exhibit A, at 5 ("The Principals ordered Gibbs to commit the following acts...name individuals as defendants based on a statistical guess").  Judge Wright's criticism of Plaintiff's methods applies equally to the instant

28

case.  Indeed, AF Holdings was scarcely able to identify *any* facts from its pre-suit investigation leading to the conclusion that Joe Navasca was the individual that had shared the work via BitTorrent.

b.   <u>Plaintiff Has Forwarded Unreasonable Legal Arguments Throughout This Matter</u>

In addition to the insufficiency of the factual investigation preceding this lawsuit described above, AF Holdings forwarded numerous legal positions throughout this litigation that were lacking in any legal support.  For example, significant time and energy was expended on a series of motions seeking to unnecessarily accelerate, and then immediately halt, discovery in this matter.  Specifically, on January 17, 2013, AF Holdings filed a Motion to Compel (ECF No. 38) seeking the *immediate* production of every hard drive in Mr. Navasca's home, without regard to the ownership of the machines and Mr. Navasca's inability to simply "seize" such machines unilaterally.  This motion was brought without meeting and conferring with defense counsel, as is required by the local rules.  Moreover, this first Motion to Compel was brought without AF Holdings, at any time, issuing any request for production of documents or electronically stored information under Fed. R. Civ. Proc. 34.  Thus, Plaintiff was seeking to compel the production of items that it had not even requested, purportedly under the auspices of Fed. R. Civ. Proc. 37.  Nonetheless, Defendant was forced to respond, and thus to incur unnecessary costs.

On January 23rd, Magistrate Judge Vadas Ordered the parties to meet and confer regarding the issue and, if agreement could not be reached, to submit letter briefs to the court.  The parties met and conferred, in person, though AF Holdings could not be persuaded to abandon its unsupportable position, and insisted on filing a letter brief in support of its Motion to Compel – this time only minutes after sending its first discovery requests in this matter.  On February 4, 2013, Judge Vadas denied Plaintiff's Motion to Compel, noting that "As Navasca notes in his letter brief, Plaintiff propounded its first discovery requests on January 24, 2013.  Doc No. 47 at 2. Navasca's responses are not yet due.  Currently, there is nothing to compel."   This was defendant's position the entire time, and was communicated to AF Holdings on multiple occasions.  Moreover, even a cursory good-faith review of the relevant authorities – many of

which were cited by defendant – would have revealed that its position was completely untenable.

A mere three days after Judge Vadas' Order denying Plaintiff's "emergency" motion to compel immediate production, on February 7th, 2013, AF Holdings filed a Motion to Stay, now seeking to immediately *halt* all discovery before AF Holdings' duly noticed 30(b)(6) motion was scheduled to take place.  On February 8, 2013, Plaintiff filed a Motion to Shorten Time, seeking full briefing and a hearing on the Motion to Stay within a matter of days.  This required a nearly immediate response from Defense counsel.  Ultimately, on February 12, 2013, this Court denied Plaintiff's Motion to Shorten Time, based on the rationale forwarded by Defendant.

In short, many of defendant's costs in this matter come as a direct result of the wholly unsupported "emergency" motions brought by AF Holdings in this matter.  Defendant has prevailed on every motion brought by either party since he has joined the matter.  In the absence of a fee award, however, these victories must ring extremely hollow, as each "win" would simply be another bill for Mr. Navasca, incurred for no good reason in a suit that he shouldn't be involved with in the first place.

**4.     The Need in Particular Circumstances to advance Considerations of Compensation and Deterrence**

The final factor endorsed by the court in *Fogerty* is the "need in particular circumstances to advance considerations of compensation and deterrence."  *Fogerty,* 510 U.S. 517 at 534 n.19.  This factor allows the district court to recognize the unique features of each case, and to award fees when they are particularly necessary to compensate a prevailing party or deter a losing party from pursuing similar conduct in future litigation.

The instant case provides a textbook example of particular circumstances which require an award to advance considerations of both compensation and deterrence.  These circumstances have been discussed at length.  This case is merely one part of an enormous litigation campaign, built on coercing dubious "settlements" from ordinary internet subscribers based on objectively insufficient evidence.  The success of this campaign does not depend on the strength of the claims - indeed their merit is almost irrelevant.  The campaign depends on a healthy dose of shame,

delivered via a public outing on Prenda Law's website that often lingers long after the suit is dismissed.  Indeed, Mr. Navasca's name is still prominently displayed on Prenda Law's website, despite the dismissal of every claim against him, and a Google search for Mr. Navasca's name results in many responses, almost all of which are related to the accusations made by AF Holdings.  See Ranallo Declaration at ¶22.

More importantly, this campaign relies on the fundamental economic realities of federal litigation to force defendants into "cost of defense" settlements.  A defendant in Mr. Navasca's position, facing allegations that he knows to be untrue, must still make an incredibly difficult decision whether to pay the "settlement," or perhaps expend far more money attempting to defend themselves against embarrassing allegations in a public forum.  Even if an award of attorney's fees was guaranteed to a prevailing defendant, it would still take a courageous and principled defendant to mount a defense, and incur the financial costs and risks associated with this process.  Without the prospect of such an award, even a principled and courageous defendant must accept the near-certainty of significant financial harm in order to defend himself.  This reality has led the Seventh Circuit to recognize that "when the prevailing party is the defendant, who by definition receives not a small award but no award, the presumption in favor of awarding fees is very strong." *Assessment Technologies of WI, LLC v. WIREdata, Inc.,* 361 F.3d 434, 437 (7th Cir. 2004).

Moreover, the relatively few defendants, like Mr. Navasca, that have chosen to stand up for themselves have done an invaluable service for countless internet subscribers that would have faced similar meritless accusations, based upon fraudulent assignments.  Indeed, Judge Wright noted at the March 11th Hearing on his Order to Show Cause that the deposition taken in this case – and paid for by Mr. Navasca – was "perhaps the most informative thing I have read in this litigation so far."  March 11th Transcript at 5:2-5.  Judge Wright went on to note that the deposition "raised far more questions of fraud than the court originally had..."  The 30(b)(6) deposition in the instant case was, to the best of defense counsel's knowledge, the only instance on record where AF Holdings had been forced to respond to discovery in order to support its claims.  Indeed, the deposition revealed that AF Holdings is patently unable to do so.  Mr. Navasca's

participation in this matter was therefore instrumental in uncovering a legal fraud that had been committed against thousands of citizens across the country.  As such, this court has a particular interest in compensating Mr. Navasca (or at least making him whole) for the courage of his convictions and his role in upholding the integrity of the courts and this process.

An award of attorney fees in the instant case likewise serves to deter fraudulent and meritless lawsuits.  A plaintiff in AF Holdings position has no incentive to adequately investigate their claims if they face no consequences when their claims turn out to be false.   Indeed, the need for deterrence is particular important in the instant situation, where Plaintiff's litigation campaign depends upon high volumes of litigation.  As noted previously, AF Holdings *only* business is the filing of BitTorrent copyright lawsuits based on objectively weak evidence and apparently forged assignments.  An award of prevailing party attorney fees to successful defendants is the strongest weapon against this shotgun approach to litigation, and the most effective way to force Plaintiff's to honestly evaluate the strength of its claims *prior* to naming and serving a defendant

## 5.	The Degree of Success Obtained

In addition to the four non-exclusive factors which were cited approvingly by the Supreme Court, the Ninth Circuit has frequently considered a fifth factor: the degree of success obtained by the prevailing party.  See, e.g. *Jackson v. Axton,* 25 F.3d 884, 890 (9th Cir. 1994); *Halicki Films, LLC v. Sanderson Sales & Marketing*, 547 F.3d 1213, 1230 (9th Cir. 2008); *Wall Data Inc., v. Los Angeles County Sheriff's Dept.*, 447 F.3d 769, 787 (9th Cir. 2006).  In the instant case Defendant has obtained total success, as each and every cause of action has been dismissed with prejudice.  Thus, to the extent that this court considers the degree of success obtained as an additional factor in the attorney fee inquiry, this factor likewise weighs heavily in support of an award of fees in the instant case.

## C.	RELEVANT CASE LAW SUPPORTS AN AWARD OF FEES IN THE INSTANT CASE

As described above, each of the Fogerty factors weighs heavily in favor of an award of fees to Mr. Navasca for his successful defense in this case.  Indeed, the Northern District of

California has recently awarded attorney's fees against AF Holdings in a nearly identical matter – AF Holdings v. Trinh (3:12-cv-02393-CRB).  The situation in that case was nearly identical to the instant case (though Mr. Trinh was not subjected to the level of costs that Mr. Navasca was forced to incur herein).  Specifically, AF Holdings v. Trinh involved another "John Doe" subscriber that was (incorrectly) deemed by AF Holdings to be the infringer of its pornographic work.  Mr. Trinh sought an undertaking based on the objective weakness of Plaintiff's claims, as Mr. Navasca has herein.  As herein, Mr. Trinh's request for an undertaking was granted and AF Holdings failed to post any bond.  As herein, AF Holdings case was eventually dismissed, with prejudice, for failure to post the required bond.  Mr. Trinh subsequently sought to recover $9425 in attorney's fees under 17 USC 505.  On May 24, 2013, Judge Breyer granted Mr. Trinh's Motion for Attorney's Fees, and awarded the entire $9425 sought.  A copy of Judge Breyer's Order confirming the award is annexed hereto as Exhibit H.

Judge Breyer is not alone in awarding prevailing party attorney fees to successful defendants in peer-to-peer infringement cases.  Other courts, in extremely similar peer-to-peer infringement cases, have recognized that a fee award to a prevailing defendant does, in fact, further the underlying purposes of the Copyright Act.  For example, in one case from this circuit, an individual accused of improperly downloading music successfully defended herself from direct infringement claims based, as herein, on a claim of pure innocence. *Atlantic Recording Corp. v. Anderson,* 2008 WL 185806 (D.Or. 2008) .  Plaintiff eventually dismissed the claims in *Anderson* "voluntarily", but not before the defendant was forced to incur significant costs.  The court noted that there was ample "reason to compensate defendant in this case.  Her defense was primarily factual and not based on any developing legal theories.  Though it did not help to clarify the contours of copyright law, her participation was involuntary.  Her factual positions were consistent, and her legal stances were reasonable..."  *Id.* at *9.  The court in *Anderson* granted the motion for attorney's fees, ultimately awarding over $100,000 in attorney's fees for the successful defense.

Similarly, in *Capitol Records v. Foster,* a successful peer-to-peer infringement defendant

was awarded substantial attorneys fees following a successful defense.  *Capitol Records v. Foster,* 2007 WL 1028532 (W.D. Okla., 2007).  The court in *Foster* approvingly quoted the 7th Circuit's recognition that a copyright defendant stands in a particularly precarious position since he "by definition receives not a small award, but no award, awarding fees becomes particularly important."  *Id.* at *5, citing *Woodhaven Homes & Realty, Inc. v. Hotz,* 396 F.3d 822,824 (7th Cir. 2005).  The *Foster* court noted that "[W]ithout the prospect of such an award, the party might be forced into a nuisance settlement, or deterred all together from exercising his rights."  *Id.*   The court goes on to note that, like here, "Her only alternative to litigating...was to capitulate to a settlement for a violation she insists she did not commit.  Such capitulation would not advance the aims of the Copyright Act..." *Id.* at *3.

## D.   DEFENDANT HAS REASONABLY INCURRED $22,254.05 IN RECOVERABLE FEES AND COSTS

As outlined more fully in the Declarations of Nicholas Ranallo and Morgan Pietz, and the Exhibits thereto, Defendant has incurred a total $22,254.05 of recoverable fees and costs in defense of this action.   Reasonable fees under the Copyright Act are determined according to the Lodestar method, and are not capped based on the actual billing arrangements of the parties.  See, e.g. *Yahoo!, Inc. v. Net Games, Inc.* 329 F.Supp.2d 1179, 1186 (N.D. Cal. 2004)("the average market rate in the local legal community as a whole is a better approximation of the hourly rate that would be charged by reasonably competent counsel than the actual billing rate charged by a single attorney).  See also *United States v. $186,416 in US Currency* 642 F.3d 753, (9th Cir. April 26, 2011); *Blanchard v. Bergeron,* 489 U.S. 87, 93-94 (1989).

Thus, although Mr. Navasca was charged a significantly reduced rate for his defense in this matter, the calculations herein are based on a reasonable hourly rate for counsel's services of $250/hour.  This rate has previously been determined as reasonable in this precise context, as more fully described on the Ranallo Declaration, filed concurrently herewith.  These calculations are a conservative estimate compared to the Laffey Matrix, which has previously been used as a basis for calculating reasonable fees in this district.  For example, in *HPL Technologies, Inc. Securities Litigation*, Chief Judge Walker described the Laffey Matrix as a "well-established objective

source for rates that vary by experience," and used the Laffey rates to establish reasonable attorney fees in this district.  *HPL Technologies, Inc. Securities Litigation,* 366 F.Supp.2d 912 (N.D. Cal. 2005).  In so doing, the court recognized that the Laffey rate would tend to undercompensate attorneys in this district, and noted that "adjusting the Laffey matrix figures upward by approximately 9% will yield rates appropriate for the Bay Area." *Id.*

Mr. Ranallo has reasonably expended at least 66.25 hours in defense of this action. Notably, this sum does not include numerous phone calls and emails between attorney and client, and countless hours of generalized research regarding plaintiff, its counsel, and the myriad suspect relationships at play in these suits.  A more detailed breakdown of these hours can be found in the Ranallo Declaration and Exhibits thereto.  When multiplied by the hourly rate of $250, an attorney fee amount of $16,562.50 is reached for Mr. Ranallo.

In addition, Mr. Pietz incurred reasonable attorney fees in the amount of $2880.00 in his role as co-counsel in the instant action.  Mr. Pietz has a wealth of knowledge regarding AF Holdings, Steele Hansmeier/Prenda Law and the other major players in this matter, and was retained to provide this expertise in support of AF Holdings 30(b)(6) deposition.  In addition, Mr. Pietz incurred recoverable expenses in the amount of $425.80 associated with travel to the deposition.  Mr. Pietz' costs and fees, and the basis therefore, are detailed more fully in the Pietz Declaration, filed concurrently herewith (and previously filed at ECF No. 68).

Finally, Mr. Navasca has incurred $2385.75 in costs and expenses, including $321.25 for ½ of the cost of the creation of a "mirror image" of his hard drive, and $2064.50 in total deposition costs for copies of his own deposition transcript and the costs associated with conducting AF Holdings 30(b)(6) deposition.  These costs are detailed more fully on the Ranallo Declaration and exhibits thereto.

In light of the foregoing, Mr. Navasca seeks recovery of $22,254.05 in attorney's fees and costs reasonably incurred.

# IV.    CONCLUSION

For the reasons outlined herein, Defendant respectfully requests an attorney fee award in the amount of $22,254.05 to reimburse for reasonable attorney fees and costs incurred in his defense.  Mr. Navasca is the prevailing party in this action, based on the final dismissal of all claims against him and this court's Entry of Judgment on May 21, 2013.  Moreover, an analysis of the relevant factors governing an award of fees strongly supports an award of fees in the instant matter, pursuant to 17 U.S.C. §505 and this court's equitable discretion.

DATED: June 4, 2013               Respectfully Submitted,

NICHOLAS RANALLO, ATTORNEY AT LAW

By:_____/s/ Nicholas Ranallo
Nicholas Ranallo (Cal Bar #275016)
Attorney for Joe Navasca
371 Dogwood Way,
Boulder Creek, CA 95006
P: 831.703.4011
F: 831.533.5073
nick@ranallolawoffice.com

20

1

2
**CERTIFICATE OF SERVICE**

3
THE UNDERSIGNED HEREBY CERTIFIES that on this 4th day of June, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system and served on all of those parties receiving notification through the CM/ECF system.

4

5

6
/s/          Nicholas R. Ranallo

7
Nicholas Ranallo, Attorney at Law

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28