1   Duffy (Bar No. 224159)
    2 N. LaSalle Street, 13th Floor
2   Telephone: (800) 380-0840
    E-mail: paduffy@wefightpiracy.com
3
    *Attorney for Plaintiff*
4

5

6                  IN THE UNITED STATES DISTRICT COURT FOR THE

7                      NORTHERN DISTRICT OF CALIFORNIA

8   AF HOLDINGS LLC,                    )      **No. 3:12-CV-02396-EMC**
                                        )
9                                       )      **PLAINTIFF RESPONSE TO**
                                        )      **DEFENDANT'S MOTION FOR COSTS**
10              Plaintiff,              )      **AND ATTORNEY FEES**
                                        )
11          v.                          )
                                        )
12  JOE NAVASCA,                        )
                                        )
13                                      )
                                        )
14              Defendant.              )
    _____ )

15

16          Defendant's motion for costs and attorney fees should be denied in its entirety or

17  substantially reduced. (ECF No. 84.) Defendant seeks $22,254.05 in costs and fees as a result of his

    participation in this litigation. (*Id.*) Yet, the misconduct of Defendant's counsel in this action and
18
    Defendant's counsel's attempt at triple-billing justify not awarding Defendant any fees or costs.
19
                                  **FACTUAL BACKGROUND**
20
            Plaintiff initiated this action by bringing allegations of copyright infringement under the
21
    Copyright Act and related contributory infringement and negligence claims against an unknown
22
    defendant. (ECF No. 1.) Plaintiff sought, and the Court granted, discovery to identify the unknown
23
    defendant. (ECF Nos. 4, 6.) Once Plaintiff identified the infringing party, Plaintiff amended its
24
    complaint and named Joe Navasca as the Defendant in this action. (ECF No. 13.) Defendant brought
25
    a motion to require Plaintiff to post an undertaking to proceed in this action. (ECF No. 22.) The
26
    Court granted Defendant's motion and required Plaintiff to post an undertaking of $50,000.00 with
27
    the Court. (ECF No. 51.) Plaintiff was unable to pay the $50,000.00 toll, and, as a result, moved to
28
    dismiss its case against Defendant without prejudice. (ECF No. 62.) The Court granted Plaintiff's

1    motion to dismiss, but dismissed the case with prejudice. (ECF No. 76.) Defendant has now filed a

2    motion for attorney's fees and costs seeking $22,254.05. (ECF No. 84.)

3          Prior to the dismissal, the parties filed a Joint Case Management Conference Statement with

4    the Court. (ECF No. 19).  In that filing, in the "Evidence Preservation" section, Defendant's attorney

5    stated the following: "Mr. Navasca is aware of his obligation to preserve relevant evidence,

6    including electronic evidence, and has every intention of complying with this obligation." (*Id.* at 6.)

7    On December 14, 2012, the parties issued another Joint Case Management Conference Statement.

8    (ECF No. 31). In that filing, in the "Evidence Preservation" section, Defendant's attorney again

9    stated the following: "Mr. Navasca is aware of his obligation to preserve relevant evidence,

10   including electronic evidence, and has every intention of complying with this obligation." (*Id.* at 10.)

11   Plaintiff deposed Defendant on January 14, 2013. (ECF No. 38-1 ¶ 2.) During his deposition,

12   however, Defendant stated under oath that he had personally installed the CCleaner application on

13   every computer in his household, including his own personal computer. (ECF No. 42-1 at 2-6, 10.)

14   Defendant also stated that he continued to run CClearner weekly from the time he first got his

15   computer up until the date of his deposition to aid in his deletion of electronically stored information

16   ("ESI") including, but not limited to, video files and other media from his computer. (*Id.* at 2-4.)

17   When asked if anyone had ever instructed him as to his obligation to preserve evidence, Defendant

18   responded *he had not been informed* of this obligation. (*Id.* at 6-7, 11-13.)

19                                    **LEGAL STANDARD**

20         The Copyright Act permits a court to award attorney fees and costs to the prevailing party. 17

21   U.S.C. § 505. The award of attorney's fees is discretionary. *Id.* ("the court may also award a

22   reasonable attorney's fee to the prevailing party as a part of the costs."); *Fogerty v. Fantasy Inc.,* 510

23   U.S. 517 (1994) (explaining that the decision to award attorney fees to a prevailing party is left to the

24   sound discretion of the trial court). In exercising their discretion, courts looks to various non-

25   exclusive factors approved by the Supreme Court, including "frivolousness, motivation, objective

26   unreasonableness (both in the factual and legal components of the case) and the need in particular

27   circumstances to advance considerations of compensation and deterrence." *Id.* at 534, n.19.

28

Further, under the Copyright Act, a court may award a prevailing party its reasonable attorney's fees only if the "imposition of fees will further the interests of the Copyright Act." *Mitek Holdings, Inc. v. Arce Engineering, Co., Inc.*, 198 F.3d 840, 842 (11th Cir. 1999); *see also Fogerty*, 510 U.S. at 526-28 (discussing the propriety of attorney's fees under the Copyright Act in light of the Act's policy goals). The Copyright Act aims "to stimulate artistic creativity for the public's ultimate good." *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 156 (1975). "It is peculiarly important that the boundaries of copyright law be demarcated as clearly as possible." *Fogerty*, 510 U.S. at 527. "To that end, defendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement." *Id.* The policies of the Copyright act are furthered if a successful claim or defense increases public exposure to a creative work. *See id.*

## ARGUMENT

Defendant's counsel has engaged in misconduct before the Court. Defendant testified, under oath, that he used CCleaner to destroy electronically stored information ("ESI") on the computers within his household. (ECF No. 42-1 at 2-6.) Further, Defendant testified that he was never informed of his obligation to preserve evidence pending this litigation. (*Id.* at 6-7, 11-13.) This is wholly contrary to Defendant's counsel's representations that Defendant was "aware of his obligation to preserve relevant evidence, including electronic evidence, and has every intention of complying with this obligation." (ECF Nos. 19, 31.)

Although Plaintiff would strongly prefer to prosecute Defendant for copyright infringement, Plaintiff is simply unable to pay the $50,000.00 toll imposed by the Court. Defendant's counsel should not be rewarded with unbilled attorney's fees and costs for doing nothing more than persuading the Court to impose a $50,000.00 undertaking.

The Court should deny Defendant's motion.  First, the Court should not discretionarily award attorney's fees and costs because: 1) Plaintiff's claims were not frivolous, brought with malicious motivation, or objectively unreasonable; and 2) an award could not advance considerations of compensation and deterrence. Second, the imposition of fees will not further the interests of the Copyright Act. Third, Defendant's attorney seeks fees and costs for duplicative work.

1
2

## I. THE COURT SHOULD NOT DISCRETIONARILY AWARD ATTORNEY'S FEES AND COSTS

3

4   The Court should not award Defendant an award of attorney's fees and costs. Plaintiff's

5   claims were not frivolous, brought with malicious motivation, or objectively unreasonable. An

    award would not advance considerations of compensation and deterrence.

6   ### A. Plaintiff's Claims Were Not Frivolous, Brought With Malicious Motivation, or Objectively Unreasonable

7

8   The decision to award attorney fees and costs to the prevailing party in a copyright

9   infringement case is discretionary. 17 U.S.C. § 505. In exercising that discretion, courts looks to

10  various non-exclusive factors approved by the Supreme Court, including "frivolousness, motivation,

11  objective unreasonableness . . . ." *Fogerty.*, 510 U.S. at 534, n.19. Plaintiff addresses each of these

12  factors below.

13  ### 1. Plaintiff's claims were meritorious.

14  Plaintiff brought claims it believed were meritorious against the Defendant—the claims were

15  brought with the intent to hold Defendant liable for his infringing activities. Even though Plaintiff

16  moved to dismiss the case without prejudice, Plaintiff has little doubt that Defendant committed the

17  acts alleged in the complaint. As Plaintiff learned at Defendant's deposition, for example, Defendant

18  is the only member of his household who possesses the computer savvy required to use BitTorrent.

19  The only reason why Plaintiff did not prosecute Defendant is that the Court imposed a $50,000.00

20  toll on Plaintiff before allowing it to do so. This precluded Plaintiff from prosecuting its claim. The

21  Court should not agree with Defendant's attempt to conflate likelihood of success on the merits with

22  ability to pay such an extreme toll.

23  Defendant argues that Plaintiff's claims are frivolous because "Alan Cooper, the purported

24  signatory of the assignment [agreement] in this case, has denied under oath that he executed the

25  document." (ECF No. 84 at 9.) What Defendant fails to inform this Court about are the

26  circumstances under which Mr. Cooper's testimony was procured. According to Cooper, he did not

27  initiate his repudiation spontaneously. Instead, he initiated his repudiation only after he received an

28  unsolicited text message, which informed him that he was in trouble and needed to call attorney Paul

Godfread—someone who was a total stranger to him at the time.  *See* Wright Transcript Excerpt at 5-6, attached hereto as Exhibit D. Based on the events that transpired, including Cooper's remarkable willingness to testify in cases around the United States and the lawsuit he initiated against John Steele and others, one can surmise that Cooper's repudiation was orchestrated by attorney Godfread and other pro-piracy advocacy groups.

Further, even if Mr. Cooper's testimony was credible—which Plaintiff believes it is not—there can be no question that the assignment agreement is valid. There is no dispute that assignor Raymond Rogers' signature is valid, and the law of copyright requires only a signature from the assignor for the assignment agreement to be valid. 17 U.S.C.  204; *Effects Associates, Inc. v. Cohen*, 908 F.2d 555, 557 (9th Cir. 1990) ("The rule is really quite simple: If the copyright holder agrees to transfer ownership to another party, that party must get the copyright holder to sign a piece of paper saying so. It doesn't have to be the Magna Charta; a one-line pro forma statement will do."). Indeed, another court in this district weighed in on a similar assignment agreement:

> The written copyright assignment recites that it is between the original copyright owner, Heartbreaker Films, and Plaintiff here, AF Holdings, LLC. While the assignment is signed by a representative of the assignors, it is not signed by a representative of the assignee, AF Holdings, LLC. Instead, it is signed by a representative of AF Films, LLC. As the law requires only that the assignment be signed by the assignor and not the assignee . . . this inconsistency does not prevent a prima facie showing of copyright ownership.

*AF Holdings LLC v. Does 1-96*, No. 11-cv-3335-JSC (N.D. Cal. Nov. 22, 2011), ECF No. 29 at 5 n.1 (internal citations omitted). Plaintiff inability to post an undertaking of $50,000.00 does not go to the merits of its claims against Defendant.

### 2.  Plaintiff's motivation for its claims is to protect its copyrighted work.

Plaintiff's motivation for initiating this action was to protect its copyrighted work from the epidemic-scale level of infringement that is destroying the value of its copyright. (ECF No. 13.)  In support of his malicious motivation argument, Defendant argues that Plaintiff is purposefully uploading its copyrighted works for the infringers to download. (ECF No. 84 at 10-11.)  Defendant's argument is the latest installment of attorney Ranallo's efforts to misdirect federal courts away from the merits of copyright infringement claims by raising specious and factually insupportable claims of

fraud, forgery and deceit.  For the sake of the record, attorney Ranallo has attempted to gin up controversy regarding Alan Cooper (who appears to have been recruited by one of attorney Ranallo's cohorts to become a witness against Plaintiff), the red herring "Salt Marsh" issue and now a "honeypot" theory that is supported by nothing more than the declaration of a mysterious individual—who, by no small coincidence, will ostensibly not be available for cross-examination in this case. While these tactics were arguably successful in *Ingenuity13 LLC v. John Doe*, No. 2:12-cv-08333 (C.D. Cal. 2012), other federal courts nationwide have rejected these tactics.

But Federal litigation is not a game practiced by children.  The Federal Rules of Evidence and Civil Procedure prevent that.  The latest effort at misdirection is this "honeypot" falsehood:  that either 6881 Forensics or Plaintiff purposefully provide copyrighted works available to downloaders in an effort to induce infringement.  This is based upon a "declaration" of someone identifying himself as Delvan Neville. (ECF No. 84-4.) As an initial matter, Mr. Neville provides no reason why his "declaration" should be accorded any weight in his matter. For example, Mr. Neville does not provide any indication that he knows anything about computers or BitTorrent technology.  (*See generally* ECF No. 84-4.) Mr. Neville does not state that he has a relevant professional background. (*See generally id.*) Mr. Neville does not even provide his address or any other identifying information for either himself or his unincorporated company. (*See generally id.*) There is nothing to indicate that Mr. Neville has any basis for making any of the statements in his declaration.

Indeed, Mr. Neville's "declaration" was not procured by Defendant for this case, but was procured by attorney Graham Syfert in *First Time Videos, LLC v. Paul Oppold*, No. 6:12-cv-01493 (M.D. Fla. 2012). Attorney Syfert, who has admitted to acting solely for purposes of personal pecuniary gain, has a highly checkered past in the copyright defense field. He has previously instructed law firms representing copyright holders to "hire [him] or eat s___" and has repeatedly threatened to accuse litigants of misconduct if they do not pay him to forego such baseless allegations, a clear ethical violation in most states in the Nation.  (*See, e.g.,* Syfert E-mail, attached hereto as Exhibit A.) Attorney Syfert's proudly-held ethical lapses clearly undermine Mr. Neville's "declaration," which Syfert gained, by his own admissions, to get some fast cash.

Mr. Neville's ultimate (and baseless) conclusion is that 6881 Forensics might have operated a honeypot. This conclusion is debunked by key admissions in Mr. Neville's "declaration." Mr. Neville explains that he was *passively*, and not *actively*, monitoring the BitTorrent swarm. (ECF No. 84-4 ¶ 2) ("I was contacted by the Defendant's counsel and requested to passively gather data regarding the use of a BitTorrent monitoring system . . . ."). As a result, Mr. Neville never gained actual evidence of seeding.  Instead, he relies on inferences from indirect measures. (*Id.* ¶ 5 n.2) ("Due to the passive nature of the soak for fear of claims of copyright infringement, EUPSC2k did not accept offers, made by the 6881 peer, to download pieces of these works."). There is no way Mr. Neville can credibly conclude any member of a BitTorrent swarm uploaded any part of a copyrighted work when he employed passive monitoring techniques. *See* Michael Piatek, et al., *Challenges and Directions for Monitoring P2P File Sharing Networks or Why My Printer Received a DMCA Takedown Notice*, Proceedings of the 3rd Conference on Hot Topics in Security, p. 1-7 (July 29, 2008), attached hereto as Exhibit B (explaining the numerous problems with passive monitoring). The great irony of Mr. Nevilee's "declaration" is that his passive monitoring methods are the same ones that pro-piracy organizations have long decried as unreliable. *Id.* In this paper, researchers from the University of Washington criticized the passive monitoring techniques employed by agents for the Recording Industry Association of America as unreliable because the indirect evidence gained by these methods was, *inter alia*, prone to false positives. As a proof-of-concept demonstration, the researchers managed to "place" their printer in a BitTorrent swarm, which caused their printer to receive DMCA takedown notices. *Id.*

The methods used in the software employed by 6881 Forensics are active monitoring techniques. *See* Kevin Bauer, et al., *BitStalker: Accurately and Efficiently Monitoring BitTorrent Traffic*, University of Colorado, Boulder, CO, USA (2009) (describing the process of monitoring a BitTorrent swarm), attached hereto as Exhibit C. Thus, unlike Mr. Neville, 6881 Forensics gains direct evidence of infringement that is not susceptible to false positives. The software employed by 6881 Forensics does not upload pieces of files to third-parties. *See* Ex. B at 2 ("Crucially, querying the tracker for a set of bootstrapping peers allowed us to determine membership in swarms and advertise our presence as a potential replica *without uploading or downloading any file data*

*whatsoever*."). However, it does *simulate* doing so via BitTorrent message exchanges. The reason it must do so is that BitTorrent employs a "tit-for-tat" system.  In other words, a member of the swarm must be an active participant in order to gain information on other members of the swarm. One option is to actually upload pieces of a file. Another option is to simulate doing so via custom BitTorrent message exchanges—the latter option, of course, is far less expensive from a bandwidth perspective. Mr. Neville's statement that he detected "anomalous behaviors" that "include unusually aggressive requests, falsified or rotating bitfields, and falsified software identification" is entirely consistent with 6881 Forensics' software. (ECF No. 84-4 ¶ 12.) Mr. Neville's deduction based on that information, however, is patently absurd.

Furthermore, Mr. Neville's "opinions" are worthless given that his admissions that they are pure conjecture. *See, e.g.*, (ECF No. 84-4 ¶ 19) ("VPN, such inquiry concluded with a finding that it is *merely probable* the person responsible for the 6881 Forensics peer is actively commenting on those websites."); (*id.* ¶ 23) ("Such inquiry concluded with a finding that it is *likely* that the person responsible for the 6881 Forensics peer is actively commenting on those websites, such comments showing 'insider' information or bias toward Prenda Law."); (*id.* ¶ 26) (explaining that the copyrighted works "*could have* been gathered, pirated, and uploaded by sharkmp4 in any number of ways as *would be expected* in a typical episode of copyright infringement.") (emphasis added); (*id.* ¶ 47) ("*It appears* from all the evidence that John Steele (or someone under his control or with access to his Go-Daddy account records with authorization to make changes to domain names) is the *most probable* candidate for the identity of Pirate Bay user sharkmp4.") (emphasis added); (*id.* ¶ 48) ("The nature of 6881 Forensics software which appears to be seeding files . . . *suggests* that the identity of sharkmp4 may be *somehow linked* with an employee or agent of 6881 Forensics.") (emphasis added).

Mr. Neville's conclusions do not make logical, economic, or financial sense. If Mr. Neville were correct, and 6881 Forensics was seeding the copyrighted works for download by infringers (which it is not), it would cost significant amounts to pay for the hardware and bandwidth in support of this activity. On other hand, if 6881 was simply simulating swarm participation, which it is, then it could track millions of BitTorrent users for a negligible cost. Ex. C at 5 ("In fact, it's possible to

8

scale the active probing to monitor the entire Pirate Bay, which claims to track over 20 million peers. We estimate that this method can monitor the Pirate Bay for $12.40 (USD).").

### 3. Plaintiff's claims are objectively reasonable.

Plaintiff's claims in the underlyi8ng Complaint are objectively reasonable, and many U.S. District Courts Nationwide have found claims such as Plaintiff's to be valid and to properly form a basis for relief. *See, e.g.*, *AF Holdings LLC v. Nicholas Bossard*, No. 1:12-cv-01101 (W.D. Mich. Feb. 14, 2013), ECF No. 11 (finding Plaintiff's allegations to be well-plead and awarding default judgment against the defendant); *AF Holdings LLC v. Darryl Lessere*, No. 1:12-cv-22156 (S.D. Fla. Oct. 9, 2012), ECF No. 25 (awarding default judgment against the defendant in the amount of $153,770); *AF Holdings LLC v. Walter Szarek*, No. 2:12-cv-02134 (D. Ariz. Jan. 31, 2013), ECF No. 15. Defendant argues that Plaintiff's claims are unreasonable because Plaintiff failed to conduct an adequate investigation and raised unreasonable legal arguments throughout this matter. (ECF No. 84 at 12-14.) But it is Defendant, and not Plaintiff, that has acted inappropriately and raised unreasonable legal arguments in this action. Once again, Defendant testified, under oath, that he used CCleaner to destroy electronically stored information ("ESI") on the computers within his household. (ECF No. 42-1 at 2-6.) Defendant testified that he was never informed of his obligation to preserve evidence pending this litigation even though his counsel represented to the Court that Defendant "is aware of his obligation to preserve relevant evidence, including electronic evidence, and has every intention of complying with this obligation." *Compare* (*id.* at 6-7, 11-13) *with* (ECF Nos. 19, 31). It was Plaintiff who was forced to front an undertaking far in excess of what it could reasonably expect to recover simply to assert its claims, even where Defendant made its case easier by destroying evidence of its misconduct in violation of its obligations as a litigant and its counsel's incorrect statements that it was preserving the very evidence it was systematically destroying. But Defendant has admittedly destroyed the information essential to Plaintiff's case and made demonstrably false statements to the Court regarding material issues. Defendant should not be rewarded for this misconduct and Plaintiff should not be required to pay Defendant's costs when Plaintiff has acted reasonably, but Defendant has not.

### B. An Award Would Not Advance Considerations of Compensation and Deterrence

In exercising the discretion to award attorney's fees and costs in a copyright infringement case, courts looks to various non-exclusive such as "the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty.*, 510 U.S. at 534, n.19. There is nothing for the Court to deter here, because Plaintiff brought meritorious claims against the Defendant. Plaintiff is confident that Defendant committed the actions alleged in Plaintiff's amended complaint, but it was simply unable to post an undertaking of $50,000.00 with the Court in order to litigate its meritorious claims. An award of attorney's fees and costs here would simply deter the filing of meritorious copyright infringement claims. That is not the goal of the statute. *Lieb v. Topstone Industries, Inc.*, 788 F. 2d 151, 156 (3rd Cir. 1986) ("We emphasize that the aims of the statute are compensation and deterrence where appropriate, but not ruination."). Even if there was something to deter, Plaintiff has already been deterred. Plaintiff cannot afford to post an undertaking each time it seeks to litigate its claims. (ECF No. 62.) Further deterrence through an award of attorney's fees is, therefore, unnecessary.

## II. DEFENDANT HAS NOT FURTHERED THE INTERESTS OF THE COPYRIGHT ACT

Under the Copyright Act, a court may award a prevailing party its reasonable attorney's fees only if the "imposition of fees will further the interests of the Copyright Act." *Mitek Holdings, Inc.*, 198 F.3d at 842; *see also Fogerty*, 510 U.S. at 526-28 (discussing the propriety of attorney's fees under the Copyright Act in light of the Act's policy goals). This matter action has not furthered— much less implicated—the interests of the Copyright Act. The substance of every pleading filed by Defendant has consisted of primarily *ad hominem* attacks against Plaintiff and its counsel. (ECF Nos. 22, 37, 66, 84.) The Court dismissed this case with prejudice due to Plaintiff's inability to post an undertaking of $50,000 with the Court. (ECF Nos. 76, 83.) Nothing was litigated regarding the merits of Plaintiff's copyright infringement claims or Defendant's defenses. No successful claim or defense increased the public's exposure to a creative work. Therefore, the policy goals of the Copyright Act have not been furthered in this action. *Twentieth Century Music Corp.*, 422 U.S. at 156 (explaining that the Copyright Act aims "to stimulate artistic creativity for the public's ultimate good."). The Supreme Court has recognized the peril posed by digital piracy. *See Metro-Goldwyn-*

*Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 928 (2005) (citing the concern "that digital distribution of copyrighted material threatens copyright holders as never before.'). The enforcement efforts of companies like Plaintiff further the goals of the Copyright Act by reversing the "disdain for copyright protection [brought about by mass-digital piracy]." *Id*. at 929. Defendant fails to cite to any case that would support an award of fees under the circumstances here. (*See generally* ECF No. 84.) Defendant's motion for costs and fees should be denied.

## III.     DEFENDANT'S ATTORNEY SEEKS FEES AND COSTS FOR DUPLICATIVE WORK

Defendant's attorney has already sought and received an award of attorney's fees and costs for the exact work he has performed in this case. In *AF Holdings, LLC v. David Trinh*, attorney Ranallo filed the same briefs, raised the same arguments, and performed the same work before that court as he did here. *Trinh*, No. 3:12-cv-02393 (N.D. Cal. 2012). For example, Defendant's counsel filed the exact same motion to post undertaking in both cases. *Compare* (ECF No. 22) *with Trinh*, No. 3:12-cv-02393 (N.D. Cal. Oct. 5, 2012), ECF No. 20. He also filed the same motion for attorney fees and costs in both cases. *Compare* (ECF No. 84) *with Trinh*, No. 3:12-cv-02393 (N.D. Cal. Mar. 22, 2013), ECF No. 51. The court in *Trinh* already awarded Defendant's attorney his alleged attorney's fees and costs for his work in that case. *Id.*, ECF No. 58.[1] Defendant's attorney should not be entitled to attorney's fees and costs for duplicative work.

But that is exactly what attorney Ranallo is attempting to do here—attorney Ranallo seeks to be awarded multiple times, in multiple cases, for drafting the same motions and doing the same work. For example, attorney Ranallo claims he spent a total of 7.0 hours completing his motion for undertaking:

| | | |
|---|---|---|
| 12/8/12 | 4.0 Hours | "Began drafting Motion for Non-Resident Undertaking" |
| 12/10/12 | 1.0 Hours | "Drafting and procuring signatures for declarations in support of undertaking" |
| 12/12/12 | 2.0 Hours | "Complete, edit, and file Motion for Undertaking" |

---

[1] This order is currently being appealed. *Trinh*, No. 3:12-cv-02393 (N.D. Cal. June 6, 2013), ECF No. 60 (Notice of Appeal).

(ECF No. 85-4 at 1-2.) This is the exact same 7.0 hours attorney Ranallo claims he spent in the *Trinh* case:

        9/24/12        4.0 Hours      "Drafting and follow-up research re: Undertaking"

        10/4/12        3.0 Hours      "Final Drafting/editing/filing of Motion for Undertaking and supporting declarations."

*Trinh*, No. 3:12-cv-02393 (N.D. Cal.  Mar. 22, 2013), ECF No. 51-14 at 2. Attorney Ranallo further seeks an award of 2.5 hours of fees for his work on his motion for attorney's fees:

        6/1/13        1.0 Hours      "Began drafting Motion for Attorney Fees"

        6/4/13        1.5 Hours      "Completed and filed Motion for Attorney Fees"

(ECF No. 85-4 at 2.) The same motion was filed in the *Trinh* case and attorney Ranallo already sought and received fees for this motion, and even included the same entries on his fee sheet:

        3/19/13        1.0 Hours      "Begin drafting Motion for Attorney Fees"

        3/22/13        2.5 Hours      "Complete and file Motion for Attorney Fees and Supporting documents."

*Trinh*, No. 3:12-cv-02393 (N.D. Cal.  Mar. 22, 2013), ECF No. 51-14 at 3. Attorney Ranallo cannot credibly claim that he is entitled to multiple fee awards when he essentially simply changed the caption on his motions.

      The only matter unique and distinct to this case, and not covered in *Trinh*, that attorney Ranallo would arguably be entitled to in this case, is the 9.5 hours attorney Ranallo spent on the deposition of Plaintiff:

        2/19/13        8.0 Hours      "AF Holdings 30(b)(6) Deposition"

        3/5/13        1.5 Hours      "Review of Hansmeier Deposition Transcript"

(ECF No. 85-4 at 2.) This deposition, however, was not taken or used for the instant case, but was taken for its use in *Ingenuity13 LLC v. John Doe*, No. 2:12-cv-08333 (C.D. Cal. 2012). And within moments of when the deposition transcript was available, Defendant's counsel had allowed it to be plastered on the internet (without even obscuring the deponent's home address), thus showing an ulterior, and improper, purpose in having taken the deposition.  Attorney Pietz, an attorney for John Doe in the *Ingenuity13* case, filed his appearance—even though he had no previous connections to

this case—on February 14, 2013, solely to take the haphazard and amateurish Rule 30(b)(6) deposition.  The questions by both attorneys Pietz and Ranallo (repeated over and over again, *ad nauseum,* irrespective of the fact that neither could specify where in the Rule 30(b)(6) notice they requested testimony on such information) focus minimally on the proceedings in the instant case and instead focused on Plaintiff's business model and individuals associated with Plaintiff. (*See generally* ECF No. 84-3.) While the deposition was at the forefront of the *Ingenuity13* case, the deposition was only cited twice in the instant case and was done so with respect to the *Ingenuity13* case. (*See, e.g.*, ECF No. 66-8 at 6) ("Mere hours after Mr. Hansmeier's deposition concluded, Mr. Gibbs filed his response to Judge Wright's Order to Show Cause, discussed above."). Attorney Ranallo should not be permitted to obtain the 9.5 hours of fees for work that was essentially done for a clearly improper purpose and used in a different case.[2]

Perhaps understanding that he should not be permitted to obtain multiple awards for doing the exact same work, attorney Ranallo filed a motion for attorney's fees in *AF Holdings, LLC v. Andrew Magsumbol*, and sought a more accurate amount of $3850 for his work in that case. No. 3:12-cv-04221 (N.D. Cal. June 13, 2013), ECF No. 55-4. For example, attorney Ranallo excludes any mention of hours incurred drafting his same motion for undertaking in the *Magsumbol* case, even though he seeks it here. No. 3:12-cv-04221 (N.D. Cal. June 13, 2013), ECF No. 55-4.[3] Even if Defendant were entitled to attorney's fees and costs in this case—which he is not—the amount should be reduced to no more than $3850 as this amount is a far more accurate reflection of the work actually performed in this case. Attorney Ranallo's attempts to mislead the Court and obtain double, and even triple, fees from Plaintiff is reprehensible and not becoming of an officer of the Court. The Court should not award Defendant any attorney's fees or costs, but if it is inclined to do so, it should greatly reduce the award sought by attorney Ranallo due to his repetitious work across multiple

---

[2] Attorney Ranallo also seeks $1917.00 in costs associated with the deposition of Plaintiff. (ECF No. 85-4 at 1.) This request is likewise improper and should be excluded from his attorney's fees and costs request.

[3] Oddly, Attorney Ranallo does seek to be awarded a *third* time for his work on his exact same motion for attorney's fees and costs in the *Magsumbol* case. No. 3:12-cv-04221 (N.D. Cal. June 13, 2013), ECF No. 55-4 (seeking to be compensate for the 2.5 hours that he "Draft Motion for Attorney Fees").

1   cases and the fact that he was already been rewarded for the vast majority of the work in *Trinh*, No.

2   3:12-cv-02393 (N.D. Cal.  2012).

3   Finally, the Court should completely deny the $3,305.80 fees and costs sought by attorney

4   Pietz. (ECF No. 86.) Attorney Pietz was already granted his attorney's fees and costs for his work in

5   regards to *Ingenuity13 LLC v. John Doe*, No. 2:12-cv-08333 (C.D. Cal. May 6, 2013), ECF No. 130.

6   As explained above, the entirety of attorney Pietz's participation in the instant case was actually for

7   the Ingenuity13 proceedings. Like attorney Ranallo, attorney Pietz cannot obtain two awards for the

8   same attorney's fees and costs.

9                                      **CONCLUSION**

10  The Court should deny Defendant's motion. The Court should not discretionarily award

11  attorney's fees and costs because: 1) Plaintiff's claims were not frivolous, brought with malicious

12  motivation, or objectively unreasonable; and 2) an award could not advance considerations of

13  compensation and deterrence. The imposition of fees will further the interests of the Copyright Act.

14  Defendant's attorney seeks fees and costs for work that was performed for improper purposes

15  unrelated to this litigation, and for which he has been awarded costs in other proceedings.

16

17

18                                      Respectfully Submitted,

19                                      AF Holdings, LLC

20  DATED: June 18, 2013

21                          By:     /s/  Paul Duffy
22                                  Paul Duffy (Bar No. 224159)
                                    2 N. LaSalle Street, 13th Floor
23                                  Telephone: (800) 380-0840
                                    E-mail: paduffy@wefightpiracy.com
24                                  Telephone: (800) 380-0840
                                    E-mail: paduffy@wefightpiracy.com
25                                  *Attorney for Plaintiff*

26

27

28

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on June 18, 2013, all individuals of record who are deemed to have consented to electronic service are being served a true and correct copy of the foregoing document, and all attachments and related documents, using the Court's ECF system.


                                                    /s/  Paul Duffy

RESPONSE TO MOTION FOR COSTS AND ATTORNEY FEES          No. 3:12-CV-02396-EMC