Nicholas Ranallo, Attorney at Law #275016
371 Dogwood Way
Boulder Creek, CA 95006
Telephone No.: (831) 703 - 4011
Fax No.: (831) 533-5073
Email: nick@ranallolawoffice.com
Attorney for Defendant Joe Navasca

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AF HOLDINGS, LLC.,<br><br>      Plaintiff,<br><br>v.<br><br>JOE NAVASCA<br><br>      Defendants. | Case No. 3:12-cv-02396-EMC<br><br>**REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR ATTORNEY FEES AND COSTS PURSUANT TO 17 USC §505.** |

1

# TABLE OF CONTENTS

I. INTRODUCTION ..........................................................................................................................2

II. ARGUMENT................................................................................................................................2

    A. THE FOGERTY FACTORS ALL SUPPORT AN AWARD OF COSTS AND FEES IN THIS ACTION................................................................................................2

    B. AN AWARD OF COSTS AND ATTORNEY FEES FURTHERS THE PURPOSE OF THE COPYRIGHT ACT.................................................................................9

    C. DEFENDANT'S COSTS AND FEES ARE REASONABLE AND NECESSARILY INCURRED..........................................................................................11

    D. DEFENDANT HAS INCURRED AN ADDITIONAL $1300 IN COSTS AND ATTORNEY FEES IN SUPPORT OF HIS REPLY...............................................15

III. CONCLUSION..........................................................................................................................15

# TABLE OF AUTHORITIES

**CASES**

*Atlantic Recording Corp. v. Anderson,* 2008 WL 185806 (D.Or. 2008).........................................10

*Capitol Records v. Foster,* 2007 WL 1028532 (W.D. Okla. 2007)................................................11

*Fogerty v. Fantasy Inc.,* 510 U.S. 517 (1994)..................................................................................2

*Ingenuity 13 v. Doe,* 2013 WL 1898633 (C.D. Cal. May 6, 2013)....................................................3

*Jackson v. Axton,* 25 F.3d 884, 890 (9th Cir. 1994).........................................................................2

*Riviera Distributors, Inc., v. Jones,* 517 F.3d 926, 928 (7th Cir. 2008)..........................................10

*Woodhaven Homes & Realty, Inc. v. Hotz,* 396 F.3d 822,824 (7th Cir. 2005)...............................11

## I. INTRODUCTION

On May 21, 2013, this Court entered judgment dismissing AF Holdings, LLC's claims against Joe Navasca in their entirety. On June 4, 2013, Mr. Navasca filed a motion seeking $22,254.05 in costs and attorney fees as the prevailing party, pursuant to Copyright Act §505. Mr. Navasca's motion outlined the relevant factors pursuant to the Supreme Court's decision in *Fogerty v. Fantasy Inc.,* and demonstrated Mr. Navasca's entitlement to fees pursuant to the relevant standard.

The Northern District of California has already awarded fees against AF Holdings in nearly identical circumstances. Nonetheless, on June 18, 2013, AF Holdings' filed its response herein, raising a number of specious and demonstrably false arguments, seeking to limit Mr. Navasca's right to fees in the instant case. In response, Mr. Navasca reasonably incurred an additional $1300 in order to create the instant reply. As such, and for the reasons that follow, Defendant respectfully requests that this court grant his motion for attorney fees pursuant to 17 U.S.C. §505 and award a total amount of $23,554.05 in recoverable costs and fees.

## II. ARGUMENT

### A. THE FOGERTY FACTORS ALL SUPPORT AN AWARD OF COSTS AND ATTORNEY FEES IN THIS ACTION

As laid out at length in Defendant's original Motion for Attorney Fees, a district court deciding whether to award attorney fees under the Copyright Act should consider "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty v. Fantasy Inc.,* 510 U.S. 517, 534 n.19 (1994). See also, *Jackson v. Axton,* 25 F.3d 884, 890 (9th Cir. 1994). Each of the factors endorsed by the Court in *Fogerty* supports an award of fees to Mr. Navasca in the instant case.

1. <u>Frivolousness</u>

As laid out in Defendant's original motion, and described further herein, Plaintiff's entire action can rightly be considered frivolous. Plaintiff's complaint, when combined with what we

have since learned, essentially states the following: "AF Holdings, an entity with no living beneficiaries that engages in no business beyond filing copyright lawsuits, has been damaged by unknown individuals that have downloaded the work that AF has received via a forged assignment of rights and then freely offered for download."

Plaintiff's opposition argues at several places that an award of fees would not be appropriate because (they claim) the sole reason for the dismissal in this case was their inability to post the required bond. In its order imposing an undertaking, this court correctly noted that AF "has offered no evidence to support its claim that it could not afford an undertaking" and "any naked claim of inability to pay must be taken with a grain of salt, if only because AF has chosen to initiate multiple cases throughout the country..." ECF No. 51, pg. 5. Moreover, this court explicitly gave AF Holdings the opportunity to seek reconsideration and present evidence of its inability to pay. ECF No. 51 at 6. Plaintiff chose not to do so, and has revived the argument about inability to pay solely as an attempt to avoid an award of fees.

As noted previously, AF Holdings *chose* to dismiss all of their remaining lawsuits after the Central District of California issued an Order To Show Cause demanding answers about the Alan Cooper fraud. Mr. Duffy recently stated in a declaration filed with the 9th Circuit that Prenda Law is "in the process of dismissing its remaining cases pursuant to the instructions of its clients." Exhibit A at ¶3. Nonetheless, Mr. Duffy argues in his opposition that, but for the bond imposed by this court, they would have litigated this matter to a successful conclusion. The truth, as Judge Wright recognized, is that AF Holdings has "shown little desire to proceed in these lawsuits when faced with a determined defendant. Instead of litigating, they dismiss the case. When pressed for discovery, the Principals offer only disinformation – even to the court." *Ingenuity 13, LLC v. Doe,* 2013 WL 1898633 at *2 (C.D. Cal. May 6, 2013).

Plaintiff and its counsel have already been sanctioned for their conduct in these cases, and have exercised their Fifth Amendment rights when called to explain the various frauds herein. *Id.*. In addition, AF Holdings' now faces additional sanctions hearings for submitting forged documentation to the court in the District of Arizona (*AF Holdings v. Harris,* Case No. 2:12-cv-

1  02144) the District of Minnesota (*AF Holdings v. Doe*, Case No. 0:12-cv-01445-JNE-FLN) , and
2  the Northern District of Georgia (*AF Holdings v. Patel*, Case No. 2:12-cv-00262). These are the
3  same forged assignments that form the basis of the instant action. The District of Minnesota has
4  even gone so far as to reopen AF Holdings' cases that were previously "voluntarily" dismissed,
5  and has ordered AF Holdings to provide the court with information about settlements that were
6  obtained from unwary John Does. A copy of the Minnesota Order to Show Cause is annexed
7  hereto as Exhibit B. Footnote three is instructive: "The Court notes that Mr. Dugas, counsel for
8  the plaintiff, voluntarily dismissed every single pending case he had in this District shortly after
9  Judge Wright's first show-cause hearing. Eleven cases were voluntarily dismissed after the
10 hearing." Indeed, if AF Holdings' claims cannot even support a settlement, such claims should
11 rightly be considered frivolous.

2. <u>Motivation</u>

Plaintiff's motivation in bringing these suits was also discussed at length in Defendant's previous motion and included the Declaration of Delvan Neville describing his investigation into Plaintiff's BitTorrent activity. His conclusion was that Plaintiff's agents were responsible for posting links on the Pirate Bay to their own works, in order to induce users to download the works. These works later become the subject of Prenda's copyright infringement lawsuits. Plaintiff's opposition to Defendant's Motion for Attorney's Fees attempts to downplay the significance of Mr. Neville's declaration, though they do not challenge many of the crucial conclusions. Plaintiff's opposition offers no declaration or other admissible evidence in opposition to Mr. Neville's declaration - only arguments that, quite often, miss the point. Mr. Neville has reviewed Plaintiff's response, and has responded in a second declaration that is filed concurrently herewith (hereinafter "Second Neville Dec.").

As Mr. Neville points out in his second declaration, Plaintiff's opposition does not challenge many of the fundamental conclusions of his first declaration, including the conclusion that individuals associated with John Steele and 6881 Forensics, using the alias "sharkmp4"

posting links on the Pirate Bay to many of the works that would later form the basis of Prenda Law's copyright infringement lawsuits (ECF 84-4 at ¶50). Indeed, many of these links were uploaded before the work was publicly available, and include tell-tale signs that the posted version came from someone with access to the "Master" version of the works (ECF 84-4 at ¶28).

Plaintiff attempts to undermine Mr. Neville's declaration by various means. First, they seek to attack his qualifications. However, each of their complaints applies equally to the Declaration of Peter Hansmeier, the sole basis for the request for early discovery that began this case. Compare ECF No 87 at 6, with Mr. Hansmeier's declaration, ECF No. 4-1. Plaintiff then argues that the instant declaration was obtained by an attorney that, like all attorneys that oppose Prenda, is morally impaired. Finally, AF Holdings makes several arguments about why Mr. Neville's conclusions should not be given *any* weight. As described in Mr. Neville's second declaration, however, Plaintiff's critiques are misplaced, and ignore the actual bases for Mr. Neville's original conclusions.

Mr. Neville's original conclusions are exhaustively supported. Defendant has concurrently filed Mr. Neville's first declaration standing alone, with all supporting exhibits that were included with Mr. Syfert's original filing. Defendant has also concurrently filed Mr. Neville's second declaration, prepared for the instant action. Mr. Neville's second declaration addresses each of Plaintiff's objections, and describes why they lack merit. For example, Plaintiff "conflates tracker communication and swarm communication," and attempt to confuse the court by citing to two articles that, as described by Mr. Neville, are correct but wholly irrelevant to Mr. Neville's declaration. Second Neville Dec. at ¶4. Mr. Neville's declaration takes apart Plaintiff's arguments regarding "indirect detection" and points out that he *directly communicated* with the 6881 peer, and observed its behavior. *Id.* Mr. Neville's declaration goes on to note that the 6881 peer's behavior does not behave as claimed by Plaintiff, but instead engages in several activities that are inconsistent with the "BitStalker" software that Plaintiff claims it is using. These include, importantly, 6881's prior claims in this action that it collects "granular level data" and can identify "the times and dates when a portion of the file was successfully downloaded on the infringer's

computer". Second Neville Dec. at ¶8-11. Finally, Mr. Neville's declaration then goes on to undermine a number of plaintiff's attempted explanations for its behavior, including the argument that seeding their own files would be cost-prohibitive. Second Neville Dec. at 15.

Plaintiff offers only argument to contradict Mr. Neville's declarations, and has submitted literally no evidence which would undermine his conclusions. Indeed, Plaintiff's present attempts to undermine Mr. Neville contradict the declaration of Peter Hansmeier – previously submitted in support of AF Holdings' request for early discovery. The simple fact is that AF Holdings' *is not* interested in deterring infringement, as it claims, but is instead seeking to profit from infringements that it has itself induced. This profit is gained by forcing internet subscribers into an impossible situation, and collecting the "cost of defense" settlements from those who are unwilling to go through the rigors of litigation. This is a flagrant abuse of the Copyright Act, not a proper motivation thereunder.

3.  Objective Unreasonableness of Factual and Legal Arguments

Plaintiff has taken numerous positions in this action that are unreasonable from a factual or legal perspective. Most of these are discussed at length in defendant's original Motion for Attorney Fees, and Defendant will simply remind the court that AF Holdings has effectively lost every motion that it has filed or opposed since Mr. Navasca joined this action.

Plaintiff's opposition to Defendant's Motion for Attorney's Fees continues the trend of unreasonable factual and legal arguments. Indeed, Plaintiff's opposition recites a number of arguments that have already been rejected in this action. Chief amongst these is Plaintiff's continued claims regarding evidence destruction via CCleaner. Plaintiff has previously forwarded this argument in a Motion to Compel (ECF No. 38), its supplemental opposition to the motion for undertaking (ECF No. 42), the Reply in Support of its Motion to Dismiss without Prejudice (ECF No. 70) and now its opposition to the instant motion (ECF No. 87). This argument has been rejected each time it has been offered. This court stated in its Order Imposing Undertaking (ECF No 51) that "AF has done little to establish that Mr. Navasca engaged in *improper* spoliation."

Judge Vadas went further in his Order Denying Motion to Compel (ECF No. 50), stating that "the court urges Plaintiff to review the facts very carefully before pursuing this avenue based solely on an EHow.com article. In particular, Plaintiff should review the expert declaration that Navasca filed with his letter brief, to fully understand the purpose and effect of CCleaner." ECF No. 50 at 2.

Plaintiff's opposition also includes other arguments that have already been rejected in this action. For example, Plaintiff's opposition states that "Defendant is the only member of his household who possesses the computer savvy required to use BitTorrent." ECF No. 87 at 4. Plaintiff does not point to any portion of the deposition that would support this conclusion – Mr. Navasca testified that there were no less than five computers (and six adult users) at his residence alone. Moreover, as this court has already stated "this argument is not very compelling because one does not need to be tech savvy in order to download information from a computer – or at least there is no evidence of such." ECF No. 51 at 5-6. Indeed, using BitTorrent requires almost no technical savvy. Mr. Neville's second declaration notes that a person must only be "capable of 1) clicking on a "download" link on any site offering a BitTorrent client, 2) clicking yes/next/finish to install it, just as they would install any software. While some degree of computer literacy is required, it is no more complicated than installing Microsoft Office or Adobe Acrobat..." Second Neville Declaration at ¶26. In reality, one must only be able to use Google and follow directions in order to use BitTorrent. This court is encouraged to conduct the query for itself, using its own level of computer literacy as a benchmark to evaluate AF Holdings' claim.

Finally, AF Holdings' argues that *it does not matter that it submitted a forgery,* since only the assignor must execute a copyright assignment. This court has already considered and rejected this argument (twice), noting in its order requiring an undertaking that:

> "As the Court stated at the hearing, even if there was a sufficient transfer for purposes of the Copyright Act, which focuses on proper authorization by the copyright transferor, not the transferee, that is a separate issue from (1) whether AF has Article III standing in this Court to assert infringement based on claimed ownership of the copyright at issue and (2) whether AF is a real party in interest with capacity and authority to sue. *See* Fed. R. Civ. P. 17. The "Alan Cooper"

issue raises serious questions that remain unanswered." ECF No. 51 at 3.

Insanity has famously been described as "doing the same thing over and over and expecting different results." Insanity is not the applicable standard for attorney's fees under Copyright Act §505, and AF Holdings' decision to continuously forward the same unsuccessful arguments is, at the very least, objectively unreasonable.

4. <u>The Need in Particular Circumstances to Advance Considerations of Compensation and Deterrence</u>

As detailed in Defendant's original motion, the final Fogerty factor is also the most important in the instant case. Plaintiff's opposition argues that deterrence is unnecessary, since it has already been required to post an undertaking. Plaintiff misses the point of the final factor. An award in this case would not only deter this particular Plaintiff (or this particular incarnation of AF Holdings and Prenda Law), but is also necessary to deter similarly situated Plaintiffs who would seek to bring similar fraudulent claims in order to take advantage of the Copyright Act's generous provisions for statutory damages. AF Holdings has undoubtedly made considerable money in settlement of its hundreds of dubious lawsuits[1]. Allowing AF Holdings to escape responsibility when its claims are defeated and its frauds are exposed would provide no financial disincentive to fraudulent behavior. The calculus would essentially be that when Plaintiff wins, it collects large settlements and when it loses, it breaks even. An economically rational actor would necessarily conclude that, all things considered, fraud is a lucrative business.

The Seton Hall Law Review published an article entitled "BitTorrent Copyright Trolling: A Pragmatic Proposal for a Systemic Problem." This article correctly notes that:

> "One of the most problematic elements of BitTorrent copyright litigation is that often the defendants simply do not have the money to fight the charges in court, even if they are factually innocent. The court should make defendants aware of certain remedies, which mitigate these concerns. First and foremost, the

---

[1] AF Holdings has sued well over 2000 defendants (two individual cases in the District of Columbia each contain more than 1000 Does). If only 10% of these chose to settle at the "standard" $3500 rate, this would amount to over $700,000 in settlement funds.

8
CV 12-2396-EMC Reply in Support of Defendant's Motion for Attorney's Fees

Copyright Act specifically allows courts to award attorney fees." *Seton Hall Law Review,* Vol. 43, Iss. 3, available at http://erepository.law.shu.edu/shlr.

Mr. Navasca made precisely this point in his motion for attorney fees – the prospect of prevailing party attorney fees is crucially important for a defendant facing unsupported copyright claims. Without the prospect of an attorney fee award for successful defendants, there is simply no way that any defendant can stand up and challenge Plaintiff's claims, even when they know that Plaintiff's claims are false or Plaintiff's activities are fraudulent.

For similar reasons, this court has a particular interest in compensating Mr. Navasca for defending himself in this action. Mr. Navasca's defense was instrumental in exposing AF Holdings' nation-wide fraud. The deposition taken in this case wholly undermined Plaintiff's claims regarding standing, and was paid for entirely by Mr. Navasca. Judge Wright deemed Mr. Hansmeier's deposition in this case "the most informative thing I have read in this litigation so far" and noted that "[t]here was so much obstruction during the course of this deposition that it is obvious that someone has an awful lot to hide..." March 11th Transcript at 5,7. Cited excerpts of the March 11th transcript are annexed hereto as Exhibit C.

Plaintiff's opposition argues that, because Mr. Hansmeier's deposition has been cited in multiple cases throughout the country, that is sufficient reason to deny him the costs incurred as a result of the deposition. The opposite is true. This court has a particular interest in compensating Mr. Navasca for the courage he has shown and the costs that he has been forced to incur, in order to expose the fraudulent claims against him (and others across the country).

**B.  AN AWARD OF COSTS AND ATTORNEY FEES FURTHERS THE PURPOSE OF THE COPYRIGHT ACT**

Next, Plaintiff argues that this court should not award attorney fees to Mr. Navasca since his defense his not furthered the purposes of the Copyright Act. As an initial matter, this argument was made almost verbatim in *AF Holdings v. Trinh,* in opposition to Mr. Trinh's motion for attorney fees. As described in defendant's original motion for fees, the situation in Trinh was nearly identical – Plaintiff's claims were dismissed, with prejudice, after AF Holdings' failed to post the required bond. Judge Breyer rejected Plaintiff's argument, repeated herein, that an award

9

of fees would not further the interests of the Copyright Act, and awarded over $9400 in attorney fees.

The Supreme Court has recognized that it is "peculiarly important that the boundaries of copyright law be demarcated as clearly as possible. To that end, defendants **who seek to advance** a variety of meritorious copyright defenses should be encouraged to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement" *Fogerty,* 510 U.S. 517, at 527 (emphasis added). Mr. Navasca sought to advance a number of meritorious defenses, including his own factual innocence and AF Holdings' lack of standing.

As the Supreme Court's statement demonstrates, a defendant must only "seek to advance" his meritorious defenses. The 7th Circuit has explicitly recognized that an award of fees is appropriate following a voluntary dismissal (without finally determining the substantive merits). The court stated that "[Defendant] obtained a favorable judgment. That this came about when [Plaintiff] threw in the towel does not make [Defendant] less the victor than it would have been had the judge granted summary judgment..." *Riviera Distributors, Inc., v. Jones,* 517 F.3d 926, 928 (7th Cir. 2008). Moreover, Plaintiff's opposition in this matter fails to recognize that, although the dismissal was the result of Plaintiff's failure to post an undertaking, the imposition of that undertaking followed an examination of the relative merits of the parties' claims and defenses.

*Atlantic Recording Corp. v. Anderson,* 2008 WL 185806 (D.Or. 2008), a peer-to-peer infringement case cited in defendant's original brief, further supports defendant's conclusion. The Plaintiff recording company in *Anderson*, like herein, argued that a fee award was inappropriate since the merits of that matter were never reached. As the court notes however, the Plaintiff's view "provides too little assurance that a prosecuting party won't deem an infringement claim unsupportable until after the prevailing defendant has been forced to mount a considerable defense, and undergo all that entails, including the incurring of substantial fees." *Id.* The court in *Anderson* determined that "awarding her fees would serve the underlying purposes of the Copyright Act" *Id.* at *10, and ultimately awarded over $100,000 in attorney's fees for the successful defense.

Similarly, , in *Capitol Records v. Foster*, 2007 WL 1028532 (W.D. Okla. 2007), a successful peer-to-peer infringement defendant was awarded substantial attorneys fees following a successful defense. The court in *Foster* approvingly quoted the 7th Circuit's recognition that a copyright defendant stands in a particularly precarious position since he "by definition receives not a small award, but no award, awarding fees becomes particularly important." *Id.* at *5, citing *Woodhaven Homes & Realty, Inc. v. Hotz,* 396 F.3d 822,824 (7th Cir. 2005). The court noted that "[W]ithout the prospect of such an award, the party might be forced into a nuisance settlement, or deterred all together from exercising his rights." *Id.* The court goes on to note that, like here, "Her only alternative to litigating...was to capitulate to a settlement for a violation she insists she did not commit. Such capitulation would not advance the aims of the Copyright Act..." *Id.*

## C. DEFENDANT'S COSTS AND FEES ARE REASONABLE AND NECESSARILY INCURRED

Finally, Plaintiff takes issue with particular elements of the costs and attorney's fees incurred by Defendant. As described below, Plaintiff's arguments are not supported by any factual basis, and must be rejected.

First, Plaintiff takes issue with the charges related to Mr. Navasca's Motion for an Undertaking, claiming that "Defendant's counsel filed the exact same motion to post undertaking in both cases." ECF No. 87 at 11. This is patently false (and Plaintiff's use of the word "exact" makes the falsehood all the more egregious). A copy of the motion filed in Trinh is annexed hereto as Exhibit D, and this court is encouraged to compare it with the motion filed herein. Many of the factual issues that were stressed in Mr. Navasca's motion were wholly unknown on October 5, 2012, when the Trinh motion was filed.

For example, the motion in the instant case contains a lengthy section entitled "How Plaintiff Proceeds to Identify the Infringer" that analyzes AF Holdings' November 10, 2012, response to an Order to Show Cause in another matter. ECF No. 22 at 11-14. The response that it discusses was not in existence at the time of the Trinh motion, and is not mentioned therein. AF

Holdings' efforts in *Hatfield,* which are likewise discussed in Mr. Navasca's motion, had not occurred at the time of the Trinh motion. The same is true for Alan Cooper. The first revelations regarding the Alan Cooper forgery did not come to light until November 29, 2012. Thus, the entire section of Mr. Navasca's motion, arguing that "Plaintiff Lacks Standing to Pursue This Action Based On An Apparently Faulty or Fraudulent Assignment" is thus wholly new to this motion (ECF No. 22 at 14 – 18). Finally, the motion in this case includes a lengthy discussion of Mark Lutz, based upon his in-court testimony in the Middle District of Florida on November 27, 2012. These sections did not arise in a vacuum. They were based on significant factual research into events that were rapidly transpiring contemporaneously with the instant case.

Mr. Navasca's motion also included a large amount of information that, although falling under general subject headings, was necessarily unique to this case. This includes the "Factual and Procedural Background of the Instant Suit" which, necessarily, includes the particular details of this case (ECF No. 22 at 5-6). The same is true for the section entitled "Defendant Herein Has Not Committed Copyright Infringement" (ECF No 22 at 18), and the declarations of Joe Navasca and Jovino Navasca. Each was original to this action and required drafting, communication and coordination with the client and third party.

Finally, this court is encouraged to compare the parts of the two motions that are substantially similar. Virtually every section that is similar is, nonetheless, rearranged and re-worked in for the motion in this case in an attempt to create the best possible product. The section entitled "Legal Authority" contains an expanded description of the 9th Circuit decision in *Kourtis v. Cameron*, and relevant references to the Trinh decision are included throughout the motion. Even minor changes take time.

Plaintiff's complaints with regard to the motion for attorney fees are also misplaced, and this court is likewise encouraged to compare the two. Notably, Defendant did bill less time for the instant motion than the motion in Trinh, and has only billed a minimal 2.5 hours in total for the motion in this case. This covers the time spent reviewing and editing the motion and creating a declaration and exhibits reflecting the work done in this case. In addition, the motion in the

12
CV 12-2396-EMC Reply in Support of Defendant's Motion for Attorney's Fees

instant case included wholly new material regarding the declaration of Delvan Neville and Mr. Hansmeier's deposition in this matter. Plaintiff's attempt to quibble with the 2.5 hours spent on the attorney fee motion in this action must therefore be rejected.

Plaintiff finally argues, quite incredibly, that "The only matter unique and distinct to this case, and not covered in *Trinh,* that attorney Ranallo would arguably be entitled to in this case, is the 9.5 hours attorney Ranallo spent on the deposition of Plaintiff." ECF No. 87 at 12. This statement is demonstrably false, and AF Holdings must know that it is false. The instant case involved a large number of issues, and a large number of "emergency" filings by AF Holdings, that were not made in the *Trinh* case. Discovery never even began in the *Trinh* case. As such, all discovery related expenses in this case were unique to this case. This includes not only the deposition of AF Holdings, but also the deposition of Mr. Navasca, which AF Holdings fails to mention. In addition, Mr. Navasca was forced to respond to a number of "emergency" motions by Plaintiff seeking to accelerate, and then terminate, discovery. Indeed, all of Mr. Navasca's time entries from January 11, 2013 to February 8, 2013, with one exception, were expended in response to Plaintiff's failed motions. That exception is the time required to attend the hearing on Mr. Navasca's Motion for Undertaking. One can assume that this court would not have countenanced a failure to appear at this hearing, regardless of the success of Mr. Trinh's case. Plaintiff likewise ignores fees related to personal appearances at the initial case management conference. Finally, Plaintiff filed an additional motion in this matter seeking to have the case dismissed, without prejudice. This required a response from Defendant, and attendance at a hearing on the motion.

Plaintiff's next argument is that the 30(b)(6) deposition of AF Holdings taken in this matter shouldn't be recoverable. Plaintiff claims that this deposition was not taken for the instant case. The simple fact, however, is that AF Holdings continued to assert that it would seek reconsideration of the bond requirement, and would introduce evidence to support its standing. As this court recognized when ordering the deposition to go forward "It is fair for Mr. Navasca to take the deposition because he is entitled to explore AF's contention that it does have standing to assert the claim for copyright infringement – an issue which informed the Court's prior decision to order

1  an undertaking by AF and which will be a part of AF's anticipation [sic] motion to reconsider."
2  ECF No. 56 at 1-2.  Indeed, it is no coincidence that AF Holdings' decided not to seek
3  reconsideration after Mr. Hansmeier's deposition .  The deposition virtually ensured that AF
4  Holdings' would not be able to demonstrate the requisite standing.  The fact that Mr. Hansmeier's
5  deposition was so incredible that it has been cited by attorneys and judges in other jurisdictions is
6  no reason to deny Mr. Navasca the costs incurred in taking it.

7  Plaintiff makes a somewhat related argument with regard to the charges  related to Mr.
8  Pietz participation in this case, arguing that "Attorney Pietz was already granted his attorney's fees
9  and costs for his work in regards to *Ingenuity 13 v. Doe...*"  ECF No. 87 at 14.  Mr. Pietz award in
10 that case, however, **did not** include any charges related to the deposition of Mr. Navasca.  See
11 Pietz Declaration filed concurrently herewith.  Plaintiff knows this fact, but nonetheless tries to
12 persuade this court that allowing Mr. Pietz to recover the fees associated with this case is
13 somehow double-billing.  Plaintiff's argument must be rejected.

14 Finally, Plaintiff attempts  to argue that any attorney fee award should be limited to the
15 amount sought in *AF Holdings v. Magsumbol,* a wholly different case that was prosecuted in a
16 wholly different manner.  The reason that the bill in Magsumbol is significantly lower can be
17 easily explained – Plaintiff filed far fewer frivolous motions in that matter, each motion was
18 decided without hearing, there was no discovery, Plaintiff's Motion to Dismiss Without Prejudice
19 was denied prior to any response by Defendant, and the matter was subsequently dismissed with
20 prejudice sua sponte, without the necessity of separate motion practice.  The Lodestar method
21 calculates attorney's fees by multiplying a reasonable hourly rate by the hours reasonably
22 expended in the action – not by comparing the attorney's fees sought with another case that
23 proceeded down a wholly different path.

24
25
26
27
28

D.  **DEFENDANT HAS INCURRED AN ADDITIONAL $1300 IN COSTS AND ATTORNEY FEES IN SUPPORT OF HIS REPLY**

As detailed in the supplementary declaration of Nicholas Ranallo, filed concurrently herewith, Defendant has incurred an additional $1300 in costs and fees associated with the instant reply. These include four hours of drafting time, at a rate of $250 an hour ($1000), plus $300 expended in order to retain Mr. Neville to analyze Plaintiff's response and draft his reply thereto. The total amount requested in Mr. Navasca's original motion was $22,254.05. When combined with the additional amount incurred herein, the total amount incurred by Mr. Navasca in his defense equals $23,554.05.

### III.  CONCLUSION

For the reasons outlined herein, Defendant respectfully requests an attorney fee award in the amount of $23,554.05 to reimburse for reasonable attorney fees and costs incurred in his defense. Mr. Navasca is the prevailing party in this action, based on the final dismissal of all claims against him and this court's Entry of Judgment on May 21, 2013. Moreover, an analysis of the relevant factors governing an award of fees strongly supports an award of fees in the instant matter, pursuant to 17 U.S.C. §505 and this court's equitable discretion.

DATED: June 25, 2013            Respectfully Submitted,

NICHOLAS RANALLO, ATTORNEY AT LAW


By:_____/s/ Nicholas Ranallo
Nicholas Ranallo (Cal Bar #275016)
Attorney for Joe Navasca
371 Dogwood Way,
Boulder Creek, CA 95006
P: 831.703.4011
F: 831.533.5073
nick@ranallolawoffice.com

15
CV 12-2396-EMC Reply in Support of Defendant's Motion for Attorney's Fees

**CERTIFICATE OF SERVICE**

THE UNDERSIGNED HEREBY CERTIFIES that on this 25th day of June, 2013, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system and served on all of those parties receiving notification through the CM/ECF system.

/s/            Nicholas R. Ranallo

Nicholas Ranallo, Attorney at Law