Nicholas Ranallo, Attorney at Law #275016
371 Dogwood Way
Boulder Creek, CA 95006
Telephone No.: (831) 703 - 4011
Fax No.: (831) 533-5073
Email: nick@ranallolawoffice.com
Attorney for Defendant Joe Navasca

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AF HOLDINGS, LLC., | Case No. 3:12-cv-02396-EMC |
| Plaintiff, | |
| v. | **NOTICE OF MOTION AND MOTION FOR SANCTIONS** |
| JOE NAVASCA | **Honorable Judge Edward Chen**<br>**August 22, 2013 at 1:30 p.m.**<br>**Courtroom 5 – 17th Floor** |
| Defendants. | |

1

1

### NOTICE OF MOTION AND MOTION

2       PLEASE TAKE NOTICE that on August 22, 2013 at 1:30 p.m., before the Honorable

3   Edward Chen in Courtroom 5 -17th Floor of the United States District Court for the Northern

4   District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco,

5   CA 94102.  Defendant Joe Navasca will and hereby does move for an order holdings attorneys

6   John Steele and Paul Hansmeier jointly and severally liable for the full amount of Defendant's

7   costs and attorney fees incurred herein.

8       Defendant brings this motion pursuant to 28 U.S.C. §1927 and this court's inherent

9   authority.  Defendant's motion is based on this notice, the accompanying Memorandum of Points

10  and Authorities, the declarations and exhibits attached thereto, and all other papers filed and

11  proceedings held in this action.

12

13

14

15  DATED: July 2, 2013              Respectfully Submitted,

16                                   NICHOLAS RANALLO, ATTORNEY AT LAW

17

18                                   By:_____/s/ Nicholas Ranallo_____
                                     Nicholas Ranallo (Cal Bar #275016)
19                                   Attorney for Joe Navasca
                                     371 Dogwood Way,
20                                   Boulder Creek, CA 95006
                                     P: 831.703.4011
21                                   F: 831.533.5073
                                     nick@ranallolawoffice.com
22

23

24

25

26

27

28

Nicholas Ranallo, Attorney at Law #275016
371 Dogwood Way
Boulder Creek, CA 95006
Telephone No.: (831) 703 - 4011
Fax No.: (831) 533-5073
Email: nick@ranallolawoffice.com
Attorney for Defendant Joe Navasca

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AF HOLDINGS, LLC., | Case No. 3:12-cv-02396-EMC |
| Plaintiff, | |
| v. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SANCTIONS** |
| JOE NAVASCA | |
| Defendants. | |

# TABLE OF CONTENTS

I.   INTRODUCTION ...........................................................................................................2

   A.   Relevant Persons and Entities.............................................................................2

      1.   Individuals Identified by AF Holdings in this Matter...........................2

         a)   Alan Cooper.................................................................................2
         b)   Salt Marsh....................................................................................3
         c)   Anthony Saltmarsh......................................................................4
         d)   Mark Lutz....................................................................................4

      2.   Individuals Associated With Prenda Law, Inc.......................................5

         a)   Brett Gibbs...................................................................................5
         b)   6881 Forensics, LLC....................................................................5
         c)   "Sharkmp4"..................................................................................5
         d)   Paul Duffy....................................................................................6
         e)   Paul Hansmeier............................................................................6
         f)   John Steele...................................................................................7

   B.   Specific Instances of Fraud In The Instant Case.................................................7

      1.   The Forged Assignment.........................................................................7

      2.   "Salt Marsh"........................................................................................12

      3.   The Neville Declaration.......................................................................15

II.   LEGAL AUTHORITY...............................................................................................16

III.   ARGUMENT

   A.   Sanctions Are Appropriate Under This Court's Inherent Authority and 28
      U.S.C. 1927..........................................................................................................17

   B.   John Steele and Paul Hansmeier Are The Proper Subjects of Sanctions......20

   C.   John Steele and Paul Hansmeier Should Be Held Jointly and Severally Liable
      for Mr. Navasca's Attorney's Fees Herein.........................................................22

IV.   CONCLUSION..........................................................................................................23

1

# TABLE OF AUTHORITIES

2

**CASES**

3

*Alyeska Pipeline Serv. Co. V. Wilderness Soc'y,* 421 U.S. 240 (1975)...........................................16

4

*Chambers v. Nasco, Inc.,* 501 U.S. 32, 54 (1991)............................................................................17

5

*CTC Imports & Exports v. Nigerian Petroleum Corp.,* 739 F.Supp.966 (E.D.  Penn. 1990)..........18

6

*DAG Jewish Directories, Inc,. v. Y&R Media, LLC.,* 2010 WL 3219292 (S.D.N.Y. 2010)...........18

7

*First Time Videos, LLC v. Paul Oppold,* 6:12-cv-01493 (M.D. Fla.).............................................15

8

*Ingenuity 13 v. Doe,* 2013 WL 1898633 (C.D. Cal. May 6, 2013).....................................................2

9

*Miller v. Cardinale (In re DeVille),* 361 F.3d 539 (9th Cir. 2004)....................................................18

10

*Primus Automotive Financial Svcs., v. Batarse,* 115 F.3d 644 (9th Cir. 1997)...............................16

11

*Roadway Express, Inc., v. Piper,* 447 U.S. 752, 764-765 (1980).....................................................16

12

*Sunlust Pictures v. Nguyen,* 8:12-cv-1685-T35-MAP (M.D. Fla.)......................................................4

13

*Universal Oil Products Co. v. Root Refining Co.,* 328 U.S. 575, 580 (1946)..................................16

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.   INTRODUCTION

Defendant Joe Navasca brings the instant motion seeking to hold the individual attorneys that have knowingly committed fraud in this case responsible for their actions by making them jointly and severally liable for the costs and attorney fees incurred.  The evidence of fraud is clear and unrebutted, and the involvement of John Steele and Paul Hansmeier is likewise clear.  The instant scheme was created by lawyers, for the benefit of lawyers, and it is entirely appropriate that these lawyers should bear the burden that their actions have caused.  Mr. Navasca has incurred significant attorney's fees in defense of this action, which has now been wholly dismissed (along with all of AF Holdings' other cases).  As described further below, this court has ample authority to issue sanctions against Mssrs. Steele and Hansmeier pursuant to 28 U.S.C. 1927 and this court's inherent authority.  Such a result is entirely appropriate.

## A.   RELEVANT PERSONS AND/OR ENTITIES

Although many of the key events in this case have been covered in previous filings, the relationships amongst the relevant characters is complex and potentially confusing.  A preliminary introduction is therefore appropriate, though the role of each will be set forth in greater detail below.  As will become apparent, all roads in this case lead to John Steele and Paul Hansmeier.

## 1.   Individuals Identified by AF Holdings in This Case

### a.   Alan Cooper

Alan Cooper's name appears on behalf of AF Holdings on the assignment in the instant case (ECF No. 13-2).  On March 11, 2013, Alan Cooper denied under oath that he had signed the assignment in this case while testifying in at an Order to Show Cause hearing in *Ingenuity 13 v. John Doe*.  A copy of the March 11th Transcript of this hearing was previously filed herein at ECF 84-2.  Cited excerpts are annexed hereto as Exhibit A.   Mr. Cooper has also executed a declaration to the same effect, which was previously filed in the instant case (ECF 22-7).  Mr. Cooper is a former caretaker for John Steele (ECF No.22-6 at 2).  Mr. Cooper's identity has been appropriated by Mr. Steele on multiple occasions, including in connection to Prenda Law plaintiffs AF Holdings, Ingenuity 13, and VPR, Inc.  See *Ingenuity 13 v. Doe,* 2013 WL 1898633 at *2

(C.D. Cal. 2013) & ECF No 55-1.  Mr. Cooper is listed with the Nevada Secretary of State as the President of VPR Inc., as well as the Vice President, Treasurer, and all other executive positions (ECF No. 55-1 and 55-5).  The address listed for Mr. Cooper  with the Nevada SOS is 4532 East Villa Theresa in Phoenix, Arizona (hereinafter the "Villa Theresa Address").  *Id.*  Mr. Cooper has denied under oath that he has any knowledge of VPR and has denied ever living at the Villa Theresa Address, or even having ever been to Arizona (March 11 Transcript at 30:23-33:3).

    b.    "Salt Marsh"

    Salt Marsh is, we are told, the Owner of AF Holdings.  Salt Marsh's name appears as owner on AF Holdings' ADR Statement in the instant action (ECF No. 8).  Prior to February 19, 2013, Salt Marsh was consistently identified as a natural person with decidedly human capabilities, including the ability to read and discuss the details of Early Neutral Evaluation.  Salt Marsh was also identified in a Rule 26(f) Statement as an "Individual Having Knowledge" of AF Holdings claims.  See Exhibit B.  Brett Gibbs was specifically directed to identify Salt Marsh on the ADR filing and Rule 26 Statement by Paul Hansmeier (Gibbs Dec. at ¶5).

    On February 19, 2013, Paul Hansmeier testified that AF Holdings was wholly owned by a trust, and had been since its initial conception.  When presented with the Salt Marsh ADR filings, Mr. Hansmeier claimed to have virtually no knowledge regarding Salt Marsh, and pointedly avoided stating that it was the name of the trust (Hansmeier Dep. at 51).  A copy of Mr. Hansmeier's deposition was previously filed at ECF No. 84-1, cited excerpts are annexed hereto as Exhibit J.

    Following the February 19, 2013, deposition, Salt Marsh has been identified as the name of the Nevis trust that owns AF Holdings (See, e.g. ECF No. 80).  Mark Lutz has claimed that it was his practice to sign the name of Salt Marsh on behalf of the trust on ADR filings (ECF No. 80).  Brett Gibbs has explicitly denied that he ever had any contact with Mark Lutz about the ADR filing in this case or previous cases and at all relevant times believed Salt Marsh to be a natural person (Gibbs Dec. at ¶4-5).

c.     Anthony Saltmarsh

Anthony Saltmarsh is a natural person residing at the Villa Theresa Address described below.  Anthony Saltmarsh has no connection to "Salt Marsh," we are told.  Anthony Saltmarsh formerly (and perhaps currently) resided with Jayme Steele, sister of John Steele (ECF 55-1).  According to Paul Hansmeier, Mr. Saltmarsh was formerly identified as a "corporate representative" of AF Holdings, and Anthony Saltmarsh's name may have appeared on AF Holdings' foundational documents.  See Hansmeier Dep. at 142:22 – 144:8.  Mr. Saltmarsh never received any compensation for being a "corporate representative."  *Id.*

d.     Mark Lutz

Mark Lutz is a former paralegal at Steele Hansmeier, Prenda Law, and the Anti Piracy Law Group.  See, e.g. ECF No. 22, 55-1 & 80.  Mr. Lutz is widely known as the telephone agent that makes dunning calls to putative defendants, and has called Defendant's family (on behalf of Anti-Piracy Law Group) as recently as February 8, 2013.  See ECF No. 55-1 at ¶2-3.

Mark Lutz is alternatively described as the "CEO", "Manager" and/or "Corporate Representative" of AF Holdings, though even Brett Gibbs was unaware until recently that the paralegal had any purported role in the company (Gibbs Dec. at ¶4).   Mark Lutz has previously been deemed a "fraud upon the court" for attempting to appear as the "corporate representative" of another Prenda Law plaintiff in the Southern District of Florida in *Sunlust Pictures v. Nguyen,* 8:12-cv-1685-T35-MAP.  A copy of this transcript (hereinafter "November 27[th] Transcript[1]") has previously been filed at ECF No. 22-10, and  cited excerpts are annexed hereto as Exhibit C.  During his November  27th testimony, Mr. Lutz was accompanied by John Steele, and testified that he had never met or spoken to Mr. Duffy (November  27th Transcript at 17-18).  Mr. Lutz did not identify AF Holdings' as one of the companies that he worked for on November 27, 2012 (November 27 Transcript at 16-17).

According to AF Holdings Rule 26 disclosures in this matter, Mark Lutz is the sole

---

[1] The November 27th Transcript incorrectly cites the year "2011" on the first page.  The hearing was, in fact, on November 27th, 2012, as shown on page 2 and the court certification.

4

individual that they intended to call regarding the forged assignment herein (Exhibit D).

## 2.    Individuals Associated With Prenda Law, Inc.

### a.    Brett Gibbs

Brett Gibbs is former counsel herein, and played an active role in AF Holdings litigation campaign throughout the country.   Mr. Gibbs discontinued his involvement in this matter immediately following Paul Hansmeier's 30(b)(6) deposition herein.   Unlike Mrssrs Steele, Hansmeier, and Duffy, Mr. Gibbs testified openly and when called to discuss his involvement in, inter alia,  AF Holdings and the forged assignments in AF Holdings' copyrights suits.  Mr. Gibbs testified that he was directed in litigation, including the instant case, by John Steele and Paul Hansmeier (March 11th Transcript at 74-77 and Gibbs Dec. at ¶3).   A declaration from Brett Gibbs is filed concurrently herewith.

### b.    6881 Forensics, LLC

6881 Forensics is the sole source for AF Holdings' technical data herein  (ECF No 4-1 ). Peter Hansmeier, brother of Paul Hansmeier,  is purportedly a "technician" at 6881 Forensics, and Peter Hansmeier's declarations are used in Prenda's litigation nationwide .   Peter Hansmeier's signature, in this matter and many others, bears an uncanny resemblance to Paul Hansmeier's own, previously-filed signature.  See Exhibit E and ECF No. 4-1.  Both John Steele and Paul Hansmeier have maintained email addresses under the 6881forensics.com domain and have used such addresses to communicate regarding Prenda Law infringement cases.  See Exhibit F.  The domain name for 6881forensics.com is registered using the GoDaddy accounts of John Steele. See Exhibit G, at Bates #189-190.  Nonetheless, Mr. Hansmeier testified that neither he nor John Steele have any interest in, or association with, 6881 Forensics.

### c.    "Sharkmp4"

As described in the Neville Declaration, "Sharkmp4" is the screen name for a particular user who has uploaded torrent links to the Pirate Bay for a large number of works that would later form the basis for Steele Hansmeier/Prenda Law copyright infringement suits.  See ECF No. 91 at

¶24.   This user has been identified as John Steele, or someone with access to Mr. Steele's "GoDaddy" account.  ECF No. 91 at ¶50.

### d.   Paul Duffy

Paul Duffy is present counsel for AF Holdings in the instant matter.  Mr. Duffy took over for Brett Gibbs after Mr. Gibbs severed his association with Prenda, with full knowledge of the allegations of fraud herein.  Mr. Duffy exercised his Fifth Amendment rights against self-incrimination when called to testify about his involvement in, inter alia,  AF Holdings and the forged assignments in AF Holdings' copyrights suits on April 2, 2013  *Ingenuity 13 v. Doe,* 12-cv-08333-ODW; 2013 WL 1898633 at *2 (C.D. Cal. May 6, 2013).

### e.   Paul Hansmeier

Paul Hansmeier was a partner in Steele Hansmeier, the predecessor in interest to Prenda Law, Inc (Exhibit H).  Steele Hansmeier represented Heartbreaker Productions, the purported assignor herein, in copyright infringement lawsuits prior to the purported assignment in the instant case (Exhibit I).  Mr. Hansmeier was AF Holdings' 30(b)(6) representative in the instant case, despite testifying that he has involvement with either AF Holdings or Prenda Law, Inc. A copy of Mr. Hansmeier's transcript was previously filed at ECF No. 84-3, cited excerpts are annexed hereto as Exhibit J.

Paul Hansmeier likewise exercised his Fifth Amendment rights when called to testify about his involvement in, inter alia,  AF Holdings and the forged assignments in AF Holdings' copyrights suits. *Ingenuity 13 v. Doe,* 12-cv-08333-ODW; 2013 WL 1898633 at *2 (C.D. Cal. May 6, 2013).  Mr. Hansmeier, along with Mr. Steele, is responsible for directing AF Holdings litigation campaign through local counsel, including Mr. Gibbs, former counsel herein.  See *Ingenuity 13 v. Doe,* 12-cv-08333-ODW; 2013 WL 1898633 at *3 (C.D. Cal. May 6, 2013) and Gibbs Dec. at ¶ 3.  Mr. Hansmeier represented to Mr. Gibbs that Salt Marsh was a natural person, and represented that he had obtained the signature of Salt Marsh for relevant filings. (Gibbs Dec. at 5.  Mr. Hansmeier's brother, Peter Hansmeier, is purportedly a "technician" for 6881 Forensics, LLC, and the sole source of technical evidence in support of AF Holdings' copyright claims (ECF

4-1).

### f.   John Steele

John Steele was a partner in Steele Hansmeier, the predecessor in interest to Prenda Law, Inc. (Exhibit H). Steele Hansmeier represented Heartbreaker Productions, the purported assignor herein, in copyright infringement lawsuits prior to the assignment of rights to AF Holdings (Exhibit I). Alan Cooper, the purported signatory of the assignment in this case, was formerly a caretaker for Mr. Steele's property in Minnesota (See, e.g. ECF No. 22-6 at 2).

Mr. Steele exercised his Fifth Amendment rights when called to testify about his involvement in, inter alia, AF Holdings and the forged assignments in AF Holdings' copyrights suits. *Ingenuity 13 v. Doe,* 12-cv-08333-ODW; 2013 WL 1898633 at *2 (C.D. Cal. May 6, 2013). Mr. Steele, along with Mr. Hansmeier, are responsible for directing AF Holdings litigation through a retinue of local "Of Counsel" attorneys, including Brett Gibbs. *Id.* at *3.

Mr. Steele's sister, Jayme Steele, formerly lived with Anthony Saltmarsh at the Villa Theresa Address attributed to Alan Cooper (ECF 55-1). Mr. Steele employed Mark Lutz as a paralegal at Steele Hansmeier and Prenda Law. Mr. Steele controls the 6881forensics.com domain name, and receives emails via a 6811 Forensics email address (See ECF No. 91 at ¶20 and Exhibit G at Bates # GD 189-190).

## B.   SPECIFIC INSTANCES OF FRAUD IN THE INSTANT CASE

### 1.   The Forged Assignment

As Defendant has described at length throughout this case, the assignment that forms the basis of Plaintiff's claims is a forgery. Alan Cooper has explicitly denied executing the assignment, and has never had any association with AF Holdings, LLC. Mr. Cooper has testified to these facts, under oath. Based upon this testimony, the Central District explicitly found that

"The Principals[2] stole the identity of Alan Cooper (of 2170 Highway 47

---

[2] "The Principals" in Judge Wright's Order refers to John Steele, Paul Hansmeier and Paul Duffy.

North, Isle, MN 56342).   The Principals fraudulently signed the copyright assignment for "Popular Demand" using Alan Cooper's signature without his authorization, holding him out to be an officer of AF Holdings.  Alan Cooper is not an officer of AF Holdings and has no affiliation with Plaintiffs other than his employment as a groundskeeper for Steele.  There is no other person named Alan Cooper related to AF Holdings or Ingenuity 13." *Ingenuity 13 v. Doe,* 2013 WL 1898633 at * 3 (C.D. Cal., May 6, 2013).

This court (and Mr. Gibbs) were apprised Mr. Cooper's renunciation during the initial case management conference in this case, over 6 months ago.   According to Prenda Law's attorney at that time, Brett Gibbs, this issue was immediately brought to the attention of Mr. Steele and Mr. Hansmeier.  Gibbs Dec. at ¶  Mr. Steele and Mr. Hansmeier assured him that it was merely a "conspiracy theory," and that he should continue litigating this action against Mr. Navasca (as well as continue with all of AF Holdings' other cases in this district and throughout the state).  See Gibbs Dec. at ¶6.

In the months that have followed, it has become exceedingly clear that the assignment is, in fact, a forgery.  AF Holdings and its attorneys have been wholly unable to explain who actually executed the instant assignment, and have given several conflicting and nonsensical accounts when forced to *try* and explain the signature.  They have since adopted the position that, since the assignor's signature is all that is necessary for a copyright assignment, it simply doesn't matter if they have submitted forged documents to this court and countless others.  As recognized by Judge Wright, however, "Although the recipient of a copyright assignment need not sign the document, a forgery is still a forgery.  And trying to pass that forged document by the Court smacks of fraud." *Ingenuity 13,* 2013 WL 1898633 at *4 (C.D. Cal. May 6, 2013).

AF Holdings' first attempt to explain this assignment came on February 19th, when Paul Hansmeier appeared as AF Holdings' 30(b)(6) deponent in this action.  In a clearly rehearsed explanation, Mr. Hansmeier stated that Mark Lutz, paralegal for Steele Hansmeier, Prenda Law, and the Anti-Piracy Law Group tasked his boss, John Steele, with arranging a "corporate representative[3]" to acknowledge the assignment in this case (Hansmeier Dep. at 121:11-128:12).

---

[3] "Corporate Representative" is a euphemism used by the Prenda Parties to mean an unpaid individual with no authority and no relationship to the company, whose name is signed to documents in order to disguise the true interested parties. See, e.g. Hansmeier Dep. at 121:17-122:11 and November 27th Transcript at 14-15.

1   We are to believe that Mr. Steele did this as a favor to his paralegal, because the paralegal

2   was himself too busy to personally sign his own name on behalf the company he supposedly runs.

3   It is unclear how Mr. Lutz saved any time this way, since it undoubtedly took at least as long to

4   arrange for the "representative" as it would have to sign his own name, but nonetheless, we are

5   told that efficiency was the motivation.  See Hansmeier Dep. at 127:22- 128:8 ("...Mr. Lutz is an

6   individual.  There are a certain number hours in a day and for him to accomplish everything he's

7   going to accomplish in a given day, or for anyone in any capacity in any business, you rely on

8   third parties to aid you to accomplish tasks.")

9   According to Mr. Hansmeier, Mr. Steele then sought out his property caretaker in

10  Minnesota, Alan Cooper, to serve as "corporate representative" to acknowledge the assignment.

11  Hansmeier Dep. at 122:5-11.  According to Mr. Hansmeier, Mr. Steele was therefore the sole

12  individual that could shed any light on the circumstances surrounding the execution.  Hansmeier

13  Dep. at 122:11-126:21.  Specifically, Mr. Hansmeier testified that

14
15  "Mark Lutz spoke to Mr. Steele and said, Well, I understand that there's an issue
    with this Alan Cooper and asked Mr. Steele point-blank, Is the signature a
    forgery.  Mr. Steele said the signature is not forgery.  And he asked him, Is the—
16  is the signature authentic.  Mr. Steele says, yes, the signature is authentic..." and,
    "...all I can say is that AF Holdings – the only person who knows who this Alan
17  Cooper is is John Steele...".  Hansmeier Dep. 122:11-18 and 126:10-127:2.

18  Mssrs. Steele, Hansmeier, and Duffy were each given a chance to forward their own

19  explanation(s) for the Cooper assignment on April 2, 2013 at a hearing in the Central District of

20  California.  Rather than testifying under oath (and subject to cross examination), however, each

21  invoked their Fifth Amendment right. *Ingenuity 13 v. Doe,* 2013 WL 1898633 at * 2 (C.D. Cal.,

22  May 6, 2013).

23  Mr. Steele later decided to address this issue in the form of an affidavit– safe from cross-

24  examination - in response to yet another Order to Show Cause regarding sanctions in the District

25  of Arizona.  A copy of the Arizona Order to Show Cause is annexed hereto as Exhibit K , AF

26  Holdings response is annexed as Exhibit L, and Mr. Steele's affidavit in support is annexed hereto

27

28

9

as Exhibit M.[4]   Mr. Steele's affidavit is wholly inconsistent with Mr. Hansmeier's version of events, and Mr. Steele cannot bring himself to even *claim* that Mr. Cooper actually executed the assignment.[5]  What Mr. Steele does say, however, contradicts Mr. Hansmeier's testimony and various publicly available documents.  See, e.g. Exhibit M at ¶7-11.  Specifically, Mr. Steele describes the Alan Cooper circumstances as follows:

> "8. ...I agreed to help him set up a company for him and help him out in getting started with his business.
> 9. Shortly thereafter, Alan told me that he could not put any time into the project and I believe that he never ended up following through with getting his new company off the ground.  As a less time intensive alternative, I suggested that if Alan wanted to learn more about the adult industry, I could connect him to a new company that was run by Mark Lutz.
> 10.   I informed Alan that one way to get his name established would be to serve in a corporate representative role, which would let him gain exposure to the types of deals Mr. Lutz was doing and see if that was something that appealed to him.
> 11.  My understanding is that Alan took me up on the offer and participated in a limited number of transactions in 2011 with Mr. Lutz's companies.  I am not aware of any post-2011 transactions in which Alan participated." Steele Aff. at 8-11.

Several things are notable about Mr. Steele's version of events.   First, and most conspicuously, is his purported ignorance regarding the Alan Cooper transactions, notwithstanding Mr. Hansmeier's testimony that Mr. Steele was the only one with information.  In contrast to Mr. Hansmeier's testimony, which makes it clear that Mark  Lutz specifically tasked Mr. Steele with finding a corporate representative for the purpose of acknowledging AF Holdings' assignments, Mr. Steele implies that this was a favor for Mr. Cooper, wholly unrelated to any specific task. Moreover, Mr. Steele disclaims any personal knowledge regarding the "limited number of transactions" that Mr. Cooper was involved in, and disclaims any knowledge that would allow him

---

[4] Curiously, this affidavit was executed on May 28, 3 days after AF Holdings Response to the Order to Show Cause which references the document.

[5] The Arizona court was not satisfied with AF Holdings' initial response, and has ordered further responses to be provided in Court on June 21, 2013.  This hearing was subsequently continued until July 19th at the request of Plaintiff's counsel.  The Arizona court's second order is annexed hereto as Exhibit N.

to reassure Mr. Lutz and Mr. Hansmeier that the relevant assignments were not forgeries, as he apparently did.  Indeed, Mr. Steele's affidavit seems to indicate that Mr. Lutz would himself have all the necessary information regarding  the assignment, and there would be no reason for Mr. Lutz to go to Mr. Steele for confirmation regarding the validity of the assignments.

Secondly, AF Holdings response and Mr. Steele's affidavit simply do not square with documented reality.  AF Holdings' response to the OTSC indicates that

> "At some point in early 2011, Steele and Cooper discussed how a friend of Steele's was exploring opportunities related to purchasing and marketing adult content.  Cooper expressed interest in learning more about these opportunities, and Steele offered to help him learn more...Cooper ended up not moving forward with the ideas Steele proposed to him..."  See Exhibit N at 6.

This explanation does not square with history.  Indeed, John Steele began misappropriating Mr. Cooper's identity *before* "early 2011," in connection with VPR, Inc., and other entities.  As previously described in ECF No. 55, 55-1, and 55-5, VPR, Inc., was formed and registered with the Nevada Secretary of State in late 2010 and identified Alan Cooper as the president, secretary, and all other relevant positions in the entity.  As previously described, the corporate address identified by the Nevada Secretary of State is 4532 East Villa Theresa Drive ("the Villa Theresa Address"), an address previously shared by John Steele's sister and Anthony Saltmarsh.  See ECF Nos. 55-1, 55-3 and 55-4.

VPR, Inc. *cannot* be the entity that never came to fruition, as described in Mr. Steele's affidavit, as it has filed copyright lawsuits against more than a thousand Does, through its counsel, Steele Hansmeier.  See Exhibit O.[6]  Moreover, this is not the only instance of Mr. Steele misappropriating Mr. Cooper's identity prior to the AF Holdings assignments described herein.

On November  6, 2010, at 10:01 a.m. John Steele created a GoDaddy account and was assigned Shopper ID 39706492.   See Exhibit K hereto, Bates #00074, previously filed in

---

[6] Although these suits were filed under "VPR Internationale," the copyright registrations corresponding to the works at issue are all under the name "VPR, Inc.," and include the address for VPR, Inc.'s Registered agent, in Las Vegas.  See Exhibit P.  These include the work "Girlfriend Lost Bet." The domain name "mygirlfriendlostabet.com" was registered using John Steele's GoDaddy Shopper ID, 39706942.  See Exhibit G, Bates # GD00002.

connection with *Prenda Law Inc., et. al. vs. Godfread*, 3:13-cv-00207 in the Southern District of Illinois.   Mr. Steele initially used his own name and the business address for Steele Hansmeier/Prenda Law, Inc./Anti-Piracy Law Group on the account.  Notably, a mere 15 minutes later, Mr. Steele changed the customer name from "John Steele" to "Alan Cooper" and replaced the Steele Hansmeier address with the Villa Theresa Address described above.  *Id.*  Notably, the email address associated with this account was johnlsteele@gmail.com, the same email address that John Steele used in connection with his appeal of the Central District of California sanctions order.  See Exhibit Q.

It is apparent, based on the foregoing, that Mr. Steele and/or Mr. Hansmeier have deliberately misstated Mr. Steele's role in "obtaining" the Alan Cooper signature in this matter. Moreover, their combined testimony amounts to a statement that *no one* knows about the assignment from Steele Hansmeier's former client to Mr. Steele's former caretaker.

### 2.        The "Salt Marsh" Filings

AF Holdings was not content with perpetrating a single fraud upon this court, however, and additionally filed false documents under the signature of "Salt Marsh" in this action and others throughout the district.  AF Holdings repeatedly and intentionally represented to this court – and others in this district, that "Salt Marsh" was a natural person and the owner of AF Holdings, LLC, in a deliberate attempt to conceal the true owners of the company.  These include the ADR Certification, ECF No. 8, filed in this action and similar certifications filed in cases throughout the district.  This certification identifies  "Salt Marsh" as the individual that completed a number of decidedly human tasks in connection with this court's ADR program.

Indeed, this is not the only context where "Salt Marsh" has been identified as a natural person in this district.  On January 4, 2012, AF Holdings filed its Rule 26(f) Report in *AF Holdings v. Doe 1,* 4:11-cv-03067-CW in this district.  A copy of this filing is annexed hereto as Exhibit B.  This filing specifically identifies "Salt Marsh" under the heading "**Individuals Likely to Have Discoverable Information.**"    It simply is not credible to suggest that numerous

attorneys consistently identified a trust as an *individual* that was in possession of discoverable information, and the person that *read* various documents and *discussed* various alternatives with its attorney.

In response to an order to produce the "Salt Marsh" signatures in this case, AF Holdings filed ECF No. 80, an affidavit from Mark Lutz, purportedly detailing the involvement of the "Salt Marsh" trust in this action.  Unfortunately for AF Holdings, Mr. Lutz declaration simply does not comport with reality, and has been specifically contradicted by Brett Gibbs, counsel for AF Holdings when the relevant documents were filed.  Mr. Gibbs specifically states that:

> 4.      I have reviewed the Affidavit of Mark Lutz filed in this case on May 13, 2013 (Doc. #80).  I believe that the information provided in the fifth paragraph regarding my interactions with Mr. Lutz is not an accurate description of those events.  I did not "from time to time" send certificates  for Mr. Lutz to sign on behalf of the Salt Marsh Trust.  I did not have the alleged conversations with Mr. Lutz.  In fact, I did not know that Mark Lutz was directly affiliated with these companies, as an owner or otherwise, until months after filing the ADR Certification in this case.
>
> 5.      Instead, I was specifically told by Mr. Hansmeier that Salt Marsh was the owner of AF Holdings, and that he, Salt Marsh, had read and understood the ADR handbook and that I could go ahead and file the ADR Certification with the electronic signature of Salt Marsh.  Again, I never spoke with Salt Marsh directly.  Through my conversation with Mr. Hansmeier, I was under the impression that the [sic] Salt Marsh was an individual who had in fact complied with the Local Rule and that his original signature existed  on a document that was being held by my then-employer, Prenda Law Inc...."  Gibbs Dec. at ¶5.

In addition to Mr. Gibbs specific contradiction, Mr. Lutz affidavit fails to accord with his own prior statements.  For example, at the November 27th Hearing in Tampa, Mr. Lutz was asked whether he was a corporate representative for any plaintiffs other than Sunlust.   Mr. Lutz identified two additional companies, Hard Drive Productions and Guava, LLC.  See November 27th Transcript at 16:22-17:3.  Notably, Mr. Lutz does not identify AF Holdings, LLC as one of his companies, despite (purportedly) being the CEO/Manager/Corporate Representative/Sole Employee for nearly eighteen months prior to this testimony.

The simple explanation for this omission is that Mr. Steele and Mr. Hansmeier had not yet

1    decided that they needed Mr. Lutz to feign involvement in AF Holdings, as "Salt Marsh" was still

2    being held out as the owner and corporate representative.   Indeed, Mr. Gibbs declaration

3    specifically states that he was not aware that Mr. Lutz had any connection with AF Holdings, LLC

4    until long after the "Salt Marsh" filings in this case and others throughout the district.   Mr. Lutz'

5    declaration regarding Salt Marsh is apparently perjury.   Mr. Lutz cannot produce a single email

6    from Mr. Gibbs regarding these certifications, nor a single email transmitting any certifications to

7    Mr. Gibbs.

8         Additionally, as is apparent from AF Holdings' ADR Certification in *AF Holdings v.*

9    *Magsumbol,* attached hereto as Exhibit R, once Mr. Gibbs became aware of Mark Lutz' role in AF

10   Holdings, he identified Mark Lutz (not Salt Marsh) as the individual that had read the ADR

11   handbook and discussed its contents.   This filing again contradicts Mr. Lutz testimony that it was

12   his "practice to sign those certifications on behalf of the Salt Marsh Trust and return them to Mr.

13   Gibbs."   The reason for these contradictions is simple: Mark Lutz' affidavit is patently false, and

14   was procured purely for the purpose of shielding the Mr. Steele and Mr. Hansmeier from

15   responsibility for their actions herein.

16        Mr. Gibbs declaration is especially interesting when compared with Mr. Hansmeier's

17   testimony as a 30(b)(6) representative of AF Holdings, wherein Mr. Hansmeier disclaims any

18   knowledge as to the identity of "Salt Marsh," or even whether Salt Marsh is a natural person.   See,

19   e.g. Hansmeier Dep. at 49-50 ("...my testimony is that AF Holdings is owned by a trust and

20   whether the name of the trust on the date in question was Salt Marsh or not, I'm saying I just don't

21   know what the name of the trust was on that date....Q: And so if AF Holdings had previously filed

22   something in this case indicating that it was owned by an individual named Salt Marsh, that would

23   be false; is that correct?   A: I guess I'm not sure what the legal analysis on that would be.   To the

24   extent a trust is considered an individual for the purposes of filing, then I don't know").

25        Mr. Hansmeier's testimonial ignorance comes many months after the "Salt Marsh" filing

26   in this suit and months after Mr. Gibbs was "specifically told by Mr. Hansmeier that Salt Marsh

27   was the owner of AF Holdings and that he, Salt Marsh, had read and understood the ADR

28

Handbook." Gibbs Dec. at ¶5. Moreover, although "Salt Marsh" has been identified in several recent filings as the name of the mysterious trust that purportedly owns AF Holdings, it is noteworthy that there is not a *single* instance where this explanation was given prior to Mr. Hansmeier's testimony. Clearly, Mr. Hansmeier painted himself into a corner with his testimony, and Mr. Hansmeier and Mr. Steele have decided to adopt the best possible explanation – despite the fact that it makes little sense in light of the repeated identifications of Salt Marsh as an "individual" with decidedly human capabilities.

### 3.    The Neville Declaration

Finally, as has recently become apparent, even the claimed "infringements" underlying AF Holdings' litigation are themselves a fraud. On June 3, 2013, the Declaration of Delvan Neville (hereinafter "Neville Declaration") was filed in *First Time Videos, LLC v. Paul Oppold,* 6:12-cv-01493 (M.D. Fla.). A copy of this declaration has been filed at ECF No. 91.

The Neville Declaration analyzed the data collection methods of 6881 Forensics (the firm used by AF Holdings in the instant case) and the origin of many of the works that have formed the basis of Prenda Law Inc.'s copyright actions. Mr. Neville's declaration is extremely detailed, and analyzes information from a variety of sources in order to come to his alarming conclusions.

Mr. Neville states that one purpose of the investigation was "to pinpoint the likely origin of the user 'sharkmp4' on the website known as the Pirate Bay that originated torrents relating to copyrights held by companies 'AF Holdings' and 'Ingenuity 13.'" Neville Dec. at ¶24.

In order to identify the sharkmp4 user, Mr. Neville compared information from a variety of sources (each of which is exhaustively discussed) and concluded that "It appears from all the evidence that John Steele (or someone under his control or with access to his Go-Daddy account records with authorization to make changes to domain names) is the most probable candidate for the identity of Pirate Bay user sharkmp4." Neville Dec. at ¶47. Mr. Neville reiterates this conclusion in ¶48, noting that 6881 Forensics is closely linked to the sharkmp4 user, and that this "leads again to the conclusion that John Steele or his agents are sharkmp4..." Neville Dec. at ¶48.

Finally, Mr. Neville ends with the coup de grace:

> "Normally, in situations where a copyright is being enforced, based upon the investigation, I would advise the owner of the copyright to pursue further inquiry of John Steele and/or 6881 Forensics to determine the identity of Pirate Bay user sharkmp44. Because all three entities appear under the same control, it is my belief that **the purpose of sharing the file by sharkmp4 appears to have been in an effort to induce infringement for the purpose of monetization of copyrights of commercially low value."** Neville Dec at ¶50.

## II.     LEGAL AUTHORITY

28 U.S.C. §1927 provides that "*any attorney* or other person admitted to conduct cases in any court of the United States or any Territory thereof *who so multiplies the proceedings in any case unreasonably and vexatiously* may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct" (emphasis added).

In addition, "[t]he inherent powers of federal courts are those which are 'necessary to the exercise of all others,'" and include the "'well-acknowledged' inherent power...to levy sanctions in response to abusive litigation practices." *Roadway Express, Inc., v. Piper,* 447 U.S. 752, 764-765 (1980)(internal quotations omitted). *Piper* stands for the proposition that federal courts have the inherent power to assess attorney fees against counsel who willfully abuse judicial processes. Indeed, the Supreme Court has specifically held that sanctions under a court's inherent authority are appropriate if the court finds "that fraud has been practiced upon it, or that the very temple of justice has been defiled." *Universal Oil Products Co. v. Root Refining Co.,* 328 U.S. 575, 580 (1946).

Sanctions under this authority go beyond a court's equitable concerns regarding the relationships and equities between the parties, and goes straight to a Court's ability to police itself, thereby serving two distinct purposes: "vindicating judicial authority without resort to the more drastic sanctions available for contempt of court and making the prevailing party whole for expenses caused by his opponent's obstinacy." *Id.*

The most common utilization of inherent powers is a sanction levied "to protect the due

and orderly administration of justice" and "maintain the authority and dignity of the court." *Cooke v. United States,* 267 U.S. 517, 539 (1925). "When a losing party has acted 'in bad faith, vexatiously, wantonly, or for oppressive reasons, sanctions under the court's inherent power may take the form of attorney fees. *Primus Automotive Financial Svcs., v. Batarse,* 115 F.3d 644 (9th Cir. 1997)(quoting *Alyeska Pipeline Serv. Co. V. Wilderness Soc'y,* 421 U.S. 240 (1975)).

## III.   ARGUMENT

**A.   SANCTIONS ARE APPROPRIATE UNDER THIS COURT'S INHERENT AUTHORITY AND 28 USC §1927**

It is well established that forgery and fraud upon the court are sufficient to support sanctions under this court's inherent authority. Indeed, AF Holdings, LLC, Prenda Law, Inc., and Mssrs. Steele and Hansmeier have first-hand experience with this principle. Although Judge Wright initially considered sanctions pursuant to Rule 11, he subsequently determined that sanctions were more appropriate under the court's inherent authority. *Ingenuity 13 v. Doe,* 2013 WL 1898633 at * 2-3 (C.D. Cal., May 6, 2013). Judge Wright, citing *Chambers v. Nasco, Inc.,* 501 U.S. 32, 54 (1991), noted that "sanctions under the Court's inherent authority are particularly appropriate for fraud perpetrated on the court.

The conduct which led to sanctions in *Ingenuity 13* includes precisely the conduct complained of herein. As described previously, Judge Wright made the following findings of fact, based upon evidence that has all been introduced in the instant case:

> 1.     Steele, Hansmeier, and Duffy ("Principals") are attorneys with shattered law practices. Seeking easy money, they conspired to operate this enterprise and formed the AF Holdings and Ingenuity 13 entities (among other fungible entities) for the sole purpose of litigating copyright-infringement lawsuits. They created these entities to shield the Principals from potential liability and to give an appearance of legitimacy.
> 5.     For defendants that refused to settle, the Principals engaged in vexatious litigation designed to coerce settlement...
> 6.     The Principals have shown little desire to proceed in these lawsuits when faced with a determined defendant. Instead of litigating, they dismiss the case. When pressed for discovery ,the Principals offer only disinformation – even to the Court...
> 9.     The Principals stole the identity of Alan Cooper...

17

11. Plaintiffs have demonstrated their willingness to deceive not just this Court, but other courts where they have appeared. Plaintiffs' representations about their operations, relationships, and financial interests have varied from feigned ignorance to misstatements to outright lies.... *Ingenuity 13 v. Doe,* 2013 WL 1898633 at * 2-3 (C.D. Cal., May 6, 2013).

Notably, the District Court for the District of Arizona has recently concurred that AF Holdings' forgeries, if established represent adequate cause for an award of sanctions. A copy of this Order to Show Cause is annexed hereto as Exhibit L. The District of Minnesota has gone further, and re-opened previously dismissed AF Holdings' cases based on the Alan Cooper forgery. A copy of the Minnesota Order is annexed hereto as Exhibit S.

Other courts across the country have recognized the general principle that submitting forgeries to the court is a sanctionable offense. See, e.g. *DAG Jewish Directories, Inc,. v. Y&R Media, LLC.,* 2010 WL 3219292 (S.D.N.Y. 2010) (sanctions appropriate for submitting forged contract), *CTC Imports & Exports v. Nigerian Petroleum Corp.,* 739 F.Supp.966 (E.D. Penn. 1990)(Rule 11 sanctions were warranted against consignee and attorneys for failure to take adequate steps to verify information on forged bill of lading). As such, if a court finds "that fraud has been practiced upon it, or that the very temple of justice has been defiled," it may assess costs and attorney fees against the responsible party. *Miller v. Cardinale (In re DeVille),* 361 F.3d 539 (9th Cir. 2004) ,citing *Universal Oil v. Root Refining Co.,* 328 U.S. 575, 580 (1946).

There is ample evidence before this court to conclude that the principals have committed fraud and forgery in the instant matter. As to the Alan Cooper forgery, this court has been presented with a sworn declaration from Mr. Cooper, indicating that he did not have any role in AF Holdings and did not authorize anyone to use his signature or identity. In addition, this court has been provided with a certified copy of the transcript from March 11th, wherein Mr. Cooper explicitly denies – under oath and subject to cross-examination - executing the assignment in this matter. In addition, the court has also been presented with evidence that the Principals have pled the Fifth when asked to explain the assignments in this matter and their operations.

In response, AF Holdings has offered...nothing. Mr. Hansmeier has stated that John Steele procured the signature of Alan Cooper, and only he could vouch for it. Mr. Steele, by

contrast, purports to have virtually no information in this regard. Mark Lutz is the only individual that has been identified in AF Holdings' Rule 26 disclosures as having any information about the assignment.

The situation with "Salt Marsh" is similar, though AF Holdings' was compelled to try and provide *some* explanation, by order of this court. As described in detail above, their explanation simply does not makes sense. AF Holdings has consistently identified "Salt Marsh" as a person, and as the owner of AF Holdings. There is simply no argument about this fact, and the Rule 26 disclosures attached hereto as Exhibit B remove all shadow of doubt.

Mr. Hansmeier affirmatively represented to Brett Gibbs that "Salt Marsh" was a natural person. Moreover, as previously described "Anthony Saltmarsh" *is* a natural person and acquaintance of Mr. Steele and cohabitant of Mr. Steele's sister. Nonetheless, we are now told that, in reality, Mr. Steele's paralegal simply chose the name of Mr. Steele's acquaintance as the name of the trust that owns "his" company, and proceeded to personally sign the name of an incorporeal entity to dozens of documents over the course of many months. No record of these documents exist however, and no record of Mr. Lutz sending them to Mr. Gibbs, as he claims he did. When compared with Mr. Gibbs declaration, it is obvious which one is to be believed. The only reasonable conclusion is that Mr. Steele and Mr. Hansmeier deliberately misrepresented the ownership of AF Holdings in order to disguise their own roles as client, attorney, and sole source of evidence for AF Holdings' copyright cases.

Finally, Plaintiff has offered no evidence to contradict the Neville Declaration. As a matter of simple fact, the individual that controlled the GoDaddy accounts associated with John Steele and 6881 Forensics used the exact same IP address as the Pirate Bay user that posted links to "Popular Demand," on the Pirate Bay. Moreover, as described by Mr. Neville, this user posted links to Prenda Law works *before* those works were publicly available from any source.

For the reasons outlined above, sanctions are likewise appropriate under 28 U.S.C. §1927. The entire course of this matter has been designed to unreasonably and vexatiously impose costs upon defendants. Indeed, Judge Wright specifically found that "For defendants that refused to

settle, the Principals engaged in vexatious litigation designed to coerce settlement..." *Ingenuity 13 v. Doe,* 12-cv-08333-ODW; 2013 WL 1898633 at *2 (C.D. Cal. May 6, 2013). These costs are a defendant's chief motivation to settle with AF Holdings, as defending yourself often costs far more than simply paying the tribute. Mr. Steele and Mr. Hansmeier actively misled the attorneys that they employed, and pursued litigation based upon documents that they knew were forged and "infringements" that they actively induced. At the very least, Mr. Steele and Mr. Hansmeier were informed of questions about the Alan Cooper assignment after the initial case management conference. It was only because of their active concealment and misrepresentation that this matter continued for months after this initial disclosure.

## B.  JOHN STEELE AND PAUL HANSMEIER ARE THE PROPER SUBJECTS OF SANCTIONS

Attorneys John Steele and Paul Hansmeier are the proper subjects of sanctions in the instant case because they have knowingly and intentionally perpetrated the frauds described above, and therefore have the requisite bad faith to support such a sanction. The various frauds committed herein were designed to disguise their effective control of AF Holdings. Moreover, their actions in covering up the Alan Cooper fraud and encouraging Mr. Gibbs to continue with the instant suit have needlessly and vexatiously increased Mr. Navasca's costs in this action.

All roads lead back to Mr. Steele and Mr. Hansmeier in this case. Mr. Gibbs has testified that Mr. Steele and Mr. Hansmeier remained responsible for dictating AF Holdings' litigation decisions, even after Prenda Law purportedly took over for Steele Hansmeier. Mr. Steele was (according to everyone but John Steele) wholly responsible for the Alan Cooper forgery in this instant suit, and repeatedly appropriated Mr. Cooper's identity in connection with various companies. Mr. Hansmeier specifically testified that John Steele was the only individual who could vouch for Mr. Cooper's signature on the assignment in this matter. Hansmeier Dep. 122:11-18 . According to Mr. Hansmeier, after AF Holdings was informed of the alleged forgery, it went directly to Mr. Steele to confirm the authenticity of the assignment. Hansmeier Dep. 126:10-127:2.This court is again urged to compare this testimony with Mr. Steele's own purported

ignorance, as set forth in Exhibit M.[7]

Mr. Hansmeier has likewise exhibited the requisite bad faith, and has been Mr. Steele's chief co-conspirator in this scheme. Mr. Hansmeier has "conspired to operate this enterprise and formed the AF Holdings and Ingenuity 13 entities (among other fungible entities) for the sole purpose of litigating copyright-infringement lawsuits." As the evidence above demonstrates, Mr. Hansmeier is the source of much of the misinformation that found itself in Mr. Gibbs filings, regarding both Alan Cooper and Salt Marsh. Mr. Hansmeier appeared as AF Holdings' 30(b)(6) witness herein, and his testimony is incredible on a number of points.

Mr. Hansmeier represented to Mr. Gibbs that Salt Marsh was an individual person, and represented that Prenda was in possession of "Salt Marsh's" signature. Mr. Hansmeier subsequently feigned ignorance when deposed on the topic. Mr. Hansmeier's brother is (purportedly) the source of every declaration upon which Steele Hansmeier/Prenda Law relied in obtaining early discovery of thousand*s* of Doe defendants, and Peter Hansmeier's signature on these documents bears a *striking* resemblance to Paul Hansmeier's own signature – including stray pen marks that appear on both Hansmeier's "signatures." See Exhibit D. Notwithstanding, Paul Hansmeier claimed to be unable testify to virtually anything about his brother, and even claimed to be unable to identify whether a particular recorded voice belonged to his brother. See Hansmeier Dep. at 172, 174-175, and 262:9-16.

Mr. Hansmeier disclaimed any relationship with Prenda Law, Inc., despite being identified as a Prenda Law attorney on various filings, including the AF Holdings' status report attached hereto as Exhibit T. Mr. Hansmeier likewise disclaimed any connection with 6881 Forensics, despite having an email address via the 6881forensics.com domain name and receiving mail at that address related to the Florida Sunlust litigation. See Exhibit F, bcc'd to prhansmeier@6881forensics.com. Mr. Hansmeier testified that he did not have any interest in AF

---

[7] Mr. Hansmeier's repeated use of the pronoun "we" when describing AF Holdings investigation is also interesting, given his purported lack of any involvement with the corporation. See, e.g. Hansmeier Dep. at 122:22-24 ("And so when that occurred, we –or AF Holdings and Mark Lutz specifically..."); 124:1-2 ("We further – Mr. Steele further reached out to Paul Godfread..."); 124:11 ("we concluded"); 124:21 ("When I say our, I mean AF Holdings");

Holdings, though he appeared on their behalf in this matter and "obtained" at least one of the signatures on the suspect assignment.  Mr. Hansmeier also testified that he represented AF Holdings as a member of Alpha Law, his own law firm, though he claims never to have received any income for this representation nor any share of the settlement proceeds.  Hansmeier Dep. at 95:19-96:6 & 112.  Notably, Alpha Law Firm's AF Holdings' cases in the District of Minnesota were re-opened on June 20, 2013, due to the fraudulent Alan Cooper assignment.  See Exhibit S.

Mr. Hansmeier is wholly unable to explain why he would represent an unrelated company, both as an attorney and a 30(b)(6) deponent, wholly free of charge, while maintaining an email address at yet another Prenda-affiliated company that he has no connection with.  Mr. Hansmeier's entire testimony in this matter is indicative of bad faith and, as recognized by Judge Wright, his deposition is notable primarily because of what he attempts to conceal.  Mr. Hansmeier is responsible for most of the disinformation that found itself in AF Holdings' filings in the instant case and, therefore, should be held responsible for the costs resulting from the disinformation.

## C.   JOHN STEELE AND PAUL HANSMEIER SHOULD BE HELD JOINTLY AND SEVERALLY LIABLE FOR MR. NAVASCA'S ATTORNEY'S FEES HEREIN

In the instant case, John Steele and Paul Hansmeier should be held jointly and severally liable with AF Holdings' for the $23,554.05[8] in attorney's fees incurred by Mr. Navasca in this action.  This sanction is appropriate for a number of reasons.  First, the entire scheme orchestrated by Mr. Steele and Mr. Hansmeier relies upon using litigation costs as a weapon of extortion.  It is entirely appropriate that Mr. Steele and Mr. Hansmeier should feel the other edge of this blade.

Second, the frauds that were committed in this action were committed in order to shield Mr. Steele and Mr. Hansmeier from financial responsibility for their actions in these cases.  This is why they created an offshore entity without assets or (supposedly) any living beneficiaries.  This is also why they have gone to great lengths to use a nearly impenetrable corporate structure and why they regularly use "corporate representatives" to conceal the true parties in interest.  This

---

[8] For a complete breakdown on charges, see Declarations at ECF Nos. 85, 86 & 89.

court should not enable this scheme by holding an essentially fictitious[9] offshore entity wholly responsible for the actions of individual attorneys and officers of the court. Mr. Steele and Mr. Hansmeier have used the privileged position of attorneys, and the benefit of the doubt that we are often given, in order to perpetrate a fraud upon Mr. Navasca, and thousands of other individuals and shield themselves from liability.

### IV.    CONCLUSION

This court has been presented with ample evidence that Mr. Steele and Mr. Hansmeier have perpetrated a fraud upon this court under, the auspices of AF Holdings, by appropriating the identities of acquaintances and actively misrepresenting the facts surrounding their roles in the company. They have needlessly and vexatiously subjected Mr. Navasca to $23,554.05 in costs and fees, solely because he has chosen to defend himself against claims that he *knows* to be false. They have cowed countless others in Mr. Navasca's position to pay dubious "settlements", and have made literally millions of dollars in the process. The public opinion of the legal profession is no secret, and no point of pride. I have no illusion that a just resolution of the instant case will forever change the course of public opinion regarding our profession. What we can be certain of, however, is that without a just resolution, Mr. Navasca will forever be a cynic on the topic and, in all honesty, can we even pretend that he is wrong?

DATED: July 1, 2013                Respectfully Submitted,

                                   NICHOLAS RANALLO, ATTORNEY AT LAW


                                   By:_____/s/ Nicholas Ranallo_____

---

[9] "They have no business. They have no employees. They have no function really. They are not even really a shell, are they?" March 11th Transcript at 17:6-9.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Nicholas Ranallo (Cal Bar #275016)
Attorney for Joe Navasca
371 Dogwood Way,
Boulder Creek, CA 95006
P: 831.703.4011
F: 831.533.5073
nick@ranallolawoffice.com

**CERTIFICATE OF SERVICE**

THE UNDERSIGNED HEREBY CERTIFIES that on this 2st day of July, 2013, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system and served on all of those parties receiving notification through the CM/ECF system.

Courtesy copies have been sent via regular mail and email to the addresses below:

John Steele
1111 Lincoln Rd., Suite 400
Miami Beach, FL 331139
service@livewireholdings.com

Paul Hansmeier
Alpha Law Firm, LLC
900 IDS Center
80 South 8th Street
Minneapolis, MN 55402
prhansmeier@thefirm.mn

/s/            Nicholas R. Ranallo

Nicholas Ranallo, Attorney at Law