Paul Duffy (Bar No. 224159)
161 N. Clark St., Suite 3200
Telephone: (800) 380-0840
E-mail: paduffy@wefightpiracy.com

*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| AF HOLDINGS LLC, | ) | No. 3:12-CV-02396-EMC |
| | ) | |
| Plaintiff, | ) | **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SANCTIONS** |
| | ) | |
| v. | ) | |
| | ) | |
| JOE NAVASCA, | ) | |
| | ) | |
| Defendant. | ) | |

Defendant's motion for sanctions (ECF No. 93) is another in a seemingly endless attempts on the part of counsel for the Defendant to rehash arguments already made, concoct new arguments that have no basis in fact, and bootstrap proceedings in other jurisdictions into the appearance of relevance here. But the math remains the same; there is nothing in any of Defendant's exhibits that support any of his conspiracy theories, and multiplying nothing times the hundreds of pages of exhibits he seeks to rely upon still leaves nothing. This case was dismissed with prejudice, and the Defendant's motion to recover attorney fees is fully briefed and pending in this Court. Defendant's Motion for Sanctions is an improper attempt to multiply these proceedings needlessly, on matters that Defendant had ample opportunity to raise previously, solely for the pecuniary gain of the Defendant's attorney.

There are however, two aspects of Defendant's Motion that are highly troubling and suggest that if any sanctions are appropriate they should be imposed upon Defendant's counsel. *First,* counsel has produced a declaration of former Plaintiff attorney Brett Gibbs (the "Gibbs Affidavit")

1  that Defendant's counsel appears to have procured through a *quid pro quo,* in which Defendant's co-
2  counsel would assist Gibbs financially in the matter under appeal from the Central District of
3  California before Judge Wright in exchange for Gibbs' agreement to provide the Declaration.
4  Leaving aside for now the many ethical infirmities arising from an attorney who offers a declaration
5  against his own client, disclosing privileged communications and confidences, for his own personal
6  gain, Defendant's counsel knows, or should know, that statements in the Gibbs Declaration are, at a
7  minimum, directly contrary to Gibbs' sworn statements in other proceedings. Defendant's counsel
8  fails to notify the Court of that fact. Defendant's counsel has also failed to inform the Court that, the
9  Monday after Gibbs dated his Declaration, he and his co-counsel in the Central District filed in the
10 Central District of California a motion seeking to relieve Gibbs of the obligation for a sanction in the
11 amount of approximately $101,650 for which he was jointly and severally liable. (A true and correct
12 copy of that as ***Exhibit "A"*** hereto and made a part hereof). The only purpose of counsels'
13 otherwise-inexplicable stipulation in the Central District is that they agreed to file it with that Court
14 in exchange for a declaration that suits their interests in this matter. Indirect payment for testimony,
15 and counsel's failure to point out that Gibbs' current declaration directly contradicts his prior
16 statements, is conduct that the Court should sanction, at minimum, by denying the Motion in its
17 entirety.

18 More troubling, however, is the fact that Defendant's counsel contacted the undersigned in
19 May 2013 and threatened to bring this Motion if the Plaintiff did not agree to settlement terms. (*See*
20 the declaration of undersigned counsel, a true and correct copy of which is attached at ***Exhibit "B"***
21 hereto and made a part hereof.) Defendant refused to specify the basis for his sanctions motion in
22 that telephone call, other than to say it related to affidavits filed in the case. Undersigned counsel
23 specifically inquired as to the exact statements Defendant claimed were false, but counsel refused to
24 do so. With the filing of the Motion for Sanctions, however, it is now clear that counsel planned to
25 claim that the affidavit of Mark Lutz submitted in this matter (ECF No. 80) was false on the ground
26 that Gibbs did not receive mail from Lutz, and to use the already-drafted Gibbs Declaration to
27 support that claim. In other words, counsel believed (or claims now to believe) that an affidavit filed
28 in this Court was false, and proposed to Plaintiff not to bring it to the Court's attention in exchange

for payment of money from Plaintiff. Counsel's conduct in this regard is highly unethical and justifies sanctions. Plaintiff firmly denies that the Lutz affidavit was false or misleading in any respect. But counsel's attempt to create the appearance of a false statement in exchange for a cash settlement payment from Plaintiff is highly unethical, and the Court should sanction that conduct.

There is no ground for sanctions. The Gibbs Declaration is highly questionable and reflects more on breaches of his own ethical duties to Plaintiff than anything else, and Defendant's counsel is guilty of misleading this Court by failing to adequately point out that it contradicts Gibbs' own prior sworn statements. The Court should deny the Motion.

**BACKGROUND**

Defendant's Motion is a dizzying accretion of conspiracy theories, invective and inadmissible evidence that betrays a motive on the part of his counsel other than representation of the Defendant. Indeed, Plaintiff is informed that Defendant's counsel is a panel attorney for the Electronic Frontier Foundation ("EFF"), an anti-copyright vigilante group whose panel attorneys have filed dozens upon dozens of similar filings throughout the country. The EFF panel attorneys have taken to attaching mass numbers of filings and transcripts of other court proceedings as exhibits to their filings, apparently in an attempt to lend the appearance of legal and factual gravitas otherwise missing from their arguments. The width (but not the depth) of their briefs thus increase exponentially with every motion they file. Defendant's counsel has applied that tactic here, attaching a vast volume of "exhibits" for which he has either made no attempt to establish a foundation regarding admissibility, or failed to put the documents into any accurate context, and which are largely irrelevant to any specific matter that has been addressed by the Court in this matter.

But here is the context: Despite relentless efforts in dozens of cases and in multiple Federal and State jurisdictions over the past several years, no court in the United States, to Plaintiff's knowledge, has sanctioned Plaintiff or its counsel for enforcing copyright rights, except for the order issued in early May 2013 in the U.S. District Court for the Central District of California, Case No. 12-cv-8333. While the Orders of that Court (for which six (6) notices of appeal, now consolidated, were filed in the Court of Appeals for the Ninth Circuit) understandably has caused heightened

1  inquiry with respect to AF Holdings' cases, the nation-wide attempt to make a living through
2  sanctioning plaintiff attorneys has to date been unfruitful.

3  But the efforts to make sanction-seeking a viable practice area continue, as shown in
4  Defendant's Motion. Here, the Court has dismissed the case with prejudice (ECF No. 83) and the
5  matter is pending on Defendant's motion to recover attorney fees (ECF No. 84-88). Before
6  dismissing with prejudice, the Court ordered Plaintiff's counsel to file an affidavit relating to the
7  existence and whereabouts of the Local Rule ADR statement that he filed in this case. Plaintiff's
8  former counsel, Mr. Gibbs, failed to file such a declaration, and instead informed counsel for the
9  undersigned that he did not have the original, signed ADR statement. At the same time, CEO of AF
10 Holdings, Mr. Lutz, also filed a declaration stating that he signed and mailed documents to Mr.
11 Gibbs from time to time on behalf of the Salt Marsh Trust in connection with court proceedings, and
12 further stated that he was familiar with the ADR rules. (ECF No. 80.) Lutz in his affidavit
13 specifically stated that he from time to time signed certifications sent to him by Mr. Gibbs. This
14 Court, upon reviewing the affidavits, held that "Because AF's counsel has now substantially
15 complied with the Court's order, the Court sees no basis to continue deferring a final judgment" and
16 dismissed the case. (ECF No. 82.)

17 But Defendant's counsel apparently cannot let go. Not satisfied with the Court's ruling, and
18 seeking to add on to the $23,000 in legal fees that he is already seeking to recover (Defendant did
19 not even file an answer), Defendant's counsel has filed his Motion for Sanctions. Despite its
20 ponderous length and divergent, logically inconsistent and bizarre conspiracy theories, the primary
21 issue in the Motion is whether Mr. Lutz's affidavit was accurate. Gibbs now disputes that he
22 received signed papers from Lutz. Gibbs failed to file a declaration on the issue when the Court
23 previously ordered Plaintiff's counsel to do so, but now offers one (filed after Gibbs received a large
24 financial leg up from Defendant's counsel in the Central District of California matter) and so the
25 actual controversy is a he-said, she-said matter about whether Mr. Lutz periodically signed and sent
26 papers to Mr. Gibbs, and whether "Salt Marsh" is the name of an actual person (according to
27 Defendant's conspiracy theory) or the name of a trust (according Plaintiff's Rule 30(b)(6) deponent,
28 Mr. Lutz' affidavit and common sense). Mr. Gibbs makes no attempt to state that he complied with
   Northern District Local Rule 5.1(c)(4) to obtain and keep original signed documents filed with the

Court, and asserts that he was told, and based upon that and in violation of the rules applicable to him took as an article of faith, that "Salt Marsh" is the name of an actual human being.

In a typical case, resolving such a dispute and such "pure heart empty head" allegations on the part of an attorney would be very straightforward. The rules place obligations on the attorney who signs and files papers in a court for a reason. But Defendant's counsel, and other panel attorneys, make a practice of magnifying such issues far beyond their logical significance. But even despite that, the Defendant's Motion dwarfs its own contrived "dispute" with far more relevant issues resulting from the professional misconduct of Defendant's counsel, where he conditioned whether he would report what he (presumably) believes to be a false affidavit filed in the Court upon payment of settlement proceeds. Of course, counsel had an ethical duty to report such conduct, if in fact he actually believed it occurred, irrespective of whether Plaintiff paid him to settle the case. His threat, made to undersigned counsel repeatedly, amounted to: Give me money or I will claim to the court that the Plaintiff's affidavit was false. It is difficult to imagine more egregious and unethical conduct on the part of an attorney.

The other glaring ethical issue presented in the Motion is the fact that it relies upon the declaration of Mr. Gibbs. As set forth below, Mr. Gibbs has variously made sworn statements to the effect that he generally directed litigation for Prenda Law (in a declaration filed in the U.S. District court for the Middle District of Florida); and, after he made a "deal" with opposing counsel to withdraw a sanctions motion against him, filed an affidavit stating that he did not run Prenda Law (in second declaration in the same case). While he signed and filed each complaint for, and litigated, each lawsuit on behalf of AF Holdings in California, in the Central District Court's hearing in March 2013, he referred to himself as merely its "secretary." And here, despite filing the complaint, filing the ADR statement (for which he had an obligation under the local rules to obtain and retain the original signature, but did not), engaging in multiple and contentious motion practice and meet-and-confer communications with Defendant's counsel, claims that others were responsible for his filings and conduct. He also claims that he believes that a person named "Salt Marsh" actually exists, an incredible claim, particularly by a licensed attorney. Gibbs' claimed belief that "Salt Marsh" is a person's name is particularly disingenuous because Mr. Gibbs defended Plaintiff at the Rule 30(b)(6) deposition in this matter, where Defendant's counsel asked the deponent, over and over again, whether an actual person with that name owned Plaintiff, and the deponent answered no.

Simply put, Mr. Gibbs' many inconsistent, sworn statements made in Federal Courts show that the Court should discount his Declaration completely. This is particularly true because, not coincidentally, after he signed it on June 6, 2013, Defendant's co-counsel filed a declaration in the Central District of California asking, on Mr. Gibbs' behalf, to relieve him of the obligation to post an appeal bond. Given that the Court there imposed joint and several liability upon all respondents, including Mr. Gibbs, of $106,650, Defendant's counsel, and his co-counsel, thus agreed to provide a whopping economic benefit to Mr. Gibbs in exchange for submitting his Declaration. California Rule of Professional Conduct 5-310, among other things, bars an attorney from indirectly paying, or offering to pay, compensation to a witness contingent upon the content of his testimony. The circumstances make very clear that the Declaration of Mr. Gibbs was part of a *quit pro quo* in exchange for his Declaration. Mr. Gibbs was aware, or hade notice of, the Lutz Affidavit in May; the fact that he waited until Defendant's counsel sought to give him a leg up in the Central District case highly suggests the existence of, at minimum, an indirect payment in exchange for the Declaration. The Court should completely discount the Gibbs Declaration.

I. **DEFENDANT'S COUNSEL HAS COMMITTED SANCTIONABLE CONDUCT BY CLAIMING THAT AN AFFIDAVIT IS FALSE IN ORDER TO INDUCE A SETTLEMENT.**

Defendant's counsel committed severe, sanctionable and impermissible conduct by claiming that an affidavit filed in this case was false as a basis to procure a settlement from the Plaintiff[1]..

California Rule of Professional Conduct 5-310, among other things, bars an attorney from indirectly paying, or offering to pay, compensation to a witness contingent upon the content of his testimony. Specifically,

**Rule 5-310. Prohibited Contact With Witnesses.**

A member shall not: …

(B) Directly or indirectly pay, offer to pay, or acquiesce in the payment of compensation to a witness contingent upon the content of the witness's testimony or the outcome of the case…

Furthermore, the Illinois Code of Professional Conduct (where Defendant's counsel transmitted his threats to claim fraud unless he was paid), provides at Rule 8.4 (Misconduct):

---

[1] Undersigned counsel had this conversation with Defendant's counsel in early June 2013, during what he presented to be a "meet-and-confer" conference relating to his petition for attorney fees in this matter. *See* Exhibit B hereto.

"It is professional misconduct for a lawyer to: …

> (g) present, participate in presenting, or threaten to present criminal or professional disciplinary charges to obtain an advantage in a civil matter…."

Furthermore:  Illinois Rule of Professional Conduct 8.3 provides that:

**RULE 8.3: REPORTING PROFESSIONAL MISCONDUCT**

(a) A lawyer who knows that another lawyer has committed a violation of Rule 8.4(b) or Rule 8.4(c) shall inform the appropriate professional authority.

(b) A lawyer who knows that a judge has committed a violation of applicable rules of judicial conduct that raises a substantial question as to the judge's fitness for office shall inform the appropriate authority.

Defendant's counsel's threats that he would report the existence of a "false" affidavit unless Plaintiff paid settlement funds is, by definition, professional misconduct in both California (where he made them) and in Illinois (where they were received).  Counsel's attempt to coerce a settlement by threats that undisclosed and identified "fraud" in prior filings will be reported to the Court, accompanied with an unwillingness to identify the specific "fraud" and allow for an opportunity to correct errors, or to explain the statements, is sanctionable conduct throughout the Nation.  The Court should, at minimum, reject the use of the Federal judicial system for such impermissible purposes and deny the Motion.

Furthermore, as set forth above and pursuant to Illinois Rule of Professional Responsibility 8.3, undersigned counsel will report the misconduct of Defendant's counsel as set forth herein to the California State Bar.

**II.    THE GIBBS DECLARATION IS NOT CREDIBLE AND THE COURT SHOULD DISREGARD IT.**

In addition to Defendant's counsel's impermissible and unethical attempts to use the threat of unidentified fraud upon the Court to induce a favorable settlement, the declaration of Mr. Gibbs,

which Defendant seeks to use to support the only salient part of its Motion, should be disregarded in its entirety, because as being entirely incredible.

### A.  The Gibbs Declaration Was Clearly A *Quid Pro Quo*

Initially, as set forth above, the Declaration appears to be the product of an impermissible attempt on the part of Defendant's counsel to "indirectly pay, or offer to pay, or acquiesce in the payment of compensation to a witness contingent upon the content of the witness's testimony…" in violation of California Rule of Professional Responsibility Rule 5-310 ("Prohibited Contact With Witnesses").  The date on the Gibbs Declaration is June 4, 2013.  Less than a week later, on June 10, 2013, Mr. Gibbs and Mr. Pietz (co-counsel with Mr. Ranallo on this case and in the Central District of California case) filed a "Stipulation" (a true and correct copy of which is attached hereto as ***Exhibit "C"*** and made a part hereof). In it, Mr. Pietz (co-counsel with Defendant's counsel in the Central District of California case) asked the court to make Mr. Gibbs a party to the bond for $101,650 posted in that case, to which Mr. Gibbs was **not** a party, and to otherwise exempt Mr. Gibbs form other sanctions imposed in that case.

The "stipulation" was inexplicable given the substantial hostility between Messrs. Gibbs and Pietz in the months leading up to the Central District's sanctions order, which clearly had a hand in the imposition of sanctions in that case.  The only apparent, and logical, explanation for why Pietz would submit such an affidavit (which the Court denied) is that the Stipulation was a *quid pro quo* given in exchange for Mr. Gibbs' Declaration intended to assist the Defendant in this action. Defendant's counsel offered to assist Mr. Gibbs in obtaining a $101,650 benefit (the sanctions were joint and several and thus Mr. Gibbs was potentially liable for that entire amount) by adding him to the bond, even though he did not pay for it.  The Gibbs Declaration was clearly a *quid pro quo* in exchange for Defendant's counsel's attempt to relieve him of a potential $101,650 obligation.

### B.  Mr. Gibbs' Declaration Demonstrates That He Violated Local Rules.

The Court should also completely disregard the Gibbs Declaration because it is incredible on its face, and because it shows that Mr. Gibbs violated Local Rule 5.1( c)(4).

Initially, Mr. Gibbs states in his declaration that he was told by a third party that a person having the name of "Salt Marsh" owned AF Holdings.  The notion that a grown man, licensed to practice law in the State of California, would believe such a statement without further inquiry is, on

its face, incredible. Furthermore, Mr. Gibbs defended the Rule 30(b)(6) deposition of AF Holdings in this case, in which Defendant's counsel repeatedly asked the deponent, over and over, whether there was a person named "Salt Marsh," and the deponent answered "no." If Mr. Gibbs felt that this answer was false and misleading, he had an obligation to do something at the time, but he did not correct any misunderstanding.[2]

Furthermore, Mr. Gibbs testimony shows that he violated his responsibilities under Local Rule 5.1(i)(3) of the Northern District of California, which states that:

> In the case of a Signatory who is not an ECF user, or who is an ECF user but whose user ID and password are not utilized in the electronic filing of the document, as in the case of documents requiring multiple signatures, the filer of the document shall attest that concurrence in the filing of the document has been obtained from each of the other Signatories, which shall serve in lieu of their signatures on the document. The filer's attestation may be incorporated into the document itself, or take the form of a declaration attached to the document. The filer shall maintain records to support this concurrence for subsequent production for the Court, if so ordered, or for inspection upon request by a party, until one year after the final resolution of the action (including appeal, if any). The filer may attach a scanned image of the signature page of the document being electronically filed in lieu of maintaining the paper record for subsequent production if required.

Mr. Gibbs admits that he was the ECF filer of the ADR Certification, and thus had an obligation to obtain an original signed document before filing, and to maintain that document for future inspection. His declaration, if believed, is an admission that he did not obtain an original signature, thus violating his obligation under the Local Rules  Those rules do not permit a person to rely upon third-party statements that an entity has read a document but not signed an original document.

**C.  Mr. Gibbs Testimony Has Varied Over Time.**

Finally, the Court should take into account the fact that Mr. Gibbs' statements throughout the country as to his role has shifted dramatically over time, and in particular shifted once attorneys such as Defendant's counsel began to threaten him with sanctions. Given the lack of credibility of him as a witness, the  Court should disregard his declaration.

---

[2]  Defendant's counsel has cited that section of the deposition transcript *ad nauseum* here and on internet sites and court proceedings throughout the country, and Plaintiff does not restate it here.

As set forth in the complaint of the CEO of AF Holdings to the California State Bar (a true and correct copy of which is attached at ***Exhibit "C"*** hereto and made a part hereof), Mr. Gibbs has made vastly inconsistent statements to Federal Courts as to his involvement in Prenda and cases he filed as an alleged "of counsel" to that firm. (*See* Exhibit C at p. 2-3 and exhibits cited therein.) Furthermore, while Mr. Gibbs in approximately November 2012 filed an affidavit in the U.S. District Court for the Middle District of Florida that he essentially ran Prenda, he later changed his testimony in exchange for a "deal" by a defendant's counsel to not seek sanctions against him if he altered his affidavit in accordance with the attorney's instructions. (*See* email chains attached at ***Exhibit "E"*** hereto and made a part her4eof.).

Given the extreme shifts in Mr. Gibbs' testimony as to his role with Prenda --- which correspond directly to whether or not a defense attorney is seeking sanctions against him --- the declaration made in the context of this Motion for Sanctions is entitled to no credence. As it is the any logical basis for Defendant's Motion, the Court should deny it in its entirety.

**III.   OTHER CONSPIRACY THEORIES IN DEFENDANT'S MOTION.**

Defendant's Motion includes many other baseless allegations and conspiracy theories which are too factually or, frankly, bizarre, to justify serious consideration. They also range far, far afield of any issue that is relevant or that this Court considered since this case was filed. Plaintiff therefore does not respond to the more fanciful arguments in Defendant's Motion, but respectfully requests that to the extent the Court deems one or more to be relevant in any respect, that it identify those matters and allow Plaintiff opportunity to respond and present evidence to contradict them.

One issue that Defendant expends considerable time on is the baseless accusations of a person representing himself as being knowledgeable as to BitTorrent protocol. The individual, Delvan Neville, prepared an affidavit(s) that, true to form, Defendant's counsel has taken to attaching to every paper filed in this and other courts. It appears that the essence of Mr. Neville's

theories are that Plaintiff or its agents uploaded copyrighted works to BitTorrent swarms in order to induce infringement. (ECF No. 88, 92.) Plaintiff maintains that the technology its agents use to monitor BitTorrent swarms does not permit it to upload pieces of the copyrighted work to members within the swarm. Both Plaintiff and Defendant cannot be correct. Plaintiff is nevertheless willing to stipulate before this Court that, if Defendant retains (at its sole cost) an independent third-party consultant acceptable to Plaintiff who can demonstrate credentials sufficient to be an expert witness in a Federal Court proceeding, and the individual can confirm whatever Mr. Neville's opinions are, Plaintiff will agree to forego further challenges to Mr. Neville's "declarations."

## CONCLUSION

The Court should deny Defendant's motion, and grant any and all further relief that the Court deems to be reasonable and appropriate under these circumstances.

Respectfully Submitted,

AF Holdings, LLC

DATED: July 16, 2013

By: /s/ Paul Duffy
Paul Duffy (Bar No. 224159)
161 N. Clark St., Suite 3200
Telephone: (800) 380-0840
E-mail: paduffy@wefightpiracy.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 16, 2013, all individuals of record who are deemed to have consented to electronic service are being served a true and correct copy of the foregoing document, and all attachments and related documents, using the Court's ECF system.

                                                /s/  Paul Duffy