Nicholas Ranallo, Attorney at Law #275016
371 Dogwood Way
Boulder Creek, CA 95006
Telephone No.: (831) 703 - 4011
Fax No.: (831) 533-5073
Email: nick@ranallolawoffice.com
Attorney for Defendant Joe Navasca

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AF HOLDINGS, LLC., | Case No. 3:12-cv-02396-EMC |
| Plaintiff, | Magistrate Judge Nandor J. Vadas |
| v. | |
| JOE NAVASCA | **REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SANCTIONS** |
| Defendants. | |

## I. INTRODUCTION

On July 2, 2013, Defendant Joe Navasca filed his Motion for Sanctions (ECF No. 93) and a number of supporting declarations seeking to hold attorneys John Steele and Paul Hansmeier jointly and severally liable with the Nevis-based shell company AF Holdings, for the full amount of Mr. Navasca's attorney fees, pursuant to 28 U.S.C. 1927 and this court's inherent authority. On July 16, 2013, the instant motion was referred to Magistrate Judge Nandor J. Vadas for Report and Recommendations. On that same date, AF Holdings' filed its response to the Motion for Sanctions, seeking to discredit nearly everyone involved, while simultaneously failing to address any of the substantive points in Mr. Navasca's motion. As described further herein, AF Holdings' failure to offer any substantive rebuttal has been a common theme in this action, as this court has repeatedly recognized.

On July 22, 2013, Judge Chen granted Defendant's Motion for Attorney's Fees pursuant to

Copyright Act §505 and awarded $22,531.93, noting that Plaintiff's claims were frivolous and objectively unreasonable in a wide assortment of ways, as well as being improperly motivated and questionably litigated by AF Holdings and Prenda Law. For the reasons stated in Defendant's initial Motion for Sanctions and further outlined below, this Court should hold attorneys John Steele and Paul Hansmeier jointly and severally liable for the full $22,531.93 awarded to Defendant.

## II. ARGUMENT

### 1. Plaintiff's Opposition Fails to Address Defendant's Substantive Allegations

Plaintiff spends the entirety of its opposition attempting to discredit defense counsel and its own former counsel in this action, and simply *does not address* any of Defendant's substantive allegations. Chief among these is the allegation that Mr. Steele and Mr. Hansmeier conspired to forge Alan Cooper's signature on the assignment, in order to hide the true parties in interest in this matter. Plaintiff's opposition simply labels this a "conspiracy theory" and states that "to the extent the Court deems one or more to be relevant in any respect, that it identify those matters and allow Plaintiff opportunity to respond and present evidence to contradict them." ECF No. 98 at 10.

AF Holdings has not responded to the substantive allegations because, quite simply, it cannot. Their response in this matter is the equivalent of pleading the Fifth, which each of the principals has already done when forced to answer these questions under oath. Plaintiff's dismissive response is all the more astounding in light of the fact, noted in Defendant's original brief, that the Alan Cooper forgery has already formed the basis of sanctions and that AF Holdings and Prenda are facing additional sanctions proceedings in multiple jurisdictions over the forgeries. Indeed, Judge Chen stated in this case on July 22 that "the signature by Alan Cooper appears to have been a forgery, as Judge Wright concluded in his recent sanctions order." ECF No. 100 at 2. Plaintiff's response nonetheless considers the issue "too factually [sic] or, frankly, bizarre to justify serious consideration." ECF No. 98 at 10.

As discussed at length in Defendant's original motion, Mr. Hansmeier's story (as AF Holdings' 30(b)(6) deponent) and Mr. Steele's story are simply irreconcilable. Mr. Hansmeier's

version, purportedly received directly from Mr. Lutz, was that John Steele was specifically tasked with finding a "corporate representative" and arranging for signature of the assignment that forms the basis of AF Holdings' claims in this matter. See Hansmeier Dep. at 122:5-11. A copy of Mr. Hansmeier's deposition was previously filed at ECF No. 84-1. Mr. Steele, according to Mr. Hansmeier, returned the assignment with the repudiated signature of Mr. Cooper. According to Mr. Hansmeier, Mr. Lutz was suitably aghast at learning of Mr. Cooper's repudiation, and went directly to Mr. Steele to ease his concerns. Hansmeier Dep. at 123:11. "Mark Lutz spoke to Mr. Steele and said, Well, I understand that there's an issue with this Alan Cooper and asked Mr. Steele point-blank, is the signature a forgery. Mr. Steele said the signature is not a forgery." Hansmeier Dep. at 123:12-16.

Later, Mr. Hansmeier testifies that *only* Mr. Steele has any knowledge about the assignment, and Mr. Steele was not talking . Specifically, Mr. Hansmeier states that "the only person who knows who this Alan Cooper is is John Steele and we asked Mr. Steele, is this the same guy, is there another Alan Cooper and Mr. Steele declined to respond..." Hansmeier Dep. at 126:22-25. Somehow, Mr. Hansmeier and Mr. Lutz took this as a full statement of confidence regarding Mr. Cooper's signature, and proceeded with the instant suit against Mr. Navasca.

Mr. Steele's version of events came later, in the form of a declaration that, while under oath, was not subject to cross-examination. Mr. Steele's declaration is couched in inexplicable reservations ("it is my understanding..."), but the substance nonetheless cannot be reconciled with Mr. Lutz/Mr. Hansmeier's version of events. Specifically, as pointed out in Defendant's original motion, Mr. Steele testified that originally he and Mr. Cooper discussed setting up their own business, which he claims never got off the ground. A copy of Mr. Steele's affidavit was previously filed at ECF No. 93-13. In reality, Mr. Steele registered a number of entities using Mr. Cooper's identity, including VPR Inc., another Steele Hansmeier pornography Plaintiff.

It is Mr. Steele's "understanding" that sometime thereafter Mr. Cooper "participated in a limited number of transactions in 2011 with Mr. Lutz' company" though he expresses no

knowledge regarding any specifics of these "transactions".[1] Why then would Mr. Lutz go to Mr. Steele in order to allay his fears of forgery, and why would Mr. Steele be the individual reaching out to Mr. Cooper's attorney for an explanation? Plaintiffs prior explanations for the Cooper assignments simply make no sense. Alan Cooper has denied, under oath, that he executed the assignment in this matter and Plaintiff has repeatedly failed to offer any reason to question Mr. Cooper's testimony.

Plaintiff's response to the Declaration of Delvan Neville is similar. Plaintiff attempts to attack his qualifications while simultaneously relying on Paul Hansmeier's brother, an individual with no known computer background at all, as the sole source of its technical information herein. Plaintiff again does not deign to respond to Mr. Neville's substantive points – the same failed strategy that they employed when opposing Mr. Navasca's Motion for Attorney Fees. As recognized by Judge Chen,

> "AF has in its brief attacked the Neville declarations as unreliable on various grounds...But, notably, what AF has *not* done is offer any *counter-evidence* such as a declaration from Mr. Steele in which he denies that he is "sharkmp4" or other evidence that AF did not take steps to induce users to download the subject works. This evidence could easily have been offered by AF as a part of its opposition brief. **AF's failure to submit any factual denial under oath is telling**." ECF No. 100 at 5 (bold added, italics in original).

Given the fact that Mrssrs. Steele, Hansmeier, and Duffy have all pled the Fifth when ordered to testify, the failure is telling but not surprising. Even a cursory review of Mr. Neville's declaration supports its reliability – it is incredibly detailed and his conclusions are exhaustively supported by objective evidence.

Judge Chen's above criticism applies equally to AF Holdings' non-denial regarding "Salt Marsh." As noted in Mr. Navasca's original motion, AF Holdings' has repeatedly identified Salt Marsh as a natural person and *an individual with knowledge* regarding AF Holdings case on a Rule 26 disclosure. The reason for this, as described in the declaration of Brett Gibbs, is that Peter

---

[1] It is worth noting that Mr. Steele's affidavit was in response to an Order to Show Cause asking AF Holdings to specifically identify, "the persons who signed Exhibit B in the names of Raymond Rogers and Alan Cooper." A copy of this Order to Show Cause was filed as Exhibit "K" to Defendant's Motion for Sanctions.

Hansmeier specifically told him that Salt Marsh was a person, and the owner of AF Holdings. Moreover, Anthony Saltmarsh *is* a natural person, with familial ties to John Steele, and was purportedly used as a "corporate representative" by AF Holdings at some point during the incorporation process. Nonetheless, AF has again failed to offer any substantive denials of the essential claims, choosing only to attack Mr. Gibbs and an imagined "quid pro quo." AF could easily have offered a declaration from Mr. Hansmeier or Mr. Steele refuting Mr. Gibbs essential allegations, but they have not. As recognized, "AF's failure to submit any factual denial under oath is telling."

**2. Mr. Gibbs Declaration is Consistent With Prior Evidence and Was Not The Product of Any "Quid Pro Quo."**

Plaintiff's opposition focuses on Mr. Gibbs declaration as though it were the entire basis upon which Mr. Navasca seeks sanctions. Clearly, it is not. Mr. Gibbs declaration supports some of Mr. Navasca's allegations, but each is independently supported (at great length) in Defendant's Motion for Sanctions. For example, as described above, the allegations regarding Mr. Cooper come exclusively from Mr. Steele and Mr. Hansmeier's own statements, as well as Mr. Cooper's. Likewise, the allegations regarding "sharkmp4" come from the Declaration of Delvan Neville. Mr. Gibbs declaration does not reach either of these allegations, and discarding Mr. Gibbs declaration entirely would not change the unavoidable conclusions that the assignment is forged and that alleged infringements were intentionally induced by Mssrs. Steele and Hansmeier.

Secondly, as evidenced by the declarations of both Mr. Gibbs and Mr. Pietz submitted simultaneously herewith, (Exhibits A and B hereto), there was simply no "quid pro quo" for testimony in this case. The events leading up to the stipulation complained of are detailed in Mr. Pietz declaration, annexed hereto as Exhibit B. The stipulation does not relieve Mr. Gibbs of joint and several liability, but merely recognizes the fact that he was wholly unable to post the sizable bond himself, and further sanctions of $1000 per day would be pointless. Moreover, the stipulation clearly states that *it is Mr. Gibbs' position* that "the Court's June 7 Order required that the bonds clearly set forth the joint and several liability of the parties, and the posted bond

1  effectively applies to and secures payment from all of the sanctioned parties, including Mr.
2  Gibbs." ECF No. 98-1.  Nonetheless, Mr. Pietz and Mr. Gibbs agreed that "if the additional bond
3  required in the June 7 Order is not timely posted, this stipulation is without prejudice to the
4  putative defendant's right to seek further relief as against any party, including Mr. Gibbs. Id at ¶3.

5   Third, Mr. Gibbs essential allegation – that Mr. Steele and Mr. Hansmeier directed his
6  litigation activities – merely reiterates his March 11, 2013 testimony before the Central District of
7  California. A copy of the March 11th Transcript was previously filed at ECF No. 84-2.  This
8  testimony was given before any sanctions were imposed upon any of the Prenda/AF Parties, and
9  therefore before any "quid pro quo" regarding any bond issue could even have been contemplated.
10 Mr. Gibbs testimony in this case addresses the specific filings in this case, but is entirely
11 consistent with his testimony prior to any alleged "deal."

12  On March 11th, Brett Gibbs testified that John Steele and Paul Hansmeier were responsible
13 for directing his litigation activities in, inter alia, AF Holdings cases.  He testified that he had
14 weekly meetings to go over the cases, and that nothing changed in this relationship when Steele
15 Hansmeier became Prenda Law.  See March 11th Transcript at 74:8-24 and 76-77.  He further
16 testified, on March 11th, that Mr. Lutz never gave him instructions regarding AF Holdings' cases,
17 and that "Actually, I only found out about that connection, I would say, after the cases in the
18 Central District were filed, about him being the CEO.  I didn't know that before."  March 11th
19 Transcript at 78:15-21.

20  Then, on April 11th Mr. Gibbs submitted a declaration in *Sunlust v. Nguyen* in the Middle
21 District of Florida, again stating that his actions in that case were dictated by Mssrs. Steele and
22 Hansmeier.  A copy of this declaration is annexed hereto as Exhibit C.  Mr. Gibbs' testimony in
23 this case - that Mr. Hansmeier specifically told him that Salt Marsh was a person - is entirely
24 consistent with his prior testimony that he took direction from Mr. Steele and Mr. Hansmeier and
25 had no client contact, and knowledge at the time that Mark Lutz was purportedly the
26 client/manager of AF Holdings.  Nonetheless, AF Holdings would have you believe that the third
27 time Mr. Gibbs testified to these same facts must necessarily have been the product of an improper
28

"deal." AF Holdings' position is pure, unsupported speculation, and is specifically rebutted by the declarations of Mr. Pietz and Mr. Gibbs herein.

**3. AF Holdings' Claims of Improper Threats are Wholly Without Merit**

AF Holdings' final argument is that the Mr. Navasca's motion is unreliable because counsel for Mr. Navasca met and conferred regarding attorney's fees before filing it. Essentially, Mr. Duffy argues that it is improper to inform opposing counsel that, in the absence of an agreement to pay attorney's fees and costs, the Defendant would be filing a motion for sanctions seeking recovery of those fees and costs. It is strange to suggest that this is improper, and a "meet and confer" is actually *required* before filing many motions for attorney's fees and sanctions under the local rules of this court, and those across California. The reason for this is apparent - had AF Holdings voluntarily paid Mr. Navasca's fees and costs, there would be no reason to bring a motion seeking to hold Mr. Steele and Mr. Hansmeier jointly and severally liable for the award of fees and costs.[2]

Mr. Duffy's declaration notes specifically that the call was a required "meet and confer" regarding the upcoming motion for attorney's fees, and he was informed that the instant motion would be based on, inter alia, Mr. Gibbs declaration contradicting Mr. Lutz' May 16th "Salt Marsh" fairy tale. In addition, despite Mr. Duffy's purported ignorance as to the topic, Mr. Gibb's declaration makes it clear that he *also* specifically informed Prenda Law that the allegations of the Lutz affidavit were false. See Gibbs July 23 Declaration at ¶6. Finally, Mr. Duffy was well aware of the Alan Cooper issues and AF Holdings' other assorted frauds at this point as well, and had already been sanctioned for them in the Central District of California.[3]

It is well settled that advising opposing counsel of an intent to file a motion for sanctions

---

[2] Notably, Mr. Steele recently settled a similar claim for attorney's fees incurred as a result of his frivolous and vexatious filings by paying the attorney's fees incurred as a result of the behavior. See Exhibit D. Somehow, *that* agreement to pay attorney's fees to avoid the formal sanctions motion was not improper.

[3] It is unclear which criminal or administrative body the purported threat referred to. In reality, Mssrs. Duffy, Steele, Gibbs and Hansmeier had already been referred by a federal judge to numerous disciplinary bodies for their roles in AF Holdings' and/or Prenda Law, including their respective state bars, the U.S. Attorney, and the IRS. Counsel for defendant cannot even think of additional criminal and/or administrative bodies that were not already apprised of the issue by Judge Wright.

does not constitute an improper threat. The Southern District of California recently considered a similar allegation in *U.S. Bank Nat. Assn. v. Friedrichs,* 2013 WL 589111 at *4 (S.D. Cal., Feb. 13, 2013), and determined that "the Court concludes that seeking monetary sanctions does not amount to a threat of criminal, administrative, or disciplinary charges." Likewise, in *Chamberlain v. Les Schwab Tire Center of California, Inc*, the Plaintiff argued that Defendant should be precluded from seeking sanctions based upon a purportedly improper threat. The Eastern District of California concluded that "After reviewing the letter, the court finds no threat; it only mentions that Defendant believed that Plaintiff violated the law and that Defendant planned to move for sanctions. Accordingly, Defendant is not precluded from seeking equitable relief." *Chamberlain v. Les Schwab Tire Center of California, Inc*, 2012 WL 6020103 at *8 (E.D. Cal. 2012). Mr. Duffy here claims nothing more than that defense counsel advised him that he intended to seek sanctions, and did so in the context of a *mandatory* meet and confer under the local rules. This is not grounds to deny the motion for sanctions that was ultimately filed. Plaintiff's arguments on this point are merely a transparent attempt to deflect attention from the various frauds that are laid out in great detail in Defendant's original motion, and wholly unrebutted by Plaintiff's response.

### III.  CONCLUSION

Defendant has offered substantial evidence that Mr. Steele and Mr. Hansmeier are personally responsible for committing fraud upon the court in this action. This evidence has been wholly unrebutted by AF Holdings or Mssrs. Steele and Hansmeier. This is a common theme in this action, as noted by Judge Chen in his Order Requiring an Undertaking (ECF No. 51)("AF could have, but did not, present a declaration from its own Alan Cooper or a declaration from its manager and/or CEO") and his Order Granting Attorney Fees (ECF No. 100)("evidence could easily have been offered by AF as a part of its opposition brief. AF's failure to submit any factual denial under oath is telling.").

This court has the power, pursuant to its inherent authority and 28 U.S.C. §1927 to hold Mssrs. Steele and Hansmeier jointly and severally liable for the full amount of fees herein , and

1 the interests of justice would be strongly served by such an award. The reasons supporting such
2 an award were detailed at length in defendant's original brief, and were wholly unaddressed by
3 AF's response. As such, this court should grant defendant's motion and hold attorneys John
4 Steele and Paul Hansmeier jointly and severally liable for Mr. Navasca's attorney's fees in the
5 amount of $22,531.93.

7 DATED: July 23, 2013        Respectfully Submitted,

8                             NICHOLAS RANALLO, ATTORNEY AT LAW

10                            By:_____/s/ Nicholas Ranallo
                              Nicholas Ranallo (Cal Bar #275016)
11                            Attorney for Joe Navasca
                              371 Dogwood Way,
12                            Boulder Creek, CA 95006
                              P: 831.703.4011
13                            F: 831.533.5073
14                            nick@ranallolawoffice.com

**CERTIFICATE OF SERVICE**

THE UNDERSIGNED HEREBY CERTIFIES that on this 23rd day of July, 2013, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system and served on all of those parties receiving notification through the CM/ECF system.

/s/    Nicholas R. Ranallo

Nicholas Ranallo, Attorney at Law