Nicholas Ranallo, Attorney at Law #275016
371 Dogwood Way
Boulder Creek, CA 95006
Telephone No.: (831) 703 - 4011
Fax No.: (831) 533-5073
Email: nick@ranallolawoffice.com
Attorney for Defendant Joe Navasca

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AF HOLDINGS, LLC., <br><br> Plaintiff, <br><br> v. <br><br> JOE NAVASCA <br><br> Defendants. | Case No. 3:12-cv-02396-EMC <br><br> Magistrate Judge Nandor J. Vadas <br><br> **RESPONSE TO AUGUST 20, 2013 ORDER REGARDING EVIDENTIARY HEARING** |

## I. INTRODUCTION

On August 20, 2013, Magistrate Judge Nandor Vadas instructed the parties herein to be "prepared to address" a number of specific issues during the August 28, 2013 evidentiary hearing. Although the order does not require the filing of a brief or response, counsel for defendant believes that a number of the questions deserve citation to authority and may be more easily summarized via written submission. As such, defendant hereby submits the following responses and citations to authority to aid this court in its determination of the issues presented, and will likewise be prepared to discuss the issues at the hearing.

## II. SPECIFIC RESPONSES

**Question 1**: In his May 6, 2013 opinion, Judge Wright of the Central District of California made extensive findings regarding the corporate structure of AF Holdings LLC and the relationships between AF Holdings, Prenda Law, Steele Hansmeier PLC, John Steele, Paul Hansmeier, Peter

1

Hansmeier, Patrick Duffy, and Brett Gibbs. What legal effect do these findings have in this action?

**Defendant's Response to Question 1:**

Defendant believes that Judge Wright's factual findings should be given full preclusive effect herein and that the instant court may adopt Judge Wright's findings of fact regarding regarding Alan Cooper, as well as the findings regarding the corporate and organizational structures of AF Holdings, LLC and the other sanctioned parties. As described further below, each element of the test for issue preclusion is met in the instant case.

Collateral estoppel, or issue preclusion bars "the re-litigation of any issue that has been actually litigated and necessarily decided" in another case. *Clements v. Airport Auth. of Washoe County,* 69 F.3d 321, 330 (9th Cir. 1995).; see also *Shaw v. Hahn*, 56 F.3d 1128, 1131 (9th Cir.1995)(issue preclusion bars "relitigation of issues actually litigated and necessarily decided, after a full and fair opportunity for litigation, in a prior proceeding.") Issue preclusion 'can apply to preclude relitigation of both issues of law and issues of fact if those issues were conclusively determined in a prior action. *Wolfson v. Brommer,* 616 F.3d 1945,1965 (9th Cir. 2010)(quoting *United States v. Stauffer Chem. Co.,* 464 U.S. 165, 170-71 (1984).

Under the doctrine of issue preclusion, a party is precluded from relitigating issues of law or fact if four requirements are met: "(1) there was a full and fair opportunity to litigate the issue in the previous action; (2) the issue was actually litigated in that action; (3) the issue was lost as a result of a final judgment in that action; and (4) the person against whom collateral estoppel is asserted in the present action was a party or in privity with a party in the previous action." *Kendall v. Visa USA, Inc.,* 518 F.3d 1042 (9th Cir. 2008) (quoting *In re Palmer,* 207 F.3d 566, 568 (9th Cir. 2000)).

If these elements are satisfied, the factual or legal issue is precluded, even if it is presented under the guise of a new legal theory or on the basis of new evidence. *Adam Bros. Farming, Inc., v. Co. of Santa Barbara,* 604 F.3d 1142, 1149 (9th Cir. 2010). "If a party could avoid issue

preclusion by finding some argument it failed to raise in the previous litigation, the bar on successive litigation would be seriously undermined." *Paulo v. Holder,* 669 F.3d 911, 918 (9th Cir. 2011). Moreover,

> "a party who deliberately precludes resolution of factual issues through normal adjudicative procedures may be bound, in subsequent, related proceedings involving the same parties and issues, by a prior judicial determination reached without completion of the usual process of adjudication. In such a case, the 'actual litigation' requirement may be satisfied by substantial participation in an adversary contest in which the party is afforded a reasonable opportunity to defend himself on the merits but chooses not to do so." *FDIC v. Daily (In re Daily),* 47 F.3d 365 (9th Cir. 1995).

A non-party to the original lawsuit may rely on issue preclusion to bar relitigation of issues actually and necessarily decided against a party. Green v. Ancora-Citronelle Corp., 577 F.2d 1380, 1383-1384 (9th Cir. 1978). Any future defendant can invoke defensive use of collateral estoppel -- "when a defendant seeks to prevent a plaintiff from relitigating an issue the plaintiff has previously litigated unsuccessfully." United States v. Mendoza, 464 U.S. 154, 158 n.4 (1984).

In the instant case, the elements required to invoke issue preclusion are all satisfied with regard to Judge Wright's findings of fact supporting sanctions in *Ingenuity 13 v. Doe,* 2013 WL 1898633 (C.D. Cal. May 6, 2013)(hereinafter "Sanctions Order"). First, AF Holdings, John Steele, and Paul Hansmeier each had a full and fair opportunity to litigate the issues in the first proceeding. The Sanctions Order was the product of extensive briefing by numerous parties, including special counsel for Mssrs. Steele and Hansmeier, as well as submissions by AF Holdings' counsel of record in the matter. Moreover, the Sanctions Order was the product of two separate evidentiary hearings. A brief timeline of the case is helpful.

Judge Wright issued his initial Order to Show Cause on February 7, 2013, ordering Brett Gibbs, as counsel for AF Holdings and Ingenuity 13, to show cause why he shouldn't be sanctioned for various questionable activities, including the Alan Cooper fraud. This initial order invited written briefing to be submitted by February 19, 2013. Notably, this was the same date as AF Holdings' 30(b)(6) deposition herein, which was attended by Mr. Hansmeier. In his response

3

to the OTSC, Mr. Gibbs noted that the key litigation decisions were made by "senior members" of Prenda Law. In response, Judge Wright issued a second order on February 27, 2013, requiring Mr. Gibbs to identify the "senior members" of Prenda Law that were responsible for the decisions at issue therein, and invited each party to submit supplemental briefing by March 4. Mr. Gibbs identified Mr. Steele and Mr. Hansmeier as the "senior members" of Prenda Law. On March 5, Judge Wright issued another order, this time requiring, inter alia, Alan Cooper, Mr. Steele and Mr. Hansmeier to appear at the March 11th hearing regarding sanctions. On March 8, 2013, Mr. Steele and Mr. Hansmeier, through retained counsel, requested that Judge Wright vacate his order requiring their appearance. This order was denied.

Alan Cooper personally appeared at the March 11th hearing, in accordance with Judge Wright's Order. Mr. Steele and Mr. Hansmeier did not attend the March 11th hearing, despite the Court's order, though attorney Heather Rosing did appear on their behalf. At the March 11th hearing, Mr. Gibbs testified again that his litigation decisions were controlled by Mssrs. Steele and Hansmeier. Mr. Cooper testified on March 11th that he did not authorize John Steele or anyone else to use his identity in connection with AF Holdings. Mr. Cooper also explicitly denied executing the assignment for Popular Demand, the work at issue in the instant suit. Mr. Cooper was subject to cross-examination, and was in fact cross-examined regarding the subject assignments. See March 11th Transcript at 34:21.

On March 14th, Judge Wright issued yet another order regarding the sanctions issue, giving Mr. Steele and Mr. Hansmeier a second opportunity to appear and contest the testimony on the record. On April 2, 2013, Mr. Steele and Mr. Hansmeier each appeared at the second evidentiary hearing on sanctions. Each invoked the 5th Amendment and refused to offer testimony regarding any of the noted topics, including the Alan Cooper issue and the organizational structure of AF Holdings/Prenda Law/Steele Hansmeier. Finally, on May 6, 2013, Judge Wright issued the Order Imposing Sanctions, including the findings of fact at issue herein.

Based on the foregoing, it is readily apparent that there was a full and fair opportunity for Mr. Steele and Mr. Hansmeier to litigate the issues that were decided in the Sanctions Order. Each

was aware of the issue with Mr. Cooper's signature long before the relevant proceedings. Each was *ordered* to attend the March 11th hearing, and each contested the order requiring their attendance. On March 11th, each appeared through retained counsel. Each was given a second opportunity to present evidence on the relevant issues at the April 2nd hearing, and each invoked the Fifth Amendment, thereby choosing to offer no evidence on their own behalf. As noted above, "the 'actual litigation' requirement may be satisfied by substantial participation in an adversary contest in which the party is afforded a reasonable opportunity to defend himself on the merits but chooses not to do so." *FDIC v. Daily (In re Daily),* 47 F.3d 365 (9th Cir. 1995). As such, the second requirement for issue preclusion is also met.

Turning to the third element, there was unquestionably a final judgment on the merits of the sanctions issues. Indeed, Mr. Steele and Mr. Hansmeier are each appealing the order. As described further below, any appealable order qualifies as a judgment under the federal rules. Moreover, the 9th Circuit BAP has very recently indicated that findings in a sanctions order can preclude further litigation of those same issues in a subsequent suit. See *In re Wasko,* BAP No. CC-12-1118-PaMkBe, 2013 WL 842505 (9th Cir. BAP 2013)(noting that "there does not appear to be any dispute that some of the Harmon criteria are satisfied by the RFA Sanctions Order. It was a final order..."). See also *Luben Industies, Inc. v. U.S.,* 707 F.2d 1037, 1040 (9th Cir. 1983)("A 'final judgment' for purposes of collateral estoppel can be any prior adjudication of an issue in another action that is determined to be 'sufficiently firm' to be accorded conclusive effect" and noting that the fact that a decision is subject to appeal is a factor supporting the conclusion that it was sufficiently firm). The fact that the decision at issue is being appealed does not change its preclusive effect because "under the federal view, the pendency of an appeal does not prevent the application of the collateral estoppel doctrine unless the appeal involves a full trial de novo." Ruyle v. Continental Oil Co., 44 F.3d 837, 846 (10th Cir. 1994); see also Kane v. Town of Harpswell (In re Kane), 254 F.3d 325, 328 (1st Cir. 2001); Tripati v. Henman, 857 F.2d 1366, 1367 (9th Cir. 1988).

The final requirement for the application of preclusion to the instant case is that the person

1  against whom preclusion is asserted was a party to or in privity with a party in the prior action.
2  See *Wash. Mut. Inc., v. United States,* 636 F.3d 1207, 1216 (9th Cir. 2011). This requirement is
3  clearly met in the instant case. As described above, AF Holdings, John Steele, and Paul
4  Hansmeier were *all* parties to the OTSC proceedings in front of Judge Wright, and each was
5  sanctioned for their respective conduct in that matter. As such, the final required element for the
6  application of the preclusion doctrine is clearly satisfied.

7  Finally, there can be no doubt that most, if not all, of Judge Wright's factual findings were
8  necessary to the ultimate resolution of the sanctions issue, particularly vis a vis Mssrs. Steele and
9  Hansmeier. Mr. Steele and Mr. Hansmeier were not attorneys of record in the Central District
10 matter, and the findings regarding their specific involvement with AF Holdings and Prenda Law
11 were therefore necessary to justify imposing sanctions upon them. As Judge Wright notes, "these
12 parties were ordered to show cause why they should not be sanctioned for their behind-the-scenes
13 role in the conduct facially perpetrated by Gibbs." Sanctions Order at *1.

14 Finding of Fact #1 lays the foundation for the Order, noting that "The Principals,"
15 including Mr. Steele and Mr. Hansmeier, were responsible for creating AF Holdings and Ingenuity
16 13 for the purpose of litigating copyright infringement claims while shielding themselves from
17 liability. Finding of Fact #2 is likewise crucial, noting that the Principals "are the de facto owners
18 and officers" of AF Holdings and Ingenuity 13, though neither company has any "official"
19 owners, and Finding of Fact #4 establishes that Mr. Steele and Mr. Hansmeier were the financial
20 beneficiaries of AF Holdings' litigation. Finding of Fact #7 indicates the court's basis for
21 jurisdiction over, and sanctions against, Mr. Steele and Hansmeier in their role as attorneys, and
22 specifically notes that the Principals directed Mr. Gibbs actions in the Central District case.
23 Likewise, #8 describes Mr. Steele and Mr. Hansmeier's "full control over the entire copyright-
24 litigation operation," and #10 describes how they "ordered" Mr. Gibbs to commit a number of
25 acts, including "assert[ing] a copyright assignment with a fraudulent signature."

26 Judge Wright's findings with regard to Alan Cooper were likewise crucial to the
27 imposition of sanctions against Mssrs. Steele and Hansmeier. Judge Wright notes that "Sanctions
28

under the Court's inherent authority are particularly appropriate for fraud perpetrated on the court," and later notes that beyond the Alan Cooper forgery described in Finding of Fact #9, it was unable to make further detailed findings regarding fraud. Nonetheless, the Sanctions Order is clear that it considers the Cooper forgery and the associated fraud upon the court to be a compelling reason supporting sanctions. Indeed, the Alan Cooper fraud was part of the original Order to Show Cause, and was a central dispute throughout the course of the proceedings.

Finally, Findings #5 and #6 highlight Mr. Steele and Mr. Hansmeier's bad faith litigation conduct, including specifically engaging in "vexatious litigation" designed to coerce settlement and, when faced with a determined defendant, to dismiss the case. This pattern of vexatious litigation is a key component of Judge Wright's ultimate decision to impose sanctions, and he notes that the court's inherent power extends to the "full range of litigation abuses."

**Questions 2(a)** The district court awarded Navasca's attorneys' fees and costs on July 22, 2013. See Doc. No. 100.

    a.    Has AF Holdings paid these fees and costs? If so, is the motion for sanctions moot?

**Response 2(a):**

AF Holdings has not paid the fees and costs awarded to Mr. Navasca, nor have they offered any explanation for non-payment. In the event that the attorney fee award was paid, Defendant believes that the relief requested herein would indeed be moot, though the court would retain the right to proceed via Order to Show Cause to vindicate its interests, if it were so inclined.

**Question 2(b)**

    b.    If AF Holdings has not paid these fees and costs, what is the proper remedy?

**Response to 2(b)**

Remedies against AF Holdings for non-payment of the Copyright Act attorney fee award may include, inter alia, the remedies available under California's enforcement of Judgment Law,

Federal Rule of Civil Procedure 69. As described further below, these remedies may, in some circumstances, also include an order holding the debtor in contempt.

**Question 2(b)(i)**

Should AF Holdings be held in contempt of court?

**Answer 2(b)(i)**

Whether a Plaintiff may be held in contempt of court for the non-payment of attorney fees appears to be somewhat unsettled in the Ninth Circuit, and counsel for defendant found no case directly on point. In order to resolve the question, the court must first determine whether an award of attorney fees pursuant to the Copyright Act qualifies as a "money judgment."[1] The Ninth Circuit held in *Shuffler v. Heritage Bank,* 720 F.2d 1141, 1148 (9th Cir. 1983), that "we do not interpret the exception to execution to permit a federal court to 'enforce a money judgment by contempt" in the absence of exceptional circumstances or where established principles so warrant.

In contrast, contempt sanctions are available to enforce any other order of the court, including sanctions orders and other orders compelling specific performance of discrete actions. See *In Re Wallace,* 490 B.R. 898, 13 Cal. Daily Op. Serv. 4420 (9th Cir. BAP 2013)(holding that a court's sanction for misconduct is not an "ordinary" money judgment and, therefore, the use of the contempt power is a proper method to enforce a sanction for misconduct). See also *Cleveland Hair Clinic, Inc., v. Puig,* 106 F.3d 165, 166 (7th Cir. 1997) ("Use of the contempt power is an appropriate way to enforce a sanction for misconduct, which is not an ordinary money judgment.")

There is a surprising dearth of controlling precedent regarding whether an award of attorney fees under the Copyright Act is an "ordinary money judgment," and therefore, whether an order of contempt for disobeying the same is appropriate. *League for Coastal Protection v.*

---

[1] This is a different inquiry than whether, as described in the response to 2(b)(ii), the award of attorney fees represents a "judgment" under the Federal Rules.

*Kempthorne,* 2007 WL 1982778 (N.D. Cal. July 2, 2007), a recent case in the Northern District of California, provides some support for the proposition that an attorney fee award is not a "money judgment." In *Kempthorne,* Judge Wilken was faced with the question of whether an award of attorney fees against the government defendant under the Equal Access to Justice Act (EAJA) represented a "money judgment" subject to the automatic stay provisions of Federal Rule of Civil Procedure 62(d) and (e). Plaintiff argued that

> "the Court's award of attorney fees and costs is not a money judgment and, therefore, there is no stay as a matter of right...[because] in *Poole v. Rourke,* 779 F.Supp. 1546, 1560 (E.D.Cal. 1991), the court concluded that EAJA fee awards are 'more akin to specific relief than to money damages,' because they are *necessarily incidental to efforts to secure other relief*" *Kempthorne,* 2007 WL 1982778 at *2 (emphasis added).

Judge Wilkins was persuaded by Plaintiff's argument and ultimately adopted the reasoning, though she noted the absence of controlling authority on the issue. Specifically, Judge Wilkin held that

> "Although Plaintiffs have cited no case that finds that attorneys' fees and costs, such as those awarded here, are not a money judgment under Rule 62 the cases they cite support their argument, which the Court finds persuasive. Defendants cite no case requiring the Court to find otherwise. The Court will not apply the term "money judgment" so broadly as to encompass attorneys' fees and costs that were incurred while seeking the injunctive relief at issue in this case." *Id.*

*Poole v. Rourke,* a case cited by the Plaintiff in *Kempthorne*, provides further support for the view that an attorney fee award is not an "ordinary money judgment." As noted above, the court determined that EAJA attorney fee awards are "more akin to specific relief than to money damages are necessarily incidental to securing other relief." Like the Copyright Act, EAJA attorney fees are awarded to a prevailing party. As noted by the Senate and quoted by the court in *Poole,*

> "For many citizens, the costs of securing vindication of their rights and the inability to recover attorney fees preclude resort to the adjudicatory process...When the cost of contesting a Government order, for example, exceeds the amount at stake, a party has no realistic choice and no effective remedy. In these cases, it is more practical to endure an injustice than contest it." *Poole v. Rourke,* 779 F.Supp. 1546, 1560 (E.D. Cal. 1991).

The description above sounds precisely like the 7th Circuit's statement regarding the necessity of an attorney fee award to a prevailing defendant in a Copyright Action. See *Assessment Technologies of WI, LLC v. Wiredata, Inc.,* 361 F.3d 434)(7th Cir. 2004)("when a meritorious claim or defense is not lucrative, an award of attorneys' fees may be necessary to enable the party possessing the meritorious claim or defense to press it to a successful conclusion rather than surrender it because the cost of vindication exceeds the private benefit to the party."). Moreover, like the situation with the EAJA, an attorney fee award to a prevailing defendant in a copyright action is necessarily incidental to the defendant's primary aim – to secure dismissal of the copyright claims against him.

Notwithstanding the foregoing, Defendant acknowledges that there are competing reasons to view an attorney fee award as a "money judgment." Indeed, courts routinely award interest on attorney fee awards in accordance with 28 U.S.C. §1961, which authorizes post-judgment interest on "any money judgment." Courts interpreting 28 U.S.C. §1961 apply it to attorney fee awards almost reflexively. See, e.g. *Perkins v. Standard Oil of California,* 487 F.2d 672 (9th Cir. 1973) ("In our view there exists no real distinction between judgments for attorneys' fees and judgments for other items of damages...once a judgment is obtained, interest thereon is mandatory without regard to the elements of which that judgment is composed."). In the event that this court views the instant attorney fee award as an "ordinary money judgment," contempt sanctions based purely on the non-payment of the award would be inappropriate without an additional finding of "extraordinary circumstances."

"Extraordinary circumstances" in this context are not well defined, though the doctrine has previously been invoked where a judgment creditor is unable to collect on a judgment against the state which refuses to appropriate funds to pay the judgment. See *Spain v. Mountanos,* 690 F.2d 742, 744-45 (9th Cir. 1982). In *Hilao v. Estate of Marcos,* 95 F.3d 848 (9th Cir. 1996), the 9th Circuit noted that difficulty of enforcement, by itself, does not constitute exceptional circumstances. Notwithstanding, this court might very well consider the instant circumstances "extraordinary." AF Holdings' was created solely to prosecute dubious copyright lawsuits while

shielding the beneficiaries from liability when judgment is awarded against them. Indeed, despite filing hundreds of lawsuits against tens of thousands of "John Does," the only individuals that were ever served with a summons and complaint by Prenda Law were in relation to AF Holdings and Ingenuity 13 – the two undercapitalized entities that purportedly exist for the benefit of paralegal Mark Lutz' unborn children. AF Holdings' is not just refusing to pay a judgment, like the Marcos estate in *Hilao,* but was instead deliberately created to funnel litigation proceeds to attorneys while having no assets of its own. As Judge Wright found, this scheme allowed "Plaintiffs to borrow the authority of the court to pressure settlement," while simultaneously and deliberately disobeying court orders demanding the payment of costs and attorney's fees to prevailing defendants.

**Question 2(b)(ii).**

Is the award a "judgment"? If so, why is Navasca proceeding by filing a motion for sanctions rather than proceeding under California's enforcement of judgment law?

**Defendant's Response to Questions 2b(ii)**

Defendant believes that the entry of an order awarding attorney fees is a "judgment," as the court frames the issue in Question b(ii). Federal Rule of Civil Procedure 54(a) states that "'Judgment' as used in these rules includes a decree **and any order from which an appeal lies.**" (emphasis added). Likewise, F.R.C.P. 58 states that "Every judgment must be set out in a separate document, but a separate document is not required for an order disposing of a motion...(3) for attorney's fees under Rule 54." See also *Intel v. Terabyte International, Inc.,* 6 F.3d 614 (9th Cir. 1993)(attorney fee award becomes final and appealable when the amount of the award is determined). AF Holdings had the opportunity to appeal the attorney fee award in this matter, though they have not done so. As such, the attorney fee award was a 'judgment' under the applicable federal rules. Moreover, because it is exempted from the requirements of Rule 58, no further order or judgment must be entered before the award against AF Holdings may be enforced

1 via execution proceedings.

2 Nonetheless, Defendant does not believe that a sanctions motion pursuant to this court's inherent authority and/or 28 U.S.C. §1927 is in any way precluded by the award of attorney fees against AF Holdings pursuant to the Copyright Act, or by Defendant's concomitant ability to pursue execution proceedings based on the Copyright Act award . Each offers its own benefits and challenges, and each is guided by independent criteria.

For example, as described in b(i), above, an order imposing sanctions may be easily enforced by civil contempt proceedings. In addition, Defendant was wholly unable to impose liability for attorney fees on Mr. Steele and Mr. Hansmeier pursuant to the Copyright Act (as they were not the Plaintiff). The requirements for doing so in a veil-piercing action or action for fraudulent conveyance are significantly different than the requirements for imposing liability under the theories forwarded herein, and each seeks to vindicate different interests.

Sanctions herein are sought based upon the conduct of Mssrs. Steele and Hansmeier in directing this litigation, and actively promoting a fraud upon this court. They are not premised upon AF Holdings' failure to pay the Copyright Act award. As Defendant believes (and another court has previously held) that Mr. Steele and Mr. Hansmeier's actions justify imposing liability under the court's inherent authority and 28 U.S.C. §1927, Defendant has chosen to first pursue this route. In the event that further actions under California's enforcement of judgment acts become necessary, Defendant will then pursue such actions. Finally, it is worth noting that the instant Motion for Sanctions was filed on July 2, and Judge Chen's order granting defendant's request for attorney's fees was not entered until July 22, 2013.

**Question 3:** Navasca moves for sanctions under the district court's inherent power and 28 U.S.C. §1927. Sanctions under the district court's inherent power can be awarded against a person or entity who controls the litigation and is responsible for the abusive conduct, even if not a party thereto...Sanctions under 28 U.S.C. §1927 can only be awarded against the attorney whose conduct is improper. How can Paul Hansmeier or John Steele be held liable for sanctions under

1  28 U.S.C. §1927.

3  **Defendant's Response to Question 3:**

4  Sanctions against Mssrs. Steele and Hansmeier pursuant to 28 U.S.C. §1927 are sought based on their actions as attorneys, specifically those actions which have unreasonably and vexatiously increased defendant's costs. Sanctions under §1927 are not limited to attorneys-of-record in a particular proceeding, but can also extend to law firms and other lawyers who have contributed to the unreasonable and vexatious conduct. For example, in *In re Kinney,* the court held that counsel may be liable under §1927 if they were involved in the conduct for which sanctions were imposed, regardless of their formal status as attorneys in the particular matter. Specifically, the court held that "although Ms. Coleman was not the attorney of record at the time of the filing of Kinney #9, her advice and participation in bringing about the filing makes her liable for sanctions under §1927.

In the instant case, the prior testimony of Brett Gibbs makes it clear that Mssrs. Steele and Hansmeier were responsible for directing AF Holdings litigation and orchestrating the unreasonable and vexatious conduct complained of herein. By all accounts, they were responsible for creating AF Holdings, deciding to initiate its lawsuits, misrepresenting the identity of AF Holdings' ownership, initially misrepresenting the role of Alan Cooper in AF Holdings, and continuing to do so long after Mr. Cooper had publicly renounced the assignment in this matter. These misrepresentations and obfuscations were directly responsible for Mr. Navasca's attorney's fees in this matter, and sanctions under 28 U.S.C. 1927 are therefore appropriate.

### III. CONCLUSION

In conformity with this court's August 20, 2013 order, counsel for Defendant will be prepared to address each of the issues above during the August 28, 2013 Evidentiary Hearing.

DATED: August 28, 2013          Respectfully Submitted,

NICHOLAS RANALLO, ATTORNEY AT LAW

1
2            By:_____/s/ Nicholas Ranallo
3            Nicholas Ranallo (Cal Bar #275016)
           Attorney for Joe Navasca
4            371 Dogwood Way,
           Boulder Creek, CA 95006
5            P: 831.703.4011
           F: 831.533.5073
6            nick@ranallolawoffice.com

14
CV 12-2396-EMC DEFENDANT'S RESPONSE TO AUGUST 20, 2013 ORDER

## CERTIFICATE OF SERVICE

THE UNDERSIGNED HEREBY CERTIFIES that on this 28th day of August, 2013, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system and served on all of those parties receiving notification through the CM/ECF system.

/s/ Nicholas R. Ranallo

Nicholas Ranallo, Attorney at Law