Paul Duffy (CA Bar #224159)
2 N. LaSalle Street, 13th Floor
Chicago, IL 60602
Telephone: (312) 952-6136
pduffy@pduffygroup.com

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

AF HOLDINGS LLC,

     *Plaintiff*,

     v.

JOE NAVASCA,

     *Defendant*.

CASE NO. 3:12-CV-2396-EMC

Judge:        Hon. Edward M. Chen
Magistrate Judge:  Hon. Nandor J. Vadas

**BENCH MEMORANDUM REGARDING ISSUES RAISED IN AUGUST 20, 2013, ORDER RE EVIDENTIARY HEARING**

///
///
///
///
///
///
///
///
///
///
///
///

1

**TABLE OF CONTENTS**

2    BACKGROUND ............................................................................................................ 1

3        I.       Brett Gibbs' Relationship to AF Holdings LLC ........................................ 1

4        II.      Facts Regarding Brett Gibbs' Role in This Litigation ............................... 4

5        III.     Facts Regarding AF Holdings .................................................................... 5

6        IV.      Facts Regarding the *Ingenuity 13* Proceedings ........................................ 5

7    DISCUSSION ................................................................................................................ 8

8        I.       The Relevance of the *Ingenuity 13* Findings to This Case ........................ 8

9                 A.       Legal Standard ................................................................................ 9

10                B.       Defendant has Waived the Issue Preclusion Defense ................... 10

11                C.       Issue Preclusion would not Promote Judicial Economy ................ 11

12                D.       There was no Full and Fair Opportunity to be Heard .................... 12

13                E.       The Element of "Necessity" is Lacking ........................................ 13

14       II.      Navasca's Award of Attorney's Fees ....................................................... 15

15                A.       Payment of Navascas' Attorneys' Fees and Costs ........................ 15

16                B.       Proper Remedy ............................................................................... 15

17       III.     The Propriety of Sanctions Against Non-Parties ..................................... 15

18                A.       Legal Standard .............................................................................. 15

19                B.       28 U.S.C. § 1927 Does not Apply to Non-Parties ........................ 16

20       IV.      AF Holdings' Business Structure .............................................................. 18

21                A.       AF Holdings' Ownership ............................................................... 18

22                B.       AF Holdings' Certificate of Interested Entities ............................ 18

23                C.       AF Holdings' 30(b)(6) Deponent .................................................. 19

24                D.       AF Holdings' Settlement Proceeds ............................................... 19

25   CONCLUSION ............................................................................................................ 19

26

27

i

28

1

2

**TABLE OF AUTHORITIES**

3

CASES                                                                                          PAGE(S)

4       *Aetna Cas. & Sur. Co. v. Gen. Dynamics Corp.*,
5           968 F.2d 707 (8th Cir. 1992) ................................................................... 10

6       *AF Holdings v. Doe*,
            No. 2:12-cv-6636-ODW(JCx)
7           (C.D. Cal. filed August 1, 2012) .......................................................... 5, 6

8       *Bechtold v. City of Rosemount*,
9           104 F.3d 1062 (8th Cir. 1997) ............................................................ 10, 12

10      *Bobby v. Bies*,
            129 S. Ct. 2145 (2009) .............................................................................. 10
11
        *Comes v. Microsoft Corp.*,
12          709 N.W.2d 114 (Iowa 2006) .................................................................. 14

13      *Corburn v. Smithkline Beecham Corp.*,
14          174 F. Supp. 2d 1235 (D. Utah 2001) ..................................................... 11

15      *Gordon v. Microsoft Corp.*,
            2003 WL 22281574 (Minn. Dist. Ct. 2003) ........................................... 13
16
        *Gough v. Natural Gas Pipeline Co. of Am.*,
17          996 F.2d 763 (5th Cir. 1993) ..................................................................... 9

18      *Grubbs v. United Mine Workers of America*,
19          723 F. Supp. 123 (W.D. Ark. 1989) .......................................................... 9

20      *Home Depot, Inc. v. Guste*,
            773 F.2d 616 (5th Cir. 1985) .................................................................... 10
21
        *In re Keegan Mgmt. Co. Sec. Litig.*,
22          78 F.3d 431 (9th Cir. 1996) ............................................................... 15, 17

23      *In re Microsoft Corp. Antitrsut Litig.*,
            232 F. Supp. 2d 534 (D. Md. 2002),
24          *rev'd on other grounds*, 355 F.3d 322 (4th Cir. 2004) ............................ 11

25      *In re Microsoft Corp. Antitrust Litig.*,
26          355 F.3d 322 (4th Cir. 2004) .................................................................. 10

27                                                                ii

28

*Ingenuity 13 LLC*,
    No. 2:12-cv-8333-ODW(JCx)
    (C.D. Cal. filed September 27, 2012) ........................................................ 6, 7, 8, 13

*Jack Faucett Assocs., Inc. v. AT&T Co.*,
    744 F.2d 118 (D.C. Cir. 1984) ........................................................................ 9

*Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*,
    458 F.3d 244 (3rd Cir. 2006) ........................................................................... 9

*Lockary v. Kayfetz*,
    974 F.2d 1166, 1170 (9th Cir. 1992) .............................................................. 16

*Matter of Yagman*,
    796 F.2d 1165 (9th Cir. 1986) ................................................................... 16, 17

*McGuire v. Sigma Coatings, Inc.*,
    48 F.3d 902 (5th Cir. 1995) ....................................................................... 17, 18

*Mun. Resale Serv. Customers v. FERC*,
    43 F.3d 1046 (6th Cir. 1995) ......................................................................... 10

*Parklane Hosiery Co. v. Shore*,
    439 U.S. 322 (1979) ................................................................................... 9, 11

*Pavelic & LeFlore v. Marvel Entertainment Group*,
    493 U.S. 120 (1989) ....................................................................................... 16

*Pool Water Prods. v. Olin Corp.*,
    258 F.3d 1024 (9th Cir. 2001) ....................................................................... 14

*S.E.C. v. Monarch Funding Corp.*,
    192 F.3d 295 (2d Cir. 1999) ............................................................................ 9

*S.E.C. v. Ridenour*,
    913 F.2d 515 (8th Cir. 1990) ......................................................................... 13

*Sangui Biotech Intern., Inc. v. Kappes*,
    179 F. Supp. 2d 1240 (Dist. Ct. Co. 2002) ................................................... 16

*Setter v. AH Robins Co., Inc.*,
    748 F.2d 1328 (8th Cir. 1984) ................................................................... 10, 13

*Taylor v. Sturgell*,
    128 S. Ct. 2161 (2008) ................................................................................ 9, 10

iii

BENCH MEMORANDUM REGARDING ISSUES
RAISED IN ORDER RE AUGUST 28, 2013 HEARING                    CASE NO. 3:12-CV-2396-EMC

*United States v. Alaska*,
   521 U.S. 1 (1997)........................................................................................................ 13

*Zaldivar v. City of Los Angeles*,
   780 F.2d 823 9th Cir. 1986) ................................................................................ 15, 17

**OTHER AUTHORITIES**

18A Wright, Miller, & Cooper, *Federal Practice & Procedure* § 4465 (2009)..................................11

28 U.S.C. § 1927 ......................................................................................................................... 15

Fed. R. Civ. P. 11 .......................................................................................................................... 5

Fed. R. Civ. P. 4............................................................................................................................. 5

Fed. R. Civ. P. 41........................................................................................................................... 5

Fed. R. Civ. P. 8........................................................................................................................... 10

Restatement (Second) of Judgments § 29 (1982) ........................................................................11

iv

**INTRODUCTION**

Plaintiff AF Holdings submits this bench memorandum to aid the Court's consideration of the issues raised in its Order re August 28, 2013 Evidentiary Hearing (hereinafter "Order"). Doc. 103. The Court raised four categories of questions: (1) the effect of Judge Wright's holding on this case; (2) Navasca's award of attorneys' fees; (3) the propriety of sanctions against non-parties; and (4) AF Holdings' business structure.

**BACKGROUND**

The facts relevant to the Court's consideration of the issues raised in its Order are set forth in the affidavits, declarations, and testimony of Mark Lutz, Jason Sweet, John Steele, Paul Hansmeier, Brett Gibbs, Steven Goodhue, Jacques Nazaire and Morgan Pietz, which are attached as Exhibits A–H, respectively.

**I.     Brett Gibbs' Relationship to AF Holdings LLC**

Brett Gibbs served as AF Holdings' national counsel from approximately November 2011 to February 2013.[1] Ex. A ¶ 8. According to Mr. Gibbs, in this capacity he "advised and educated other attorneys working with Prenda Law as well as [AF Holdings], generally on proceeding in lawsuits protecting [its] rights in federal court." Ex. E ¶¶ 5, 9. In his role as "an advisor and educator" to AF Holdings, Mr. Gibbs helped AF Holdings "retain counsel to bring lawsuits in other states, and consult[ed] with the lead counsel on those cases as the cases progress[ed]." *Id*. ¶ 8. In addition, he "help[ed] lead counsel prepare documents including motions and response to facilitate lawsuits representing their clients." *Id.*

AF Holdings agrees. Mr. Lutz, Plaintiff's manager, states, in January 2012 he met with Mr. Gibbs in Las Vegas, Nevada and Mr. Gibbs "informed [Mr. Lutz] that he was in the early stages of planning a nationwide campaign of suits on individuals on behalf of AF Holdings…." Ex. A ¶ 9. Mr.

---

[1] Indeed, AF Holdings' November 15, 2011, engagement agreement with Prenda Law, Inc. identified Mr. Gibbs as the "attorney who will be overseeing your company's litigation, and your primary contact and Prenda Law...." *See* Prenda Law, Inc. Engagement Letter, attached hereto as Exhibit I.

BENCH MEMORANDUM REGARDING ISSUES
RAISED IN ORDER RE AUGUST 28, 2013 HEARING          CASE NO. 3:12-CV-2396-EMC

1  Lutz further explained Mr. Gibbs' role: "Mr. Gibbs serves as AF Holdings' outside national counsel.

2  All settlement negotiations were to be made through him and counsels representing AF Holdings in

3  other states were directed to push settlement negotiations through him." *Id.* ¶ 8.

4      Brett Gibbs' role as national counsel is further supported by the presence of his business

5  contact information on complaints filed in district courts nationwide. For example, the email address

6  blgibbs@wefightpiracy.com appears in the address block of a complaint filed by Michigan attorney

7  Jonathan W. Tappan in the Western District of Michigan. *See* Complaint, *AF Holdings v.* Doe, No.

8  1:12-cv-00812-JTN (W.D. Mi. filed on Aug. 6, 2012). Mr. Gibbs' email address

9  blgibbs@wefightpiracy.com also appears in the address block of a complaint filed by Tennessee

10  attorney Sam Trenchi in the Middle District of Tennessee. *See*  Complaint, *AF Holdings LLC v. John*

11  Doe, No. 3:12-cv-01293 (M.D. Tn. filed on Dec. 12, 2012). Further, Mr. Gibbs' phone number

12  appears on a complaint filed by Minnesota attorney Michael Dugas in the District of Minnesota. *See*

13  Complaint, *AF Holdings LLC v. John Doe*, No. 12-cv-1245 (D. Minn. filed on June 15, 2012). In

14  each of these cases Brett Gibbs drafted the complaints for the local counsel and specifically directed

15  the local counsel to include his contact information.

16      Mr. Gibbs' statements are corroborated by the attorneys he managed. For example, AF

17  Holdings' counsel in Arizona, Steven Goodhue, stated, "My contact at Prenda Law, Inc. was Brett

18  Gibbs. Mr. Gibbs was my supervising attorney and point of contact for all of the work I performed

19  for Prenda Law, Inc. until his departure from the firm. If I had a question about how to handle an

20  issue that would come up in a case, I would contact Mr. Gibbs." Ex. F. ¶ 5. Mr. Goodhue further

21  stated, "Mr. Gibbs would prepare complaints, motions, responses and other pleadings on cases I was

22  handling, and send them to me…. After conferring with Mr. Gibbs on my edits, I would then file

23  these pleadings with the Court." *Id.* ¶ 6. Mr. Goodhue further stated, "I was instructed by Mr. Gibbs

24  at several points in my work for Prenda Law to refer any communications from opposing counsel or

25  pro se individuals to Mr. Gibbs." *Id.* ¶ 7.

26

27

28

2

BENCH MEMORANDUM REGARDING ISSUES
RAISED IN ORDER RE AUGUST 28, 2013 HEARING                    CASE NO. 3:12-CV-2396-EMC

1    Mr. Goodhue was not the only attorney that Mr. Gibbs managed. For example, Georgia

2    attorney Jacques Nazaire stated, "On the occasion when I needed to speak with a representative for

3    AF Holdings LLC, my point of contact was Brett Gibbs, who I understood to be the lead counsel for

4    all of the AF Holdings LLC cases nationwide." Ex. G ¶ 4. Mr. Nazaire further stated that the only

5    other person associated with AF Holdings that spoke to was "Mark Lutz, who [he] under[stood] is

6    the CEO of AF Holdings LLC." *Id.* ¶ 5.

7    Mr. Gibbs' statements are also corroborated by his opposing counsels. At the March 11, 2013,

8    order to show cause hearing against Mr. Gibbs in the *Ingenuity 13* matter, Jason Sweet—a member

9    of the pornography copyright infringement defense bar who is very hostile to intellectual property

10   holders—stated: "I had a conversation with Mr. Gibbs probably back in October [2012] regarding

11   AF Holdings where he told me that he was national counsel for AF Holdings and that any settlement

12   negotiations were to be made through him. And the local counsel for that case confirmed that he was

13   the one who told me to contact Mr. Gibbs." Ex. B, 94:3–9.

14   Morgan Pietz corroborated Mr. Sweet's testimony. At the same hearing, Mr. Pietz stated, "Mr.

15   Gibbs has noted in his declaration or attempted to characterize himself as merely a, quote,

16   independent contract attorney for Prenda Law. I am prepared to present evidence today showing that

17   Mr. Gibbs is really what amounts to a de facto chief operating officer of Prenda Law. And I have a

18   number of documents and exhibits I am prepared to go through with Mr. Gibbs on that account." Ex.

19   H, 37:20–38:3.

20   The only person who disputes Mr. Gibbs' December 2012 testimony—oddly enough—is Mr.

21   Gibbs. He now paints himself as a junior attorney whose every move was dictated by individuals

22   who never filed an appearance, drafted a pleading, attended a hearing or otherwise participated in

23   this case. *See, e.g.,* Ex. C ¶¶ 16–18. Of course, Mr. Gibbs' contradictory testimony comes closely on

24   the heels of a significant financial benefit from Messrs. Pietz and Ranallo.

25   ///

26   ///

27
                                          3

28   BENCH MEMORANDUM REGARDING ISSUES
     RAISED IN ORDER RE AUGUST 28, 2013 HEARING          CASE NO. 3:12-CV-2396-EMC

## II.     Facts Regarding Brett Gibbs' Role in This Litigation

In his own words, Mr. Gibbs, "draft[ed], file[d] and litigate[d]" this copyright lawsuit on behalf of AF Holdings. Ex. E ¶¶ 6, 9; *see also* Ex A ¶ 5. Neither Mr. Hansmeier[2] nor Mr. Steele played any formal role in this case, including as Mr. Gibbs' supervisors. Ex. A ¶ 5; Ex. C ¶¶ 16–18; Ex. D ¶ 4. Both individuals specifically disclaim the allegations in Mr. Gibbs' procured testimony. Indeed, Mr. Gibbs paid "the filing fee for this case on his personal credit card and was reimbursed by AF Holdings" for that expense. Ex. A ¶ 6. Mr. Gibbs filed this case on AF Holdings' behalf on a contingency basis, and stood to make a direct financial gain if the case was successful. *Id.* ¶ 7. No other attorney had such an interest in the outcome of the case. *Id.* Mr. Gibbs and his associate drafted all of the papers filed in this case, attended all of the hearings took and defended all of the depositions, and was the only person to advise AF Holdings regarding case strategy. *Id.* ¶ 6.

This Court can take judicial notice that, until the undersigned's appearance, Mr. Gibbs was AF Holdings' sole attorney of record, and with respect to AF Holdings was: the only attorney who attended a hearing in this matter; the only attorney who filed a paper in this matter; the only attorney who took or defended a deposition in this matter; and the only attorney who spoke with AF Holdings about this matter. Further, this Court can take judicial notice that Mr. Gibbs claims to have received "instruction" or "guidance" whenever it related to a matter being challenged by Defendant. Although Plaintiff does not believe that Mr. Gibbs engaged in sanctionable conduct in this case—at least until he submitted false testimony—Plaintiff also believes the Court should know that the sole attorney who represented Plaintiff in this matter was Mr. Gibbs. In fact, Plaintiff has submitted a bar complaint against Mr. Gibbs, in relevant part, for the disinformation he has provided to this Court.

///

///

///

---

[2] Mr. Hansmeier did serve as Plaintiff's 30(b)(6) designee. Ex. D ¶ 4.

BENCH MEMORANDUM REGARDING ISSUES
RAISED IN ORDER RE AUGUST 28, 2013 HEARING                    CASE NO. 3:12-CV-2396-EMC

**III.    Facts Regarding AF Holdings**

The business structure of AF Holdings is consistent with the business structures of other prominent adult entertainment companies. For example, the well-known "Girls Gone Wild" brand has intellectual property assets held by Nevis-based entities.

AF Holdings, LLC is a limited liability company formed under the laws of the Federation of St. Kitts and Nevis. Ex. A ¶ 13. The membership interests of AF Holdings are held in trust. *Id.* The name of that trust is "Salt Marsh." *Id.* The beneficiaries of the "Salt Marsh" trust are any children born to or adopted by Mr. Lutz, and any of his subsequent decedents. *Id.* He has no children or descendents, so the trust's beneficiaries are currently undefined. *Id.* Neither John Steele, Paul Duffy nor Paul Hansmeier have ever served as a director, officer, manager or employee of AF Holdings or otherwise possessed managerial authority or an ownership interest in AF Holdings. *Id.* ¶ 3.

**IV.    Facts Regarding the *Ingenuity 13* Proceedings**

Plaintiff was a party to several cases that were filed in the U.S. District Court for the Central District of California, and later reassigned to a single district judge. *E.g.*, *AF Holdings v. Doe*, No. 2:12-cv-6636-ODW(JCx) (C.D. Cal. filed August 1, 2012). Plaintiff's sole counsel of record on those cases was Brett Gibbs, who also served as AF Holdings' national counsel. Ex. A. ¶ 8.

Each of these cases was dismissed pursuant to Federal Rule of Civil Procedure 41(a)(1) or 4(m). *See, e.g., id.* at ECF No. 21. On February 7, 2013, after each of Plaintiff's cases was dismissed, the Los Angeles court issued an order to show cause pursuant to Federal Rule of Civil Procedure 11 against Plaintiff's sole counsel of record, Brett Gibbs. *See, e.g., id.* at ECF No. 23. The order to show cause specifically excluded Plaintiff as a respondent. *See id.* at 10. The two Rule 11 violations relating to Mr. Gibbs' efforts were:

- In *AF Holdings LLC v. Doe*, No. 2:12-cv-6636-ODW(JCx) (C.D. Cal. filed Aug. 1, 2012), violating the Court's October 19, 2012 Order instructing AF Holdings to cease its discovery efforts based on information obtained through any earlier-issued subpoenas; and

- In *AF Holdings LLC v. Doe*, No. 2:12-cv-6669-ODW(JCx) (C.D. Cal. filed Aug. 2, 2012), violating the Court's October 19, 2012 Order instructing AF Holdings to cease its discovery efforts based on information obtained through any earlier-issued subpoenas.

*Id.* at 9-10. The Los Angeles court did *not* issue an order to show cause regarding Plaintiff's copyright assignments. *Id.*

On February 9, 2013, Plaintiff's attorney, Brett Gibbs, submitted his response to the order to show cause through independent counsel. *See Ingenuity 13 LLC*, No. 2:12-cv-8333-ODW(JCx) (C.D. Cal. filed September 27, 2012), ECF No. 49. On February 27, 2013, the Los Angeles court ordered Mr. Gibbs to identify various individuals alluded to in Mr. Gibbs' response. *See id.* at ECF No. 57. As is relevant here, Mr. Gibbs responded on March 1, 2013, naming Mr. Lutz as the "CEO of AF Holdings." *Id.* at ECF No. 58. Mr. Lutz was the only person Mr. Gibbs named as holding an interest in, or possessing managerial authority for, AF Holdings. *See Id.*

On March 5, 2013, the Los Angeles court ordered eight individuals—including Plaintiff's manager, Mark Lutz—to appear from across the United States at the March 11, 2013, hearing, and ordered Mr. Gibbs to serve a copy of the orders on the summoned individuals by March 7, 2013. *Id.* at 66. The order gave the summoned individuals a single business day's notice to make arrangements to appear at the hearing. Mr. Lutz appeared via telephone at the hearing, but was not asked any questions, given an opportunity to cross-examine witnesses (including Mr. Cooper) or allowed to present evidence. *See generally id.* at ECF No. 93.

On March 14, 2013, the Los Angeles court issued a second order to show cause. *See id.* at 86. This time, the order to show cause was issued against thirteen different persons, including Plaintiff and Mr. Lutz. The order to show cause did not challenge Plaintiff's assignments. *See id.* Plaintiff, through its manager Mr. Lutz, appeared in person at the April 2, 2013, hearing. At the hearing, the Los Angeles court rejected several attempts by respondents to present arguments. *See id.* at ECF No. 103. Instead, the Los Angeles court abruptly ended the hearing when Messrs. Duffy, Steele and Hansmeier invoked the Fifth Amendment privilege against compelled testimony in order, *inter alia*,

6

1  to avoid violating the attorney client privilege. *See id.* Neither Plaintiff nor Mr. Lutz was given an

2  opportunity to answer questions or present evidence. *See id.* Mr. Cooper did not appear at the April

3  2, 2013 hearing and was thus never subject to cross-examination from Plaintiff, Mr. Lutz, Mr. Steele,

4  Mr. Hansmeier, Mr. Duffy. *See id.* The hearing lasted an estimated twelve minutes.

5  The defining feature of the Los Angeles order to show cause proceedings was the failure to

6  observe the Federal Rules of Civil Procedure the Federal Rules of Evidence and the requirements of

7  Due Process. Examples abound, but the Los Angeles court's statements, "*Unfortunately*, other than

8  these specific instances of fraud, the Court cannot make more detailed findings of fraud," and, "this

9  punitive portion is calculated to be *just below the cost of an effective appeal*," strongly suggest that

10  the Los Angeles proceedings were not fair and impartial. *See id.* ECF No. 130 (emphasis added).

11  The Los Angeles court's failure to observe essential procedures resulted in findings that are

12  untenable. Plaintiff will highlight a few examples, although virtually every one of the findings in the

13  Los Angeles court's order issuing sanctions is unlikely to withstand appellate scrutiny:

| **Findings** | **Facts** |
|---|---|
| "The Principals started their copyright-enforcement crusade in about 2010, through Prenda Law…" *Id.* at ECF No. 130, 4:8-9. | Prenda Law, Inc. was incorporated on November 7, 2011. *See* www.ilsos.gov, click the "Business" tab, click Corporation/LLC Search, and enter search term, "Prenda Law, Inc." (last visited August 27, 2013). |
| The Principals held out Alan Cooper as an officer of AF Holdings. *Id.* at 5:11-12. | The Los Angeles court did not identify a document in which Mr. Cooper was held out as Plaintiff's officer. |
| "These settlement funds resided in the Principals' accounts…." *Id.* at 4:19-20. | *See* ECF No. 15 in 12-cv-1445 at fn. 1 ("The 'confidential release and settlement agreement', filed under seal, required the defendant to send a settlement check to Prenda Law, Inc."). |

7

"As evidence materialized, it turned out that Gibbs was just a redshirt." *Id.* at 2:15-16.

MEMBER OF THE AUDIENCE:[3] "I had a conversation with Gibbs probably back in October regarding AF Holdings where he told me that he was national counsel for AF Holdings and that any settlement negotiations were to be made through him. And the local counsel for that case confirmed that he was the one who told me to contact Mr. Gibbs.

The Los Angeles court's findings were not based on evidence, but instead were based exclusively on conjecture. *See id.* at ECF No. 103, 8:23-9:1 ("Let's cut to the chase. I am really not interested in – I want to know if some of my conjecture is accurate. *The only way I can find out* is to have the principles [sic] here and answer those questions.") (emphasis added).

Despite making extensive factual "findings" regarding Plaintiff's corporate structure, the background of the so-called "Principals", the Alan Cooper issue, the methods employed in copyright infringement litigation and Brett Gibbs, the Los Angeles court made only two narrow findings of misconduct. First, the Los Angeles court found that Brett Gibbs made misrepresentations to the court in the response Mr. Gibbs filed through independent counsel. *Id.* at ECF No. 130, 8:4-12.  Second, the Los Angeles court determined that Gibbs ignored the court's order vacating early discovery. *See id.* While the Los Angeles court referenced the "Alan Cooper forgery," it did not find that the Alan Cooper issue constituted a fraud on the court. *See id.* Instead, the Los Angeles court found that the Alan Cooper issue, "smacks of fraud." *Id.* "Smacks of", of course, is an idiom used to imply that something exists, without conclusively stating that it actually does.

## DISCUSSION

### I.   The Relevance of the *Ingenuity 13* Findings to This Case

The Court's first question is what legal effect the findings of the court in the *Ingenuity 13* matter have in this action, regarding: (1) Plaintiff's corporate structure;  and (2) the relationships

---

[3] The Los Angeles court allowed people in the public gallery to offer testimony during the March 11, 2013, order to show cause hearing, but did not afford Plaintiff the same consideration.

8

1    between AF Holdings, Prenda Law, Steele Hansmeier PLC [sic], John Steele, Paul Hansmeier, Peter

2    Hansmeier, Patrick [sic] Duffy and Brett Gibbs. Doc. 103, 1:20-21. Plaintiff understands this inquiry

3    to be: whether issue preclusion (collateral estoppel) is appropriate in this case. For the reasons stated

4    herein, it is not.

5        **A.    Legal Standard**

6        The proponent of issue preclusion bears the burden of establishing that all of the elements of

7    the doctrine are satisfied. *See, e.g., Taylor v. Sturgell*, 128 S. Ct. 2161, 2180 (2008). Where, as here,

8    issue preclusion takes the form of non-mutual offensive issue preclusion[4], the doctrine "should be

9    cautiously invoked." *See Grubbs v. United Mine Workers of America*, 723 F. Supp. 123, 127 (W.D.

10   Ark. 1989). Indeed, offensive issue preclusion is the most, "detailed, difficult, and potentially

11   dangerous" form of preclusion. *Jack Faucett Assocs., Inc. v. AT&T Co.*, 744 F.2d 118, 124-25 (D.C.

12   Cir. 1984); *see also Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 248 (3rd Cir.

13   2006) (offensive issue preclusion "presents a unique potential for unfairness.").

14       To establish non-mutual offensive issue preclusion, the proponent must first establish: (1)

15   preclusion would not deny "fundamental fairness"; and (2) preclusion would promote "judicial

16   efficiency." *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331-32 (1979); *S.E.C. v. Monarch

17   Funding Corp.*, 192 F.3d 295, 304 (2d Cir. 1999) ("When the efficiency rationale for [issue

18   preclusion] fails, however, courts have understandably declined to apply the doctrine."); *Gough v.

19   Natural Gas Pipeline Co. of Am.*, 996 F.2d 763 (5th Cir. 1993) ("[E]fficiency is [offensive] [issue

20   preclusion's] only true justification.") (internal quotation omitted).

21       If the proponent succeeds in establishing the elements unique to non-mutual offensive issue

22   preclusion, it must still establish the standard elements of issue preclusion. These elements are, "(1)

23   the issues are identical; (2) the prior adjudication ended with a final judgment on the merits; (3) the

24

25   _____

26   [4] Because Plaintiff is defending a motion for sanctions, and because Defendant was not a party to the
     *Ingenuity 13* proceedings, issue preclusion against Plaintiff would constitute non-mutual offensive
     issue preclusion.

27

28                                                          9

     BENCH MEMORANDUM REGARDING ISSUES
     RAISED IN ORDER RE AUGUST 28, 2013 HEARING          CASE NO. 3:12-CV-2396-EMC

1    plaintiff was a party to the prior adjudication; and (4) the plaintiff was given a full and fair

2    opportunity to be heard on the adjudicated issue." *See, e.g., Bechtold v. City of Rosemount*, 104 F.3d

3    1062, 1066–67 (8th Cir. 1997). Finally, issue preclusion may only be applied with respect to findings

4    that are "outcome determinative." *See Bobby v. Bies,* 129 S. Ct. 2145, 2153 (2009); *see also Setter v.*

5    *AH Robins Co., Inc.*, 748 F.2d 1328, 1331 (8th Cir. 1984); *In re Microsoft Corp. Antitrust Litig.*, 355

6    F.3d 322, 325 (4th Cir. 2004).

7         **B.    Defendant has Waived the Issue Preclusion Defense**

8         "[Issue preclusion], is an affirmative defense." *Taylor,* 128 S. Ct. 2161 at 2179 (2008); *see*

9    *also* Fed. R. Civ. P. 8(c). "Ordinarily, it is incumbent on the defendant to plead and prove such a

10   defense, and we have never recognized claim preclusion as an exception to that general rule."

11   *Taylor*, 128 S. Ct. at 2180. In this action, Defendant has not timely raised issue preclusion as an

12   affirmative defense. *See Arizona v. California*, 530 U.S. 392, 410 (2000) ("[R]es judicata [is] an

13   affirmative defense [that is] ordinarily lost if not timely raised."); *see also Mun. Resale Serv.*

14   *Customers v. FERC*, 43 F.3d 1046, 1052 n.4 (6th Cir. 1995) ("Res judicata and collateral estoppels

15   are affirmative defenses which are waived if not timely asserted.").

16        A preclusion defense which is not available at the outset of litigation has to be "raised at the

17   first reasonable opportunity after the rendering of the decision having the preclusive effect." *Aetna*

18   *Cas. & Sur. Co. v. Gen. Dynamics Corp.*, 968 F.2d 707, 711 (8th Cir. 1992); *see also Arizona*, 530

19   U.S. at 413 (holding that party could not raise preclusion as a defense when party could have raised

20   the defense earlier in the proceedings, but did not); *Home Depot, Inc. v. Guste*, 773 F.2d 616, 620 n.4

21   (5th Cir. 1985) ("Even if it is not practicable to raise [preclusion as an affirmative defense] in the

22   pleadings, the party wishing to raise the defense is obliged to assert it at the earliest moment

23   practicable."). Defendant has allowed nearly four months to pass without seeking to assert the

24   preclusion defense. In the intervening period he has sought and been awarded fees, filed and briefed

25   a motion for sanctions, and is on the eve of participating in an evidentiary hearing. Indeed, the only

26   reason why Defendant might consider the issue now is because the Court has raised it. Further there

27

28
BENCH MEMORANDUM REGARDING ISSUES
RAISED IN ORDER RE AUGUST 28, 2013 HEARING                              CASE NO. 3:12-CV-2396-EMC

1    is no justification for Defendant's delay. By not timely asserting it, Defendant has unambiguously

2    waived the defense.

3         Given the lack of any showing of why issue preclusion should apply, Plaintiff reserves the

4    right to demonstrate that any particular finding cannot be subject to issue preclusion in the event that

5    Defendant attempts to assert issue preclusion as a defense. Further, Plaintiff reserves the right to

6    object to particular findings as irrelevant based on subsequent developments in these proceedings.

7    *See, e.g., In re Microsoft Corp. Antitrsut Litig.*, 232 F. Supp. 2d 534, 535 n.2 (D. Md. 2002) ("By

8    finding that preclusive effective is to be given to the factual findings in the government case, I am

9    not deciding that these findings are relevant to the claims of any particular plaintiff. This is an issue

10    (more accurately, a series of issues) that awaits decision on a later occasion."), *rev'd on other*

11    *grounds*, 355 F.3d 322 (4th Cir. 2004).

12        **C.**      **Issue Preclusion would not Promote Judicial Economy**

13         The primary purpose of non-mutual offensive issue preclusion is to promote "judicial

14    economy," and the doctrine is inappropriate where it would not achieve that goal. *Parklane Hosiery*,

15    439 U.S. at 331-32. *Held*, 672 F. Supp. at 389-90. Courts thus decline to apply offensive non-mutual

16    issue preclusion where the issues that would be encompassed by preclusion overlap with the issues

17    that remain to be decided:

18
19
20
21
           Whatever values may be gained by nonmutual preclusion are substantially diminished when the need to try related issues requires consideration of much the same evidence as bears on the issue tendered for preclusion. Preclusion has been denied in such circumstances because it would not significantly expedite the second trial.

22    18A Wright, Miller, & Cooper, *Federal Practice & Procedure* ("Wright & Miller") § 4465 (2009)

23    (collecting cases); *see also* Restatement (Second) of Judgments § 29(c) cmt. h (in such cases "little is

24    gained by way of economy in foreclosing retrial of the issue, because substantial recanvassing of the

25    evidence will in any event be necessary"); *Corburn v. Smithkline Beecham Corp.*, 174 F. Supp. 2d

26    1235, 1241 (D. Utah 2001) ("it is entirely unclear to this court exactly what would be accomplished

27

28

BENCH MEMORANDUM REGARDING ISSUES
RAISED IN ORDER RE AUGUST 28, 2013 HEARING         CASE NO. 3:12-CV-2396-EMC

1    by granting Plaintiffs' motion, other than causing prejudice to [defendant] and confusion to the jury"

2    on the remaining open issues).

3          Even if the Court adopted the Los Angeles Court's finding in whole, it would not prevent

4    relitigation of all of the same issues. The reason for this is that allegations of fraud on the court are

5    particular to a specific action. Whereas Mr. Gibbs—untruthfully, Plaintiff might add—disavowed his

6    status as Plaintiff's national counsel before Judge Wright, Judge Wright's findings about the roles

7    and responsibilities of individuals in *that* case do not determine the roles and responsibilities of

8    individual in *this* case. Because issue preclusion would not contribute to judicial economy, its use is

9    inappropriate here.

10         **D.    There was no Full and Fair Opportunity to be Heard**

11         The proponent of issue preclusion bears the burden of establishing that Plaintiff had a full

12   and fair opportunity to be heard on the issue. *Bechtold,* 104 F.3d 1062 at 1066–67. Although are

13   dozens of independently sufficient reasons why the Los Angeles proceedings did not constitute a full

14   and fair opportunity to be heard on the "adjudicated" issues, for the sake of judicial economy

15   Plaintiff will highlight three obvious failings:

16         **1.    Plaintiff was Never Given an Opportunity to Cross-Examine Witnesses**

17         Plaintiff was never given an opportunity to cross-examine witnesses, and in particular Alan

18   Cooper, Mr. Pietz and Mr. Gibbs. Had Plaintiff been allowed to cross-examine Mr. Cooper, it could

19   have learned, for example: (1) what evidence Mr. Pietz had to support the chart that the *Ingenuity 13*

20   court adopted in its order issuing sanctions; (2) what role Mr. Pietz played in recruiting Alan Cooper

21   (who testified to becoming a witness only after receiving a threatening text message with Mr. Pietz's

22   colleague's contact information); (3) why Mr. Gibbs was repudiating his role as AF Holdings'

23   national counsel.

24         **2.    Plaintiff was not Allowed to Present Evidence**

25         The only show cause hearing to which Plaintiff was made a party was the April 2, 2013

26   hearing. Yet, that hearing lasted an estimated twelve minutes and Plaintiff was not allowed to present

27

28                                                            12

*any* evidence in its defense, was not allowed to call witnesses and was not allowed to examine witnesses who were present. *See, Ingenuity 13 LLC,* at ECF No. 103. Instead, the Los Angeles court called three witnesses, learned they would not testify before the court and then abruptly ended the hearing. Literally no evidence was presented at that hearing. The next thing Plaintiff knew, the Los Angeles court issued an order issuing sanctions, in which the findings totally distorted virtually every aspect of Plaintiff's business, corporate structure and conduct with respect to the Alan Cooper issue. Suffice it to say, the Los Angeles court's refusal to permit Plaintiff to introduce evidence prevented Plaintiff from having a full and fair opportunity to adjudicate the Los Angeles proceedings.

### 3.     Negative Inferences Were Made Against Plaintiff

The sole basis of the *Ingenuity 13* court's findings regarding corporate structure and roles and relationships as it relates to Plaintiff was negative inferences from the court's conjectures. Yet, neither Plaintiff nor Mr. Lutz invoked the Fifth Amendment privilege against compelled testimony or were given any opportunity to answer questions. Instead, the *Ingenuity 13* court drew negative inferences against individuals who have no ownership stake in AF Holdings and simply declared them to be AF Holdings' owners. Plaintiff wonders what Google, Nike, or McDonalds would have thought if the *Ingenuity 13* court had declared the so-called "Principals" their owners instead.

### E.     The Element of "Necessity" is Lacking

Issue preclusion is inappropriate for the independent reason that the Los Angeles Court's findings for which the Magistrate Judge is seeking preclusive effect were not "*necessary* to [the] court's judgment." *United States v. Alaska*, 521 U.S. 1, 13 (1997) (emphasis added); *see also Setter*, 748 F.2d at 1331 ("[Issue preclusion] applies only to issues of fact or law necessarily decided."); *S.E.C. v. Ridenour*, 913 F.2d 515, 518 (8th Cir. 1990) ("The doctrine of [issue preclusion] applies only when … the issues was essential to a valid and final judgment."). It is not plausible that all of the Los Angeles court's findings "can be important enough to be set in stone forever." *Gordon v. Microsoft Corp.*, 2003 WL 22281574, at *7 (Minn. Dist. Ct. 2003). Indeed, many of the findings on

BENCH MEMORANDUM REGARDING ISSUES
RAISED IN ORDER RE AUGUST 28, 2013 HEARING                    CASE NO. 3:12-CV-2396-EMC

their face are only "subsidiary" and not "outcome determinative." Take, for example, the following "finding":

> Steele, Hansmeier, and Duffy are attorneys with shattered law practices.

*Ingenuity 13* at ECF No. 130, 3:24-25. No one can seriously contend that the Los Angeles court could not have reached the same conclusions without this finding (or the many others like it). *See, e.g., Comes v. Microsoft Corp.*, 709 N.W.2d 114, 120 (Iowa 2006).

Courts have repeatedly denied requests to apply issue preclusion in such circumstances. For example, in *Pool Water Prods. v. Olin Corp.*, 258 F.3d 1024 (9th Cir. 2001), plaintiffs sought a blanket preclusion order for 895 findings of fact and six conclusions of law without demonstrating how each finding was necessary to the judgment. *Id.* at 1032-33. The Ninth Circuit affirmed the district court's rejection of issue preclusion based on this failure of proof. *Id.* at 1033. Although the court acknowledged that some of the findings may have been necessary, the court explained that "[i]t is up to the party seeking" prelusion to "establish that it has met the requirements" and thus "[n]either the district court not the defendant is required to engage in a 'hunt and peck' exercise to ferret out potentially relevant and necessary findings." *Id.*

Further, *none* of the Los Angeles court's findings were necessary to its order issuing sanctions. The only actual findings of misconduct the Los Angeles court made were: (1) Mr. Gibbs's misrepresentations in his response to the first order to show cause (which he filed through independent counsel); and (2) the ignored Court Order vacating early discovery. *Ingenuity13* at ECF No. 130, 8:9-11. While the Los Angeles court discussed the Alan Cooper issue, it only found that the issue "smacked of fraud," not that it constituted actual fraud. *Id.* Beyond this, the Court found that it "unfortunately" could not "make more detailed findings of fraud." *Id.* None of the Los Angeles district court's findings had any relation to Mr. Gibbs' misrepresentations or Mr. Gibbs' compliance with the Court's discovery orders. As such, none of the Los Angeles court's findings are eligible for issue preclusion in this case.

///

14

1    **II.    Navasca's Award of Attorney's Fees**

2        **A.    Payment of Navascas' Attorneys' Fees and Costs**

3        The Court's asks whether Plaintiff has paid Navasca's the attorneys' fees and costs he was

4    awarded on July 22, 2013. Plaintiff will address this matter at the evidentiary hearing.

5        **B.    Proper Remedy**

6        The Court's second question goes to the proper remedy for enforcing an award of attorneys'

7    fees. The district court's award of attorneys' fees and costs was just that: an award. It was not an

8    order to pay, but an award—or judgment—that is enforceable through the standard enforcement of

9    judgment laws. *See* Doc. 100 at 9:11-15 ([T]he Court … awards fees in the amount of $19,420.38

10   and costs in the amount of $3,111.55.) Plaintiff agrees with the Court's suggestion that Navasca's

11   proper course of action at this stage is not a sanctions motion, but a proceeding under the relevant

12   enforcement of judgment laws.

13   **III.    The Propriety of Sanctions Against Non-Parties**

14       The Court's third question raised the question of the propriety of sanctions against non-

15   parties. The short answer is that sanctions cannot be awarded against non-parties under the

16   circumstances present here.

17       **A.    Legal Standard**

18       Defendant seeks a sanction in the form of holding the Non-Parties joint and severally liable

19   for an attorney's fees award against Plaintiff. He brings his motion under 28 U.S.C. § 1927 and the

20   Court's inherent power. Doc. 93 at 17. Under § 1927, "[a]ny attorney … who so multiplies the

21   proceedings in any case and vexatiously may be required by the court to satisfy personally the excess

22   costs, expenses, and attorney's fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.

23   The section applies "only to unnecessary filings and tactics once a lawsuit has begun." *In re Keegan*

24   *Mgmt. Co. Sec. Litig.*, 78 F.3d 431, 435 (9th Cir. 1996). Section 1927 does not apply to initial

25   pleadings. *See Zaldivar v. City of Los Angeles*, 780 F.2d 823, 831 (9th Cir. 1986), abrogated on other

26   grounds by *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990). After all, "it is only possible to

27

28

15

1  multiply or prolong proceedings after the complaint is filed." *Matter of Yagman*, 796 F.2d 1165, 1187

2  (9th Cir. 1986).

3  **B.    28 U.S.C. § 1927 Does not Apply to Non-Parties**

4      There are three barriers to awarding sanctions against non-parties under 28 U.S.C. § 1927:

5  (1) sanctions under 28 U.S.C. § 1927 are non-delegable; (2) sanctions under 28 U.S.C. § 1927 only

6  apply to post-filing conduct; and (3) a prerequisite to 28 U.S.C. § 1927 sanctions is jurisdiction.

7      **1.    28 U.S.C. § 1927 Duties are non-Delegable**

8      Defendant cites no authority for the proposition that a non-party attorney who has not signed

9  a pleading is eligible for sanctions under Section 1927. Additionally, at least one federal court has

10  determined that the duties embodied in Section 1927 are non-delegable. In *Sangui Biotech Intern.,*

11  *Inc. v. Kappes*, 179 F. Supp. 2d 1240 (Dist. Ct. Co. 2002), the court discussed the case of *Pavelic &*

12  *LeFlore v. Marvel Entertainment Group*, 493 U.S. 120 (1989)—which held that under the pre-1993

13  version of Rule 11, that the duties imposed by the rule were non-delegable—and held that the

14  reasoning in *Pavelic & LeFlore*, "supports the conclusion that the duties imposed by § 1927 are not

15  delegable." *Sangui*, 179 F. Supp.2d at 1245. The Ninth Circuit has ruled in a similar fashion, holding

16  that § 1927 sanctions do not extend to law firms. *Lockary v. Kayfetz*, 974 F.2d 1166, 1170 (9th Cir.

17  1992). Because § 1927 sanctions are non-delegable, the only person who could possibly be

18  sanctioned—if such sanctions were appropriate, which they are not—is the attorney who filed all of

19  the documents in this case: Brett Gibbs.

20      **2.    28 U.S.C. § 1927 Only Applies to Post-Filing Conduct**

21      None of the so-called "specific instances of fraud" alleged in Defendant's sanctions motion

22  relate to activities that post-date the filing of the complaint. For example, the Alan Cooper allegation

23  is that the assignment agreement that was attached to the complaint was a forgery. The "Salt Marsh"

24  allegation is that Brett Gibbs filed a false ADR statement with the name "Salt Marsh" in it. The

25  Neville Declaration alleges that John Steele operated a honeypot that induced Navasca's

16

infringement. Even if all of these allegations were true—although none of them are—sanctions would not be awardable against anyone under 28 U.S.C. § 1927.

The reason, again, is that none of the so-called "specific instances of fraud" alleged in Defendant's sanctions motion relate to activities that post-date the filing of the complaint.  Section 1927 applies "only to unnecessary filings and tactics once a lawsuit has begun." *In re Keegan Mgmt. Co. Sec. Litig.*, 78 F.3d 431, 435 (9th Cir. 1996). Section 1927 does not apply to initial pleadings. *See Zaldivar v. City of Los Angeles*, 780 F.2d 823, 831 (9th Cir. 1986), abrogated on other grounds by *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990). After all, "it is only possible to multiply or prolong proceedings after the complaint is filed." *Matter of Yagman*, 796 F.2d 1165, 1187 (9th Cir. 1986). Because Defendant has not alleged an act that unreasonably and vexatiously multiplied the proceedings, he is not eligible for an award of fees and costs.

### 3.        A Prerequisite to 28 U.S.C. § 1927 Sanctions is Jurisdiction

The Court cannot hold non-parties liable for 28 U.S.C. § 1927 sanctions unless it obtains jurisdiction over them. Here, the Court is without jurisdiction to hear Defendant's motion. Jurisdiction has not been obtained over any non-party through service of process or otherwise been brought within the Court's jurisdiction. Further, Defendant has not established that personal jurisdiction exists over Messrs. Hansmeier or Steele.

Jurisdiction has not been established over any non-party through service of process. In *McGuire v. Sigma Coatings, Inc.*, the Fifth Circuit addressed a district court's jurisdiction to sanction a non-party attorney who had not appeared in the matter before the court. The non-party in *McGuire* was in-house counsel for a corporation that was represented in the litigation by outside counsel. 48 F.3d 902, 903, 907 (5th Cir. 1995). Just as is true of the non-parties here, the in-house attorney in *McGuire* had not been served with any document that would satisfy the requirement of formal process, was not a party to the case, nor an attorney in it, nor a member of the district court's bar and thus was not otherwise subject to the district court's jurisdiction. *Id.* at 907. Accordingly, the district court "did not have jurisdiction to sanction" the attorney. *Id.* at 908. The fact that the non-party

17

attorney had actual notice of the litigation did not cure the district court's lack of jurisdiction over him; "formal notice of contemplated action, or the waiver of notice by voluntary appearance, is part of the due process limitations on federal courts' jurisdiction." *Id.* at 907. Here, the Court has not acquired personal jurisdiction over the nonparties by service of process, and the nonparties have not waived and do not waive formal process.[5]

## IV.   AF Holdings' Business Structure

### A.   AF Holdings' Ownership

The membership interests in AF Holdings are held in a trust. The name of that trust is "Salt Marsh." The beneficiaries of the "Salt Marsh" trust are any children born to Mr. Lutz adopted by him, and any of his subsequent descendents. He has no children or descendents, so the trust's beneficiaries are currently undefined. The only other person with a contractual financial interest in this case is attorney Brett Gibbs, who has a contractual right to a percentage of the proceeds of this litigation.

### B.   AF Holdings' Certificate of Interested Entities

Brett Gibbs drafted and filed Plaintiff's certificate of interested entities. While Plaintiff believes it was drafted accurately, any concerns regarding the certificate should be discussed with the attorney who signed and filed it: Brett Gibbs. Plaintiff believes that the certificate is accurate because a trust is not a *sui generis* person. Thus, disclosure of a trust as an "interested entity" does not appear to be provided for under this Court's Local Rules.

---

[5] The sanctions motion itself is procedurally defective in that it was not properly served. The motion was served on Mr. Hansmeier via e-mail, but not U.S. mail. Ex. D ¶ 2. Mr. Steele never received a copy of the motion. Ex. C1 ¶ 2. No provision of the Federal Rules allows for the service of a paper on non-parties via e-mail. *See generally* Fed. R. Civ. P. 4, 4.1(a), 5. Further, even where e-mail is a permissive means of service, it may be employed only if the recipient has consented to service by e-mail. The nonparties have not consented and do not consent to service via e-mail. Messrs. Pietz and Ranallo are notorious for failing to serve individuals with papers. In the *Ingenuity 13* proceedings, Messrs. Pietz and Ranallo freely admitted to not serving any *pro se* person with any of their papers—including a motion to require these individuals to post a six-figure appellate bond. The Los Angles court made a specific finding at the hearing that Messrs. Pietz and Ranallo did not serve anyone with their papers.

BENCH MEMORANDUM REGARDING ISSUES
RAISED IN ORDER RE AUGUST 28, 2013 HEARING          CASE NO. 3:12-CV-2396-EMC

1

**C.      AF Holdings' 30(b)(6) Deponent**

2

Plaintiff will address this matter at the Evidentiary Hearing.

3

**D.      AF Holdings' Settlement Proceeds**

4

Plaintiff will address this matter at the Evidentiary Hearing.

5

**<u>CONCLUSION</u>**

6

Plaintiff will be pleased to supplement this memorandum at the Court's request.

7

8

Respectfully Submitted,

9

DATED: August 28, 2013

10

By:      /s/  Paul Duffy
                Paul Duffy (Bar No. 224159)

11

                2 N. LaSalle Street, 13th Floor
                Chicago, IL  60602

12

                Telephone: (312) 952-6136
                E-mail: pduffy@pduffygroup.com

13

                *Attorney for Plaintiff*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BENCH MEMORANDUM REGARDING ISSUES
RAISED IN ORDER RE AUGUST 28, 2013 HEARING                          CASE NO. 3:12-CV-2396-EMC

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on August 28, 2013, all individuals of record who are deemed to have consented to electronic service are being served a true and correct copy of the foregoing document, and all attachments and related documents, using the Court's ECF system. In addition, service via First Class U.S. Mail, postage prepaid, has been made on the following:

John Steele                                    Paul Hansmeier
1111 Lincoln Road Ste 400                      Alpha Law Firm LLC
Miami Beach, Florida 33139                     80 S. 8th St. Ste 900
                                               Minneapolis, MN 55402


                                               /s/ Paul Duffy_____

20