# Exhibit A
# Affidavit of Mark Lutz

## AFFIDAVIT OF MARK LUTZ

I, Mark Lutz, declare under the penalty of perjury that the following statements are true and correct:

1. I am over the age of 18 and am competent to testify as to the matters set forth herein. I make this affidavit on the basis of my personal knowledge.

2. I am the only manager that AF Holdings, LLC, a limited liability company formed under the laws of the Federation of St. Kitts and Nevis, ("AF Holdings, LLC") has ever had.  Further, AF Holdings, LLC has never had any employees other than me.

3. Neither John Steele, Paul Duffy nor Paul Hansmeier ever served as a director, officer, manager, or employee of AF Holdings or otherwise possessed managerial authority or an ownership interest in AF Holdings.

4. The only role that Steele, Duffy and Hansmeier have played with respect to AF Holdings, LLC is that of its attorney and, in the case of Mr. Hansmeier, a Federal Rule of Civil Procedure 30(b)(6) designee in this particular case.

5. Brett Gibbs and an associate attorney located in California (herein after "his associate") were AF Holdings' sole attorneys in this case until February 21, 2013. Neither John Steele, Paul Duffy nor Paul Hansmeier played any role in this case (other than serving as a 30(b)(6) designee).

6. To the best of my recollection, until February 21, 2013, Brett Gibbs and his associate drafted all of the papers filed in this case, attended all of the hearings in this case, took and defended all of the depositions in this case, and were the only persons to advise AF Holdings regarding case strategy. In fact, Brett Gibbs paid the filing fee for this case on his personal credit card, and AF Holdings reimbursed him for that expense.

7. Brett Gibbs filed this case on AF Holdings' behalf on a contingency fee basis and he stood to make a direct financial gain if the case was successful. No other individual attorney had a direct contingency fee interest in this case.

8. Mr. Gibbs served as AF Holdings' outside national counsel. All settlement negotiations were to be made through him and counsels representing AF Holdings in other states were directed to push settlement negotiations through him. It is my understanding that Mr. Gibbs required AF Holdings' counsel in other states to put his contact information on complaints filed by AF Holdings.

9. Although I had talked with Mr. Gibbs several times before then, I first met Mr. Gibbs in person in Las Vegas, Nevada, at the AVN awards show in January, 2012. We discussed AF Holdings' business, the future of AF Holdings' litigation and other executive-level topics. I informed him that I was pleased with how he was handling AF Holdings' cases. He informed me that he was in the early stages of planning a nationwide campaign of suits against individuals on behalf of AF Holdings and my other company.

10. On or around November 2013, I formed a company to pursue opportunities in the adult industry. The name of the company was Livewire Holdings, LLC ("Livewire"). Because of his efforts as outside national counsel for AF Holdings, I asked Mr. Gibbs to serve as Livewire's general counsel. Mr. Gibbs agreed to do so. Mr. Gibbs resigned from Livewire on or around March 1, 2013. He informed me that he did so on the advice of the attorneys who were representing him in the order to show cause proceedings before Judge Wright.

11. I formed AF Holdings, LLC in mid-2011. I did so because I believed there was an opportunity to purchase undervalued copyrights. During that time I was working for a law firm, Steele Hansmeier PLLC, that was hired by adult content producers to defend copyrights against piracy. In that line of work, I came in contact with several industry participants who were effectively going out of business because people who used to pay for their content had simply turned to stealing it. I believed that I could purchase copyrights for little-to-nothing, retain attorneys to ward off the piracy and then resell the copyrights for a profit.

12. I first hired Steele Hansmeier PLLC to represent AF Holdings. When Steele Hansmeier PLLC dissolved at the end of 2011, I retained Brett Gibbs of Prenda Law, Inc. to be AF Holdings' national counsel. A true and correct copy of the retainer agreement I signed is attached hereto as Exhibit A. I had worked with Brett in several capacities during my time at Steele Hansmeier PLLC, and was comfortable with moving forward with him.

13. AF Holdings is a limited liability company formed under the laws of the Federation of St. Kitts and Nevis. I hired a trust and estates attorney to form AF Holdings. The membership interests of AF Holdings are held in a trust. The name of that trust was "Salt Marsh." The Salt Marsh trust was also formed using the same trust and estates attorney. The name Salt Marsh was chosen simply because I had to choose a name and, I made an indirect reference to a person who had previously helped me out. The beneficiaries of the "Salt Marsh" trust are any children born to or adopted by me, and any of my subsequent decedents. I have no children or descendents, so the trust's beneficiaries are currently undefined.

14. With minor exceptions, the settlement proceeds from litigation filed on behalf of AF Holdings, LLC were deposited into AF Holdings' trust account at Prenda Law, Inc. There, the settlement proceeds would be

used to pay for future litigation. AF Holdings' litigation was not intended to generate money for AF Holdings. Instead, AF Holdings' litigation was intended to send a message to people who stole its content that piracy was no longer going to be tolerated. The copyrights I held would be worth significant sums if even a reasonable percentage of the people who stole the content instead purchased it. Litigation was a necessary evil.

15. I was summoned to appear before Judge Wright for a March 11, 2013, order to show cause hearing against my attorney, Brett Gibbs. I appeared via telephone, but neither Judge Wright, Morgan Pietz nor Brett Gibbs' attorneys asked me any questions. I did not have an opportunity to ask anyone any questions, including Alan Cooper or Mr. Gibbs. I was never served with Judge Wright's order to appear.

16. I was summoned once again to appear before Judge Wright for an April 2, 2013, hearing. I appeared in person in Los Angeles, California. Once again, neither Judge Wright, Morgan Pietz nor Brett Gibbs' attorneys asked me any questions. The April 2, 2013, hearing lasted an estimated 12 minutes. I was never given an opportunity to ask anyone any questions, including Mr. Gibbs. I was also never given an opportunity to present evidence in my defense. I was never served with Judge Wright's order to appear.

17. I have reviewed the findings of fact in Judge Wright's order issuing sanctions against AF Holdings, Ingenuity13, LLC and others and while I have no personal knowledge regarding Mr. Gibbs' conduct, but I can say that Judge Wright's findings with respect to AF Holdings and Ingenuity13, LLC are completely untrue.

18. For example, it is not true that AF Holdings was formed by Steele, Hansmeier and Duffy. I first met Duffy over one year after AF Holdings was formed. Further, it is not true that the proceeds of settlements were

put in the personal accounts of Steele, Hansmeier and Duffy. Instead, the settlement proceeds were put in AF Holdings' trust accounts at Prenda Law, Inc. Finally, it is not true that AF Holdings ever held out Alan Cooper as its officer. I have never seen a document in which Alan Cooper was identified as AF Holdings' officer. It is not clear on what basis Judge Wright formed his findings, but I am disappointed with the degree of inaccuracy associated with them.

19. I understand the Court has inquired why Mr. Hansmeier was identified as AF Holdings' 30(b)(6) designee instead of me. On Mr. Gibbs' advice, I asked Mr. Hansmeier to serve as AF Holdings' 30(b)(6) designee. Mr. Gibbs informed me that the topics identified in Defendant's 30(b)(6) deposition notice were very narrow in scope. Mr. Gibbs told me that the Defendant was likely trying to set a trap by withholding topics that were within my personal knowledge (and thus my ability to prepare to discuss those topics), but would then spring them on me during the deposition. Mr. Gibbs' advice was to have someone who could prepare to answer the narrow set of topics identified in the 30(b)(6) notice, but was far enough removed from AF Holdings so that he would not have much personal knowledge of the topics outside the scope of the deposition notice. Mr. Hansmeier agreed to serve in this role on AF Holdings' behalf.

Mark Lutz

Subscribed and sworn before me, this 27th day of August, 2013

IRMA CALDERON

_____, NOTARY PUBLIC

My commission expires January 17th, 2015

IRMA CALDERON
MY COMMISSION # EE55977
EXPIRES: January 17, 2015
Fl. Notary Discount Assoc. Co.