1

2

3

4

5                 UNITED STATES DISTRICT COURT

6                NORTHERN DISTRICT OF CALIFORNIA

7

8  AF HOLDINGS LLC,                  No. C-12-2396 EMC

9         Plaintiff,

10      v.                       **ORDER ADOPTING REPORT AND RECOMMENDATION GRANTING DEFENDANT'S MOTION FOR SANCTIONS**

11  JOE NAVASCA,

12         Defendant.           **(Docket Nos. 93, 116)**

13 _____/

14      Currently pending before the Court is Defendant Joe Navasca's motion for sanctions against

15  nonparties John Steele and Paul Hansmeier.  Mr. Navasca has asked that Mr. Steele and Mr.

16  Hansmeier be sanctioned pursuant to 28 U.S.C. § 1927[1] and the Court's inherent authority.  Mr.

17  Navasca seeks monetary sanctions only, in the amount of $22,531.93.  *See* Docket No. 101 (Reply at

18  2).  This sum is the same amount that the Court awarded to Mr. Navasca (vis-a-vis Plaintiff AF

19  Holdings, Inc.) for attorney's fees and costs.  *See* Docket No. 100 (order).  Mr. Navasca asks the

20  Court to, in effect, hold Mr. Steele and Mr. Hansmeier jointly and severally liable for this sum.  *See*

21  Docket No. 101 (Reply at 2).  However, Mr. Navasca emphasizes that "[s]anctions . . . are sought

22  based upon the conduct of Mssrs. Steele and Hansmeier in directing this litigation, and actively

23

24        [1] Under § 1927,

25

26             [a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

27

28  28 U.S.C. § 1927.  In the instant case, both Mr. Steele and Mr. Hansmeier are attorneys.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1   promoting a fruad upon this court[;] [t]hey are not premised upon AF Holdings' failure to pay the

2   Copyright Act award."  Docket No. 105 (Def.'s Resp. at 12).

3        Judge Vadas issued a report and recommendation on Mr. Navasca's sanctions motion on

4   September 16, 2013.  *See* Docket No. 116 (R&R).  On September 30, 2013, Mr. Navasca filed a

5   timely objection to the report and recommendation.  *See* Docket No. 118 (objections).  The next day,

6   Plaintiff AF Holdings LLC filed an untimely objection.  *See* Docket No. 119 (objections).  This

7   Court "determine[s] de novo any part of [Judge Vadas's] disposition that has been properly objected

8   to."  Fed. R. Civ. P. 72(b)(3).

9        Having considered the parties' submissions, and all other evidence of record, the Court

10  hereby finds, on de novo review, that Judge Vadas's disposition of the motion for sanctions was

11  proper.

12              **I.    FACTUAL & PROCEDURAL BACKGROUND**

13       Judge Vadas conducted an evidentiary hearing in conjunction with the sanctions motion on

14  August 28, 2013.  *See* Docket No. 107 (minutes).  Neither Mr. Steele nor Mr. Hansmeier appeared

15  for the evidentiary hearing.  Furthermore, AF offered no witnesses to provide testimony at the

16  hearing.  *See* Docket No. 107 (minutes).  The day of the hearing, however, AF did submit two

17  affidavits from Mr. Steele and one affidavit from Mr. Hansmeier, as well as an affidavit from Mark

18  Lutz, a former paralegal for Mr. Steele and Mr. Hansmeier and the purported manager of AF.  *See*

19  Docket No. 106 (affidavits).  By submitting only written affidavits, AF effectively deprived defense

20  counsel from cross-examining Mr. Steele and Mr. Hansmeier.  *Cf.* Docket No. 109 (Order at 1)

21  (Judge Vadas denying AF's ex parte motion asking for permission to submit an affidavit from Mark

22  Lutz; noting that the August 28 "evidentiary hearing was an adversary proceeding [and] allowing

23  Lutz to file an affidavit would deprive defense counsel from cross-examining, which would be

24  unjust").

25       Following the evidentiary hearing, Judge Vadas issued his report and recommendation.  In

26  his report and recommendation, Judge Vadas adopted the factual findings made by Judge Wright of

27  the Central District of California in another set of cases involving, *inter alia*, AF.  *See* Docket No.

28  116 (R&R at 2).  More specifically, Judge Vadas adopted Judge Wright's findings with respect to

AF, Mr. Steele, and Mr. Hansmeier's "alter ego relationship, their conduct, and their business model." Docket No. 116 (R&R at 10). Judge Vadas found that collateral estoppel barred AF, Mr. Steele, and Mr. Hansmeier from relitigating Judge Wright's findings on these issues. Judge Vadas also made eleven factual findings himself, some of which incorporated Judge Wright's factual findings. *See* Docket No. 116 (R&R at 5-9). Finally, based on these factual findings, Judge Vadas recommended:

(1)      That the Court deny the motion for sanctions pursuant to § 1927 because there was insufficient authority to support the proposition that "an attorney who is not of record can be sanctioned pursuant to Section 1927." Docket No. 116 (R&R at 15).

(2)      That the Court deny the motion for sanctions pursuant to its inherent authority because, even though there was "ample evidence . . . that Steele and Hansmeier engaged in bad faith conduct, and perpetrated fraud upon the court[,] . . . it does not appear that the district court has personal jurisdiction over [them] for purposes of imposing sanctions on them." Docket No. 116 (R&R at 14). For example, neither Mr. Steele nor Mr. Hansmeier had appeared before the Court in this case, and neither individual had been subpoenaed to testify at the evidentiary hearing. *See* Docket No. 116 (R&R at 14).

(3)      That the Court issue an order to show cause as to why Mr. Steele and Mr. Hansmeier should not be added as judgment debtors to the award for attorney's fees and costs. *See* Docket No. 116 (R&R at 18).

Subsequently, Mr. Navasca filed a timely objection to the report and recommendation. *See* Docket No. 118 (objections). The next day, AF filed an untimely objection. *See* Docket No. 119 (objections).

## II.    DISCUSSION

A.     AF's Objections

As a preliminary matter, the Court notes that it would be entitled to reject AF's objections in their entirety because they were not timely filed. *See* Fed. R. Civ. P. 6(b) (providing that, "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the

**United States District Court**

For the Northern District of California

1   time . . . on motion made after the time has expired if the party failed to act because of excusable

2   neglect").

3       Furthermore, there is a serious question as to whether the Court should give any weight to

4   AF's objections given that the motion for relief was directed at Mr. Steele and Mr. Hansmeier, and

5   not AF.  An argument could be made that AF has standing to make some of the objections (*e.g.*, the

6   objection to the finding that Mr. Steele and Mr. Hansmeier are de facto owners and officers of AF)

7   but certainly not all (*e.g.*, the objection to the finding that Prenda Law is essentially a continuation of

8   Steele Hansmeier).

9       However, even if the Court were to ignore any timing or standing problems, the objections

10  raised by AF are without merit.  The Court addresses each objection briefly below.

11      1.      Objection No. 1

12      Judge Vadas found that, "[f]or all material purposes here, Prenda Law, Inc. is a mere

13  continuation of Steele Hansmeier."  Docket No. 116 (R&R at 5) (also noting that this was one of the

14  findings made by Judge Wright in his case).  AF objects on the ground that there was insufficient

15  evidence "to show that Prenda can be held liable [as a] successor to Steele Hansmeier."  Docket No.

16  119 (Obj. at 1).

17      As an initial matter, the Court takes note that this objection is largely irrelevant.  That is,

18  nothing in Judge Vadas's report and recommendation suggests that Prenda Law should be held

19  liable for anything based on actions taken by Steele Hansmeier.  At best, there is an issue as to

20  whether Prenda Law acted appropriately in this case based on its own actions, not Steele

21  Hansmeier's.

22      Even if the objection had some relevance, the Court rejects AF's contention that there was

23  insufficient evidence to show that Prenda Law was – *for all practical purposes* – Steele Hansmeier's

24  "successor."  For example, in November 2011, in another case in the Northern District of California,

25  Mr. Gibbs filed a notice stating that his "law firm has changed names from 'Steele Hansmeier

26  PLLC' to 'Prenda Law Inc.'"  Docket No. 93 (Ex. H) (notice in *Hard Drive Prods., Inc. v. Does*, No.

27  C-11-01956 EDL (N.D. Cal.)).  Also, Mr. Gibbs testified that "Hansmeier and Steele continued to

28

United States District Court

For the Northern District of California

1 perform the same roles at Prenda that they had performed at Steele Hansmeier, and that business

2 continued to operate in the same manner." Docket No. 116 (R&R at 5).

3       In its papers, AF argues that Mr. Navasca "did not present evidence that Gibbs filed a 'name

4 change' form in the dozens of other copyright cases that he testified he filed." Docket No. 119 (Obj.

5 at 1-2). But the Court can take judicial notice of the fact that notices were in fact posted in other

6 cases (all in November 2011 and all by Mr. Gibbs) in the Northern District of California. For

7 example:

8 •       *Hard Drive Prods., Inc. v. Doe*, No. C-11-01566 JCS (N.D. Cal.) (Docket No. 31) ("Notice

9          is hereby given that Plaintiff's counsel's law firm has changed names from 'Steele

10          Hansmeier PLCC' to 'Prenda Law Inc.'").

11 •       *Hard Drive Prods., Inc. v. Doe*, No. C-11-1959 EMC (N.D. Cal.) (Docket No. 35) (same).

12 •       *Hard Drive Prods., Inc. v. Does*, No. C-11-02330 EDL (N.D. Cal.) (Docket No. 32) (same).

13 •       *Hard Drive Prods., Inc. v. Does*, No. C-11-02333 JCS (N.D. Cal.) (Docket No. 15) (same).

14 •       *Hard Drive Prods., Inc. v. Does*, No. C-11-03827 LB (N.D. Cal.) (Docket No. 14) (same).

15 •       *Hard Drive Prods., Inc. v. Does*, No. C-11-1567 LB (N.D. Cal.) (Docket No. 29) (same).

16 •       *Hard Drive Prods., Inc. v. Does*, No. C-11-03826 DMR (N.D. Cal.) (Docket No. 12) (same).

17 •       *Hard Drive Prods., Inc. v. Does*, No. C-11-02535 PSG (N.D. Cal.) (Docket No. 14) (same).

18 •       *Hard Drive Prods., Inc. v. Does*, No. C-11-03004 HRL (N.D. Cal.) (Docket No. 28) (same).

19 •       *Hard Drive Prods., Inc. v. Does*, No. C-11-03648 HRL (N.D. Cal.) (Docket No. 28) (same).

20 •       *Hard Drive Prods., Inc. v. Does*, No. C-11-03682 LHK (N.D. Cal.) (Docket No. 39) (same).

21 •       *Hard Drive Prods., Inc. v. Does*, No. C-11-03825 HRL (N.D. Cal.) (Docket No. 15) (same).

22 •       *AF Holdings, LLC v. Does*, No. C-11-03335 JSC (N.D. Cal.) (Docket No. 28) (same).

23 •       *AF Holdings, LLC v. Does*, No. C-11-03067 CW (N.D. Cal.) (Docket No. 19) (same).

24 •       *AF Holdings, LLC v. Does*, No. C-11-03336 LHK (N.D. Cal.) (Docket No. 32) (same).

25 •       *Boy Racer, Inc. v. Does*, No. C-11-02536 JCS (N.D. Cal.) (Docket No. 18) (same).

26 •       *First Time Videos, LLC v. Does*, No. C-11-03310 JCS (N.D. Cal.) (Docket No. 17) (same).

27 •       *First Time Videos, LLC v. Does*, No. C-11-03822 MEJ (N.D. Cal.) (Docket No. 17) (same).

28

United States District Court

For the Northern District of California

1 • *Pacific Century Int'l Ltd. v. Does*, No. C-11-02533 DMR (N.D. Cal.) (Docket No. 29)

2   (same).

3 • *Pacific Century Int'l Ltd. v. Does*, No. C-11-02915 EDL (N.D. Cal.) (Docket No. 12) (same).

4 • *Pacific Century Int'l Ltd. v. Does*, No. C-11-03823 MEJ (N.D. Cal.) (Docket No. 17) (same).

5 • *Pacific Century Int'l Ltd. v. Does*, No. C-11-03681 (N.D. Cal.) (Docket No. 25) (same).

6        As for the authority AF cites in its papers, it is largely off point.  For example, in *Ray v. Alad*

7 *Corp.*, 19 Cal. 3d 22 (1977), the California Supreme Court simply took note of

8            the rule ordinarily applied to the determination of whether a
             corporation *purchasing the principal assets of another corporation*
9            assumes the other's liabilities.  As typically formulated the rule states
             that the purchaser does not assume the seller's liabilities unless (1)
10           there is an express or implied agreement of assumption, (2) the
             transaction amounts to a consolidation or merger of the two
11           corporations, (3) the purchasing corporation is a mere continuation of
             the seller, or (4) the transfer of assets to the purchaser is for the
12           fraudulent purpose of escaping liability for the seller's debts.

13 *Id.* at 28 (emphasis added); *see also Acheson v. Falstaff Brewing Corp.*, 523 F.3d 1327, 1328039

14 (9th Cir. 1975) (taking note of the same rule); *Franklin v. Usx Corp.*, 87 Cal. App. 4th 615, 625

15 (2001) (stating that, under (2) or (3) above, the crucial factor is "whether adequate cash

16 consideration was paid for the predecessor corporation's assets").  But here, there is nothing to

17 suggest that Judge Vadas found Prenda Law to be Steele Hansmeier's successor because it

18 purchased Steele Hansmeier's assets.  Judge Vadas simply indicated that, *as a practical matter*,

19 Prenda Law had taken over Steele Hansmeier's business.

20        2.    Objection No. 2

21        Judge Vadas essentially found credible Mr. Gibbs's testimony that "Steele and Hansmeier

22 directed his litigation activities in cases filed by AF, including this one."  Docket No. 116 (R&R at

23 6) (also noting that Judge Wright made this finding in his case); *see also* Docket No. 94 (Gibbs

24 Decl. ¶ 3) (stating that he also testified before Judge Wright on March 11, 2013, that he was

25 supervised by Mr. Steele and Mr. Hansmeier with respect to AF's litigation).  Judge Vadas took into

26 account AF's attempt to impugn Mr. Gibbs's credibility but found the evidence unpersuasive: The

27 declarations (of Mr. Gibbs and other attorneys who represented AF in other states) "do not rebut

28 Gibbs' testimony that Steele and Hansmeier alone communicated with the purported client, and that

United States District Court

For the Northern District of California

they directed Gibbs' litigation strategy.  The declarations actually corroborate Gibbs' testimony: he communicated with local counsel for AF, essentially acting as a go-between for Steel and Hansmeier."  Docket No. 116 (R&R at 6-7).

AF has objected to the finding that Mr. Steele and Mr. Hansmeier were directing Mr. Gibbs's actions, but the objection is without any merit.  The gist of AF's objection is that, if Mr. Gibbs did in fact simply follow the directions of Mr. Steele and Mr. Hansmeier without doing any investigation of his own, then he violated his duties as an attorney under, *e.g.*, Federal Rule of Civil Procedure 11.  But just because Mr. Gibbs's conduct may have been improper does not mean that any improper conduct on the part of Mr. Steele and Mr. Hansmeier should therefore be immunized.  All three of the individuals can be deemed to have engaged in improper conduct.

3.     Objection No. 3

In the report and recommendation, Judge Vadas took into account the testimony that Alan Cooper provided in Judge Wright's case in the Central District of California.  In that testimony, Mr. Cooper "denied acting in any capacity on behalf of AF, or signing the assignment."  Docket No. 116 (R&R at 7).

AF objects to this evidence because Mr. Cooper provided testimony during a hearing on March 11, 2013, at which time only Mr. Gibbs was potentially subject to sanctions.[2]  Thus, AF – as well as Mr. Steele and Mr. Hansmeier – had no opportunity to cross-examine Mr. Cooper during that hearing or introduce any evidence or argument.  AF does not dispute that it – as well as Mr. Steele and Mr. Hansmeier – were potentially subject to sanctions as of March 14, 2013, when Judge Wright issued a second OSC asking why they, *inter alia*, should not be sanctioned for their participation in

---

[2] Mr. Gibbs was potentially subject to sanctions pursuant to an order to show cause ("OSC") issued by Judge Wright on February 7, 2013.  *See Ingenuity 13 LLC v. Doe*, No. 2:12-cv-08333-ODW-JC (C.D. Cal.) (Docket No. 48).  Before the OSC hearing on March 11, 2013, Judge Wright ordered certain people to appear at the hearing, including Mr. Steele and Mr. Hansmeier.  *See id.* (Docket No. 66).  However, Judge Wright did not at that time explicitly state that these people or any related entities might also be subject to sanctions.  Only after the March 11 hearing (during which Mr. Cooper testified) did Judge Wright issue a second order to show cause in which he asked why other people and related entities – including Mr. Steele, Mr. Hansmeier, AF, Steele Hansmeier, and Prenda Law – should not also be sanctioned.  *See id.* (Docket No. 86).  The second OSC hearing was held on April 2, 2013.  *See id.* (Docket No. 105).  It was at that second hearing that Mr. Steele and Mr. Hansmeier stated that they would not answer any questions.  *See id.*  Judge Wright's sanctions order ultimately issued on May 6, 2013.  *See id.* (Docket No. 130).

United States District Court

For the Northern District of California

the scheme.  But AF contends that, at the second OSC hearing (on April 2, 2013), they still did not have an opportunity to cross-examine Mr. Cooper (it appears that Mr. Cooper did now show up at the second hearing, *see Ingenuity 13 LLC v. Doe*, No. 2:12-cv-08333-ODW-JC (C.D. Cal.) (Docket No. 103) (Tr. at 5)), and further were not given an opportunity to introduce any evidence or argument.

The Court is somewhat sympathetic to AF's point that it, Mr. Steele, and Mr. Hansmeier did not have a chance to cross-examine Mr. Cooper either at the March 11 hearing or at the April 2 hearing.  But that is hardly a reason for the Court to entirely discount Mr. Cooper's testimony.  This is because, even if AF, Mr. Steele, and Mr. Hansmeier did not have a chance to cross-examine Mr. Cooper, they still had the opportunity to introduce their side of the story as to what happened with Mr. Cooper at the April 2 hearing but they effectively chose to do nothing.  Mr. Steele and Mr. Hansmeier stated that they would not answer any questions.  Tellingly, Mr. Steele did offer an explanation in or about May 28, 2013, in conjunction with another case involving AF in Arizona. *See* Pl.'s Ex. M (2d Steele Aff. ¶¶ 7-11) (claiming that Mr. Cooper voluntarily expressed interest in getting into the business of fighting digital piracy, Mr. Steele put Mr. Cooper in touch with Mr. Lutz, and that Mr. Cooper thereafter participated in a limited number of transactions in 2011 with Mr. Lutz's companies).  There is no reason why Mr. Steele could not have offered this explanation during the April 2 hearing before Judge Wright.

Moreover, if Mr. Steele and Mr. Hansmeier really felt that cross-examination of Mr. Cooper was critical, there is no reason why they could not have issued a subpoena requiring Mr. Cooper's presence at the evidentiary hearing before Judge Vadas.

Finally, it is worth noting that Mr. Navasca submitted evidence to Judge Vadas that Mr. Cooper's identity had been stolen independent of the assignment agreement that bore Mr. Cooper's name and signature.  As Judge Vadas recited in the report and recommendation, Mr. Navasca provided an audio recording from GoDaddy.com, in which the caller identified himself as "Alan Cooper" but who was in fact, as testified to by Mr. Gibbs (who recognized the voice of the caller), Mr. Steele.  *See* Docket No. 116 (R&R at 7-8).  There is also documentary evidence from GoDaddy.com reflecting that the customer's name was "Alan Cooper" but the e-mail address was

United States District Court

For the Northern District of California

"johnsteele@gmail.com." Docket No. 93 (Pl.'s Ex. G). Furthermore, the physical address for the customer was 4532 E Villa Theresa Dr. – an address that is linked to Mr. Steele's sister and "Anthony Saltmarsh." Docket No. 55 (Ranallo Decl. ¶¶ 11-12 & Exs. B-C). Mr. Steele and Mr. Hansmeier did not provide any evidence explaining these circumstances.

4.      Objection No. 4

In the report and recommendation, Judge Vadas indicated his agreement with Judge Wright that Mr. Steele and Mr. Hansmeier were "de facto owners and officers of AF." Docket No. 116 (R&R at 8). AF objects to this finding because "no evidence introduced in this matter . . . support[ed] such a conclusion." Docket No. 119 (Obj. at 3). AF also argues that, in Judge Wright's case, the only evidence presented was

> a chart upon which Defendnts pasted photos of individuals whom it asserted, without foundation or supporting evidence, 'owned' AF. . . . There [was] a complete failure of evidence to support the conclusions represented in the exhibit, and no opportunity for opposing counsel to even review it before the Court in the Central District incorporated it as a figure in its [sanctions] Order.

Docket No. 119 (Obj. at 3).

There are several problems with AF's position. First, contrary to what AF suggests, it is not clear that Judge Wright found Mr. Steele and Mr. Hansmeier to be de facto owners and officers of AF based on the chart submitted by the defendant. Rather, Judge Wright seems to have made that finding in large part because AF had "no official owners or officers." *Ingenuity 13 LLC v. Doe*, No. 2:12-cv-8333-ODW(JCx), 2013 U.S. Dist. LEXIS 64564, at *6 (C.D. Cal. May 6, 2013). That finding does not appear to be erroneous. Notably, Mr. Hansmeier testified as the 30(b)(6) deponent for AF in this case (a fact that Judge Wright was aware of). As for Mr. Lutz, while he appears to have been an employee of AF, it is not clear what exactly his role within the company was. *See* Docket No. 84 (Pl.'s Ex. C) (Hansmeier Depo. at 76) (stating that Mr. Lutz is AF's sole employee and manager; also stating that there are no other officers of AF with titles such as CEO, president, treasurer, or secretary); *see also* Docket No. 80 (Lutz Aff. ¶ 2) (stating that "I manage various adult content related companies, including AF").

Second, even if Judge Wright's finding that Mr. Steele and Mr. Hansmeier were de facto owners or officers of AF was informed by the chart submitted by the defendant, that was not faulty either. As Judge Wright stated in his sanctions order, he was adopting the chart "detailing Plaintiffs' relationships" because, "[t]hough incomplete, this chart is about as accurate as possible *given Plaintifffs' obfuscation*." *Id.* at \*13 (emphasis added). Notably, Mr. Steele and Mr. Hansmeier refused to give testimony at the second OSC hearing where they could have explained what their relationship with AF was.

Third, in the instant case as well there has been similar obfuscation by AF, Mr. Steele, and Mr. Hansmeier. Although aware that there was a sanctions motion pending against them, and although aware that an evidentiary hearing was being held, neither Mr. Steele nor Mr. Hansmeier appeared before Judge Vadas to provide testimony. At best, they provided affidavits (which could not be contested by Mr. Navasca) the day of the evidentiary hearing. And in any event, those affidavits did not address their relationship with AF, although that was clearly put into play when Judge Vadas issued an order asking for the parties to be prepared to discuss that issue, among others. *See, e.g.*, Docket No. 103 (Order at 1-3) (asking the parties whether Judge Wright's findings should be given preclusive effect, who the owner of AF is, whether any person or entity has a financial interest in the outcome of the case beyond Salt Marsh, why Mr. Hansmeier was designated the 30(b)(6) deponent rather than Mr. Lutz, and how money went from the law firms representing AF to AF itself).

Fourth, what evidence there is of who the owners or officers of AF are is problematic. As noted above, Mr. Lutz's role in AF is not that clear. As for ownership of AF, in his 30(b)(6) deposition testimony, Mr. Hansmeier testified that AF was owned by a trust, but he professed not to even know "what the exact name of the trust is. If the name of the trust is Salt Marsh, then Salt Marsh is the owner. If the name of the trust is not Salt Marsh, then . . . ."[3] Docket No. 84 (Pl.'s Ex. C) (Hansmeier Depo. at 47). Only a few months later, Mr. Lutz claimed in an affidavit that the

---

[3] In the 30(b)(6) deposition of AF, Mr. Hansmeier could not even testify who set up the trust, who is the trustee for the trust, or who the beneficiaries of the trust are. *See* Docket No. 84 (Pl.'s Ex. C) (Hansmeier Depo. at 66, 68-69).

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1  owner of AF is a trust and that its name is in fact Salt Marsh – information that he should have given

2  to Mr. Hansmeier for the 30(b)(6) deposition.  *See* Docket No. 80 (Lutz Aff. ¶ 2).  And notably,

3  never has AF provided any documents to support the naked claim that it is owned by a trust, whether

4  named Salt Marsh or something else.  Nor has AF ever provided any trust documents showing the

5  establishment of Salt Marsh.

6          Fifth, to the extent AF now tries to rely on an affidavit from Mr. Lutz in which he states,

7  *inter alia*, that Mr. Steele and Mr. Hansmeier have never served as an officer or employee of AF or

8  "otherwise possessed managerial authority or an ownership interest in AF," Docket No. 106 (Lutz

9  Aff. ¶ 3), and that he set up the Salt Marsh trust, *see* Docket No. 106 (Lutz Aff. ¶ 13) (stating that he

10 chose the name because he had to choose one and decided to make "an indirect reference to a person

11 who had previously helped me out"; adding that the beneficiaries of the trust are "any children born

12 to or adopted by me, and any of my subsequent [descendants]" but the beneficiaries are "currently

13 undefined" as he has no children or descendants), that reliance is problematic because the affidavit

14 was never submitted until the day of the evidentiary hearing and Mr. Lutz never actually appeared at

15 the evidentiary hearing to provide testimony to that effect.

16         Finally, deeming Mr. Steele and Mr. Hansmeier de facto owners or officers of AF seems fair

17 given that there was never any evidence as to how funds that Prenda Law obtained from settlement

18 went to AF – this in spite of the fact that Judge Vadas specifically asked the parties to be prepared to

19 address the issue at the evidentiary hearing.  *See* Docket No. 103 (Order at 3).  While AF did submit

20 an affidavit from Mr. Lutz on the day of the evidentiary hearing to address this issue, *see* Docket No.

21 106 (Lutz Aff. ¶¶ 14,18) (stating that "it is not true that the proceeds of settlements were put in the

22 personal accounts of Steele, Hansmeier and Duffy" and that, "[i]nstead, the settlement proceeds

23 were put in AF Holdings' trust accounts at Prenda Law, Inc."; also stating that settlement proceeds

24 in the trust accounts were used to pay for future litigation and the litigation "was not intended to

25 generate money for AF Holdings" but rather "to send a message to people who stole its content that

26 piracy was no longer going to be tolerated"), Mr. Lutz never actually appeared at the hearing to give

27 testimony to that effect.  Furthermore, it is notable that there no documentary evidence attached to

28 the affidavit to back up the claims made in the affidavit.

The Court acknowledges AF's objection that no negative inference should be read from the fact that Mr. Lutz did not appear at the evidentiary hearing because he *intended* to appear but was not able to because of unforeseen circumstances. *See* Docket No. 119 (Obj. at 4). But the claimed inability to appear is highly questionable. First, AF waited for about a week after the evidentiary hearing before bringing up the argument that Mr. Lutz could not appear because of "very sensitive" reasons that would "expose [him] to undue scrutiny." Docket No. 108 (Ex Parte App. at 1-2). Second, in spite of the professed sensitive reasons, Mr. Lutz ultimately ended up publicly filing an affidavit (without permission from Judge Vadas) explaining why he could not appear. Third, the affidavit itself strains credulity. According to Mr. Lutz, he had bought a ticket to fly to San Francisco from Miami but, when he arrived at the Miami airport at 5:30 a.m., he was detained by federal authorities and was ultimately detained up until 10:00 p.m. – *i.e.*, *for more than 16 hours*. *See* Docket No. 115 (Lutz Aff. ¶¶ 1-4). And while Mr. Lutz suggests that he had no way to contact his attorney while detained, *see* Docket No. 115 (Lutz Aff. ¶ 5), that is a dubious claim. Moreover, even if he could not contact his attorney while detained, there is no explanation as to why he did not ask for relief the next day.

     5.    <u>Objection No. 5</u>

AF's fifth objection is that no negative inference should be read from Mr. Lutz's failure to appear. *See, e.g.*, Docket No. 116 (R&R at 8) (noting that counsel for AF represented (but could not testify) that Mr. Lutz was the sole managing member of Salt Marsh and that the trust had undefined beneficiaries (*i.e.*, Mr. Lutz's nonexisting children)). That issue has been addressed above.

     6.    <u>Objection No. 6</u>

Finally, AF objects to the report and recommendation "to the extent that it is based upon the conclusion that Plaintiff had a full and fair opportunity to litigate the issues presented in the Central District of California matter." Docket No. 119 (Obj. at 4). This argument, however, has little merit as discussed above – *i.e.*, at the April 2 hearing before Judge Wright, Mr. Steele and Mr. Hansmeier had an opportunity to present their side of the story but they declined to answer any questions.

Moreover, the Court notes that it need not rely on any findings by Judge Wright as there is a basis to make the same findings in this case based on the evidence of record in this case.

**United States District Court**
For the Northern District of California

B.      Mr. Navasca's Objections

For the reasons stated above, the Court rejects AF's objections – both on procedural grounds and on the merits.  As for Mr. Navasca's objections, they are also problematic.

1.      Notice to Mr. Steele and Mr. Hansmeier

Mr. Navasca does not challenge Judge Vadas's conclusion that sanctions could not be awarded pursuant to § 1927.  Rather, his focus is on sanctions pursuant to the Court's inherent authority.  Here, Judge Vadas found that there was "ample evidence . . . that Steele and Hansmeier engaged in bad faith conduct, and perpetrated fraud upon the court. [¶] However, it does not appear that the district court presently has personal jurisdiction over Steele and Hansmeier for purposes of imposing sanctions on them."  Docket No. 116 (R&R at 14).  Judge Vadas noted that neither individual had appeared before the Court in this case and that neither individual had been subpoenaed for the evidentiary hearing.  Furthermore, "Navasca has provided no authority that would allow the undersigned to find that the district court has personal jurisdiction over these two non-parties, who are not attorneys of record for AF in this case, are not admitted to practice before this court, and who were served by mail with the motion for sanctions."  Docket No. 116 (R&R at 14).

Mr. Navasca argues that Judge Vadas erroneously found no personal jurisdiction because due process simply requires notice and an opportunity to be heard and here, Mr. Steele and Mr. Hansmeier were given that – *i.e.*, they were served with the sanctions motion (by mail and e-mail).  Mr. Navasca also notes that Mr. Steele and Mr. Hansmeier have essentially admitted that they had actual notice of the motion as they submitted affidavits to Judge Vadas on the day of the evidentiary hearing.

The Court is not persuaded by Mr. Navasca's arguments.  Service of process on a *party* can establish personal jurisdiction, but only where the requisites of Federal Rule of Civil Procedure 4 are met.  *See* Fed. R. Civ. P. 4(k)(1) (providing that "[s]erving a summons . . . establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located"); *see also* 1-4 Moore's Fed. Prac. – Civ. § 4.03[1] (stating that "[s]ervice that complies with Rule 4, which is made with the intent to provide notice,

may establish personal jurisdiction; actual notice without compliance with the Rule does not"). But here, Mr. Steele and Mr. Hansmeier are not parties to the action; they are *nonparties*. To the extent one could argue that service in compliance with Rule 4 should be enough to establish personal jurisdiction over a nonparty and not just a party, *cf. Hilao v. Estate of Marcos*, 94 F.3d 539, 545 (9th Cir. 1996) (quoting Wright & Miller treatise for the proposition that, "'[w]hen it is sought to charge a person with contempt who was not a party to the original action and thus not already within the jurisdiction of the court, that party must be served with process as in any other civil action'"), Mr. Navasca has failed to show that he effected service in compliance with Rule 4. For example, under California law, service outside the state may be done by mail but only if it is "first-class mail, postage prepaid, requiring a return receipt." Cal. Code Civ. Proc. § 415.40. In his papers, Mr. Navasca has simply indicated that he served the sanctions motion by mail. *See* Docket No. 118 (Obj. at 2-3).

To the extent Mr. Navasca suggests that formal compliance with Rule 4 should not be necessary – *e.g.*, actual notice would be sufficient – that is not supported by any authority directly on point (in particular, actual notice as to nonparties). Those authorities that might suggest that actual notice is enough can be distinguished. For example, in *McGuire v. Sigma Coatings*, 48 F.3d 902 (5th Cir. 1995), the Fifth Circuit indicated that personal jurisdiction arises over a person where the person is on notice of a *court order* or something akin to that (*e.g.*, a subpoena). *See id.* at 907 (stating that, "[t]o acquire jurisdiction over the person, a court must serve on the person a document, 'such as a summons, notice, writ, or order"). Thus, notice of simply a *motion* filed by a party would not seem to be sufficient to establish personal jurisdiction. *Cf. ClearOne Comms., Inc. v. Bowers*, 651 F.3d 1200, 1214-15 (10th Cir. 2011) (agreeing with other circuit courts that "have held that '[n]onparties who reside outside the territorial jurisdiction of a district court may be subject to that court's jurisdiction' for purposes of contempt proceedings 'if, with actual notice of the *court's order*, they actively aid and abet a party in violating that order'") (emphasis added).

2.   Notice to AF

Alternatively, Mr. Navasca argues that the Court has personal jurisdiction over Mr. Steele and Mr. Hansmeier because it has personal jurisdiction over AF, and AF is simply the alter ego of

United States District Court

For the Northern District of California

14

1   Mr. Steele and Mr. Hansmeier.  *See* Docket No. 118 (Obj. at 3-4) (citing, *inter alia*, *Bally Export*

2   *Corp. v. Balicar, Ltd.*, 804 F.2d 398, 405 (7th Cir. 1986) (stating that, "[w]here one corporation so

3   controls another corporation that, as a practical matter, the two entities function as one [*i.e.*, alter

4   ego], service on one corporation is effective as to both").  Mr. Navasca claims that Judge Vadas

5   basically found AF to be the alter ego of Mr. Steele and Mr. Hansmeier.

6           While this argument of Mr. Navasca is not without some merit, the Court still finds it

7   problematic because Judge Vadas only indicated that AF should be deemed the alter ego of Mr.

8   Steele and Mr. Hansmeier for purposes of amending the judgment debtor under California Code of

9   Civil Procedure § 187.  Judge Vadas specifically noted that "[c]reditors need not establish that all

10  the *formal requirements of the alter ego doctrine* apply when proceeding under Section 187, only

11  that the 'equitable principles regarding alter ego' are present and that the added judgment debtor

12  'fit[s] within the theory underlying amendment of a judgment based on alter ego liability."  Docket

13  No. 116 (R&R at 16) (emphasis added).

14          Therefore, at the end of the day, the Court agrees with Judge Vadas that the best way to

15  proceed is for this Court to issue an order to show cause (directed to Mr. Steele and Mr. Hansmeier)

16  as to why the judgment should not be amended to add them as debtors for the attorney fee award.

17  Issuance of the order to show cause will also be a basis for establishing personal jurisdiction over

18  the nonparties.

19          3.      Order to Show Cause

20          Accordingly, the Court hereby orders AF, Mr. Steele, and Mr. Hansmeier to show cause as to

21  why the judgment should not be amended to add Mr. Steele and Mr. Hansmeier as debtors for the

22  attorney fee award.  The Court further orders Mr. Steele and Mr. Hansmeier to show cause as to why

23  sanctions against them should not be issued pursuant to the Court's inherent authority (with the issue

24  of personal jurisdiction being addressed by the order to show cause).

25          A response to this order to show cause shall be filed within two weeks from the date of this

26  order.

27          A reply to the response shall be filed within three weeks of the date of this order.

28

**While the parties and Mr. Steele and Mr. Hansmeier may submit declarations in support of their respective papers, the Court hereby forewarns all persons or entities involved that such declarations (or affidavits) will be given little to no weight because the Court shall be conducting an evidentiary hearing on the order to show cause on Thursday November 21, 2013. Thus, any testimony in a declaration (or affidavit) that a party or nonparty deems important, significant, or critical must be presented at the evidentiary hearing by a live witness, subject to cross-examination.**

### III.   <u>CONCLUSION</u>

For the foregoing reasons, the Court issues the order to show cause described above. This order disposes of Docket Nos. 93 and 116.

IT IS SO ORDERED.

Dated:  October 16, 2013

_____
EDWARD M. CHEN
United States District Judge

United States District Court

For the Northern District of California