**Pages 1 - 18**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Edward M. Chen, Judge

| | |
|---|---|
| AF HOLDINGS LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| VS. | )   NO. C 12-02396 EMC |
| | ) |
| JOE NAVASCA, | ) |
| | ) |
| Defendant. | ) |
| | ) |

San Francisco, California
Thursday, July 18, 2013

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:
        LAW OFFICES OF PAUL DUFFY
        2 N. LaSalle Street - 13th Floor
        Chicago, Illinois  60602
   **BY:  PAUL DUFFY, ATTORNEY AT LAW**
        **(via CourtCall)**

For Defendant:
        LAW OFFICE OF NICHOLAS RANALLO
        37 Dogwood Way
        Boulder Creek, Colorado  95006
   **BY:  NICHOLAS RANALLO, ATTORNEY AT LAW**

Reported By:    Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
               Official Reporter

| | |
|---|---|
| **Thursday - July 18, 2013** | **3:19 p.m.** |

**P R O C E E D I N G S**

---oOo---

**THE CLERK:** Hi, Mr. Duffy. This is Betty from Judge Chen.

Calling Case C 12-2396, AF Holdings versus Doe.

Please state your name for the record.

**MR. DUFFY:** Paul Duffy.

**THE COURT:** All right. Thank you, Mr. Duffy. This is Judge Chen.

**MR. RANALLO:** And for the defendant, Nicholas Ranallo.

**MR. DUFFY:** Your Honor, I want to apologize to the judge and to opposing counsel. I thought today's hearing was canceled. So I sincerely apologize for any inconvenience.

**THE COURT:** All right. Well, let's go forward.

I'm going to address the defendant's motions for costs and attorney's fees. As you know, under the Copyright Act the Court has the power to award reasonable fees to the prevailing party; and to determine whether or not fees are appropriate in a copyright case, I'm to look at a number of factors, which include frivolousness of the claim, motivation, the objective on reasonableness, the need in particular circumstances to advance considerations of compensation and deterrence, and the degree of success obtained, of course, is always a factor.

And, frankly, I don't see why fees should not be awarded

1  here given the findings that have been made both in this court
2  as well as some of the findings that have been made by other
3  courts, including Judge Wright.
4      This case proceeded without standing, without proof of
5  standing, as I found.  There were also questions about
6  identifying Mr. Navasca as an infringer without adequate actual
7  factual investigation.  And, of course, there were some other
8  assertions that AF made, such as improper spoliation, which was
9  never proven or supported.  And, so, on those factors, I think
10 those militate in favor of an attorney's fee award.
11     And, of course, then, there's the whole question of
12 motivation and, you know, there are seriously now questions
13 raised about the whole business model here that raises serious
14 questions about whether this was truly motivated to vindicate
15 copyright interests or one which is a business model to
16 generate income to coerce settlements.
17     And, so, I don't see why fees -- if there's a case that
18 warrants fee-shifting, this certainly seems to be one of them;
19 but, Mr. Duffy, I'll give you a chance to respond and talk me
20 out of it.
21         **MR. DUFFY:**  Well, Your Honor, I believe that counsel
22 admitted that there was indication of spoliation of evidence;
23 that there was sweeping technology that destroyed evidence on a
24 computer, including evidence of any infringing activities.
25         **THE COURT:**  But no evidence of purposeful spoliation

1  because that software program was in place even before this
2  lawsuit was filed.
3        **MR. DUFFY:**  But opposing counsel represented to the
4  Court that he was preserving evidence, and the defendant did
5  not disengage that software to spoliate evidence after the case
6  was filed despite assurances the Court was informed by counsel
7  that he was preserving evidence.
8        In terms of the business model, I believe -- well, first
9  of all, you know, this is a Central District of California case
10 that's under appeal where we dispute, obviously, a large number
11 of the special findings that the Court made.
12       And, in addition, in the *Malibu* -- the *Malibu Movie* case
13 in the Northern District of Illinois, Judge Kendall
14 specifically addressed efficiency of the business model and the
15 U.S. District Court for the Northern District of Illinois said
16 that it would be discriminatory to prevent the plaintiffs in
17 infringement cases such as this from seeking settlements where
18 plaintiffs in other types of settings were not prevented from
19 seeking settlements.
20       So at least in another U.S. District Court the judge
21 specifically acknowledged that it's an appropriate business
22 model to try to reach settlement in terms of copyright
23 infringement by virtual piracy and by John Doe defendants who
24 engaged in and have a habit of defending engagement hearings.
25       **THE COURT:**  Well, here AF didn't even prove standing.

1    **MR. DUFFY:**  In terms of the -- in terms of imparting
2 of the copyright?
3    **THE COURT:**  Yes.
4    **MR. DUFFY:**  Well, that's very much in dispute.  It's
5 now a he-said/he-said.  I mean, the individual who signed the
6 acknowledgment on behalf of AF Holdings, first of all, the
7 defendants initially claimed he was being represented as the
8 CEO of AF Holdings, which is totally inaccurate.  That's not
9 something they have in connection with this case.
10     And the issue of whether the individual signed it to
11 acknowledge on behalf AF Holdings is very much in dispute.  I
12 mean, the individual did not challenge his signature until
13 Mr. Steele evicted him from his property and determined to --
14 and the individual contacted by Alpha for the EFF and all of a
15 sudden repudiated his signature.
16     But there was -- I mean, I believe previous counsel could
17 have done a better job in establishing standing in connection
18 with those issues, but I believe there's very much a factual
19 issue about whether the person who signed it actually signed
20 it, and we believe he actually did.  And according to his
21 conduct over a year and a half, he clearly acknowledged it.
22     And, first, under applicable law, the person who's
23 transferring it is the only person who has to sign any type of
24 acknowledgment.  And that individual both signs the
25 acknowledgment, the person who transferred it to AF Holdings

1  both signed the acknowledgment and prepared an affidavit
2  stating that he intended to assign copyrights to AF Holdings.
3  So the signature in question is a superfluous signature.
4          **THE COURT:**  Well, I found that that's not the case.
5  An Article Three standing requires more than just a facially
6  valid assignment, and it was after that ruling in which I
7  required an undertaking that subsequently this case was
8  dismissed.
9          And from everything I've seen, I've not seen a case yet
10 where AF has been able to prove to any Court's satisfaction
11 that this was not a legitimate assignment, that there was not a
12 problem of either identity theft or forgery or something of
13 that nature going on.
14         And I know you say you dispute this on behalf of your
15 client and it's something that's factually disputed, but is
16 there a case where you have prevailed on that issue?
17         **MR. DUFFY:**  There's not a case where I've not
18 prevailed.  There's the Central District of California case
19 where the individual was allowed -- the individual who's now
20 disputing his signature was allowed to state that he did not
21 sign it, but opposing counsel is not allowed to cross-examine
22 him.  And in other proceedings -- there's a proceeding going on
23 in Arizona and there are other proceedings.  There's the
24 testimony, the testimony is very severe actual dispute about
25 various issues relating to this individual and his claims.

1   But there's not been a finding outside of the Central
2   District of California that there's any issue at all with this
3   individual's signature.  There's not been any, as far as I know
4   anyway at least, any determination that this person's signature
5   was not valid.
6   There was a period of -- the signature occurred before
7   Prenda Law existed in 2011.  It was a period of about a year
8   and a half with the individual, according to affidavits and
9   other evidence where evidence was allowed to be presented,
10  where the individual did not say anything contesting his
11  signature.  And then when he was evicted, you know, as their
12  tenant of this property, all of a sudden he became a national
13  cause celeb where he was flown to various proceedings around
14  the country and disputed the signature after a year and a half
15  of not disputing it.
16  **THE COURT:**  What about the Neville declaration?  Does
17  AF dispute that the infringed, allegedly infringed upon
18  copyright material was uploaded?
19  **MR. DUFFY:**  AF absolutely disputes that and indicates,
20  where it's been allowed and had the opportunity to be heard
21  that the software used to monitor the copyright infringement
22  does not allow it to upload -- to upload or download any type
23  of material.  So they absolutely dispute that.
24  And that affidavit was not presented in time for the
25  freeze in connection with this motion, but AF Holdings

1  specifically disputes that and indicates that the software that
2  he used did not allow it to do the things that Mr. Neville,
3  whoever he is, claims occurred.
4          **THE COURT:**  All right.  What's your response, Counsel?
5          **MR. RANALLO:**  I would say, first, as far as Alan
6  Cooper, I don't think there's any dispute that as soon as he
7  found out about it, he began disputing his signature.  To
8  expect him to dispute it before he knew about it I think is
9  somewhat questionable.
10         As far as Mr. Neville's declaration, it was included in my
11 motion.  They certainly had an opportunity to respond to it if
12 they would like.
13         And as he points out in the reply, there's actually some
14 conflation going on as far as plaintiff's statements that their
15 particular application does not actively upload and download
16 versus Mr. Neville's declaration that says that the link to the
17 particular work is what was posted by this mp4 user.
18         So to put it another way, the link to find the torrent
19 file that is shared by a whole number of people, including
20 their monitoring technology, but the link to find that swarm
21 was uploaded by the plaintiff themselves.
22         And, so --
23         **MR. DUFFY:**  And, Your Honor --
24         **THE COURT:**  Hold on.  Hold on.
25         **MR. DUFFY:**  I'm sorry.

1      **THE COURT:** Hold on. Please don't interrupt him. I
2  want to hear one at a time.
3      **MR. DUFFY:** I'm sorry.
4      **THE COURT:** All right. So continue, Mr. Ranallo.
5      **MR. RANALLO:** So I would say that there are two
6  separate issues. One is whether their monitoring tool actually
7  shares it. The second is whether they purposely directed
8  people to this film that they then sued them over.
9      And the first one seems relatively clear. As far as what
10 they say about their monitor, what their monitoring tool does
11 and does not do, I believe Mr. Neville's declaration also takes
12 issue with that, but I don't think that whether the particular
13 tool is actively sharing or not sharing is 100 percent of the
14 issue. It's that people are being directed to this swarm that
15 contains the file.
16     **THE COURT:** And that swarm is directed how? What's
17 the --
18     **MR. RANALLO:** Well, the way it works, basically, is a
19 swarm consists of all the people with bit torrent sharing the
20 file. So if I wanted to download it, there's no telling whose
21 machine I would ultimately get it from; but in order to find
22 it, I would go to a cite like the Pirate Bay, for example, and
23 I would click on the link and that link would direct me to all
24 of the people who are presently sharing it.
25     And, so, that link is what was uploaded by sharkmp4 on the

1  Pirate Bay saying, "If you want to find this work, here is
2  where it is."
3       **THE COURT:** All right.  Go ahead and respond,
4  Mr. Duffy.
5       **MR. DUFFY:**  Well, counsel presented this evidence from
6  Mr. Neville, who apparently is a graduate student somewhere,
7  and he's not been qualified as an expert and whose affidavit is
8  very shaky, frankly, in terms of whether he has the
9  qualifications to make the statements that he does.
10      I mean, he goes far afield -- he goes far beyond the
11 evidence he references when he makes the conclusion that
12 somebody actually engaged in downloading or initiated the
13 copyright infringement that we alleged -- that the plaintiff
14 alleged that the defendant engaged in.
15      I believe that there is -- the only time that Mr. Cooper
16 testified was in the Central District of California where,
17 again, there was not an opportunity to cross-examine him, and
18 he's not repudiating -- there's no evidence that he actually
19 did not learn about his signature until November of last year.
20      In fact, there's evidence.  I believe there's a case in
21 the District Court of Arizona where there's substantial
22 documentary evidence that Mr. Cooper was aware and acknowledged
23 that he'd signed that as early as 2011 and waited for a year
24 and a half until after he was being evicted by Mr. Steele from
25 his property that he was contacted by an attorney for the

1  EFF -- for the -- the EFF about being represented.
2       He was -- there was evidence -- when evidence has been
3  allowed to be presented, the evidence is that Mr. Cooper was
4  aware of it for a substantial amount of time and only raised
5  this issue when he was evicted from property owned by
6  Mr. Steele; and there were various other issues going on with
7  him personally in terms of substance abuse and so forth.
8       **THE COURT:** Yeah.  Before you go there, I didn't hear
9  your response, frankly, to what was explained about the Neville
10 declaration and the use of this mechanism to direct users to
11 the file in question.
12      **MR. DUFFY:** Plaintiffs specifically --
13      **THE COURT:** Are you denying -- are you saying -- are
14 you denying that and have you submitted -- I didn't see any
15 evidence in contravention to that.
16      **MR. DUFFY:** The plaintiffs have now retained an expert
17 to contravene that.  The plaintiff disputes that because the
18 software that he uses only allows him to observe what's
19 happening.  It does not allow him to upload or download.
20      It was not presented as expert testimony.  Mr. Neville has
21 not been qualified nor has there been any attempt to qualify
22 him as an expert.  I believe he's a graduate student somewhere.
23 There's been no attempt to qualify him as an expert, and his
24 opinions are directly contrary to what AF Holdings indicates
25 that its software allows it to do.

1   **THE COURT:** Well, before we even get there, has there
2   been any declaration filed denying the gist of Mr. Neville's
3   assertion?
4   **MR. DUFFY:** There has not been. Mr. Neville has not
5   been called as an expert under any, even remotely, under any of
6   the requirements of the Federal rules.
7   **THE COURT:** All right. So are you standing on your
8   objection to the expertise of Mr. Neville as opposed to asking
9   to file a substantive declaration denying under oath the
10  substance of what Mr. Neville is asserting?
11  **MR. DUFFY:** I would like the opportunity to submit a
12  substantive declaration under oath to deny the matters that
13  Mr. Neville is asserting, yes, I would like to.
14  **THE COURT:** All right. And the Neville declaration
15  was filed, I guess, as part of the reply; is that right?
16  **MR. RANALLO:** No. That's actually -- it was filed in
17  the original motion, and then there was a second one responding
18  to basically the points he's raised here about his
19  qualifications and about the sharing. That second declaration
20  was filed with the reply. So there are two of them.
21  **THE COURT:** The first declaration was filed when?
22  That was in conjunction with --
23  **MR. RANALLO:** At least with the original motion. Let
24  me see where it is raised.
25  **THE COURT:** June 25th? That's the date I have.

1       **MR. RANALLO:** It looks like June 3rd.

2       **THE COURT:** I have June 25th. That's when it shows
3  filed with this court.

4       **MR. RANALLO:** Oh, let's see... I mean, it's mentioned
5  in my original brief and was, it looks like, first filed in the
6  Florida case on June 3rd and then filed here.

7       Yeah, it was -- the declarations in support of it were
8  filed with the reply. His -- the substance of his actual
9  declaration was filed with the original motion.

10       **THE COURT:** All right. So your original papers say
11 that were filed with your brief, which was filed on June 4th,
12 on page 3 makes reference to the Neville declaration.

13       **MR. RANALLO:** Right, which is included as a separate
14 declaration.

15       **THE COURT:** As Exhibit D it says.

16       **MR. RANALLO:** Okay.

17       **THE COURT:** So that was then replicated, is that what
18 happened, in a further --

19       **MR. RANALLO:** Yeah, because I didn't include -- his
20 declaration included, I think, 30 some exhibits, and I included
21 basically just his declaration in the original one; and then
22 when I refiled it, I included all of the exhibits.

23       **THE COURT:** So the original declaration explaining
24 what you just assert about how the swarm was directed to this
25 file was already at issue in your opening brief?

1   **MR. RANALLO:** Absolutely, yes.
2   **THE COURT:** Well, then I don't see -- if it was just
3   in the reply brief, then I would say, yes; but if this was in
4   the opening brief and there was a chance to respond, I have
5   to -- there's no reason to reopen the record.
6   **MR. RANALLO:** And I would actually -- my brief says:
7   (reading)
8       "Mr. Neville states that one purpose of the
9       investigation was to 'pinpoint the likely origin of the
10      user 'sharkmp4' on the website known as the Pirate Bay
11      that originated torrents related to copyrights held by
12      companies 'AF Holdings' and 'Ingenuity 13.'"
13  **MR. DUFFY:** Counsel, this is the expert declaration
14  that's incomplete. Obviously 30 some exhibits is a substantial
15  amount of evidence from a person who's not been qualified to be
16  an expert in Federal Court is relying upon; and under the
17  rules, the plaintiff is entitled to obtain that information
18  before he is allowed -- the witness is allowed to offer an
19  opinion as an expert.
20  **THE COURT:** Well, I have your opposition brief, and
21  I'm looking for -- you take on his declaration. I mean,
22  substantively you argue about it. But I don't see -- and, so,
23  it seems to me you rise or fall on your arguments you
24  submitted. I don't see any counterdeclaration.
25      You say --

1   **MR. DUFFY:**  The exhibits here -- I'm sorry.

2   **THE COURT:**  You say that his opinions are worthless,
3   et cetera, et cetera, purely conjectural; his conclusions do
4   not make any logical, economic, or financial sense.
5       I don't see anything in here about any contest with
6   respect to any -- I don't see any proposal -- any factual
7   matter submitted.  This was on February -- this was on
8   June 18th so you had a full two weeks to respond.

9   **MR. DUFFY:**  Counsel admits that he didn't submit the
10  underlying factual evidence that the purported expert was
11  relying on until his reply brief, so we did not have the
12  opportunity to understand what he was relying on when he made
13  his purported expert opinion.

14  **THE COURT:**  Well, his declaration is pretty detailed.
15      And I thought what you just said, Mr. Ranallo, is the
16  declaration contained exhibits.  Is that what you said?

17  **MR. RANALLO:**  Yes.  Mr. Neville's declaration
18  originally contained exhibits and it was originally filed in a
19  case where Prenda Law is opposing counsel as well.  So they
20  can't even pretend that they had no access or never saw these
21  exhibits.

22  **THE COURT:**  And, to your knowledge, has Prenda Law
23  ever filed a response, substantive response, by declaration to
24  Mr. Neville?

25  **MR. RANALLO:**  Not to my knowledge.  I don't believe

1  they -- in this Florida case where he filed this originally, I
2  don't believe they ever did respond to it in any way.
3        **MR. DUFFY:**  Your Honor, if I may address that, that is
4  simply false.  Prenda Law is not representing AF Holdings in
5  the Florida case where that was submitted nor in the Georgia
6  case where it was submitted.  There's an individual sole
7  practitioner representing AF Holdings in those cases.  AF
8  Holdings and Prenda is not the plaintiff's counsel in either
9  case, so any assertion to the contrary is just simply false.
10        **THE COURT:**  Well, all right.  The bottom line is:  Did
11 AF Holdings have knowledge of this declaration even prior to
12 the filing in this case on June 4th?
13        **MR. DUFFY:**  No.
14        **THE COURT:**  No?
15        **MR. DUFFY:**  I didn't have -- I did not have -- as
16 attorney, substantive attorney, for AF Holdings, I did not have
17 knowledge about that.  I was told there was an affidavit by
18 this individual filed in another case in which I am not
19 involved, and I did not look at it and I saw no need to review
20 it.
21        **MR. RANALLO:**  If I could just --
22        **MR. DUFFY:**  I, frankly, do not monitor other cases
23 that I'm not working on on behalf of AF Holdings.
24        **MR. RANALLO:**  I think they're actually kind of
25 splitting hairs there, too, as far as their local counsel

1  situation. I think it's been found in a number of cases, and
2  even if it it hasn't, *First Time Videos versus Oppold*, the case
3  it was originally filed in, can be found or was able to be
4  found on Prenda Law's Web site as a representative case of
5  their work. And, so, to now say, "Oh, it was local counsel
6  doing it, they don't tell us anything, we don't know anything,"
7  is, I think, difficult to believe.
8      **MR. DUFFY:** I did not say -- I apologize.
9      **THE COURT:** Go ahead.
10     **MR. DUFFY:** I did not say local counsel is
11 representing anybody. I don't have local counsel anywhere.
12 There is a sole practitioner in Florida and Georgia who is
13 handling those cases; and any filings that may or may not
14 occur, I have no notice of nor do I have any obligation to
15 follow them nor do I receive them. It's not a local counsel
16 for anybody. It's just a specific counsel who is representing
17 the parties, and I do not follow nor do I obtain pleadings in
18 connection with those cases.
19     **MR. RANALLO:** You list them on your Web site, I
20 believe.
21     **MR. DUFFY:** We do not list the affidavit that's in
22 question on this Web site. Whatever happened before it was
23 disclosed in this case, I do not know; but there is nothing
24 relating to this affidavit suggesting that I had any notice of
25 it or the attachments before the defendant filed it in this

1  case.
2      **THE COURT:** Well, in any event, this affidavit was in
3  this file in this case in the record. It was quite detailed.
4  And you took it on in the briefing and did not seek to submit
5  any substantive declarations in opposition thereto, so I'm
6  going to take the record as it is. There's no reason to extend
7  the record at this point.
8      So I'm going to take the matter under submission and
9  review the record, and I'll issue a ruling. Thank you.
10     **MR. DUFFY:** Thank you, Judge, and thank you for your
11 indulgence about my scheduling issue. I appreciate it.
12     **THE COURT:** All right. Thank you.
13     **MR. RANALLO:** Thank you, Your Honor.
14          (Proceedings adjourned at 3:44 p.m.)
15                    ---oOo---

1
2
3                    **CERTIFICATE OF REPORTER**
4         I certify that the foregoing is a correct transcript
5    from the record of proceedings in the above-entitled matter.
6
7    DATE:   Wednesday, October 23, 2013
8
9
10
11   _____
12        Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
                       U.S. Court Reporter
13
14
15
16
17
18
19
20
21
22
23
24
25