Paul Hansmeier
Alpha Law Firm LLC
900 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 234-5744
prhansmeier@thefirm.mn

*Pro se*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AF HOLDINGS LLC, | CASE NO. 3:12-CV-2396 EMC |
| *Plaintiff,* | |
| v. | **RESPONSE OF PAUL HANSMEIER TO THE COURT'S OCTOBER 16, 2013, ORDER TO SHOW CAUSE** |
| JOE NAVASCA, | |
| *Defendant.* | Judge: Hon. Edward M. Chen |

1

**MEMORANDUM**

2       The Court should <u>not</u> amend the judgment against AF Holdings, LLC ("AF Holdings") to

3   add Paul Hansmeier ("Hansmeier") as a judgment debtor for at least three reasons: (1) Hansmeier is

4   not an alter ego of AF Holdings under the Nevis Limited Liability Company Ordinance; (2)

5   Hansmeier is not an alter ego of AF Holdings under California law; and (3) the issue is not properly

6   before the Court. Further, the Court should not sanction Hansmeier pursuant to its inherent powers

7   because: (1) the Court's order to show cause does not provide Hansmeier with particularized notice

8   of the conduct giving rise to the order to show cause; (2) the Court's inherent power does not reach

9   Hansmeier; and (3) there is no evidence in the record that Hansmeier has engaged in misconduct.

10  **I.      THE COURT LACKS PERSONAL JURISDICTION OVER HANSMEIER**

11      As a preliminary matter, the Court lacks personal jurisdiction because the Court's exercise of

12  personal jurisdiction over Hansmeier is incompatible with Due Process. Ordinarily, federal courts do

13  not have nationwide personal jurisdiction. With few exceptions, they have no broader power over

14  persons outside the state in which they sit than do the local state courts. *Omni Capital Int'l, Ltd. v.*

15  *Rudolph Wolff & Co., Ltd.*, 484 U.S. 97, 104-05 (1987). Here, the only alleged connection between

16  Hansmeier and this forum is that he appeared once as a 30(b)(6) witness and spoke with Brett Gibbs

17  on the telephone. Yet, these contacts are patently insufficient to subject Hansmeier to this Court's

18  personal jurisdiction. *See, e.g., Sybartic, Inc. v. Interport Int'l, Inc.*, 957 F.2d 522, 525 (8th Cir.

19  1992) (finding that due process prevented jurisdiction where the foreign actor's contract with the

20  foreign resident was "negotiated, drafted, presented and executed" out of the forum, even though the

21  foreign actor visited the forum resident once and communicated with the forum resident by

22  telephone and mail).

23  **II.     THE COURT SHOULD NOT AMEND THE JUDGMENT TO ADD HANSMEIER AS**

24          **A JUDGMENT DEBTOR**

25      The Court ordered Hansmeier to show cause why he should not be added as a judgment

26  debtor under California Code of Civil Procedure Section 187. (*See* ECF No. 120 at 15) (adopting

27  report and recommendations of ECF No. 116 at 18.) Under California Code of Civil Procedure

28

1  Section 187, a judgment creditor may move to amend a judgment to add a nonparty. *See, e.g., Jack*
2  *Farenbaugh & Son v. Belmont Const., Inc.*, 194 Cal. App. 3d 1023, 1027 (1987). To prevail on a
3  Section 187 motion, a judgment creditor must bring a motion, establish that the nonparty is an alter
4  ego of the judgment debtor and establish that the nonparty controlled the litigation. *See id.* None of
5  this happened here. Because the judgment creditor in this case—Navasca—has not: (1) presented
6  evidence sufficient to show that Hansmeier is an alter ego of AF Holdings under the Nevis Limited
7  Liability Company Ordinance (1995); or (2) presented evidence sufficient to show that Hansmeier is
8  an alter ego of AF Holdings under California law (or controlled the litigation, for that matter), the
9  Court should not amend the judgment to add Hansmeier as a judgment debtor. At a bare minimum,
10 the Court should await a motion from Defendant Navasca before deciding the hypothetical case and
11 controversy.

12 ### A.   CHOICE OF LAW

13     If a Section 187 motion were pending before the Court—and none is—the Court would first
14 be presented with a choice of law issue regarding alter ego liability. There are three possible sources
15 of law: (1) state statutes; (2) state common law; and (3) federal common law. The latter source does
16 not apply when the Court is acting pursuant to its pendant jurisdiction, as it is here with respect to a
17 Section 187 issue. *See, e.g., Baltimore Orioles v. Major League Baseball Players*, 805 F.2d 663, 682
18 (7th Cir. 1986) (holding that Illinois state law governed master-servant issues in a federal copyright
19 case). Further, Hansmeier is unaware of an instance where the test set forth in *United States v.*
20 *Kimbell Foods, Inc.*, 440 U.S. 715 (1979) has been satisfied in the context of a Section 187
21 proceeding.

22 ### 1.   Section 17450(a) of the California Corporations Code

23     When a state statute governs choice of law, a court need not apply a common law choice of
24 law analysis. *Barclays Discount Bank Ltd. v. Levy*, 743 F.2d 722, 725 (9th Cir. 1984). Section
25 17450(a) of the California Corporations Code provides: "the laws of the state or foreign country
26 under which a foreign limited liability company is organized shall govern its organization and
27 internal affairs and *the liability and authority of its managers and members.*" Cal. Corp. Code §

28

2

1   17450(a) (emphasis added). Section 17450(a) mirrors the relevant provision of the Restatement,
2   which provides: "The local law of the state of incorporation will be applied to determine the
3   existence and extent of a shareholder's liability to the corporation for assessments or contributions
4   and to its creditors for corporate debts." Restatement (Second) of Conflicts of Laws Section 307.
5   Both of these sources of authority make clear that the laws of the place of incorporation govern alter
6   ego issues.

7       Section 17450(a) reflects the majority rule. *See, e.g., Kalb, Voorhis & Co. v. American Fin.*
8   *Corp.,* 8 F.3d 130, 132 (2d Cir. 1993) (holding that "[b]ecause a corporation is a creature of state law
9   whose primary purpose is to insulate shareholders from legal liability, the state of incorporation has
10  the greater interest in determining when and if that insulation is to be stripped away[]") (citation
11  omitted); *U.S. S.E.C. v. Levine,* 671 F.Supp.2d 14, 33 (D.D.C. 2009) (noting that Nevada law
12  controlled the alter ego analysis, because the entity at issue was incorporated in Nevada); *In re Am.*
13  *Intern. Refinery,* 402 B.R. 728, 743 (W.D. La. Bkrtcy. Ct. 2008) (applying law of Nevada, where
14  debtor and subsidiary were incorporated); *Tomlinson v. Combined Underwriters Life Ins. Co.,* 684
15  F.Supp.2d 1296, 1298, 1300 (N.D. Okl. 2010) (holding that the law of the state of incorporation
16  applied to issues of piercing the corporate veil); *Rual Trade Ltd. v. Viva Trade LLC,* 549 F.Supp.2d
17  1067, 1077 (E.D. Wis. 2008) (the general rule was that a plaintiff's alter-ego theory was governed by
18  the law of the state in which the business at issue was organized).

19      The choice of law issue facing the Court was recently decided by now-Chief District Judge
20  Claudia A. Wilken in *Wehlage v. EmpRes Healthcare, Inc.,* 821 F. Supp. 2d 1122 (N.D. Cal. 2011).
21  In that case, the defendants invoked Section 17450(a) for the proposition that Washington's alter ego
22  laws applied to limited liability companies organized under that state's laws. In support of their
23  position, the defendants cited to *Rubbermaid, Inc. v. Robert Bosch Tool Gp.,* 2010 U.S. Dist. LEXIS
24  100650, *15 (C.D. Ill.), in which the court held that a similar law mandated that Delaware law
25  govern alter ego issues with respect to a company organized in Delaware. The defendants also cited
26  to *Kalb, Voorhis & Co.,* 8 F.3d at 132, which applied the alter ego law of the state of incorporation to

27

28

3

1    determine the liability of shareholders to a third party. The plaintiff, on the other hand, argued that
2    Section 17450(a) does not govern claims brought by third-parties.

3        The court ruled that the defendants' reasoning was more persuasive. In so holding, the court
4    focused on two key points. First, the court noted that, on its face, nothing in Section 17450 limited
5    the statute's application to disputes among members and managers of a limited liability company.
6    Second, the court reasoned that although alter ego liability involves law suits brought by third
7    parties, it determines, "based on the structure of the corporation, whether the shareholders are liable
8    in lieu of the LLC, which is an internal affair." In sum, the court held that the scope of Section 17450
9    is broader than the internal affairs doctrine, and that irrespective of that point, alter ego liability is an
10   internal affair. Accordingly, the court held that Washington law governed the alter ego question. This
11   Court, too, should apply the laws of Plaintiff's place of incorporation—Nevis—to the alter ego issue.

12        **2.    California's Governmental Interests Test**

13       If no California statue governed choice of law, the Court would apply California's
14   governmental interests test to determine what law governs the alter ego liability question. The result
15   under this test is ultimately the same as it is under Section 17450(a): Nevis law governs. California
16   applies a three-step "governmental interest" analysis to choice-of-law questions. *Abogados v. AT&T,*
17   *Inc.*, 223 F.3d 932, 934 (9th Cir. 2000). First, the court examines the substantive law of each
18   jurisdiction to determine whether the laws differ as to the relevant transaction. *Id.* Second, if the laws
19   do differ, the court must determine whether a "true conflict" exists in that each of the relevant
20   jurisdictions has a legitimate interest in having its law applied. *Id.* If more than one jurisdiction has a
21   legitimate interest, the court must move on to the third stage of the analysis, which focuses on the
22   comparative impairment of the interested jurisdictions. *Id.*

23       The alter ego liability laws of Nevis and California are different. In relevant part, the Nevis
24   Limited Liability Company Ordinance states:

25       Notwithstanding any other law, unless liability for limited liability company
         debts, obligations or liabilities has been assumed by the person against whom
26       liability is asserted pursuant to subsection (3) by such person, no manager, officer,
         member, employee or agent of a limited liability company, or other person, shall
27       be liable for (i) limited liability company debts, obligations or liabilities, whether
28

4
HANSMEIER RESPONSE TO ORDER TO SHOW CAUSE                     CASE NO. 3:12-CV-2396 EMC

arising in contact, tort or otherwise, solely by reason of being a manager, officer, member, employee or agent of the limited liability company or (ii) the acts or omissions of any other manager, officer, member, employee or agent of the limited liability company. The failure of a limited liability company to observe the usual company formalities or requirements relating to the exercise of its powers or management of its business is not a ground for imposing personal liability on the members or managers for liabilities of the company.

Nevis Limited Liability Company Ordinance § 19(2). Under Nevis law, accordingly, a person may become an alter ego of a limited liability company only with his or her express consent. In contrast, under California law a person may be deemed an alter ego if: (1) there is such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist; and (2) there must be an inequitable result if the acts in question are treated as those of the corporation alone. *See F. Hoffman-La Roche v. Superior Court*, 130 Cal. App. 4th 782, 796 (2005). Thus, the first prong of the governmental interest test is satisfied.

As for the second prong, there is no "true conflict" present here because Nevis has an interest in applying its alter ego law to businesses formed under its laws, whereas California has no recognized interest in controlling the corporate governance, organization and liability of foreign business entities. *Compare CTS Corp. v. Dynamics Corp. of Amer.*, 481 U.S. 69, 91 (1987) ("[A]n accepted part of the business landscape in this country [is] for States to create corporations, to prescribe their powers, and to define the rights that are acquired by purchasing their shares. A state has an interest in promoting stable relationships among parties involved in the corporation it charters ..."); *with Edgar v. Mite Corp.*, 457 U.S. 624 (1982) (holding states have "no interest in regulating the internal affairs of foreign corporations."). Thus, to the extent that California's interests are implicated by the alter ego question, it is not for the purpose of regulating the internal affairs of Nevis-formed entities.

The only other interest that has arisen in this litigation is California's interest in protecting its citizens against suits from foreign plaintiffs, which raise enforcement of judgment problems. Yet, this interest has been mitigated—and indeed eliminated—via the Defendant's motion for an undertaking pursuant to Cal. R. Civ. P. § 1030. (*See* ECF No. 20.) In his motion for an undertaking,

5

1  the Defendant justified his request, in part, by quoting from Judge Breyer's order granting a similar
2  undertaking request, "The Court is also mindful that it could be difficult for Defendant, should he
3  prevail in this case, to collect from Plaintiff, a foreign corporation (hence the policy behind section
4  1030)." (*Id.* at 22) (quoting *AF Holdings v. David Trinh*, 2012 U.S. Dist. LEXIS 161394 (N.D. Cal.
5  Nov. 9, 2012).

6        This Court, too, recognized the policy behind Section 1030. (*See* ECF No. 51 at 2:6-9) ("The
7  purpose of [§ 1030] is to … enable a California resident sued by an out-of-state resident to secure
8  costs in light of the difficulty of enforcing a judgment for costs against a person who is not within
9  the court's jurisdiction….) (quoting *Alshafie v. Lallande*, 171 Cal. App. 4th 421, 428 (9th Cir.
10  2009).) It would patently unjust for the Court to require AF Holdings to post a massive undertaking
11  "in light of the difficultly of enforcing a judgment for costs against a person who is not within the
12  court's jurisdiction," only to turn around and *sua sponte* allow the Defendant to add domestic
13  judgment debtors after AF Holdings declined to post the undertaking. Irrespective, California's
14  interests regarding foreign plaintiffs are fully addressed by Section 1030. For these reasons, under
15  the California governmental interests' test, Nevis law governs.[1]

16        **B.    HANSMEIER IS NOT AN ALTER EGO UNDER NEVIS LAW**

17        Hansmeier has not and does not consent to alter ego liability on behalf of AF Holdings, and
18  nothing in the record demonstrates otherwise. Under Nevis law—that is, the controlling law—the
19  Court cannot amend the judgment to add Hansmeier as a judgment debtor because he is not an alter
20  ego of AF Holdings.

21        **C.    HANSMEIER IS NOT AN ALTER EGO UNDER CALIFORNIA LAW AND DID NOT**
22              **CONTROL THIS LITIGATION**

23        If California law governed the alter ego prong of the Section 187 analysis, Hansmeier would
24  still not properly be considered AF Holdings' alter ego. Further, Hansmeier did not control this

25

26

27  [1] Even if the Court decided to reach the third prong of the governmental interests test, Nevis'
    interests in governing the internal affairs of entities organized under its laws would far outweigh any
28  interests of California.

                                                    6
    HANSMEIER RESPONSE TO ORDER TO SHOW CAUSE                    CASE NO. 3:12-CV-2396 EMC

1 litigation. Therefore, the judgment against AF Holdings cannot be amended to add Hansmeier as a
2 judgment debtor under Section 187.

3     At the outset, Hansmeier notes that the circumstances present in this case require a traditional
4 alter ego analysis. In a narrow subset of cases, courts have eschewed the alter ego analysis and
5 allowed *plaintiffs* to substitute the names of *defendants* when: (1) the plaintiff sued the right party
6 under the wrong name; (2) the defendant actively defended on the merits; and then (3) attempted to
7 bootstrap the ministerial error into a defense on the merits at 11th hour. *See, e.g., Carr v. Barnabey's*
8 *Hotel Corp.*, 23 Cal. App. 4th 14, 21 (1994) (allowing plaintiff to amend a judgment to add the
9 actual employer at the end of the case, notwithstanding that the traditional alter ego elements were
10 not met). None of these circumstances are present here.

11     **1.     Alter Ego Under California Law**

12     The two basic elements of an alter ego analysis under California law are: (1) a unity of
13 ownership; and (2) inequity arising from maintenance of the corporate shield. *Associated Vendors,*
14 *Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825, 837 (1962). In *Associated Vendors*, the court set
15 forth twenty non-dispositive factors that a court might consider in analyzing the "unity of
16 ownership." *Id.*

17     At the Fed. R. Civ. P. 30(b)(6) deposition, which consisted entirely of cross-examination,
18 Hansmeier testified that: (1) he held no position with AF Holdings; (2) that he was not a member of
19 AF Holdings; (3) that he had no ownership interest in the entity whatsoever; and (4) that AF
20 Holdings was owned by a trust and that he had no beneficial ownership in the trust. (*See* ECF No.
21 84-3 at 9:18-13:5.) He further testified that no money ever went directly from AF Holdings to him.
22 (*Id.*) The only other witness with knowledge about AF Holdings who has appeared in this case is
23 Brett Gibbs. Nothing in Mr. Gibbs' testimony or declarations could possibly be construed as
24 suggesting that Hansmeier has an ownership interest of any kind in AF Holdings or that Hansmeier
25 otherwise satisfies any of the *Associated Vendors* factors. Mark Lutz, the sole manger of AF
26 Holdings, supplied an affidavit that reinforced Mr. Hansmeier's testimony. (*See* ECF No. 106-1 at ¶¶
27 2-4, 18.) (stating, *inter alia*, that Hansmeier has no ownership interest in AF Holdings, that

28

7

1   Hansmeier has never held a position with AF Holdings and that the proceeds of settlements were
2   deposited in AF Holdings' trust accounts with AF Holdings' attorneys.) In a subsequent declaration,
3   Hansmeier confirmed his testimony and that of Mr. Lutz. (*See* ECF No. 106-5 ¶ 3) ("I have never
4   served as a director, officer, manager, or employee of AF Holdings or otherwise possessed
5   managerial authority over or an ownership interest in AF Holdings.")

6       For his part, Defendant has presented no evidence that contradicts any of these statements.
7   Indeed, in its order to show cause the Court acknowledged as much. (*See* ECF No. 120 at 11:16-18)
8   ("[D]eeming Mr. Steele and Mr. Hansmeier de facto owners or officers of AF seems fair given that
9   there was never any evidence as to how funds that Prenda Law obtained from settlement went to
10  AF....) While Hansmeier takes exception to the Court's sense of "fairness", and would note that
11  when money is deposited into a client's trust account it becomes the client's property (thus the entire
12  point of trust accounts), the burden of proof is not on Hansmeier to demonstrate the flow of funds
13  from a third-party law firm (which he does not own) to a third-party company (which he does not
14  own). There is simply no evidence on which to form a conclusion that there is a unity of interest
15  between Hansmeier and AF Holdings.

16      As for the inequity prong, case law suggests that "inequity" must be that of the "party against
17  whom the doctrine is invoked, and such party must have been an actor in the course of conduct
18  constituting the abuse of corporate privilege, or must be seeking some inequitable advantage based
19  upon the [corporate structure]." *United States Fire Ins. Co. v. National Union Fire Ins. Co.*, 107
20  Cal.App.3d 456, 472 (1980). Further, "inequity" has no relation to ability to collect—courts are not
21  to invoke their equitable powers for the sole purpose of helping someone collect.

22      Here, no showing of inequity can be made. The only action that AF Holdings has taken in
23  this case relative to its corporate privilege was the filing of its lawsuit. This case was not allowed to
24  proceed beyond the undertaking stage. Further, as set forth below, Hansmeier was not even
25  referenced with particularity (or otherwise culpable) with respect to Defendant's spurious allegations
26  of fraud. Thus, even if Defendant could satisfy the unity of interest prong—and he cannot—he
27
28

8

1 cannot plausibly satisfy the inequity prong. For these reasons, Hansmeier is not an alter ego of AF
2 Holdings under California law.

### 2. Controlling The Litigation

4    Even if Hansmeier was an alter ego of AF Holdings under California law, there is no basis to
5 conclude that he controlled Plaintiff's litigation—namely, because there was no litigation to control.
6 In *NEC Electronics v. Hurt*, 208 Cal. App. 3d. 772 (1989), the plaintiff filed a Section 187 motion to
7 add third-party Porter Hurt as a judgment debtor. After concluding that Hurt was an alter ego, the
8 court determined that amendment was improper on the grounds that Hurt did not control or have an
9 opportunity to present a defense in the underlying litigation. *Id*. at 778. In forming this conclusion,
10 the Court noted that, "[T]here was not defense for Hurt to control." *Id*. at 781. The Court stated,
11 "clearly, some defense of the underlying claim is contemplated." *Id*.; *see also Minton v. Cavaney*, 56
12 Cal.2d 576, 581 (1961).

13    Just as in *NEC Electronics*, there was no litigation to control in this matter. Due to the
14 Defendant's successful undertaking motion, Plaintiff's efforts to prosecute its infringement claim did
15 not advance beyond the filing of its complaint. Notwithstanding Defendant's counsel's prodigious
16 efforts in racking up over $20,000 in legal fees for filing a perfunctory answer and a cookie-cutter
17 motion for an undertaking, there was no litigation for Hansmeier to control.

### D. THE SECTION 187 ISSUE IS NOT PROPERLY BEFORE THE COURT

19    No motion to amend the judgment against Hansmeier is currently pending before the Court.
20 Instead, the issue was raised by the Court *sua sponte* via an order to show cause. This procedure
21 constitutes an abuse of discretion for several reasons.

22    *First*, the Court lacks the power to *sua sponte* order Hansmeier to defend a Section 187 issue.
23 "Courts do not, or should not, sally forth each day looking for wrongs to right. We wait for cases to
24 come to us, and when they do we normally decide only questions presented by the parties." *United*
25 *States v. Samuels*, 808 F.2d 1298, 1301 (8th Cir. 1987) (R. Arnold, J., concurring in denial of reh'g
26 en banc). As it relates to judgments in the appellate context, "it is inveterate and certain" that "an
27 appellate court may not alter a judgment to benefit a nonappealing party." *Greenlaw v. U.S.*, 128 S.

28

9

1 | Ct. 2259, 2564 (2008). Although district courts have the authority to depart from traditional
2 | adversarial principles to, for example, recharacterize as justice requires motions brought by *pro se*
3 | litigants, *Castro v. United* States, 540 U.S. 375, 381 (2003), Hansmeier is unable to identify any
4 | basis in caselaw for the Court's departure here; nor, after diligent research, is he able to find another
5 | example of a district court raising a Section 187 issue *sua sponte*.

6 |     *Second*, even if the Court possessed the power to *sua sponte* order Hansmeier to defend a
7 | Section 187 issue, prudential concerns would weigh against doing so; by raising the issue itself, the
8 | Court creates an appearance of partiality. 28 U.S.C. § 455(a). First, the Court's procedure creates the
9 | appearance that Hansmeier is litigating against the Court, instead of the Defendant. Second, the
10 | Court's procedure creates the appearance that the Court is assisting the Defendant with his litigation
11 | strategy, without good reason.

12 |     *Third*, raising the Section 187 issue *sua sponte* improperly shifts the burden of proof to
13 | Hansmeier, and denies Hansmieier basic due process rights. As the should-be proponent of the
14 | Section 187 issue, the Defendant should be required to "go first" and put on his case for why he
15 | should prevail. Yet, the Court's procedure has Hansmeier "going first," thus forcing Hansmeier to
16 | anticipatorily rebut the arguments that the Defendant might make. It is impossible, though, for
17 | Hansmeier to divine what arguments or "evidence" the Defendant will assert.

18 | **III. THE COURT SHOULD NOT IMPOSE SANCTIONS UNDER ITS INHERENT**
19 |      **AUTHORITY**

20 |     The Court should not impose sanctions on Hansmeier under its inherent authority for at least
21 | three reasons: (1) the Court's order to show cause fails to apprise Hansmeier of the particular
22 | conduct for which the Court is considering sanctions; (2) the Court's inherent power does not reach
23 | Hansmeier; and (3) the Defendant has not established by clear and convincing evidence that
24 | Hansmeier was culpable in any misconduct.

25 | ///
26 | ///
27 | ///
28 |

10

HANSMEIER RESPONSE TO ORDER TO SHOW CAUSE       CASE NO. 3:12-CV-2396 EMC

## A.    THE COURT'S ORDER TO SHOW CAUSE DOES NOT IDENTIFY POSSIBLE GROUNDS FOR SANCTIONS

The Court ordered Hansmeier, "to show cause as to why sanctions against [him] should not be issued pursuant to the Court's inherent authority." (ECF No. 120 at 15:22-24.) While the order to show cause notifies Hansmeier of the legal basis on which it is considering imposing sanctions, it does not identify the conduct the Court is concerned about. (*See generally id.*) The Ninth Circuit has instructed district courts that "a notice regarding sanctions must specify the authority for the sanction, as well as the sanctionable conduct." *In re Deville*, 280 B.R. 483, 496 (9th Cir. B.A.P. 2002). "The purpose of the particularized notice is to put counsel on notice as to the particular factors that he must address if he is to avoid sanctions." *Nuwersa v. Merrill Lynch, Fenner & Smith, Inc.*, 174 F.3d 87 (2nd Cir. 1999).

In *Nuwersa*, the district court's written order to show cause stated, "[t]he court will be awarding attorney's fees based on one or more of the following provisions: 42 U.S.C. § 12205; 28 U.S.C. § 1927; Rule 11(c)(1)(B) F.R.C.P.; and the inherent power of the district court to award attorney's fees." *Id.* at 92. In reversing the district court's imposition of sanctions, the Second Circuit criticized the district court's order to show cause on the grounds that "it failed to apprise [the respondent] of the particular conduct for which the court was considering imposing sanctions." *Id.*

As in *Nuwersa*, the Court's order to show cause does not put Hansmeier on notice of what conduct he must address if he is to avoid sanctions. (*See* ECF No. 120.) The resulting due process concerns are particularly acute here, given that Navasca has leveled dozens of accusations of misconduct from the time of his very first filing in this case. At a minimum, Hansmeier is entitled to notice of which of these of accusations ultimately resonated with the Court, as to Hansmeier.

## B.    THE COURT'S INHERENT AUTHORITY DOES NOT REACH HANSMEIER

Under persuasive case law, this Court's inherent sanctioning authority does not extend to Hansmeier. A district court's sanctioning authority is limited to three classes of persons or entities: parties and their counsel, persons who violate an existing court order and real parties in interest.

HANSMEIER RESPONSE TO ORDER TO SHOW CAUSE                CASE NO. 3:12-CV-2396 EMC

1  *Helmac Products Corp. v. Roth Plastics Corp.*, 150 F.R.D. 563, 565-66 (E.D. Mich. 1993).

2  Hansmeier does not fall within any of these categories.

3  A District Court's inherent authority to impose sanctions is plainly not unlimited. *Am. Civil*

4  *Liberties Union v. Holder*, 673 F.3d 245, 256 (4th Cir. 2011); *Natural Gas Pipeline Co. of Am. v.*

5  *Energy Gathering, Inc.*, 2 F.3d 1397, 1406-07 (5th Cir. 1993). In the seminal case of *Helmac*

6  *Products Corp. v. Roth Plastics, Corp.*, *supra*, the court pioneered a two-part test to gauge whether a

7  district court's inherent sanctioning authority extends to an individual who is neither a litigant nor an

8  attorney who has appeared in the case. In that case, the owner of the defendant corporation had

9  ordered the destruction of relevant documents, thereby rendering it impossible to conduct a trial on

10 his corporation's liability. However, the owner was not a party to the case and was not subject to any

11 court order at the time that he directed the document destruction.

12 In finding that the court's inherent sanctioning authority extended to the owner of the

13 defendant corporation, the court held that its "inherent power to sanction [is limited] to those

14 individuals [who] were either (1) parties, (2) subject to a court order, or (3) real parties in interest."

15 150 F.R.D. at 568. Finding that the owner of the defendant corporation was, for all practical

16 purposes, the real party in interest, the court imposed sanctions.

17 Since its development, the *Helmac* standard has been widely applied by federal courts in

18 determining whether, and to what extent, a District Court's inherent sanctioning authority extends to

19 a non-party and non-attorney (*i.e.*, an individual who has neither filed an appearance nor otherwise

20 appeared before the court in the case as counsel).

21 Within the past two months, the test and principles underlying *Helmac* were echoed in

22 *United States v. Henry*, 2013 U.S. Dist. LEXIS 133148 (E.D. Va.) at *108-09, in which, partially

23 quoting *Helmac*, the court stated:

24     Although the federal courts may certainly sanction disruptive or disobedient bad faith
       conduct, "the Court's power to sanction cannot possibly extend to everyone who
25     interferes with litigation before the court. Otherwise the power to sanction would be
       so wide that it would be unenforceable."
26

27

28

12

HANSMEIER RESPONSE TO ORDER TO SHOW CAUSE            CASE NO. 3:12-CV-2396 EMC

1  *See also Anz Advanced Techs., LLC v. Bush Hog*, LLC, 2012 U.S. Dist. LEXIS 29534 (S.D. Ala.) at

2  \*34; *Barton v. Pennsylvania*, 2010 U.S. Dist. LEXIS 43937 (M.D. Pa.) at \*18; *Advance Books Are*

3  *Fun, Ltd. v. Rosenbrough*, 239 F.R.D. 532, 555 (S.D. Iowa 2007).

4      The prior decisions of Ninth Circuit are in accord with the *Helmac* standard. In *Caldwell v.*

5  *United Capital Corporation*, 77 F.3d 278 (9th Cir. 1996), the court held that a district court's

6  inherent sanctioning authority extended to a person who had a controlling interest in the debtor and

7  who, through the debtor, had implemented a fraud on the district court. Such a result is consistent

8  with *Helmac*'s extension of the district court's inherent power to real parties in interest. However,

9  diligent research has not shown a single case in which the district court's inherent authority to

10  sanction has been extended to persons who are neither parties, attorneys of record, persons subject to

11  an existing court order or real parties in interest.

12      Hansmeier did not appear as a party or counsel in this case. Further, Hansmeier was not

13  subject to any order of the Court in this case. Under the *Helmac* standard, the Court's inherent

14  sanctioning authority can extend to Hansmeier if and only if he was a real party in interest in this

15  case. Under the case law cited above, to be a real party in interest, Hansmeier must have a

16  controlling ownership interest in AF Holdings.

17      There was no evidence from which the Court could reasonably infer that Hansmeier has an

18  ownership interest in AF Holdings, much less a controlling interest. At the Fed. R. Civ. P. 30(b)(6)

19  deposition, which consisted entirely of cross-examination, Hansmeier testified that: (1) he held no

20  position with AF Holdings; (2) that he was not a member of AF Holdings; (3) that he had no

21  ownership interest in the entity whatsoever; and (4) that AF Holdings was owned by a trust and that

22  he had no beneficial ownership in the trust. (*See* ECF No. 84-3 at 9:18-13:5.) The only other witness

23  with knowledge about AF Holdings who has appeared in this case is Brett Gibbs. Nothing in Mr.

24  Gibbs' testimony or declarations could possibly be construed as suggesting that Hansmeier had an

25  ownership interest of any kind in AF Holdings. Mark Lutz, the manger of AF Holdings, supplied an

26  affidavit that reinforced Mr. Hansmeier's testimony. (*See* ECF No. 106-1 at ¶¶ 2-4, 18.) (stating,

27  *inter alia*, that Hansmeier has no ownership interest in AF Holdings, that Hansmeier has never held a

28

1 position with AF Holdings and that the proceeds of settlements were deposited in AF Holdings'
2 accounts with AF Holdings' attorneys.) There is no evidence in the record that contradicts any of
3 these statements.

4          **C.**     **THE DEFENDANT HAS NOT MET HIS BURDEN OF ESTABLISHING MISCONDUCT ON**
5                **HANSMEIER'S PART**

6       Hansmeier is not on notice of the conduct giving rise to the Court's order to show cause
7 regarding sanctions, but he is generally aware of the Defendant's motion for sanctions. (ECF No.
8 93.) In it, the Defendant asserts three theories of fraud: (1) the "Alan Cooper" issue; (2) the "Salt
9 Marsh" issue; and (3) the "sharkmp4" issue. Defendant's motion for sanctions does not make any
10 particularized allegations as to Hansmeier in relation to any of these theories; indeed, each of these
11 theories is entirely vacant as to Hansmeier. Hansmeier addresses each of the theories briefly here,
12 but reserves his right to respond more fully to an order to show cause that complies with this
13 Circuit's mandates.

14       As a preliminary matter, Hansmeier would urge the Court to reject the Defendant's lazy tactic
15 of lumping everyone together without making particularized showings as to a specific individual.
16 The Court cannot, without abusing its discretion, ignore the Defendant's inability to make
17 particularized showings with respect to Hansmeier.

18          **1.**     **The "Alan Cooper" Issue**

19       The record in this case is unrebutted with respect to Hansmeier's involvement in securing
20 Alan Cooper's authorization: he had no involvement. For example, in the 30(b)(6) deposition, which
21 consisted entirely of cross-examination, Hansmeier testified that the first time that he became aware
22 of the Alan Cooper issue was November 2012 (well after this case was filed); that he had no personal
23 knowledge as to AF Holdings' authorization to use Mr. Cooper's name; that Mr. Steele affirmed AF
24 Holdings' authorization to use Alan Cooper's name; and that the Alan Cooper authorization was the
25 product of collaboration between Messrs. Lutz and Steele. (*See* ECF No. 84-3 at 122-129.) At the
26 March 11, 2013, hearing before Judge Wright, the entire body of Alan Cooper's testimony regarding
27 Hansmeier was as follows:

28

14

1    The Court:      What about Paul Hansmeier, any connection with him?

2    Cooper:         No.

3    (Tr. 21:16-17.) Indeed, Defendant's motion for sanctions alleges that "Mr. Steele was … wholly

4    responsible for the Alan Cooper forgery in this instant suit…." (*See* ECF No. 93 at 24.) While

5    Hansmeier does not believe that Cooper has any credibility whatsoever, and does not believe that the

6    "Alan Cooper" issue has any relevance to this case, nevertheless there is no basis for the Court to

7    impose any sanctions against Hansmeier in relation to the "Alan Cooper" hoax.

8            **2.      The "Salt Marsh" Issue**

9            The "Salt Marsh" accusation is that AF Holdings "repeatedly and intentionally represented to

10   this court … that "Salt Marsh" was a natural person and the owner of AF Holdings LLC." (*Id*. at 16-

11   29.) However, at the 30(b)(6) deposition, which consisted entirely of cross-examination, Hansmeier

12   testified as follows:

13           Ranallo:        At any time was AF Holdings owned by a human being named Salt Marsh?

14           Hansmeier:      No.

15   (ECF No. 84-3 at 51:9-12.) What others may or may not have represented to the Court is not what

16   Hansmeier did. Ranallo's (and Gibbs', for that matter) professed ignorance of this testimony is

17   particularly disingenuous in light of the fact that they both attended the deposition.

18           Further, even if Defendant's "Salt Marsh" allegations were actually based in fact—and they

19   are not—the issue does not even approach the level of fraud on the court. The Ninth Circuit has

20   instructed, "[s]imply put, not all fraud is fraud on the court." *In re Levander*, 180 F.3d 1114, 1119

21   (9th Cir. 1999).

22           "Fraud upon the court" should, we believe, embrace only that species of fraud
             which does or attempts to, defile the court itself, or is a fraud perpetrated by officers
23           of the court so that the judicial machinery can not perform in the usual manner its
             impartial task of adjudging cases that are presented for adjudication.
24

25   *Gumport v. China International Trust and Inv. Corp*., 926 F.2d 912, 916 (9th Cir. 1991) (quoting 7

26   James Wm. Moore et al., Moore's Federal Practice ¶ 60.33, at 515 (2d ed. 1978)). Examples of

27

28
                                                    15

1  misconduct that does not constitute "fraud on the court" includes a failure to produce evidence and
2  perjury. *In re Levander*, 180 F.3d at 1119-20.

3        Here, as Hansmeier understands it, Defendant is complaining that Mr. Gibbs identified "Salt
4  Marsh"—the name of the trust that owns AF Holdings—in a single filing, namely the Alternative
5  Dispute Resolution form submitted to the Court instead of Mr. Lutz's name. If perjury does not rise
6  to the level "fraud on the court", then a misidentification of the person that reviewed this Court's
7  ADR handbook cannot possibly either. For the record, Hansmeier denies ever instructing Mr. Gibbs
8  on how to fill out the ADR form. (*See* ECF No. 4 ¶ 4.) Indeed, at the 30(b)(6) deposition, which
9  consisted entirely of cross-examination, Hansmeier denied ever speaking to anyone regarding this
10  filing. (*See* ECF No. 84-3 at 80:11-12.) For his part, Gibbs (who was sitting right next to Hansmeier)
11  did not contradict this point at the deposition.

12        **3.    The "sharkmp4" Issue**

13        The Neville declaration concludes that "John Steele or his agents" are associated with Pirate
14  Bay user "sharkmp4" and have acted through that user to induce third-party infringement. There are
15  three glaring flaws with Neville's conclusion:

16        *First*, every Pirate Bay user is associated with a list of files that are identified by unique hash
17  values. The hash value identified in the complaint in this case is not associated with sharkmp4's file
18  list. (*See* ECF No. 106-5 ¶ 7-8.) Instead, it is identified with Pirate Bay user FluxXxu's file list. (*Id.*)
19  Accordingly, the sharkmp4 issue is entirely irrelevant to this case.

20        *Second*, Neville's declaration links certain IP addresses to Mr. Steele via GoDaddy records.
21  However, Neville's declaration is conspicuously silent on what IP addresses are associated with
22  Pirate Bay user sharkmp4. Absent a credible showing of what IP addresses are associated with
23  sharkmp4, Mr. Neville has no basis for forming any conclusions about who is associated with that
24  user.

25        *Third*, it is clear that Mr. Neville lacks basic knowledge of the Copyright Act, which
26  embraces strict liability. *See* 17 U.S.C. §§ 101, 106, 501(a). *See also BMG Music v. Gonzalez*, 430
27  F.3d 888, 891-92 (7th Cir. 2005) (imposing strict liability in downloading context). In light of the

28

Copyright Act's imposition of strict liability, it is clear that the subject of a sting operation would not have a defense on the merits in a sharkmp4-esqe scenario. Extralegal concerns of fairness are equally unavailing, given that sharkmp4 is, after all, an account associated with the world's most notorious copyright infringement website—The Pirate Bay.

### 4.      The findings in *Ingenuity13 LLC*

Hansmeier has attached the opening brief filed on his behalf before the Ninth Circuit to provide the Court with a counterweight to Judge Wright's *Ingenuity13* order.

### CONCLUSION

The Court should not add Hansmeier to the judgment against AF Holdings or sanction Hansmeier under its inherent powers. To do so would amount to an abuse of discretion.

Respectfully Submitted,

Dated, November 5, 2013.

s/ Paul Hansmeier
Paul Hansmeier
Alpha Law Firm LLC
80 S. 8th St. Ste 900
Minneapolis, MN 55402
Telephone: (612) 234-5744
prhansmeier@thefirm.mn
*Pro se*

17

1

## **CERTIFICATE OF SERVICE**

2
3
4

The undersigned hereby certifies that on November 21, 2013, all individuals of record who are deemed to have consented to electronic service are being served the foregoing document, and its attachement, using the Court's ECF system, in compliance with Local Rule 5-6 and General Order 45.

5

6

s/ Paul Hansmeier

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

18

**Nos. 13-55859, 13-55871, 13-55880, 13-55881, 13-55882, 13-55883, 13-55884 & 13-56028**

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

INGENUITY 13, LLC,

Plaintiff-Appellant,

v.

John Doe,

Defendant-Appellee,

v.

AF HOLDINGS, LLC; PRENDA LAW, INC.; PAUL DUFFY, ESQ.; PAUL HANSMEIER, ESQ.; JOHN STEELE, ESQ.; and BRETT GIBBS, ESQ.,

Additional Appellants.

**OPENING BRIEF FOR APPELLANTS
INGENUITY 13, LLC; AF HOLDINGS, LLC; PRENDA LAW, INC.;
PAUL DUFFY, ESQ.; PAUL HANSMEIER, ESQ.; and JOHN STEELE, ESQ.**

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
U.S.D.C. No. 2:12-cv-08333-ODW-JC
THE HONORABLE OTIS D. WRIGHT II

DANIEL J. VOELKER, ESQ.
Voelker Litigation Group
311 West Superior Street
Suite 500
Chicago, Illinois 60654
312-870-5430
*Attorney for Plaintiff-Appellant and
Certain Additional Appellants.*

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Appellant, Ingenuity 13, LLC, is a limited liability company organized and existing under the laws of the Federation of St. Kitts and Nevis, and is owned by the I13 Trust. No publicly held corporation owns 10% or more of its stock.

Appellant, AF Holdings, LLC, is a limited liability company organized and existing under the laws of the Federation of St. Kitts and Nevis, and is owned by the Salt March Trust. No publicly held corporation owns 10% or more of its stock.

Appellant, Prenda Law, Inc., was an Illinois corporation, which was dissolved on July 26, 2013. Prenda Law had no parent corporation; and, no publicly held corporation owned, or owns, 10% or more of its stock.

Dated: November 18, 2013     Respectfully submitted,

VOELKER LITIGATION GROUP
Daniel J. Voelker, Esq.

By: /s/Daniel J. Voelker_____
Daniel J. Voelker
Attorney for Appellants: Ingenuity 13,
LLC; AF Holdings, LLC; Prenda Law, Inc.;
Paul Duffy, Esq.; Paul Hansmeier, Esq.; and
John Steele, Esq.

i

# TABLE OF CONTENTS

**SECTION**        **PAGE NO.**

RULE 26.1 CORPORATE DISCLOSURE STATEMENT ...................................... i

TABLE OF CONTENTS ....................................................................... ii

TABLE OF CASES AND AUTHORITIES ............................................... v

STATEMENT OF JURISDICTION ......................................................... 1

ISSUES PRESENTED AND STANDARD OF REVIEW ....................................... 2

PERTINENT STATUTORY PROVISIONS ............................................... 5

STATEMENT OF CASE ....................................................................... 6

STATEMENT OF FACTS ..................................................................... 10

   The Underlying Litigation ................................................................. 10

   The Order to Show Cause Proceeding Against Brett Gibbs ............................. 13

   The March 11 Show-Cause Hearing .................................................. 16

   The Amended Show-Cause Order ...................................................... 19

   The April 2 Show-Cause Hearing ..................................................... 20

   The May 6 Sanctions Order ............................................................ 22

   The Court's Requirement of a Second Supersedeas Bond ................................. 23

SUMMARY OF ARGUMENT ................................................................ 25

ARGUMENT ................................................................................ 29

   I.    The District Court's Inherent Sanctioning Authority Did Not Extend to
        the Individual Appellants .................................................................. 29

II.   Under this Court's Prior Precedent, a District Court's Inherent
      Sanctioning Authority Does Not Permit the Imposition of Punitive
      Sanctions ............................................................................................. 35

III.  The Procedure Used by the District Court to Impose Sanctions
      Violated Procedural Due Process Requirements.................................. 37

      A.   The Sanctions Imposed by the District Court Required a
           Proceeding for Indirect, Criminal Contempt.............................. 38

           1.   The sanctions imposed by the District Court
                required criminal contempt proceedings........................... 39

           2.   The type of criminal contempt proceedings required
                in this case was a proceeding for an indirect criminal
                contempt........................................................................... 42

      B.   The Procedures Implemented by the District Court
           Violated Procedural Due Process Requirements....................... 42

           1.   The District Court's procedures violated procedural
                due process by drawing adverse inferences from the
                invocation of Fifth Amendment rights by the
                individual Appellants........................................................ 44

           2.   The District Court's procedures violated procedural
                due process requirements by appointing a prosecutor
                who was not impartial....................................................... 46

           3.   The District Court's procedures violated procedural
                due process requirements by denying Appellants the
                ability to cross-examine witnesses.................................... 49

           4.   The District Court's procedures violated procedural
                due process requirements by denying Appellants the
                ability to present a defense and call witnesses................. 52

iii

IV.   The District Court Committed Clear Error in Allowing Defendant to
      Recover Attorneys' Fees Incurred in Pursuing Post-Dismissal
      Sanctions and in Requiring Appellants to Post Supersedeas Bonds
      that, among other Things, Insured Defendant's Ability to Recover
      Attorneys' Fees Incurred in Defending these Sanctions on Appeal.. 53

V.    If this Court Decides that It Is Appropriate to Remand  this Case for
      further Proceedings, Appellants Respectfully Ask that the Case Be
      Transferred to a Different District Court Judge ................................... 58

CONCLUSIONS ................................................................................................... 62

STATEMENT OF RELATED CASES..................................................................... 64

CERTIFICATE OF COMPLIANCE........................................................................ 65

## TABLE OF AUTHORITIES

**Federal Cases** Page No.

*AF Holdings, LLC v. Doe,*
No. 2:12-cv-6636-DW(JCx) (C.D. Cal. filed Aug. 1, 2012) .................... 13 & 14

*AF Holdings, LLC v. Doe,*
No. 2:12-cv-6669-DW(JCx) (C.D. Cal. filed Aug. 2, 2012) .............................. 13

*Am. Civil Liberties Union v. Holder,* 673 F.3d 245 (4th Cir. 2011) ........................ 30

*Anz Advanced Techs., LLC v. Bush Hog*, LLC,
2012 U.S. Dist. LEXIS 29534 (S.D. Ala.) .......................................................... 31

*Azizian v. Federated Dep't Stores, Inc.*, 499 F.3d 950 (9th Cir. 2007).......... 56 & 57

*Bartos v. Pennsylvania*, 2010 U.S. Dist. LEXIS 43937 (M.D. Pa.) ........................ 31

*Baxter v. Palmigiano*, 425 U.S. 308 (1976) ............................................................. 45

*Books Are Fun, Ltd. v. Rosenbrough,*
239 F.R.D. 532 (S.D. Iowa 2007)....................................................................... 31

*Caldwell v. United Capital Corporation, 77 F.3d 278 (9th Cir. 1996)*................. 32

*Cetacean Research v. Sea Shepherd Conservation Soc'y,*
725 F.3d 940 (9th Cir. 2013) .............................................................................. 59

*Chambers v. Nasco, Inc.*, 501 U.S. 32 (1991) .......................................29-30 & 35-36

*Cooke v. United States*, 267 U.S. 517 (1925) .................................................. 43 & 53

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990)......................................... 57

*Davis v. Alaska*, 415 U.S. 308 (1974)............................................................. 43 & 49

*Douglas v. Alabama*, 380 U.S. 415 (1985)..................................................... 49 & 51

*F.J. Hanshaw Enters. v. Emerald River Dev., Inc.*,
    244 F.3d 1128 (9th Cir. 2001) ..................................... 38, 40-41, 43, 49, 51 & 53

*Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418 (1911) ................................... 43

*Griffin v. California*, 380 U.S. 609 (1965) ................................................................. 45

*Helmac Products Corp. v. Roth Plastics, Corp.*,
    150 F.R.D. 563 (E.D. Mich. 1993) ................................................................. 29-32

*Hicks v. Feiock*, 485 U.S. 624 (1988)............................................................. 40 & 42

*In re: DeVille*, 280 B.R. 483 (9th Cir. B.A.P. 2002) ................................ 35-37 & 41

*In re Dyer*, 322 F.3d 1178 (9th Cir. 2003)............................................36-37 & 39-40

*In re Rumaker*, 646 F.2d 870 (5th Cir. 1980) ........................................................... 39

*Ingenuity 13, LLC v. Doe*,
    No. 2:12-cv-6668-ODW(JCx) (C.D. Cal. filed Aug. 2, 2012) ................. 13 & 14

*Ingenuity 13, LLC v. Doe*,
    Dkt. No. 2:12-cv-8333-ODW(JC) (C.D. Calif. filed Sept. 27, 2012) ........ *passim*

*Ingenuity 13 LLC v. Doe*,
    Dkt. No. 2:12-cv-6662-ODW(JCx) (C.D. Cal. filed Aug. 2, 2012) ......... 13 & 14

*Int'l Union, United Mine Workers of America v. Bagwell*,
    512 U.S. 821 (1994).......................................................................... 38, 40 & 42

*Koninklijke Philips Elecs., N.V. v. KXD Tech., Inc.*,
    539 F.3d 1039 (9th Cir. 2008) ............................................................................ 39

*Lockary v. Kayfetz*, 974 F.2d 1166 (9th Cir. 1992) ................................... 54-55 & 57

*Mathews v. Chevron Corp.*, 362 F.3d 1172 (9th Cir. 2004) ....................................... 3

*Margolis v. Ryan*, 140 F.3d 850 (9th Cir. 1998)....................................................... 54

*Morales-Garcia v. Holder*, 567 F.3d 1058 (9th Cir. 2009) .................................. 3–5

*Natural Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*,
2 F.3d 1397 (5th Cir. 1993) ................................................................ 30

*Orange Blossom Limited Partnership v. Southern California Sunbelt Developers,
Inc.*, 608 F.3d 456 (9th Cir. 2010) ........................................................ 53-58

*Pointer v. Texas*, 380 U.S. 400 (1965) ..................................................... 51

*Roadway Express, Inc. v. Piper,* 447 U.S. 752 (1980) ............................................. 30

*Slochower v. Board of Higher Education*, 350 U.S. 551 (1956) ............................ 45

*Ullmann v. United States*, 350 U.S. 422 (1956) ...................................................... 45

*Union Tool Co. v. Wilson*, 259 U.S. 107 (1922)....................................................... 39

*United States v. Armstrong*, 781 F.2d 700 (9th Cir. 1986)...................................... 39

*United States v. Henry*, 2013 U.S. Dist. LEXIS 133148 (E.D. Va.) ...................... 31

*United States v. Wolf Child*, 699 F.3d 1082 (9th Cir. 2012).................................... 58

*Young v. United States ex rel. Vuitton Et Fils S.A.*,
481 U.S. 787 (1987)............................................................................43 & 46-48

## Statutes

28 U.S.C. § 1291....................................................................................................... 2

28 U.S.C. § 1331........................................................................................................ 1

28 U.S.C. § 1338(a) ................................................................................................... 1

28 U.S.C. § 1367(a) ................................................................................................... 1

Bankruptcy Act, 11 U.S.C. § 303(i) .................................................................. 5 & 55

Copyright Act, 17 U.S.C. § 505........................................................4-5, 25 & 56-57

Fed. Rule Civ. Proc.  11 ............................................................................. 13, 54 & 58

Fed. R. Civ. Proc.  41(a)(1) ...................................................................................... 13

## STATEMENT OF JURISDICTION

Ingenuity 13[1] commenced this action on September 27, 2012, alleging that Defendant had downloaded an adult film in which Ingenuity 13 had a copyright. The Complaint alleged copyright infringement, contributory infringement and negligence. The District Court had jurisdiction over the copyright infringement claim pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a). The District Court had supplemental jurisdiction over Plaintiff's contributory infringement and negligence claims pursuant to 28 U.S.C. § 1367(a).

On May 6, 2013, the District Court entered an Order imposing monetary and other sanctions against, among others: AF Holdings, Ingenuity 13, Prenda Law, and the three individual Appellants (the "Sanctions Order", ER19-ER29). Hansmeier filed a timely Notice of Appeal from the Sanctions Order on May 15, 2013. (ER377-ER404.) Ingenuity 13, AF Holding, Prenda Law, Steele and Duffy, each filed a timely Notice of Appeal from the Sanctions Order on May 17, 2013.

_____

[1] For brevity, Plaintiff, Ingenuity 13, LLC will be referred to as "Ingenuity 13". AF Holdings, LLC, will be referred to as "AF Holdings". Prenda Law, Inc. will be referred to as "Prenda Law". The three individual Appellants submitting this brief (John Steele, Paul Hansmeier and Paul Duffy), will be referred to individually by last name only and collectively as the "individual Appellants". Ingenuity 13, AF Holdings, Prenda Law and the individual Appellants will sometimes be referred to as "Appellants".

[2] Appellants' citation to pages in the Excerpts of the Record will be in the

1

(ER467-ER496; ER405-ER435; ER506-ER536; ER537-ER566 & ER436-ER466.)

On June 11, 2013, the District Court entered an Order requiring the sanctioned parties to post supersedeas bonds totaling $237,583.66, to cover the monetary sanctions plus Defendant's estimated costs and attorneys' fees for this Appeal (the "Bond Order"). (ER32-ER34.) The District Court also imposed additional requirements with respect to the bond. (*Id.*) Prenda Law filed a timely Notice of Appeal from the Bond Order on June 12, 2013. (ER601-ER603.)

Both the Sanctions and Bond Orders are final Orders. This Court has jurisdiction to hear the appeals from the Sanctions and Bond Orders pursuant to 28 U.S.C. § 1291.

## ISSUES PRESENTED AND STANDARD OF REVIEW

1. Whether the District Court exceeded its inherent sanctioning authority by imposing sanctions on individuals who had not appeared as parties or counsel in the consolidated cases, were not subject to any existing order of the District Court and were not real parties in interest.

Appellants objected to the District Court's purported exercise of its inherent authority over the individual Appellants in Hansmeier's Response to

2

Show Cause Order, (ER349²). This issue involves a mixed question of law and fact. Mixed questions of law and fact are reviewed *de novo*; however, the underlying factual findings are reviewed for clear error. *Mathews v. Chevron Corp.*, 362 F.3d 1172, 1180 (9th Cir. 2004).

2. Whether the District Court committed error by imposing criminal sanctions solely on the basis of its inherent authority to sanction improper conduct.

Appellants objected to the District Court's imposition of criminal sanctions pursuant to its inherent sanctioning authority in Steele's Response to Show Cause Order (ER368 & ER369). This issue involves a question of law, which is reviewed *de novo*. *Morales-Garcia v. Holder*, 567 F.3d 1058, 1061 (9th Cir. 2009).

3. Whether the District Court committed error by imposing criminal sanctions in a proceeding in which the Court: (a) drew negative inferences from the individual Appellants' invocation of their Fifth Amendment rights; (b) appointed Defendant's counsel as the *de facto* prosecutor; (c) denied Appellants the right to cross-examine witnesses; and, (d) denied Appellants the right to call witnesses and put on a defense.

---

² Appellants' citation to pages in the Excerpts of the Record will be in the format "ER__".

Appellants objected to the District Court's denial of their criminal procedural rights in Steele's Response to Show Cause Order (ER368-ER370). This issue involves a question of law, which is reviewed *de novo*. *Morales-Garcia v. Holder*, 567 F.3d 1058, 1061 (9th Cir. 2009).

4.    Whether the District Court committed error by including in its sanctions the amount of attorneys' fees incurred by Defendant in pursuing sanctions imposed under the District Court's inherent sanctioning authority.

Appellants had no reasonable opportunity to object to the District Court's award of attorneys' fees incurred by Defendant in pursuing sanctions because the District Court awarded such attorneys' fees in its Sanctions Order without any prior indication that it would allow such fees to be included in its award and was based upon a declaration of Defendant's counsel as to the costs and fees expended on the instant litigation, rather than on a formal petition for an award of fees. The issue of whether sanctions awarded under a District Court's inherent sanctioning authority may include attorneys' fees incurred in pursuing sanctions involves a question of law, which is reviewed *de novo*. *Morales-Garcia v. Holder*, 567 F.3d 1058, 1061 (9th Cir. 2009).

5.    Whether the District Court committed error by finding that, under the fee-shifting provision of the Copyright Act, 17 U.S.C. § 505,

4

Appellants were liable for attorneys' fees incurred by Defendant in defending the sanctions award on appeal.

Appellants objected to the District Court's inclusion of attorneys' fees incurred in defending these sanctions on appeal in Hansmeier's Emergency Motion to Reconsider (ER593 & ER594). This issue involves a question of law, which is reviewed *de novo*. *Morales-Garcia v. Holder*, 567 F.3d 1058, 1061 (9th Cir. 2009).

## PERTINENT STATUTORY PROVISIONS

### 17 U.S.C. § 505: Remedies for Infringement: Costs & Attorney's Fees

In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award reasonable attorney's fees to the prevailing party as part of the costs.

### Bankruptcy Act, 11 U.S.C. § 303(i)

**(i)** If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—

    **(1)** against the petitioners and in favor of the debtor for—

        **(A)** costs; or

**(B)** a reasonable attorney's fee; or

**(2)**     against any petitioner that filed the petition in bad faith, for—

**(A)** any damages proximately caused by such filing; or

**(B)** punitive damages.

## STATEMENT OF THE CASE

In this Appeal, Appellants ask this Court to vacate Orders entered by the District Court on May 6, 2013, and on June 11, 2013, that: impose punitive monetary and non-monetary sanctions on Appellants (ER19-ER29) and allow Defendant to recover attorneys' fees incurred in defending the sanctions award on appeal (ER32-ER34).

Both Orders arose in the context of a lawsuit filed on September 27, 2012 (Dkt. No. 12-08333 (C.D. Cal.)) (ER113), in which Ingenuity 13 claimed that an unknown Defendant had used the internet to download an adult film in which Ingenuity 13 owned a copyright. (ER113-ER129.) In its three-count Complaint, Ingenuity 13 alleged copyright infringement, contributory infringement and negligence by Defendant in allowing an IP address to be used in a manner that infringed Plaintiff's copyright. (*Id.*)

Following a discovery order that rendered it impossible for Ingenuity 13 to discover the true identity of the copyright infringer and, therefore, to

proceed with this litigation (ER146-ER148), Plaintiff voluntarily dismissed the case on January 28, 2013. (ER158-ER160.)

On February 7, 2013, the District Court, acting *sua sponte*, issued an Order directed at Ingenuity 13's counsel of record, Brett Gibbs ("Gibbs"), requiring him to show cause why he should not be sanctioned for allegedly: violating the District Court's discovery orders, failing to perform an adequate investigation as to the identify of two copyright infringers and presenting to the Court a copyright assignment that had allegedly been forged (ER1-ER11). In the sanctions proceedings, the District Court consolidated Case No. 8333 with four other copyright infringement cases in which Gibbs had represented Ingenuity 13 or AF Holdings (another holder of copyrights in adult videos). (ER12.)

After reviewing an affidavit and testimony by Gibbs stating that his actions were directed by others, the District Court expanded the target of its Show-Cause Order to include Ingenuity 13, AF Holdings, Prenda Law and the three individual Appellants, who had never appeared as counsel or parties in any of the consolidated cases. (ER16-ER18.)

On May 6, 2013, the District Court issued an Order that jointly and severally imposed what the Order characterized as "punitive" monetary sanctions on Gibbs and Appellants. (ER28.) In addition, the Sanctions

7

Order imposed a series of non-monetary sanctions imposed on Gibbs and the individual Appellants. (ER28 & ER29.)

Hansmeier filed a timely Notice of Appeal on May 15, 2013. (ER377-ER404.) The remaining Appellants (who are filing this brief) each filed a timely notice of appeal on May 17, 2013. (ER467-ER496; ER405-ER435; ER506-ER536; ER537-ER566 & ER436-ER466.)

On May 23, 2013, Duffy filed an undertaking for a supersedeas bond equal to 125% of the value of the monetary sanctions (ER583-ER586) and an application with the District Court requesting, among other things, approval of the bond (ER574-ER582).

On June 6, 2013, the District Court entered an Order (ER587-ER595) that conditionally approved the initial supersedeas bond, but required, among other things, Appellants to post a second supersedeas bond of \$135,333.66 (equal to Defendant's projected costs and attorneys' fees incurred in pursuing these sanctions on appeal). (ER589.)

In addition, the June 6 Order required Appellants to, among other things: permit Defendant's counsel to execute on the bond if any one of the parties sanctioned failed to successfully appeal the District Court's Sanctions Order; agree that the bond not be subject to a Bankruptcy Court's jurisdiction; and agree to the District Court's conditions. (ER588 & ER589.)

8

On June 11, 2013, the District Court issue a slightly amended version of the June 6 Order (the "Bond Order"). (ER32-ER34.)

On June 12, 2013, Prenda Law filed a timely Notice of Appeal from the Bond Order. (ER601-ER603.) Appellants posted the second supersedeas bond on July 23, 2013. (ER604-ER607.)

On October 17, 2013, Gibbs filed a motion with the District Court for an indicative ruling asking that the Sanctions Motion be vacated with respect to Gibbs. (E613.) On October 30, 2013, the District Court granted Gibbs' motion. (*Id.*) On November 13, 2013, this Court issued a limited remand of the case to the District Court in Appeal No. 13-55871 to allow the District Court to to consider Gibbs' motion to vacate the Sanctions Order.

On November 14, 2013, the District Court vacated the portion of the Sanctions Order imposing monetary sanctions on Gibbs, based on Gibbs' alleged disassociation from Prenda Law. However, the Order, by its terms, did not vacate the non-monetary sanctions imposed by the District Court on Gibbs or the sanctions imposed on the other Appellants. Gibbs has now asked this Court to dismiss Appeal No. 13-55871. As of the time that Appellants filed the instant brief, Gibbs' motion is pending.

## STATEMENT OF FACTS

### The Underlying Litigation

This is an Appeal from the Sanctions Order entered by the District Court after the voluntary dismissal of the underlying litigation, which imposed both monetary and non-monetary sanctions against Appellants (E19-E29), and, the subsequent Bond Order, which required Appellants to post a supersedeas bond sufficient to cover Defendant's estimated costs and attorneys' fees incurred through this Appeal (in addition to a supersedeas bond valued at 125% of the value of the monetary sanctions imposed) (E32-E34.).

Both Orders arose in the context of a lawsuit brought by Plaintiff, Ingenuity 13, alleging, among other things, that an unknown internet user ("John Doe") had infringed Ingenuity 13's rights in an adult film by improperly downloading the film. (ER113-ER129.)

Ingenuity 13 holds rights to a number of copyrighted works, including an adult video entitled "A Peek Behind the Scenes at a Show" (the "Film"). (ER114 & ER126.) In the course of monitoring internet-based infringement of its copyrighted content (*i.e.*, unauthorized downloading of copyrighted works), Plaintiff's agents observed that the Film had been unlawfully

10

downloaded by an unknown internet user who was accessing the internet through Internet Protocol ("IP") address 108.13.119.253. (ER114.)

On September 27, 2012, Ingenuity 13 filed a lawsuit in the District Court against the John Doe user of this IP address, alleging copyright infringement, contributory infringement and negligence. (ER113-ER129.) Ingenuity 13 was represented solely by Gibbs. (ER113.) Gibbs had listed himself as Of Counsel to Prenda Law (ER113 & ER167); and, in affidavits and argument before the District Court, Gibbs was characterized as an independent contractor to Prenda Law. (ER169 & ER204).

On October 8, 2012, Ingenuity 13 sought leave to conduct early discovery by issuing a subpoena to John Doe's Internet Service Provider in order to discover John Doe's identity. (ER130-ER142.) Leave was granted the following day (the "Early Discovery Order"). (ER143 & ER 144.)

However, on December 19, 2012, the instant case was reassigned to Judge Wright (ER145), who wasted no time in rescinding the Early Discovery Order. The day after the reassignment, Judge Wright vacated the Early Discovery Order and ordered Ingenuity 13 to show cause why it should be allowed to proceed in discovering John Doe's identity. (ER146-ER148.) In his December 20 Order, Judge Wright required that Ingenuity

11

13 "cease its discovery efforts relating to or based on information obtained through any abovementioned Rule 45 subpoenas". (ER146.)

In issuing this Order, the District Court stated that, while a subpoena issued to the Internet Provider for IP Address 108.13.119.253 may yield the identity of the subscriber for that IP Address, the Court required further proof that it was the subscriber who had performed the illegal download, rather than another individual who may have been using the subscriber's IP address. (ER147.)

As a result of Judge Wright's Order, Ingenuity 13 had no way of identifying the unknown infringer and, therefore, no way of proceeding with the litigation. Apparently aware that this Order placed Ingenuity 13 in an impossible position in the litigation, Judge Wright proclaimed that it was his "duty to protect the innocent citizens of this district from this sort of legal shakedown, even though a copyright holder's rights may be infringed by a few deviants." (ER147.)

Two days later, Ingenuity 13 filed a motion to disqualify Judge Wright, arguing that his actions and comments called into question the District Court's ability to act impartially. This motion was denied. (ER149-ER152.) Having no way to proceed without knowing the identity of the copyright infringer, on January 28, 2013, Ingenuity 13 voluntarily dismissed

the action in its entirety without prejudice pursuant to Fed. R. Civ. Proc. 41(a)(1). (ER158-ER160.)

## The Order to Show Cause Proceeding against Brett Gibbs

Ten days after the case was dismissed, on February 7, 2013, Judge Wright issued an Order to Show Cause, requiring Gibbs to appear before the District Court on March 11, 2013, to "justify his violations of Federal Rule of Civil Procedure 11 and Local Rule 83-3 . . ." (ER1-ER11.) Although nominally issued in Case No. 8333, the body of the Order described conduct by Gibbs in the instant case and in four other copyright-infringement cases that had been consolidated for purposes of Judge Wright's Show-Cause Order (the "consolidated cases"[3]), in which Gibbs had represented Ingenuity 13 or AF Holdings, a company that also held rights in various adult videos. (ER12.)

Specifically, Judge Wright identified three categories of conduct that he considered sanctionable:

---

[3] The four cases that were consolidated with the instant case for purpose of the Show-Cause Order were: *AF Holdings, LLC v. Doe*, No. 2:12-cv-6636-DW(JCx) (C.D. Cal. filed Aug. 1, 2012); *AF Holdings, LLC v. Doe*, No. 2:12-cv-6669-DW(JCx) (C.D. Cal. filed Aug. 2, 2012); *Ingenuity 13, LLC v. Doe*, No. 2:12-cv-6662-ODW(JCx) (C.D. Cal. filed Aug. 2, 2012); and *Ingenuity 13, LLC v. Doe*, No. 2:12-cv-6668-ODW(JCx) (C.D. Cal. filed Aug. 2, 2012). (ER12.) Where it is necessary to refer to individual cases, the cases will be referred to by the last four digits of the case number; *e.g.*, Case No. 2:12-cv-6636-DW(JCx) will be cited as Case No. 6636.

13

1. In Case Nos. 6636 and 6639, violating Judge Wright's Orders
   terminating early discovery by continuing to conduct discovery
   based upon subpoenas that had been issued prior to the
   termination;

2. In Case Nos. 6662 and 6668, identifying infringers of copyrighted
   adult videos "based on a snapshot of Internet activity, without
   conducting a reasonable inquiry"; and

3. In Case No. 8333, perpetrating a fraud on the District Court by
   filing a forged acceptance of a copyright assignment.

(ER9 & ER10.)

Morgan Pietz, attorney for the Defendant in the Case No. 8333, was

appointed by Judge Wright to present evidence concerning Gibbs' alleged

misconduct. (ER10.)

The Show-Cause Order concluded by listing the potential sanctions

that the District Court might impose, including: "a monetary fine,

incarceration, or other sanctions sufficient to deter future misconduct."

(ER10 & ER11.)

In the weeks that ensued, Gibbs filed a brief and a supporting

declaration (ER167–ER180) in response to the Show-Cause Order in which

he defended his conduct by claiming, among other things, that he had

received guidance and direction from "senior members" of the law firms that

had employed him as Of Counsel. (ER168–ER171.)

Subsequently, the District Court ordered Gibbs to identify the "senior

members" referenced in his brief and declaration. (ER12 & ER13.) Gibbs

14

responded by filing a second declaration in which he identified Appellants Steele and Hansmeier as the "senior members", while simultaneously admitting that neither had an ownership interest in the law firm in which Gibbs was then Of Counsel. (ER181–ER185.)

In response to Gibbs' filings, on March 5, 2013, the District Court ordered, among others, Minnesota citizen and resident, Hansmeier, Florida citizen and resident, Steele, and Illinois citizen and resident, Duffy, "to appear on March 11, 2013, at 1:30 p.m.". (ER14 & ER15.) None of the individual Appellants had been a party, filed an appearance as counsel nor had otherwise appeared before the District Court in any of the consolidated cases. (*See* ER35-ER129.)

The District Court required Gibbs to serve the March 5 Order on the individual Appellants by March 7, 2013, the Thursday before the Monday March 11 Hearing. (ER15.) However, the March 5 Order failed to specify the purpose for which these three individuals were ordered to appear. (ER14 & ER15.) Indeed, at the time that the District Court initially ordered the three individual Appellants to appear, the existing Show-Cause Order had not accused them of any sanctionable conduct. (ER1–ER11.)

After being made aware of the March 5 Order on March 7, 2013, the individual Appellants managed to retain counsel and, within 24 hours, filed

15

an *ex parte* motion asking the District Court to withdraw its March 5 Order requiring their appearance. (ER186 & ER187.) Specifically, the three objected, among other things, to the District Court's assertion of nationwide personal jurisdiction and to the lack of sufficient notice of the hearing. (*See id.*) The District Court did not rule on this motion prior to the March 11 Hearing.

## The March 11 Show Cause Hearing

With only four calendar days (and only one business day's) notice of the hearing, and no notice of the charges that they faced, Steele, Hansmeier and Duffy, nonetheless, appeared through counsel at the March 11 Hearing and made themselves available by telephone. (ER189 & ER192–ER194.)

Pietz, acting in the role of *de facto* prosecutor appointed by the District Court, and Gibbs' counsel, presented testimony and/or documents regarding a broad range of topics, some of which addressed the three categories of sanctionable conduct identified in the Show-Cause Order. (ER213–ER258 & ER292–ER301.)

However, the District Court rebuffed the attempt by counsel for the individual Appellants to participate in the hearings. (ER192–ER194.) Upon learning that the individual Appellants were not physically present in the

16

courtroom, the District Court instructed individual Appellants' counsel to "have a seat" and would not permit counsel to complete her argument. (*Id.*)

Regarding two of the three categories of sanctionable conduct described in the Show-Cause Order, Pietz and/or Gibbs' counsel presented testimony or documents relating to: discovery conducted on behalf of AF Holdings after the District Court had terminated early discovery in two of the consolidated cases filed by Gibbs and deficiencies in the investigation performed by Gibbs before identifying the alleged copyright infringer in two of the consolidated cases that Gibbs had filed on behalf of Ingenuity 13. (*See* ER213–ER258 & ER292–ER301.)

However, there was a disconnect between the District Court's forgery allegations in the Show-Cause Order and the testimony presented at the March 11 Hearing. The Show-Cause Order contended that Gibbs and Appellants had fraudulently presented to the District Court a forged copyright acceptance in Case No. 8333. (ER10.) The allegation could not possibly have been accurate because Ingenuity 13 was the original holder of the copyright, and, consequently, had not acquired it through assignment. (ER126.) In fact, the person whose signature had allegedly been forged testified as to whether his signature had been forged with respect to other

17

copyright assignments in other cases, but was never asked about any alleged forgery in Case No. 8333. (ER208–ER221.)[4]

In addition to the conduct that the Show-Cause Order had actually alleged to be sanctionable, testimony and/or documents were presented regarding: Gibbs' failure to inform the District Court of related cases that he had filed (ER267–ER271); and his failure to inform the District Court of Prenda Law's alleged financial interest in either Ingenuity13 or AF Holdings (ER262 & ER264–ER267).

During his testimony, Gibbs attempted to deflect primary blame to Steele and Hansmeier. Despite the fact that he had testified through affidavit that he was an independent contractor (ER169) and the fact that he alone had filed the five consolidated cases (ER35, ER56, ER74, ER92 & ER113), Gibbs testified that his conduct was directed by Steele and Hansmeier. (ER261 – ER267.)

Later in the hearing, upon questioning by the District Court, counsel informed Judge Wright that, while Steele, Hansmeier and Duffy were not physically present in the courtroom, they were available by telephone to

---

[4] In addition, the District Court did not indicate what possible motive Appellants would have to intentionally present a forged copyright assignment to the Court. As the District Court itself stated in its Sanctions Order, "a recipient of a copyright assignment need not sign the document . . ." (ER26.) Thus, Appellants had absolutely nothing to gain by intentionally presenting a forged copyright assignment.

18

participate. (ER207 & ER208.) While Judge Wright stated that he might take them up on their offer to participate by telephone (ER208), he did not include them in the hearing.

## The Amended Show-Cause Order

On March 14, 2013, three days after the Show-Cause Hearing, Judge Wright issued an Order, amending the original Show-Cause Order (the "Amendment"). (ER16–ER18.) In the Amendment, Judge Wright belatedly denied the individual Appellants' prior motion to withdraw the District Court's earlier March 5 Order requiring their appearance at the March 11th Hearing. (ER16.) In doing to, Judge Wright held that he had specific jurisdiction over these persons because of their alleged pecuniary interest and supposedly "clandestine" participation in the five consolidated cases. (*Id.*) In addition, despite the fact that the individual Appellants had filed their Motion within 24 hours after first receiving notice of the March 5 Order to appear at the March 11 Hearing, Judge Wright made a point of observing that movants' "eleventh-hour filing exemplifi[ed] gamesmanship . . ." (*id.*)

Judge Wright's also amended the original Show-Cause Order to include possible sanctions against Steele, Hansmeier and Duffy, and ten

other persons or entities, ordering each to appear at a Show-Cause Hearing

on March 29, 2013, to explain why they should not be sanctioned for:

1. Their alleged participation, direction, and execution of the acts described in the Court's February 7, 2013 Order to Show Cause;

2. Failing to notify the Court of all parties that have a financial interest in the outcome of the litigation;

3. Defrauding the Court by misrepresenting the nature and relationship of the individuals and entities involved in the five cases consolidated for purposes of the Show-Cause Order;

4. Steele's and Hansmeier's failure to file a *pro hac vice* appearance before the Court, given their alleged involvement as "senior attorneys" in the cases; and

5. Not appearing at the March 11 Show Cause Hearing.

(ER17 & ER18.) Judge Wright again invited John Doe's attorney, Morgan

Pietz, and his co-counsel, Nicholas Ranallo, to appear at the hearing.

(ER18.)

## The April 2, 2013 Show-Cause Hearing

Each of the individual Appellants appeared before the District Court

at the Show-Cause Hearing, rescheduled to April 2, 2013. (ER307 &

ER308.) However, because the Show-Cause Order, as amended, provided

for criminal sanctions, including incarceration (ER10 & ER11), and because

the District Court had indicated an intent to require testimony that might

invade the attorney-client privilege, all three invoked their Fifth Amendment

privilege against compelled testimony. (ER312–ER314.)

20

In response to their decision to exercise their Fifth Amendment privilege, Judge Wright denied counsel for the individual Appellants leave to present argument or otherwise to participate, and abruptly terminated the hearing. (ER313-ER318.) No testimony, evidence, or argument was allowed or presented at the hearing, which lasted approximately 12 minutes. (ER317–ER318.)

Gibbs had previously identified Mark Lutz ("Lutz") as the chief executive officer of both AF Holdings and Ingenuity 13. (ER184 & ER265.) Lutz was present in the courtroom, had specifically been identified to the District Court as "present", (ER310) and was in a position to testify as to the persons or entities that owned AF Holdings and Ingenuity 13. However, due to Judge Wright's abrupt termination of the hearing, counsel for the individual Appellants had no opportunity to examine Lutz.

Following the hearing, the three individual Appellants, and the other targets of the Amended Show-Cause Order, submitted substantial briefing, objecting to the procedures imposed by the District Court and the evidence presented by Pietz. (*See* ER628-ER630.)

21

## The May 6, 2013 Sanctions Order

On May 6, 2013, Judge Wright issued an Order sanctioning Gibbs, AF Holdings, Ingenuity 13, Prenda Law and the three individual Appellants. (ER19–ER29.) Despite threatening incarceration in the Show-Cause Order (ER10 & ER11) and imposing punitive monetary sanctions (ER28), the District Court stated that the proceedings and sanctions were civil in nature, thereby allowing the Court to draw negative inferences against those who invoked their Fifth Amendment rights. (ER21.) In addition, the Sanctions Order ignored all of the evidentiary objections to the testimony and documents introduced at the March 11 Hearing and afterward.

As monetary sanctions, the District Court held the three entities and four individuals jointly and severally liable for: (1) an award of attorneys' fees and costs totaling $40,659.86; and (2) "[a]s a punitive measure, the Court double[ed] this award, yielding $81,319.72." (ER28.)

The District Court left no doubt that it had set monetary damages to discourage any appeal from the Order. In explaining why he had calculated the punitive award in this manner, Judge Wright asserted that the monetary sanctions were "calculated to be just below the cost of an effective appeal." (*Id.*)

In addition, with respect to the three individuals, the District Court imposed further sanctions, including: referrals to state and federal bar organizations and disciplinary committees; referral to the United States Attorney for the Central District of California; referral to the Criminal Investigative Division of the Internal Revenue Service; and notification of "all judges before whom these attorneys have pending cases." (ER28 & ER29.)

In the Sanctions Order, the District Court noted its disappointment in its inability to identify justification for imposing further sanctions, stating: "Unfortunately, other than these specific instances of fraud, the Court cannot make more detailed findings of fraud." (ER26.)

Appellants Gibbs, Ingenuity 13, AF Holdings, Prenda Law, Steele, Hansmeier and Duffy filed timely Notices of Appeal during the period May 15, 2013, through May 18, 2013. (ER567-ER573, ER467-ER496, ER405-ER435, ER506-ER536, ER537-ER566, ER377-ER404 & ER436-ER466.)

**The Court's Requirement of a Second Supersedeas Bond**

On May 20, 2013, Prenda Law filed an application with the District Court requesting that the Sanctions Order be stayed pending resolution of the appeal (ER497-ER505). The District Court denied the application on May 21, 2013, and, thereafter, imposed a $1,000 per day, per respondent,

23

penalty for each day after May 20, 2013, that the respondents failed either to pay the sanction award or submit for approval a supersedeas bond in the amount of the court-ordered sanctions. (ER30 & ER31.)

On May 23, 2013, Duffy filed an undertaking for a supersedeas bond in the amount of $101,650, equal to 125% of the value of the monetary sanctions. (ER583-ER586.) In addition, Duffy filed an application with the District Court requesting approval of the bond and further requesting that the Sanctions Order be stayed pending resolution of the appeal. (ER574-ER582.)

Pietz opposed Duffy's motion (ER623), arguing that, under Fed. Rule App. Proc. 7, he was entitled to a bond that covered not only $5,000 in prospective appellate costs, but also $135,993.66 in prospective attorneys' fees for the appeal. Pietz also asked that several other conditions be imposed prior to approval of the original bond, including: permitting him to execute on the bond if any one respondent failed to successfully appeal the District Court's Sanctions Order; specifying that the bond not be subject to a Bankruptcy Court's jurisdiction; and requiring each Appellant to sign off on the bond and the extra conditions imposed by the District Court. (*Id.*)

The District Court signed Pietz's proposed order without permitting Duffy or Prenda Law an opportunity to respond to Pietz's legal arguments either by way of reply brief or oral argument. (ER32-ER34.) Further, the District Court ordered Prenda Law and the other bonded respondents to file acknowledgements of the validity of the conditions imposed by the court on each bond and to post a second bond in the amount of \$135,993.66, finding that, under the fee-shifting provision of the Copyright Act, 17 U.S.C. § 505, the prevailing party in the copyright action is also entitled to receive attorneys' fees incurred in pursuing sanctions and defending those sanctions on appeal . (ER33.) The District Court also promised to impose further sanctions if the parties did not comply with the Order. (*Id.*) The undertaking for the second supersedeas bond in the amount of \$135,933.66 was filed with the District Court on July 23, 2013. (ER604-ER607.)

Prenda Law filed a timely Notice of Appeal from the Bond Order on June 12, 2013. (ER601-ER603.)

## SUMMARY OF ARGUMENT

The District Court's sanctions were supposedly issued pursuant to the District Court's inherent sanctioning authority. However, under prevailing case law, the sanctions chosen by the District Court were improper for at least three reasons:

25

1. The District Court's inherent sanctioning authority did not extend to persons, such as the individual Appellants, who had not appeared as parties or counsel in the consolidated cases, who were not (at the time of the Show-Cause Order) subject to any order by the District Court and who were not real parties in interest;

2. The sanctions chosen by the District Court were criminal in nature and were imposed without the procedural safeguards required by federal law; and,

3. The District Court, in its sanction award, improperly included punitive sanctions and attorneys' fees incurred by Defendant in pursuing the sanctions and defending the sanctions on appeal.

The District Court's inherent sanctioning authority does not extend to the three individual Appellants. Under prevailing case law, the District Court's inherent sanctioning authority is limited to: parties and their counsel, persons and entities that are subject to an existing court order and real parties in interest. The individual Appellants did not fall into any of these categories. None of the three appeared as parties or counsel in any of the five consolidated cases. Further, the record on appeal is devoid of any information from which the District Court could reasonably infer that the individual Appellants were real parties in interest. None of the three held an ownership interest in either of the two Plaintiffs in the five consolidated cases (*i.e.*, Ingenuity 13 or AF Holdings).

In addition, the District Court erred in its conclusion that its sanctions were civil in nature. Under the case law of the Supreme Court and of this

Court, civil sanctions must be either compensatory or intended to coerce compliance with a court's directive. Sanctions that are intended to punish are considered criminal sanctions.

There is no possibility that the sanctions entered by the District Court were intended to coerce compliance with a court directive. The District Court's sanctions were issued after each of the five consolidated cases had been voluntarily dismissed. Moreover, by setting the sanctions at 200% of Defendant's stated costs and attorneys' fees, the sanctions were not merely compensatory. Indeed, the District Court itself characterized the sanctions as "punitive".

This Court has previously held that monetary sanctions set at 200% of a party's costs and attorneys' fees are criminal in nature, and can only be imposed through criminal contempt proceedings, which require the full panoply of procedural due process rights required in criminal cases, including: a prohibition against drawing negative inferences from the exercise of Fifth Amendment Rights; the right to an unbiased, disinterested prosecutor; the right of cross-examination; and, the right to call witnesses.

The procedures used by the District Court did not comply with these Constitutional requirements. The District Court's factual findings were based, in large part, or in whole, on the individual Appellants' invocation of

their Fifth Amendment privileges. The District Court appointed Defendant's counsel as the *de facto* prosecutor, who could not qualify as a disinterested prosecutor under federal case law. Appellants were denied any right to cross-examine witnesses; and, Appellants were denied the right to call witnesses and put on a defense. In short, while the District Court's punitive sanctions could only be imposed through criminal contempt proceedings, the procedures employed by the Court violated procedural due process requirements in criminal contempt proceedings.

Moreover, under its inherent sanctioning authority, the District Court lacked the authority to impose either punitive sanctions or sanctions that included Defendant's costs and attorneys' fees incurred in pursuing those sanctions or defending such sanctions on appeal. The case law is crystal clear that a District Court, acting under its inherent sanctioning authority, cannot impose punitive monetary sanctions. Moreover, the case law is equally clear that sanctions imposed under a District Court's inherent sanctioning authority cannot include the attorneys' fees incurred by the party in seeking sanctions, either at the District Court level or on appeal. Thus, by requiring Appellants to post supersedeas bonds that guarantee Defendant's ability to recover attorneys' fees incurred in this appeal, the District Court's Bond Order constitutes error.

## ARGUMENT

**I. THE DISTRICT COURT'S INHERENT SANCTIONING AUTHORITY DID NOT EXTEND TO THE INDIVIDUAL APPELLANTS.**

Under prevailing case law, the District Court's inherent sanctioning authority did not extend to the three individual Appellants. The sole authority cited by the District Court for imposing sanctions on these individual Appellants was the Court's inherent sanctioning authority. (ER24 & ER25.) Under modern case law, a District Court's inherent sanctioning authority is limited to three classes of persons or entities: parties and their counsel, persons who violate an existing court order and real parties in interest. *Helmac Products Corp. v. Roth Plastics Corp.*, 150 F.R.D. 563, 565-66 (E.D. Mich. 1993). The three individual Appellants do not fall within any of these categories.

To be sure, a District Court's inherent authority to sanction improper conduct extends beyond the parties and their counsel who have appeared before the Court. Indeed, in the watershed case describing the scope of a District Court's inherent authority, *Chambers v. Nasco, Inc.*, 501 U.S. 32, 36-37 (1991), a portion of the sanctioned conduct occurred prior to the time that Chambers became a party or was subject to any order by the District Court.

29

However, a District Court's inherent authority to impose sanctions is not unlimited. *Am. Civil Liberties Union v. Holder,* 673 F.3d 245, 256 (4th Cir. 2011); *Natural Gas Pipeline Co. of Am. v. Energy Gathering, Inc.,* 2 F.3d 1397, 1406-07 (5th Cir. 1993). In *Chambers* itself, the Supreme Court cautioned that the Court's inherent power "is not a broad reservoir of power, ready at an imperial hand, but a limited source; an implied power squeezed from the need to make the court function" (501 U.S. at 42) and "must be exercised with restraint and discretion." (*Id.* at 45). *See also Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764 (1980).

In the seminal case of *Helmac Products Corp. v. Roth Plastics, Corp.*, *supra*, the court pioneered a two-part test to gauge whether a District Court's inherent sanctioning authority extends to an individual who is neither a litigant nor an attorney who has appeared in the case. In that case, the owner of the defendant corporation had ordered the destruction of relevant documents, thereby rendering it impossible to conduct a trial on his corporation's liability. However, the owner was not a party to the case and was not subject to any court order at the time that he directed the document destruction.

In finding that the court's inherent sanctioning authority extended to the owner of the defendant corporation, the court held that its "inherent

30

power to sanction [is limited] to those individuals [who] were either (1) parties, (2) subject to a court order, or (3) real parties in interest." 150 F.R.D. at 568. Finding that the owner of the defendant corporation was, for all practical purposes, the real party in interest, the court imposed sanctions.

Since its development, the *Helmac* standard has been widely applied by federal courts in determining whether, and to what extent, a District Court's inherent sanctioning authority extends to a non-party and non-attorney (*i.e.*, an individual who has neither filed an appearance nor otherwise appeared before the court in the case as counsel).

Within the past two months, the test and principles underlying *Helmac* were echoed in *United States v. Henry*, 2013 U.S. Dist. LEXIS 133148 (E.D. Va.) at *108-09, in which, partially quoting *Helmac*, the court stated:

> Although the federal courts may certainly sanction disruptive or disobedient bad faith conduct, "the Court's power to sanction cannot possibly extend to everyone who interferes with litigation before the court. Otherwise the power to sanction would be so wide that it would be unenforceable."

*See also Anz Advanced Techs., LLC v. Bush Hog*, LLC, 2012 U.S. Dist. LEXIS 29534 (S.D. Ala.) at *34; *Bartos v. Pennsylvania*, 2010 U.S. Dist. LEXIS 43937 (M.D. Pa.) at *18; *Books Are Fun, Ltd. v. Rosenbrough*, 239 F.R.D. 532, 555 (S.D. Iowa 2007).

31

The prior decisions of this Court are in accord with the *Helmac* standard. In *Caldwell v. United Capital Corporation*, 77 F.3d 278 (9th Cir. 1996), this Court held that a District Court's inherent sanctioning authority extended to a person who had a controlling interest in the debtor and who, through the debtor, had implemented a fraud on the District Court. Such a result is consistent with *Helmac*'s extension of the District Court's inherent power to real parties in interest. However, diligent research has not shown a single case in which the District Court's inherent authority to sanction has been extended to persons who are neither parties, attorneys of record, persons subject to an existing court order or real parties in interest.

It is undisputed that none of the three individual Appellants appeared as parties or counsel in any of the five consolidated cases. (ER35, ER56, ER74, ER92 & ER113.) Further, none of the three were subject to any order of the District Court in any of the consolidated cases when the Sanctions Order was issued.

Under the *Helmac* standard, the District Court's inherent sanctioning authority can extend to these three individuals if and only if they were real parties in interest in at least one of the consolidated cases. Under the case law cited above, to be real parties in interest, an individual Appellant must

32

have a controlling ownership interest in either AF Holdings or Ingenuity 13, who were Plaintiffs in the consolidated cases.

There was no evidence from which the District Court could reasonably infer that any of the three individual Appellants had an ownership interest in either AF Holding or Ingenuity 13, much less a controlling interest. The District Court simply states, without any factual support or citation, that "the principles are the de facto owners and officers [of AF Holdings and Ingenuity 13]". (ER22.) With total respect for the District Court, there was not a shred of evidence supporting that conclusion, nor did the District Court cited any supporting evidence. (*Id.*)

The only witness who claimed to have any knowledge of Ingenuity 13 or AF Holdings was Gibbs. Nothing in Gibbs' testimony or affidavits could possibly be construed as suggesting that any of the three individual Appellants had an ownership interest of any kind in either Ingenuity 13 or in AF Holdings.[5] Further, there were no documents of any kind that lent

---

[5] Five months after the Notice of Appeal had been filed, Gibbs filed a motion with the District Court seeking an indicative ruling vacating the Sanction Order as to Gibbs. (ER613.) In his Motion and supporting Declaration, Gibbs for the first time alleges that the individual Appellants have a financial interest in Ingenuity 13 and AF Holdings. The other Appellants, each of which strongly denying the accuracy of that allegation, have had no opportunity to counter Gibbs' assertion. Moreover, the District Court could not have relied upon Gibbs' eleventh-hour "revelation", which

33

support to the District Court's conclusion that the individual Appellants are owners of either company.

Under the procedures employed in this case, it would be particularly unfair to infer, without any supporting evidence, that any of the individual Appellants had an ownership interest in AF Holdings or Ingenuity 13. The one person who was in a position to explain the ownership of both entities, Mark Lutz ("Lutz"), was physically present at the April 2 Hearing. (ER310.) Had the individual Appellants been permitted to examine Lutz, any question regarding the ownership of AF Holdings or Ingenuity 13 could have been established.

However, the Circuit Court terminated the hearing abruptly upon learning that the individual Appellants were invoking their Fifth Amendment rights. (ER317 & ER318.) In effect, the District Court impermissibly prevented the individual Appellants from introducing exculpatory testimony as a punishment for invoking their Fifth Amendment rights.

---

came long after this Appeal was noticed by each of Appellants (including Gibbs himself).

## II.   UNDER THIS COURT'S PRIOR PRECEDENT, A DISTRICT COURT'S INHERENT SANCTIONING AUTHORITY DOES NOT PERMIT THE IMPOSITION OF PUNITIVE SANCTIONS.

In its own words, the District Court's imposition of monetary sanctions that doubled Defendant's actual costs and attorneys' fees was intended "[a]s a punitive measure". (ER 28.)  This Court's prior precedents hold that a District Court's inherent sanctioning authority is limited to sanctions necessary to compensate an opposing party for harm caused by improper conduct or to coerce compliance with an existing order. However, the imposition of punitive sanctions can only be done pursuant to criminal contempt proceedings.

In a series of cases dating back to 2002, the Bankruptcy Panel of this Court has interpreted the Supreme Court's decision in *Chambers v. Nasco, Inc.*, *supra*, as limiting sanctions that may be imposed under a Court's inherent sanctioning authority to compensatory or coercive sanctions. The Bankruptcy Panel of this Court first addressed this issue in *In re: DeVille*, 280 B.R. 483 (9th Cir. B.A.P. 2002).  In that case, the plaintiff had filed a lawsuit against a number of defendants in a state court action.  In order to delay the state court trial, defendants' counsel orchestrated a series of bankruptcy filings and notices of removal of the state court action to the bankruptcy court that halted the state court action on several occasions.  The

35

District Court found that the sole purpose of the bankruptcy filings was to delay prosecution of the state court claims; and, imposed sanctions on the defendant, citing, among other things, its inherent sanctioning authority. After finding that reasonable costs and attorneys' fees totaled $5,548.50, the court doubled the costs and attorneys' fees as a deterrent to future misconduct (as the District Court in the instant case did). 280 B.R. at 490-91.

In holding that the court's inherent sanctioning authority would not permit such an award, this Court stated:

> It is apparent from *Chambers* that "inherent authority" will not suffice to support such a "penalty" in this instance. The award in *Chambers* was purely compensatory. *The context of the Chambers rationale is that "inherent power" is not a manifestation of contempt power and may be determined without resort to contempt proceedings so long as the sanctions are compensatory. Id.,* 501 U.S. at 42-51. By implication, a penalty is not authorized as part of "inherent power" sanctioning authority and, if imposed as part of the court's "inherent power," must be done by way of contempt proceedings.

280 B.R. at 497-98 (emphasis added). *Accord In re Dyer*, 322 F.3d 1178, 1197 (9th Cir. 2003).

The holding in *DeVille* could not possibly be more on point. In the instant case, the District Court awarded attorneys' fees and costs of $40,659.86. In the District Court's own words, "[a]s a punitive measure, the

36

Court doubles this award, yielding $81,319.72." (ER28.) This is precisely the same conduct that was expressly prohibited in *DeVille*.

Under the holdings in *DeVille* and *Dyer*, the District Court clearly exceeded its inherent sanctioning authority by doubling the award of compensatory costs and attorneys' fees. Before doubling the award, it was incumbent upon the District Court to conduct criminal contempt proceedings, under which Appellants would have been entitled to all of the constitutional protections inherent in a criminal proceeding.

## III. THE PROCEDURE USED BY THE DISTRICT COURT TO IMPOSE SANCTIONS VIOLATED PROCEDURAL DUE PROCESS REQUIREMENTS.

The portion of this Court's decision in *DeVille* quoted above specifically holds that a District Court may impose punitive sanctions only by conducting contempt proceedings. 280 B.R. at 497-98. While the District Court did not characterize its two hearings (March 11, 2013 and April 2, 2013) as contempt proceedings, the type of sanctions imposed by the District Court could only be imposed through a criminal contempt proceeding.

Therefore, the key question is whether the District Court's procedures complied with requirements of procedural due process mandated in a criminal contempt proceeding. As discussed below, the particular type of

37

criminal contempt proceeding required in order to impose the punitive sanctions contained in the Sanctions Order was an indirect criminal contempt proceeding. The case law is crystal clear that the District Court's procedures systematically violated no fewer than four safeguards mandated by procedural due process: the right to invoke the Fifth Amendment without incurring negative inferences; the right to an independent, impartial prosecutor; the right to cross-examine witnesses; and, the right to call witnesses and put on a defense.

## A.  The Sanctions Imposed by the District Court Required a Proceeding for an Indirect Criminal Contempt.

Federal case law distinguishes between civil and criminal contempt proceedings. *Int'l Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 826–30 (1994). Within the category of criminal contempt proceedings, the case law recognizes a distinction between contemptuous conduct that occurs in the court's presence (direct contempt) and contemptuous conduct that occurs outside of the court's presence (indirect contempt). *Id.*, 512 U.S. at 826, n.2. Both Supreme Court case law and the prior precedents of this Court require that a party accused of an indirect criminal conduct be accorded the procedural due process rights required in criminal actions. *See, e.g.*, *F.J. Hanshaw Enters. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1139 (9th Cir. 2001).

### 1. The sanctions imposed by the District Court required criminal contempt proceedings.

The prior decisions of this Court have provided a bright-line test to be used in determining whether the sanctions imposed by a court are civil or criminal. A District Court's characterization of a contempt proceeding as civil or criminal is not dispositive. *In re Rumaker*, 646 F.2d 870, 871 (5th Cir. 1980). The distinction between a civil contempt and a criminal contempt lies in the purpose underlying the sanction. *Koninklijke Philips Elecs., N.V. v. KXD Tech., Inc.*, 539 F.3d 1039, 1041-42 (9th Cir. 2008).

The purpose of civil contempt is to coerce the contemnor into compliance with an existing court order, or to compensate a party for the contemnor's improper conduct. *United States v. Armstrong*, 781 F.2d 700, 703 (9th Cir. 1986). The purpose of a criminal contempt is to punish. *Id.* Where the sanctions imposed are quasi-remedial and quasi-criminal, the sanction is treated as a criminal sanction. *Union Tool Co. v. Wilson*, 259 U.S. 107, 110 (1922); *In re Rumaker*, 646 F.2d at 872.

In the case of monetary sanctions, this Court has held that the sanction is civil if the amount of the sanction is calculated to be compensatory or it is intended to coerce compliance with a directive of the court. In general, civil coercive sanctions can be avoided by complying with the court's directive. As this Court stated in *In re Dyer*:

39

> We recently explained the difference between civil sanctions and criminal sanctions: Civil penalties must either be compensatory or designed to coerce compliance. . . . In contrast, "a flat unconditional fine totaling even as little as $50" could be criminal "if the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance," and the fine is not compensatory. *Id. at 1138* (citation omitted).

322 F.3d at 1192. *Accord F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*, 244 F.3d at 1137-38; *Int'l Union, United Mine Workers of America v. Bagwell*, 512 U.S. at 829.

Similarly, in the case of incarceration, the sanction is civil only if the contemnor can secure release by compliance with a required behavior. *Hicks v. Feiock*, 485 U.S. 624, 646 (1988). Where, however, the punishment is for a definite period of time, the contempt is regarded as criminal. *Id.*

In its Sanctions Order, the District Court characterized the proceedings under which it imposed sanctions as a civil proceeding. (ER21, n.3.) However, that characterization squarely, and unambiguously, contradicts the principles quoted above from *Dyer*, *Hanshaw*, *Hicks* and *United Mine Workers*.

At the time that the District Court issued its Sanctions Order on May 6, 2013 (ER19-ER29), each of the five consolidated cases had been voluntarily dismissed. (ER153-ER166.) There was no possibility that the

40

sanctions either threatened or imposed by the District Court were intended to coerce compliance with any court directive. Thus, when the District Court threatened incarceration in its Show-Cause Order (ER10 & ER11), there was nothing that any of the individual Appellants could do to secure their release through compliance with a court directive. Similarly, there was nothing that any of the Appellants could do to avoid a monetary sanction threatened in the Show-Cause Order. (*Id.*)

Further, the Sanctions Order clearly states that it was set at 200% of the amount needed to compensate the Plaintiff. (ER28.) In effect, the sanction was "a flat unconditional fine", which has been held to constitute a criminal sanction. *F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*, 244 F.3d at 1137-38; *In re: DeVille*, 280 B.R. at 497-98.

It is clear from both the context in which these sanctions were imposed and from the very characterization of these sanctions in the Sanctions Order that the purpose of these sanctions was to punish, rather than to compensate or coerce compliance with a court directive. Under both Supreme Court case law and the prior decisions of the Ninth Circuit, these sanctions were criminal and could only be imposed after conducting criminal contempt proceedings.

### 2. The type of criminal contempt proceedings required in this case was a proceeding for an indirect criminal contempt.

As discussed above, the case law distinguishes between a direct criminal contempt, in which the conduct takes place in the presence of the court, and an indirect contempt, in which the conduct takes place outside of the presence of the court. *Int'l Union, United Mine Workers of America v. Bagwell*, 512 U.S. at 827. While direct criminal contempts can be penalized summarily in light of the court's substantial interest in maintaining order, greater procedural protections are afforded regarding sanctions for indirect contempts. *Id.* at 833.

The contempt alleged in the instant case is, of necessity, an indirect criminal contempt. The Appellants were not parties, and had never appeared before the District Court in any of the consolidated cases. (ER35, ER56, ER74, ER92 & ER113.) Thus, it is impossible that the alleged offending conduct could have occurred in the presence of the District Court.

### B. The Procedures Implemented by the District Court Violated Procedural Due Process Requirements.

Criminal contempt is a crime in the ordinary sense. *Bloom v. Illinois,* 391 U.S. 194, 201 (1968); and, criminal penalties may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings. *Hicks v. Feiock,* 485 U.S. at 632.

42

In *F.J. Hanshaw Enters. v. Emerald River Dev., Inc.*, 244 F.3d at

1139, this Court delineated the specific procedural rights inuring to a person

or entity accused of an indirect criminal contempt, stating:

> . . . . . An individual charged with an indirect criminal
> contempt is entitled to the right to be advised of the charges,
> *Young*, 481 U.S. at 794; the right to a disinterested prosecutor,
> *id.* at 808; the right to assistance of counsel, *Cooke v. United
> States*, 267 U.S. 517, 537, 69 L. Ed. 767, 45 S. Ct. 390 (1925);
> a presumption of innocence, *Gompers v. Bucks Stove & Range
> Co.*, 221 U.S. 418, 444, 55 L. Ed. 797, 31 S. Ct. 492 (1911);
> proof beyond a reasonable doubt, *id.*; the privilege against self-
> incrimination, *id.*; the right to cross-examine witnesses, *Davis
> v. Alaska*, 415 U.S. 308, 315-16, 39 L. Ed. 2d 347, 94 S. Ct.
> 1105 (1974); the opportunity to present a defense and call
> witnesses, *Cooke*, 267 U.S. at 537; and the right to a jury trial if
> the fine or sentence imposed will be serious, *Bagwell*, 512 U.S.
> at 837 n.5.
>
> We hold that when a court uses its inherent powers to
> impose sanctions that are criminal in nature, it must provide the
> same due process protections that would be available in a
> criminal contempt proceeding.

A review of the record on appeal demonstrates that the District Court

erroneously concluded that its sanctions and proceedings were civil in

nature, and, therefore, made no attempt to provide Appellants with any of

the required criminal procedural safeguards described in *Hanshaw*.

1.  **The District Court's procedures violated procedural due process by drawing adverse inferences from the invocation of Fifth Amendment rights by the individual Appellants.**

The District Court made clear, both at the April 2 Hearing and in its Sanctions Order, that its findings were based in part on adverse inferences that it drew from the invocation of Fifth Amendment rights by the individual Appellants.

At the April 2, 2013 hearing, the District Court stated,

> I want to know if some of my conjecture is accurate. The only way I can find out is to have the principles [*sic*] here and answer those questions.
>
> Now, if you say he will not answer those questions, then I will draw whatever inferences I think are reasonable from the facts as I know them.

(ER313 & ER314.)

Further, the Sanctions Order makes clear that the District Court made good on its threat, stating:

> Based on the evidence presented on the papers and through sworn testimony, the Court *finds the following facts, including those based on adverse inferences drawn from Steele, Hansmeier, Duffy, and Van Den Hemel's blanket refusal to testify.*

(ER21, emphasis added.)   As justification for its inferences, the District Court further explained:

> Even if their refusal was based on the Fifth Amendment privilege against self-incrimination, the Court still may draw adverse inferences against them in this civil proceeding. *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976).

(ER21, n.3.)

The Supreme Court has made abundantly clear, on numerous occasions, that, in a criminal proceeding, a trier of fact is prohibited from drawing an inference of guilt from a defendant's invocation of his Fifth Amendment rights. *Griffin v. California*, 380 U.S. 609, 615 (1965). As the Court stated in *Ullmann v. United States*, 350 U.S. 422, 426 (1956):

> Too many, even those who should be better advised, view this privilege as a shelter for wrongdoers. They too readily assume that those who invoke it are either guilty of crime or commit perjury in claiming the privilege.

Rather, "[t]he privilege serves to protect the innocent who otherwise might be ensnared by ambiguous circumstances." *Slochower v. Board of Higher Education*, 350 U.S. 551, 557-58 (1956); *accord Griffin*, 380 U.S. at 613.

The District Court attempted to justify its right to draw adverse inferences from the individual Appellants' invocation of Fifth Amendment rights by characterizing the sanctions proceedings as a civil proceeding. (ER21, n.3.) Indeed, the case upon which the District Court relied, *Baxter v. Palmigiano*, 425 U.S. 308 (1976), was a civil proceeding. However, as discussed in detail above, the sanctions imposed by the District Court could

45

only be imposed through a criminal contempt proceeding, in which the District Court is precluded from drawing adverse inferences based on the invocation of Fifth Amendment rights.

### 2. The District Court's procedures violated procedural due process requirements by appointing a prosecutor who was not impartial.

A second major constitutional flaw in the procedures implemented by the District Court was its failure to appoint a disinterested prosecutor. In *Young v. United States ex rel. Vuitton Et Fils S.A.*, 481 U.S. 787, 812 (1987), the Court characterize this particular deficiency as "an error whose effects are pervasive. Such an appointment calls into question, and therefore requires scrutiny of, the conduct of an entire prosecution, rather than simply a discrete prosecutorial decision." Indeed, this breach of constitutional rights is so major that the Court went on to hold that it cannot constitute harmless error. *Id.* at 813-14.

There is absolutely no question that the District Court violated this requirement by appointing Defendant's counsel, Pietz, as the *de facto* prosecutor. In its February 7, 2013 Show-Cause Order, the District Court "invite[d]" Pietz "to present evidence concerning the conduct outlined in this order." (ER10.) With the sole exception of Gibbs, whom Pietz cross-examined, Pietz played the role of prosecutor, deciding on the witnesses who

testified, selecting the documents to be presented to the District Court and presenting oral argument in favor of sanctions. (ER213-ER260 & ER292-ER300.)

Pietz was also invited by the District Court to appear at the April 2 Hearing against Appellants. (ER18.) There, Pietz took his place with his co-counsel at the prosecutor's table, with several boxes of documents ready to levy against the Appellant. (ER307 & ER309.)

After the March 11 and April 2 Hearings, the District Court granted Pietz leave to file post-hearing submissions against Appellants. (*E.g.*, ER629 & ER630.) Ultimately, the vast majority of the District Court's award of attorneys' fees to Pietz was attributable to the extensive prosecutorial work he performed after the underlying copyright infringement action had been dismissed. (*See* ER331-ER336.)

The standard for determining whether a prosecutor is disinterested was established in *Young v. United States, supra*, in which the Supreme Court held that "counsel for a party that is the beneficiary of a court order may not be appointed to undertake contempt prosecutions for alleged violations of that order." 481 U.S. at 790, 809. "[S]uch an attorney is required by the very standards of the profession to serve two masters." *Id.* at 814.

47

Under this standard, Pietz is the antithesis of a disinterested prosecutor. Pietz's John Doe client was a direct beneficiary of the District Court's orders vacating early discovery in the consolidated cases. The termination of early discovery rendered it impossible to ascertain the identity of Pietz's client, necessitating dismissal of Case No. 8333 and the other consolidated cases. Further, the alleged violation of the early discovery orders in the consolidated cases was one of the District Court's bases for finding sanctionable conduct. (ER26.) Under the Supreme Court's standard in *Young v. United States*, Pietz was, by definition, "counsel for a party that is a beneficiary of a [allegedly violated] court order."

Further, a simple review of Pietz's website, "pietzlawfirm.com" reveals many statements and links that are inconsistent with any contention that he was a disinterested prosecutor. As an example, regarding the litigation involving Ingenuity 13, Pietz provided the following solicitation on his website:

This summer, Prenda Law, Inc. and its attorneys John Steele and Brett Gibbs have been busy filing lawsuits in California on behalf of Ingenuity 13, LLC. Ingenuity 13 is the latest plaintiff that Prenda is using to orchestrate its national campaign to coerce copyright "settlements" from ISP subscribers who may or may not have actually downloaded any of plaintiff's movies.... If you have received a letter from your ISP regarding an Ingenuity 13 subpoenas, or if you have been contacted by an Ingenuity 13 representative directly, please contact The Pietz Law Firm.

(ER376A & ER376B.)

The District Court's appointment of Pietz as the prosecutor in what, of necessity, was (or should have been) a criminal contempt proceeding was a direct violation of procedural due process.

> **3. The District Court's procedures violated procedural due process requirements by denying Appellants the ability to cross-examine witnesses.**

In *Davis v. Alaska*, 415 U.S. 308, 315-16 (1974), the United States Supreme Court held that the Sixth Amendment requires that defendants in a criminal action be allowed to cross-examine opposing witnesses. In explaining the importance of this right, the Court, quoting *Douglas v. Alabama*, 380 U.S. 415, 418 (1965), stated: "Our cases construing the [confrontation] clause hold that a primary interest secured by it is the right of cross-examination." In *F.J. Hanshaw Enters. v. Emerald River Dev., Inc.*, 244 F.3d at 1139, this Court confirmed that the right of cross-examination extends to indirect criminal contempt proceedings.

As discussed above, the District Court in this matter conducted two hearings, the March 11 and April 2 Hearings. (*Supra* at 16-19 & 20-21.) The District Court only allowed testimony at the earlier hearing. (*Id.*) While Appellants were represented by counsel at the March 11 Hearing, an examination of the transcript of that hearing demonstrates that the District

49

Court did not permit Appellants' counsel to participate, much less conduct cross-examination of the witnesses hand-picked by Pietz or of Appellants' principal accuser, Gibbs. (ER192–ER194.)

The effect of denying Appellants the right to cross-examine witnesses is particularly pernicious in this case. None of the individual Appellants appeared as counsel or parties in any of the consolidated cases. Every one of the three categories of sanctionable conduct identified by the District Court (ER24-ER26) was performed directly by Plaintiffs' attorney of record, Gibbs. The only nexus between Appellants and the sanctioned conduct was Gibbs' exculpatory (and inaccurate) testimony that his conduct was directed by Steele and Hansmeier. (ER183; ER261 – ER267.)

The weakness and implausibility of Gibbs' attempt to extricate himself from his own conduct is demonstrated by the fact that, while filing the consolidated cases as Of-Counsel to Prenda Law, he affirmatively represented that the two persons whom he accuses of directing his conduct had no any ownership interest in the law firm. (ER183.) Gibbs fails to explain how, as Of Counsel for Prenda Law and the attorney of record in each of the consolidated cases, he was answerable to two individuals who have no ownership interest in the law firm. Perhaps even more to the point, Gibbs made no claim whatsoever that the third individual Appellant, Duffy,

50

performed any supervision at all over Gibbs in the consolidated cases, or at any other time. (ER264.)

Certainly, if Appellants were to be, in effect, convicted of criminal contempt on the basis of Gibbs' testimony, they had a right to challenge that testimony by cross-examining Gibbs. Failure to accord Appellants that right was clear error. *Douglas v. Alabama, supra.*

Moreover, it was also critical that Appellants' counsel be given the right to cross-examine Alan Cooper (ER208-ER223), whose testimony was the sole basis for the District Court's conclusion that Appellants and others had perpetrated a fraud on the Court by submitting acceptances of copyright assignments containing Cooper's forged signature. (*Id.*) Appellants should have been given the opportunity to examine Cooper with respect to his involvement with Ingenuity 13 and AF Holdings and whether the individual Appellants had any involvement whatsoever with respect to the allegedly forged assignment-acceptances.

In this case, the District Court's imposition of punitive (and thereby criminal) sanctions against Appellants without allowing the right of cross-examination is precisely what both the United States Supreme Court and the prior decisions of this Court have forbidden. *Pointer v. Texas*, 380 U.S. 400, 404 (1965); *F.J. Hanshaw Enters. v. Emerald River Dev., Inc., supra.*

51

> **4.** **The District Court's procedures violated procedural due process requirements by denying Appellants the ability to present a defense and call witnesses.**

In addition to preventing Appellants from cross-examining witnesses, the District Court's procedures also prevented Appellants' counsel from calling witnesses and putting on a defense. The three individual Appellants were present at the April 2 Hearing. (ER309 & ER310.) As emphasized above, upon learning that each of these individuals were invoking their rights under the Fifth Amendment, the District Court abruptly terminated the hearing and refused to hear further argument from Appellants' counsel. (ER311-ER318.)

The termination of the hearing effectively cut-off Appellants' ability to present testimony from other witnesses. This was particularly important because Mark Lutz, whom Gibbs had identified as the chief executive officer of both Ingenuity 13 and AF Holdings (ER184), was present at the April 2 Hearing pursuant to the District Court's amended Show-Cause Order. (ER17.) Indeed, Lutz was identified to the District Court as being present at that hearing. (ER310.)

Lutz was in a position to explain the ownership of Ingenuity 13 and AF Holdings and (contrary to the District Court's findings (ER22)) to demonstrate that none of the individual Appellants had an ownership interest

in, or control of, either entity. That definitive proof would have conclusively established that the District Court's inherent sanctioning authority did not extend to the individual Appellants.

The opportunity to present a defense and call witnesses has long been held to be a fundamental requirement of procedural due process in connection with indirect criminal contempt proceedings (*Cooke v. United States*, 267 U.S. 517, 537 (1925)) and has been explicitly endorsed by this Court. *F.J. Hanshaw Enters. v. Emerald River Dev., Inc.*, 244 F.3d at 1139. As with the denial of cross-examination, the District Court's denial of Appellants' right to present a defense by its sudden termination of the April 2 Hearing constitutes error.

**IV. THE DISTRICT COURT COMMITTED CLEAR ERROR IN ALLOWING DEFENDANT TO RECOVER ATTORNEYS' FEES INCURRED IN PURSUING POST-DISMISSAL SANCTIONS AND IN REQUIRING APPELLANTS TO POST SUPERSEDEAS BONDS THAT, AMONG OTHER THINGS, INSURED DEFENDANT'S ABILITY TO RECOVER ATTORNEYS' FEES INCURRED IN DEFENDING THESE SANCTIONS ON APPEAL.**

Of the $40,659.86 in costs and attorneys' fees awarded by the District Court, $21,090 was expended in connection with the post-dismissal sanctions hearings mandated by the District Court. (ER331-ER336.) Under this Court's decision in *Orange Blossom Limited Partnership v. Southern California Sunbelt Developers, Inc.*, 608 F.3d 456, 466-67 (9th Cir. 2010), a

53

monetary sanction issued pursuant to a District Court's inherent sanctioning authority cannot include attorneys' fees incurred in pursuing those sanctions. Thus, the District Court's inclusion of such attorneys' fees in its sanctions award was clearly erroneous.

In *Lockary v. Kayfetz*, 974 F.2d 1166, 1177-78 (9th Cir. 1992), this Court held the attorneys' fees generated by counsel in pursuing sanctions issued pursuant to both Fed. Rule Civ. Pro. 11 and the District Court's inherent sanctioning authority are not properly included in the sanctions award. While Rule 11 was subsequently amended to allow such attorneys' fees [6], in *Orange Blossom Limited Partnership v. Southern California Sunbelt Developers, Inc.*, 608 F.3d at 466-67 (9th Cir. 2010), this Court reiterated that sanctions issued pursuant to a court's inherent sanctioning authority cannot include attorneys' fees incurred in pursuing such sanctions.

The decision in *Orange Blossom Limited Partnership* is directly on point. In that case, 13 entities filed involuntary bankruptcy petitions against two alleged debtors. After the petitions were dismissed, the alleged debtors

---

[6] *See Margolis v. Ryan*, 140 F.3d 850, 854-55 (9th Cir. 1998), confirming that the portion of *Lockary* dealing with Rule 11 sanctions was overruled by the 1993 Amendments to Rule 11. However, in *Orange Blossom Limited Partnership*, this Court stated that *Margolis* did not overrule *Lockary* with respect to the prohibition against including such attorneys' fees in sanctions issued under the District Court's inherent authority. *Orange Blossom Limited Partnership v. Southern California Sunbelt Developers, Inc.*, 608 F.3d at 467, n.6.

54

filed motions against the petitioning creditors for costs, attorney's fees and punitive damages under § 303(i) of the Bankruptcy Act, 11 U.S.C. § 303(i). The Court found that 11 U.S.C. § 303(i) (like the copyright law involved in each of the consolidated cases) is a fee shifting provision that allows recovery of attorneys' fees by the prevailing party.    608 F.3d at 461-63. The Court even found that the debtors were entitled to attorneys' fees incurred in pursuing their claims for attorney's fees and damages under § 303. *Id.* at 463-65.

However, the Court drew the line at allowing attorneys' fees incurred in pursuing sanctions issued under the court's inherent authority. Citing to *Lockary*, this Court held that, while the fee shifting provision allowed recovery of attorneys' fees incurred in the substantive underlying litigation, it had no applicability to a post-dismissal motion for sanctions under the court's inherent authority. 608 F.3d at 466-67.

The holding in *Orange Blossom Limited Partnership* is dispositive of the issue in this case. The fee shifting provision of the copyright law permits the prevailing party to recover attorneys' fees incurred in pursuing or defending the copyright claim. However, under *Orange Blossom Limited Partnership*, that provision is wholly inapplicable to attorneys' fees incurred

55

in pursuing post-dismissal sanctions imposed under the court's inherent authority.

A moment's reflection reveals the practical rationale for the decision in *Orange Blossom Limited Partnership.* If a fee-shifting provision permitted the prevailing party in the substantive phase of the case to recover attorneys' fees in both the substantive litigation and in subsequent sanctions motions, the prevailing party would have every incentive to file a sanctions motion regardless of the merits. Under such an illogical procedure, a party that succeeded in defeating a sanctions motion would, nonetheless, be responsible for the attorneys' fees incurred by the party that filed the meritless motion. Such a rule would encourage sanctions motions in virtually every case involving a fee-shifting provision.

The District Court committed further error by holding that Defendant was entitled to recover attorneys' fees incurred in defending these sanctions on appeal and requiring Appellants to post a second supersedeas bond sufficient to cover those projected attorneys' fees. (ER33.) Citing to *Azizian v. Federated Dep't Stores, Inc.*, 499 F.3d 950 (9th Cir. 2007), the District Court reasoned that the fee-shifting provision of the Copyright Act, 17 U.S.C. § 505, extended to attorneys' fees incurred by a party seeking sanctions. (*Id.*)

Even ignoring the fact that *Azizian* was not a copyright case, it has nothing to do with Defendant's right to recover attorneys' fees on this appeal. The issue regarding this appeal is whether the fee-shifting provision in the Copyright Act, 17 U.S.C. § 505, applies to attorneys' fees incurred in pursuing sanctions or defending sanctions on appeal. That issue was not addressed in *Azizian*. It was, however, addressed in both *Lockary v. Kayfetz*, *supra*, and in *Orange Blossom Limited Partnership*.

As discussed above, *Orange Blossom Limited Partnership* definitively holds that a fee-shifting provision does not allow a prevailing party in the substantive phase of a case to also recover attorneys' fees incurred in pursuing sanctions. That holding would bar Defendant's recovery of attorneys' fees incurred in pursuing sanctions before both the District Court and before this Court.

However, in *Lockary*, this Court discussed an additional reason why Defendant cannot recover attorneys' fees incurred in this appeal. In that case, this Court held that attorney's fees incurred in defending a sanctions award on appeal are not directly caused by the conduct of the sanctioned party, but rather, by the District Court's sanction. Quoting the United States Supreme Court's decision in *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 407 (1990), this Court stated:

If the district court imposes *Rule 11* sanctions on the plaintiff, and the plaintiff appeals, the expenses incurred in defending the award on appeal are directly caused by the district court's sanction and the appeal of that sanction, not by the plaintiff's initial filing in district court.

974 F.2d at 1178. This holding was reaffirmed in *Orange Blossom Limited Partnership*, 608 F.3d at 466-67. Thus, under no circumstances would Defendant be permitted to recover attorneys' fees incurred in this appeal.

Accordingly, the District Court's Bond Order was clearly erroneous.

## V.   IF THIS COURT DECIDES THAT IT IS APPROPRIATE TO REMAND THIS CASE FOR FURTHER PROCEEDINGS, APPELLANTS RESPECTFULLY ASK THAT THE CASE BE TRANSFERRED TO A DIFFERENT DISTRICT COURT JUDGE.

In the event that this Court remands this case to the District Court, Appellants very respectfully ask the Court to remand the case with instructions that it be transferred to a different District Court Judge. In making this request, Appellants are aware that, under this Court's prior precedents, a case is remanded to a different judge "only in unusual circumstances or when required to preserve the interests of justice." *United States v. Wolf Child*, 699 F.3d 1082, 1102 (9th Cir. 2012).

However, with total respect for Judge Wright, and without any intent to question his motives or integrity, the outward appearances of bias in this case are very similar to those in this Court's very recent decision in *Inst. of*

*Cetacean Research v. Sea Shepherd Conservation Soc'y*, 725 F.3d 940, 947-
48 (9th Cir. 2013), in which this Court remanded with instructions that the
case be transferred to a different District Court Judge.

In *Cetacean Research*, after reversing the District Court's denial of a
preliminary injunction, this Court remanded the case with instructions that it
be reassigned to a different District Court Judge, stating:

> Panels have broad discretion to reassign cases on remand when
> they feel justice or its appearance requires it. The district judge
> has expressed strong and erroneous views on the merits of this
> high   profile   case.   Without   ourselves   reaching   any
> determination as to his ability to proceed impartially or
> impugning his integrity, to preserve the appearance of justice,
> we conclude reassignment is appropriate. The appearance of
> justice would be served if the case were transferred to another
> district judge, drawn at random, and we so order in accordance
> with the standing orders of the Western District of Washington.

(725 F.3d 940, 947-48, citations omitted.)

There are strong parallels between the instant case and *Cetacean
Research*. The instant case, like *Cetacean Research*, has been well-
publicized. Moreover, the District Court Judge has expressed very strong,
negative views about the Appellants, particularly the three individual
Appellants.

One day after Case No. 8333 was assigned to him, Judge Wright
expressed extreme negative views on the merits of litigation designed to
enforce copyrights for adult films, characterizing Ingenuity 13's effort to

enforce its copyright as a "legal shakedown" and stating that it was his "duty to protect the innocent citizens of this district . . . even though a copyright holder's rights may be infringed by a few deviants." (ER147.) It should be emphasized that this statement was made months before the District Court had even commenced its sanctions investigation.

In addition, the District Court has described the three as "attorneys with shattered law practices". (ER21.) Without any investigation into the merits of the copyright infringement claims, the District Court has characterized the consolidated lawsuits as a use of the copyright law to compensate "starving attorneys in this electronic-media era to plunder the citizenry". (ER20.) The Court's overt animosity toward the three attorneys, who have never appeared in any of the cases before Judge Wright, was graphically highlighted in the District Court's assertion that the individual Appellants "suffered from a form of moral turpitude unbecoming of an officer of the court" (ER28); and, has even speculated that Appellants will hide assets to avoid paying sanctions (ER27).

The District Court's apparent naked hostility toward Appellants is further demonstrated in the breadth of sanctions imposed. In addition to imposing "punitive" monetary sanctions (ER28), the District Court has stated that it intends to notify the local and federal bars in which the

individual Appellants practice, refer the matter to the U.S. Attorney for the Central District of California, contact the Criminal Division of the Internal Revenue Service and notify all of the judges before whom these attorneys have pending cases. (ER28 & ER29.)   Moreover, the District Court expressed disappointment in its inability to identify justification for imposing further sanctions, stating: "Unfortunately, other than these specific instances of fraud, the Court cannot make more detailed findings of fraud." (ER26.)  Indeed, the vast majority of the Sanctions Order is devoted to the District Court's open objections of using the copyright laws to protect Ingenuity 13 and AF Holdings' rights in adult films, which are wholly unrelated to the three categories of conduct that were identified as sanctionable. (ER19-ER29.)

Finally, if the District Court's Sanctions Order is taken at its word, the monetary sanctions were set to discourage Appellants from appealing the Sanctions Order.  The District Court specifically stated that its monetary sanctions were "calculated to be just below the cost of an effective appeal." (ER28, n.5.)

Thus, in the event that this Court deems a remand of this case for further proceedings to be necessary, the above-cited examples of hostility, coupled with procedural defects in the process used below, give at least the

appearance that Appellants will not receive an impartial hearing on remand and argue strongly for reassignment to a different District Court Judge.

## CONCLUSION

As discussed in detail above, the District Court committed reversible error by: extending its inherent sanctioning authority to individuals who were not subject to that authority; imposing criminal sanctions without affording Appellants the protections required by procedural due process in criminal cases; improperly calculating the monetary sanctions imposed by including attorneys' fees incurred in pursuing such sanctions; and, committing further error by requiring Appellants to procure supersedeas bonds that, among other costs, were calculated to reimburse Defendant for attorneys' fees incurred in defending these sanctions on appeal.

For each of these reasons, Appellants respectfully ask this Court to vacate the District Court's Sanctions Order, entered on May 6, 2013, and its Bond Order, entered on June 11, 2013.

Alternatively, if this Court determines that any further proceedings are necessary, due to the appearance of bias suggested by the District Court's strong, and often gratuitous, statements in its various Orders and at the two hearings conducted, Appellants respectfully ask that this case be reassigned to a different District Court Judge.

Dated: November 18, 2013      Respectfully submitted,

                                    VOELKER LITIGATION GROUP
                                    Daniel J. Voelker, Esq.


                                    By: /s/Daniel J. Voelker_____
                                    Daniel J. Voelker
                                    Attorney for Appellants: Ingenuity 13, LLC; AF Holdings, LLC; Prenda Law, Inc.; Paul Duffy, Esq.; Paul Hansmeier, Esq.; and John Steele, Esq.

## STATEMENT OF RELATED CASES

Pursuant to Circuit Rule 28-2.6, there are no known pending cases in this Court which Appellants deem related to the cases that have been consolidated in this appeal.

Dated:  November 18, 2013          Respectfully submitted,

                                   VOELKER LITIGATION GROUP
                                   Daniel J. Voelker, Esq.


                                   By:  /s/Daniel J. Voelker_____
                                   Daniel J. Voelker
                                   Attorney for Appellants:  Ingenuity 13,
                                   LLC;  AF Holdings, LLC; Prenda Law, Inc.;
                                   Paul Duffy, Esq.; Paul Hansmeier, Esq.; and
                                   John Steele, Esq.

## CERTIFICATE OF COMPLIANCE

I certify that, in accordance with Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit Rule 32-1, Appellants' Opening Brief is proportionally spaced and has a typeface of 14 points.  According to the word-count feature in Microsoft Word software used to prepare this brief, it contains 13,166 words, including footnotes, and is double spaced.  This brief, therefore, complies with the 14,000 word type-volume limit established by Fed. R. App. P. 32(a)(7)(B).

Dated:  November 18, 2013          Respectfully submitted,

VOELKER LITIGATION GROUP
Daniel J. Voelker, Esq.


By: /s/Daniel J. Voelker_____
Daniel J. Voelker
Attorney for Appellants:  Ingenuity 13, LLC; AF Holdings, LLC; Prenda Law, Inc.; Paul Duffy, Esq.; Paul Hansmeier, Esq.; and John Steele, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on November 18, 2013.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated: November 18, 2013          /s/Daniel J. Voelker_____
                                  Daniel J. Voelker